ROBBIN L. ITKIN (SBN 117105)
robbin.itkin@dlapiper.com
DLA PIPER LLP (US)
2000 Avenue of the Stars
Suite 400 North Tower
Los Angeles, California 90067-4704
Tel: (310) 595-3000
Fax: (310) 595-3300

JOHN K. LYONS (*Pro Hac Vice*)
john.lyons@dlapiper.com
JEFFREY S. TOROSIAN (*Pro Hac Vice*)
Jeffrey.Torosian@dlapiper.com
JOSEPH A. ROSELIUS (*Pro Hac Vice*)
Joseph.Roselius@dlapiper.com
DLA PIPER LLP (US)
444 West Lake Street, Suite 900
Chicago, Illinois 60606-0089
Tel: (312) 368-4000
Fax: (312) 236-7516

Attorneys for Jonathan D. King, Chapter 7 Trustee

**UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>ZETTA JET USA, INC., a California corporation,<br><br>    Debtor.<br><br>In re:<br><br>ZETTA JET PTE, LTD., a Singaporean corporation,<br><br>    Debtor.<br><br>☒    Affects Both Debtors<br><br>☐    Affects Zetta Jet USA, Inc., a California corporation, only<br><br>☐    Affects Zetta Jet PTE, Ltd., a Singaporean corporation, only | Lead Case No.: 2:17-bk-21386-SK<br><br>Chapter 7<br><br>Jointly Administered With:<br>Case No.: 2:17-bk-21387-SK<br><br>Adv. Proc. No. 2:19-ap-01382-SK<br><br>**CHAPTER 7 TRUSTEE'S NOTICE OF MOTION AND MOTION FOR ORDER PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE APPROVING SETTLEMENT AGREEMENT BY AND BETWEEN CHAPTER 7 TRUSTEE AND ECN AVIATION, INC. AND ECN CAPITAL CORPORATION; MEMORANDUM OF POINTS AND AUTHORITIES; SUPPORTING DECLARATION OF JONATHAN D. KING** |

| | |
|---|---|
| JONATHAN D. KING, solely in his capacity as Chapter 7 Trustee of Zetta Jet USA, Inc. and Zetta Jet PTE, Ltd.<br><br>      Plaintiff,<br><br>v.<br><br>Jetcraft Corporation, Jetcraft Global, Inc., Jetcoast 5000-5 LLC, Orion Aircraft Holdings Ltd., Jetcraft Asia Limited, FK Partners Limited, Jahid Fazal-Karim, Bombardier Aerospace Corporation, Bombardier, Inc., Learjet, Inc., ECN Aviation Inc. f/k/a Element Aviation Inc., and ECN Capital Corporation as successor to Element Financial Corporation,<br><br>      Defendants. | [No hearing required unless requested pursuant to Local Bankruptcy Rule 9013-1(o)] |

**TO THE HONORABLE SANDRA R. KLEIN, UNITED STATES BANKRUPTCY JUDGE, ECN AVIATION, INC., ECN CAPITAL CORPORATION, AND ALL INTERESTED PARTIES TO THESE CASES.**

      **PLEASE TAKE NOTICE** that Jonathan D. King, solely in his capacity as the chapter 7 trustee (the "Trustee") appointed in the above-captioned, jointly administered bankruptcy cases of Zetta Jet USA, Inc. ("Zetta USA") and Zetta Jet PTE, Ltd. ("Zetta PTE" and together with Zetta USA, the "Debtors"), hereby moves (the "Motion") the United States Bankruptcy Court for the Central District of California (the "Court"), pursuant to Sections 105(a) and 363 of title 11 of the United States Code, Rules 2002 and 9019 of the Federal Rules of Bankruptcy Procedure, Rules 9013-1 and 9019-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California (the "Local Rules), and applicable California law for entry of an order approving that certain Settlement Agreement dated as of December 6, 2019 (the "Settlement Agreement") attached to the Motion as **Exhibit C**, and making a good faith determination with respect thereto, under Cal. Code Civ. P. Section 877.6, which resolves all issues, claims, and other matters between the Trustee on behalf of the Debtors and their estates and ECN Aviation, Inc. and ECN Capital Corporation (together, "ECN").

      **PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Rule 9013-1(o), a hearing is not required on the Motion unless requested by the United States Trustee (the "U.S. Trustee"), a party in interest, or otherwise ordered by the Court. The deadline to file and serve a written

1  response to the Motion and request for a hearing on the Motion is December 26, 2019 (the
2  "<u>Responsive Deadline</u>"). Any such response to the Motion and request for a hearing on the
3  Motion must be filed with the Clerk of the Court, and served upon: (i) counsel for the Trustee,
4  Robbin L. Itkin, DLA Piper LLP (US), 2000 Avenue of the Stars, Suite 400 North Tower, Los
5  Angeles, California 90067-4704 and John K. Lyons, DLA Piper LLP (US), 444 West Lake Street,
6  Suite 900, Chicago, Illinois 60606-0089; (ii) the U.S. Trustee, to Attention: Dare Law, Esq., 915
7  Wilshire Boulevard, Suite 1850, Los Angeles, California 90017; and (iii) all other parties entitled
8  to notice at such address designated by such party, via overnight and electronic mail so as to be
9  received on or before the Responsive Deadline.

**PLEASE TAKE FURTHER NOTICE** that the Trustee has provided notice of this Motion to the Court, ECN Aviation, Inc., ECN Capital Corporation, and all parties entitled to such notice pursuant to the *Order: Granting Motion for Entry of an Order Limiting Notice and Related Relief* [Docket No. 225], via overnight mail and electronic mail (to the extent such addresses are known).

**PLEASE TAKE FURTHER NOTICE** that a copy of the Motion may be obtained by contacting Gregg Steinman at DLA Piper LLP (US), 200 South Biscayne Boulevard, Suite 2500, Miami, Florida, 33131, E-mail: gregg.steinman@dlapiper.com.

**WHEREAS**, for the reasons set forth herein, the Trustee respectfully requests that the Court enter an order:

1. granting the Motion in its entirety;
2. approving the Settlement Agreement;
3. finding that the Settlement Agreement was made in good faith; and
4. authorizing the Trustee and ECN to take all necessary actions to effectuate the Settlement Agreement.

DLA PIPER LLP (US)
LOS ANGELES

3

EAST\170813755.1

| | |
|---|---|
| 1    DATED: December 9, 2019 | **DLA PIPER LLP (US)** |
| 2 | |
| 3 | By: */s/ John K. Lyons* <br>      JOHN K. LYONS (*Pro Hac Vice*) |
| 4 | Attorneys for the Chapter 7 Trustee |

DLA PIPER LLP (US)
LOS ANGELES

4

EAST\170813755.1

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    Introduction**

1.    Jonathan D. King, solely in his capacity as the Chapter 7 trustee (the "Trustee") appointed in the above-captioned, jointly administered bankruptcy cases (the "Chapter 7 Cases") of Zetta Jet USA, Inc. ("Zetta USA") and Zetta Jet PTE, Ltd. ("Zetta PTE" and together with Zetta USA, the "Debtors"), by and through his undersigned counsel, DLA Piper LLP (US), respectfully submits this motion (the "Motion") pursuant to Sections 105(a) and 363 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rules 9013-1 and 9019-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California (the "Local Rules"), and applicable California law for entry of an order, substantially in the form of the proposed order attached hereto as **Exhibit B**, approving that certain Settlement Agreement dated as of December 6, 2019 (the "Settlement Agreement"), executed by and between the Trustee and ECN Aviation, Inc. and ECN Capital Corporation (together, "ECN"). Pursuant to the Settlement Agreement, the Trustee will recover from ECN, for the benefit of the Debtors' estates, $15 million in full settlement and compromise of the claims asserted by the Trustee against ECN in the related adversary proceeding, Case No. 2:19-AP-01382-SK (the "Adversary Case") and a full release of millions of dollars in certain claims as more fully described in the motion that ECN has asserted, or could assert, against the estates. A true and correct copy of the Settlement Agreement is attached hereto as **Exhibit C** and incorporated herein by reference. In support of this Motion, the Trustee submits the *Declaration of Jonathan D. King* attached hereto as **Exhibit A**. In further support of this Motion, the Trustee respectfully states as follows:

**II.    Jurisdiction and Venue**

2.    This Court has jurisdiction over these Chapter 7 Cases, the Debtors' estates, and this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157.

3.    Venue of these Chapter 7 Cases and proceedings in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory bases for the relief requested herein are Sections 105(a) and 363 of the Bankruptcy Code, Bankruptcy Rules 2002 and 9019, and Local Rules 9013-1 and 9019-1, and Cal. Code Civ. P. Section 877.6.

**III.    Status of Case**

5. On September 15, 2017, the Debtors commenced bankruptcy proceedings by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").

6. On September 29, 2017, the Court entered the *Order Granting Debtors' Emergency Motion to Approve Stipulation for Appointment of Chapter 11 Trustee Pursuant to § 1104* [Docket No. 120]. On October 5, 2017, the Office of the United States Trustee (the "U.S. Trustee") filed a *Notice of Appointment of Chapter 11 Trustee*, indicating that the U.S. Trustee had appointed Mr. King as the chapter 11 trustee (the "Chapter 11 Trustee") in the Chapter 11 Cases [Docket No. 155].

7. On November 30, 2017 (the "Shutdown Date"), based upon a lack of funds to operate the Debtors' business, the Chapter 11 Trustee shut down operations, terminated all employees, and, on December 4, 2017, this Court entered the orders granting the Chapter 11 Trustee's motions to convert the Debtors' Chapter 11 Cases to cases under Chapter 7 of the Bankruptcy Code (the "Conversion Date") [Docket No. 452 for Zetta USA and Docket No. 52 for Zetta PTE].

8. On December 5, 2017, the *Notice of Appointment of Trustee and Fixing of Bond* was filed, pursuant to which the U.S. Trustee appointed Mr. King to serve as the Trustee in these Chapter 7 Cases [Docket No. 458 for Zetta USA and Docket No. 53 for Zetta PTE], which appointment became final on January 8, 2018.

**IV.    Statement of Relevant Facts**

  **A.    The Debtors Prepetition Relationship with ECN**

9. Prior to the Shutdown Date, the Debtors operated a private flight charter business, servicing routes domestically and internationally, with ultra-long range intercontinental flight capabilities, for business and luxury travel.

10. While operating, the Debtors bought and/or leased three aircraft financed by ECN

(collectively, the "ECN Aircraft Transactions"). The first aircraft, a Bombardier model Global 5000 with MSN 9679 ("MSN 9679"), closed on December 30, 2015. The second and third aircraft, a Bombardier Global 6000 with manufacturer serial number 9697 ("MSN 9697") and Bombardier model Global 5000 with MSN 9644 ("MSN 9644" and together with MSN 9697 and MSN 9679, the "ECN Aircraft") closed on September 22, 2016. During the tenure of the ECN Aircraft Transactions, the Debtors made over $28,026,646.04 in prepetition transfers within two years of the Petition Date directly to, or for the benefit of, ECN (the "ECN Transfers"), $8,237,312.32 of which were made within the 90 day period prior to the Petition. A schedule of the transfers made to ECN is attached under Schedule 1 to the King Declaration.[1]

### B.  ECN's Proofs of Claims

11. In these Chapter 7 Cases, ECN or its affiliates filed multiple proofs of claims totaling more than $186.6 million in general unsecured claims and more than $13.1 million in chapter 11 administrative priority claims against the Debtors for debts that ECN claims the Debtors owe pursuant to the ECN Aircraft Transactions and the Debtors' postpetition use of the ECN Aircraft (collectively, the "ECN Claims"). A list of the proofs of claim filed by ECN, segregated by each ECN Aircraft Transaction, is attached as Schedule 2 to the King Declaration. The Trustee sought disallowance of these claims in the Adversary Case.

12. Subsequent to the filing of the ECN Claims and to mitigate its losses, ECN marketed and sold MSN 9697 and MSN 9679, which resulted in a significant reduction in the claimed amounts against the Debtors. In connection with the sale transaction involving MSN 9679, which substantially mitigated ECN's claims against the Debtor with respect thereto, ECN was required by the purchaser to assign ECN's claims to the purchaser (the "Transferred Claims").[2]

---

[1] A detailed description of the ECN Aircraft Transactions, ECN Aircraft, and ECN Transfers can be found in the *Adversary Complaint* [Docket No. 1106] (the "Adversary Complaint").

[2] The purchaser of MSN 9679 is a special purpose vehicle formed by Ojets, a company that the Trustee is investigating based upon certain ties to Cassidy. The transferee of the Transferred Claims, Luxtra Pte. Lte., is an affiliate of Ojets. Nothing in the Settlement Agreement releases Ojets, Luxtra, or their affiliates, and the Trustee reserves all rights to pursue any and all claims with respect to such entities. In addition, under the Settlement Agreement, the Trustee expressly reserves all rights under Section 502(d) of the Bankruptcy Code to object to the Transferred Claims.

13. In particular, the ECN Claims being released pertain to MSN 9644 and MSN 9697. ECN's claims on account of MSN 9644 were amended in August 2019, as a result of which the prepetition claims are $17,173,958 against each estate. ECN's prepetition claims in account of MSN 9697 were also amended in August 2019, so that the claims are now $44,462,202 against each estate. However, ECN's amended claims disclose that it realized $36,000,000 in sales proceeds from the sale of that aircraft, and $2 million from a collateral source. The Transferred Claims in respect of MSN 9679 were not amended, however the aircraft was sold. The prepetition claims filed by ECN on that aircraft were $32,187,314 against each estate, of which $30,406,628 was principal, and the remainder consisted of prepetition interest, repossession expenses, maintenance costs and similar items. ECN realized $31,500,000 from disposition of the aircraft and another $750,000 from a collateral source.

14. ECN has represented and warranted the above facts and confirmed that it has received payment in full for all financing obligations arising under the ECN Aircraft Transactions. However, there still remains a balance under a prepetition general unsecured lease rejection damages claim asserted by ECN in Proof of Claim 144-1 filed in Zetta PTE's bankruptcy case ("Claim 144-1") in the amount of $1,657,867. The Trustee disputes that any balance is owed on account of Claim 144-1 and will seek disallowance of claim.

### C. The Trustee's Investigations

15. Since the Conversion Date, the Trustee has been focused on winding down the Debtors' estates and pursuing all methods of recovery to bring value into the Debtors' estates for the benefit of their creditors.

16. While operating the Debtors' business in the Chapter 11 Cases and investigating potential methods of recovery of assets of the Debtors, the Trustee uncovered extensive fraud committed by Geoffrey Cassidy, the Debtors' former CEO.

17. Accordingly, the Trustee filed numerous requests for production pursuant to Bankruptcy Rule 2004 to assist in the discovery of assets of the Debtors, including potential causes of action. Over the course of approximately two years, the Trustee received nearly two million documents.

18. During his analysis of potential claims on behalf of the Debtors' estates, the Trustee confirmed that Cassidy committed numerous acts of fraud and, in some cases, the fraudulent schemes involved third parties that were involved in the Debtors' aircraft transactions.

19. On September 13, 2019, the Trustee filed a number of adversary proceedings against third-parties including ECN for, among other things, the avoidance and recovery of transfers and obligations pursuant to Sections 547, 548, and 550 of the Bankruptcy Code.

20. Specifically, the Adversary Case brings four counts against ECN seeking to avoid the obligations under the ECN Aircraft Transactions and recover the ECN Transfers to ECN and other potential claims (collectively, the "Trustee's Claims").[3]

**D.    The Settlement**

21. After filing of the Adversary Complaint, ECN and the Trustee met in a good faith effort to reach an amicable resolution of the Trustee's Claims without the need for uncertain, and more than likely expensive, litigation. After extensive negotiations, including three in-person settlement meetings, directed at resolving the Trustee's Claims, the parties entered into the Settlement Agreement that the Trustee believes is in the best interests of the Debtors, their estates, creditors, and other parties in interest. Such meetings and negotiations were preceded by extensive factual and legal analysis by both sides, including production by ECN of over 20,000 documents to the Trustee.

22. A summary of the Settlement Agreement is as follows:

(a) ECN will pay $15 million to the Trustee, on behalf of the Debtors' estates within three business days after the date that an order approving the Settlement Agreement becomes final and non-appealable;

(b) The Trustee, on behalf of the Debtors' estates, will dismiss ECN from the Adversary Case with prejudice, with each party to bear their own attorneys' fees and costs;

---

[3] The Trustee has also investigated and identified other potential claims against ECN regarding the ECN Aircraft Transactions relating to the allegations and counts asserted against the other defendants in the Adversary Case. The Trustee believes that inclusion of the other potential claims against ECN in the release provided under the Settlement Agreement is fair and in the best interests of the estates given ECN's apparent passive and indirect role in the central facts alleged in the Adversary Complaint against the other defendants and other exculpatory factors.

(c)  The Trustee and ECN will mutually release each other from any and all claims, including the ECN Claims, to the fullest extent under a general release and ECN will withdraw with prejudice the ECN Claims from the claims docket (other than the Transferred Claims); and

(d)  ECN shall cooperate with the Trustee in good faith in relation to the Trustee's work in the Adversary Case and any other litigation or investigations in the Chapter 7 Cases.

23.  As stated above, ECN transferred the Transferred Claims as part of a sale of MSN 9679 to its purchaser. Although the Trustee is not receiving a release in respect of the Transferred Claims, the Trustee has concluded based on ECN's representations and warranties contained in the Settlement Agreement that there is minimal, if any, exposure regarding the Transferred Claims and, even if there is exposure, it is only on a prepetition, general unsecured nonpriority basis.

24.  In contrast, ECN's releases and promised withdrawals of the other ECN Claims will release millions of dollars of claims some of which may have been entitled to administrative priority treatment to be paid ahead of unsecured creditors.

## V. LEGAL ANALYSIS

### A. Relief Requested

25.  By this Motion, the Trustee seeks entry of an order, substantially in the form attached hereto as **Exhibit B**, pursuant to Sections 105(a) and 363 of the Bankruptcy Code, Rules 2002 and 9019 of the Bankruptcy Rules, and Rules 9013-1 and 9019-1 of the Local Rules, authorizing and approving the Trustee's entry into the Settlement Agreement.

### B. Basis for Relief

26.  Bankruptcy Rule 9019 provides, in pertinent part:

> (a)  On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States Trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a).

27. The Court of Appeals for the Ninth Circuit recognized that "[t]he bankruptcy court has great latitude in approving compromise agreements." *In re Woodson*, 839 F.2d 610, 620 (9th Cir. 1988). "The purpose of a compromise agreement is to allow the [chapter 7 trustee] and the creditors to avoid the expenses and burdens associated with litigating sharply contested and dubious claims." *In re A&C Props., Inc.*, 784 F.2d 1377, 1380-81 (9th Cir. 1986). For that reason, the court need not conduct an extensive investigation of the claims sought to be compensated when determining whether to approve a settlement. *In re Walsh Const., Inc.*, 669 F.2d 1325, 1328 (9th Cir. 1982). Instead, it is sufficient that the court determine the settlement to be negotiated in good faith, reasonable, fair, and equitable. *See A&C Props.*, 784 F.2d at 1381.

28. The decision to approve a settlement "is within the sound discretion of the bankruptcy court." *In re World Health Alternatives, Inc.*, 344 B.R. at 296; *see also In re Neshaminy Office Bldg. Assoc.*, 62 B.R. 798, 803 (E.D. Pa. 1986) (cited with approval in *Meyers v. Martin (In re Martin)*, 91 F.3d 389 (3d Cir. 1996)). The bankruptcy court should not substitute its judgment for that of the trustee. *See Neshaminy Office Bldg. Assoc.*, 62 B.R. at 803. The court is not to decide the numerous questions of law or fact raised by litigation, but rather should canvas the issues to see whether the settlement falls below the lowest point in the range of reasonableness. *See In re W.T. Grant & Co.*, 699 F.2d 599, 608 (2d Cir. 1983); *see also World Health Alternatives, Inc.*, 344 B.R. at 296 ("The court does not have to be convinced that the settlement is the best possible compromise. Rather, the court must conclude that the settlement is within the reasonable range of litigation possibilities.") Generally, in analyzing the lowest point in the range of reasonableness, bankruptcy courts give deference to the Trustee's reasonable business judgment. *See In re Receivership Estate of Indian Motorcycle Mfg'g, Inc.*, 299 B.R. 8, 21 (D. Mass. 2003).

29. The standards for approval of a bankruptcy settlement are well settled in the Ninth Circuit. *See Nev. Bus. Credit, LLC v. Kavanagh (In re Golden Empire Air Rescue, Inc.)*, 2007 Bankr. LEXIS 4880, at *11 (B.A.P. 9th Cir. Oct. 25, 2007). Courts in the Ninth Circuit consider the following factors (collectively, the "<u>Settlement Factors</u>"), adopted from the Third Circuit

Court of Appeals,[4] in determining whether to approve a settlement:

> (a) the probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expenses, inconvenience and delay necessarily attending it; [and] (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premise[s]."

*Nev. Bus. Credit*, 2007 Bankr. LEXIS 4880, at *11 (citing *Mickey Thompson Entm't Grp.*, 292 B.R. at 420).

30. The Trustee believes that the Settlement Agreement satisfies each of the Settlement Factors articulated by the Ninth Circuit and, therefore, should be approved.

31. Additionally, Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Bankruptcy Rule 9019(a), which provides that "on motion by the trustee and after a hearing, the Court may approve a compromise or settlement[,]" grants further authority for the Court to approve the Settlement Agreement. The settlement of time-consuming and burdensome litigation, especially in the bankruptcy context, is encouraged. *In re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006); *see also In re Penn Centr. Transp. Co.*, 596 F.2d 1102 (3d Cir. 1979) ("'administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims . . . .'") (quoting *In re Protective Comm. for Indep. Stockholders of TMT Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968)).

32. Finally, applicable California law[5] provides that a release or dismissal given in good faith against one co-defendant "shall not discharge any other such party from liability unless its terms so provide," Cal. Code Civ. P. § 866(a), but "shall discharge the party to whom it is given from all liability for any contribution to any other parties," Cal. Code Civ. P. § 877(b); *see*

---

[4] The Ninth Circuit has adopted the reasoning for the standard for approving compromises in bankruptcy established in *Meyers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996). *See In re Mickey Thompson Entm't Grp., Inc.*, 292 B.R. 415, 420-21 (9th Cir. B.A.P. 2003).

[5] California law applies to the application of contribution and good faith settlement issues in cases involving litigation in California primarily about a California entity, such as a bankruptcy case involving the California-resident Zetta Jet USA. *See, e.g., In re Nucorp Energy Sec. Litig.*, 661 F. Supp. 1403, 1413 (S.D. Cal. 1987).

*also* Cal. Code Civ. P. § 877.6(c). California law provides a similar set of factors to determine whether a settlement should be approved as being in good faith: (i) a rough approximation of plaintiffs' total recovery and the settling defendant's proportionate liability; (ii) the amount paid in settlement; (iii) the allocation of settlement proceeds among plaintiffs; (iv) a recognition that a settling defendant should pay less in settlement than he would if he were found liable after trial; (v) the financial conditions and insurance policy limits of settling defendant; and (vi) the existence of collusion, fraud, or tortuous conduct aimed to injure non-settling defendants' interests (collectively, the "California Factors"). *See Tech–Bilt, Inc. v. Woodward–Clyde & Assoc.*, 38 Cal. 3d 488, 499 (1985). A "defendant's settlement figure must not be grossly disproportionate to what a reasonable person, at the time of the settlement, would estimate the settling defendant's liability to be." *Tech–Bilt, Inc. v. Woodward–Clyde & Assoc.*, 38 Cal. 3d 488, 499-500 (1985). The non-settling defendants, who bear the burden of proof on the issue of good faith, must show "that the settlement is so far 'out of the ballpark' in relation to these factors as to be inconsistent with the equitable objectives of the statute." *Id.*

### C. The Probability of Success in Litigation

33. The Trustee's efforts in obtaining millions of documents through Rule 2004 subpoenas has been far-reaching. The Trustee believes that, as a result, the investigation has been fruitful in uncovering, among other things, claims against ECN that the Trustee believes would result in significant recoveries for the Debtors' estates. Like all litigation, the claims against ECN are subject to significant litigation risk and defenses and absent this Settlement Agreement, the Trustee risks a lower recovery (or even no recovery) from ECN to the detriment of the Debtors' creditors. When taking into account other factors, such as the expense and delay of litigation, the Trustee believes the Settlement Agreement is in the best interests of the Debtors' estate and creditors because it resolves the disputes with ECN without the necessity of commencing expensive litigation that could net a worse result. Specifically, with respect to the ECN Transfers falling within the 90 day preference period, the Trustee believes he has approximately $8 million in viable claims. ECN, however, would assert that all of the preference claims are subject to ordinary course defenses under Bankruptcy Code section 547(c)(2). As to the ECN Transfers

made during the two year avoidance period under Section 548 of the Bankruptcy Code, the Trustee asserts that ECN received approximately $28 million in payments on account of the ECN Aircraft Transactions which are subject to avoidance either based on the alleged intentional fraud of Geoff Cassidy of the Debtors, or based on constructive fraud. ECN has asserted to the Trustee that the ECN Aircraft Transactions were entered into in good faith, and that the Debtor received reasonably equivalent value in exchange, thus providing defenses under Bankruptcy Code sections 548(a)(1)(i) and 550(b).

### D. The Difficulties, If Any, to Be Encountered in the Matter of Collection

34. The Trustee is cognizant of the potential risks in collecting on any future judgment, which is the case in the majority of adversary proceedings. In addition to the general collection challenges, ECN is based in Canada, which adds another level of complexity to collection. Although the Trustee has sought and been granted recognition of the Chapter 7 Cases in Canada, he would need to comply with Canadian law in domesticating the judgment and pursuing ECN. As a result, any collection efforts could result in significant expense to the Debtors' estates. However, approval of the Settlement Agreement would eliminate those expenses and allow the Trustee to recover more for the benefit of the Debtors' estates.

### E. The Complexity of the Litigation and the Expense, Inconvenience, and Delay Necessarily Attending It

35. Each of the (i) complexity, (ii) expense, (iii) inconvenience, and (iv) delay of the litigation against ECN weigh heavily in favor of approving the Settlement Agreement. The ECN Aircraft Transactions alone are extremely complex aircraft financing structures involving hundreds of pages of documents per transaction, the formation of multiple international subsidiaries and trusts, and complicated flows of funds. The Trustee has spent a significant amount of time and resources unwinding these transactions to determine liabilities and potential assets of the Debtors' estates. Litigating the ECN Aircraft Transactions will more than likely prove to be even more difficult and complex. Additionally, the ECN Aircraft Transactions and Adversary Case involve eleven defendants. By dismissing the Adversary Case as to ECN, the

Trustee will be relieved of at least one level of complexity and can focus his efforts in litigating against the remaining parties involved.

36.   Moreover, as the Court is well aware, the Debtors' bankruptcy cases have been pending for over two years. Due to the complexity of the litigation, number of parties involved, and the cross-border implications, the Trustee will likely be tied up in litigation well into 2020 and, more than likely, 2021. By entering into the Settlement Agreement, the Trustee avoids certain of the expensive litigation costs that would add more burden to the Debtors' estates. More importantly however, by entering into the Settlement Agreement, the Trustee will realize a significant amount of recovery for the benefit of the Debtors' creditors and provide a source of funding for litigation efforts against the remaining defendants. Given the financial instability of the Debtors' estates as they stand today, the Settlement Agreement provides a certain recovery, while also lessening future legal expense.

### F.   The Paramount Interest of Creditors

37.   The paramount interest of creditors is a reflection of both the desire of creditors to obtain the maximum possible recovery and their desire that the recovery occur in the least amount of time as possible. *See In re Marples*, 266 B.R. 202, 207 (Bankr. D. Idaho 2001). The Trustee believes that the Settlement Agreement satisfies both elements. The payment of $15 million to the estates and withdrawal of substantial claims against the estates will enhance the prospects of recoveries to creditors. The $15 million settlement – the first significant recovery on behalf of the estates – will also enhance the Trustee's ability to vigorously pursue recoveries against other defendants who received hundreds of millions in transfers that will provide the only chance for a meaningful distribution to unsecured creditors. That, coupled with the fact that litigation could take an additional unknown amount of months or years, weighs in favor of the Settlement Agreement being approved. Additionally, the Settlement Agreement not only brings an immediate recovery into the Debtors' estates, but it also eliminates many millions in claims against the estates which will significantly enhance the prospects of other innocent creditors to receive a greater share of the eventual recovery by the Trustee than they would if the Settlement Agreement is not approved.

### G. The California Factors

38. For the foregoing reasons, as well as the reasons stated herein, the Settlement Agreement also satisfies the relevant California Factors.[6] The Adversary Complaint seeks over $28 million in total damages against ECN, which exceeds the $15 million settlement amount. ECN has also agreed to the release of the ECN Claims (other than the Transferred Claims) against the Debtors' estate, making the settlement greater for the Debtors. The amount of the settlement is fair in light of the strengths and weaknesses of the claims, the expense and delay of continued litigation, and the risks attendant to all litigation. ECN is still paying less through the Settlement Agreement than it would have should the Trustee prevail in full on all of his asserted claims. There is no fraud, collusion, or tortious conduct between the Trustee and ECN against the non-settling defendants. Accordingly, it should be determined that the Settlement Agreement was negotiated and entered into in good faith between the Trustee and ECN.

[*Remainder of page intentionally blank*]

---

[6] The standard under Rule 9019 "is actually more exacting than the section 877.6 standard, because under Rule 9019 the party proposing the settlement has the burden of proof, while under section 877.6 the party opposing the settlement has the burden of proof." *In re Plant Insulation Co.*, 469 B.R. 843, 884–86 (Bankr. N.D. Cal. 2012), *aff'd*, 485 B.R. 203 (N.D. Cal. 2012), *rev'd on other grounds*, 734 F.3d 900 (9th Cir. 2013).

## VI. CONCLUSION

**WHEREFORE**, the Trustee believes that the Settlement Agreement is fair, reasonable, and satisfies each of the Settlement Factors. Accordingly, the Trustee believes the Settlement Agreement is in the best interest of the Debtors' bankruptcy estates. For the foregoing reasons, the Trustee respectfully requests that the Court enter an order, substantially in the form attached hereto as **Exhibit A**:

1. granting the Motion in its entirety;
2. approving the Settlement Agreement;
3. finding that the Settlement Agreement was made in good faith; and
4. authorizing the Trustee and ECN to take all necessary actions to effectuate the Settlement Agreement.

DATED: December 9, 2019                **DLA PIPER LLP (US)**

By: */s/ John K. Lyons*
      JOHN K. LYONS (*Pro Hac Vice*)

Attorneys for the Chapter 7 Trustee

DLA Piper LLP (US)
Los Angeles

13

EAST\170813755.1