1

| | |
|---|---|
| 1 | UNITED STATES BANKRUPTCY COURT |
| 2 | CENTRAL DISTRICT OF CALIFORNIA |
| 3 | -oOo- |

| | | |
|---|---|---|
| 4 | In Re: | ) Case No. 2:17-Bk-21386-SK |
| | | ) Chapter 7 |
| 5 | ZETTA JET USA, INC., ET AL. | ) |
| | | ) Los Angeles, California |
| 6 | Debtors. | ) Wednesday, February 15, 2023 |
| 7 | _____ | ) 9:00 AM |

ADV#: 2:19-ap-01382-SK
KING v. JETCRAFT CORPORATION,
ET AL.

#10.00 HRG RE CHAPTER 7
TRUSTEE'S SEVENTH MOTION
UNDER LBR 2016-2 AND BK CODE
SECTION 105 FOR APPROVAL OF
CASH DISBURSEMENTS NECESSARY
FOR THE ADMINISTRATION OF THE
DEBTORS' ESTATES
DOCKET 2040

#11.00 HRG RE CHAPTER 7
TRUSTEE'S MOTION FOR ORDER
APPROVING SETTLEMENT
AGREEMENT BY AND AMONG THE
CHAPTER 7 TRUSTEE AND
JETCRAFT CORPORATION,
JETCRAFT GLOBAL, INC.,
JETCOAST 5000-5 LLC,
ORION AIRCRAFT HOLDINGS LTD.,
JETCRAFT ASIA LIMITED,
FK GROUP LTD,
FK PARTNERS LIMITED,
AND JAHID FAZAL-KARIM
DOCKET 1995

2

1  #12.00 STATUS CONFERENCE RE
   COMPLAINT
2  DEFENDANT(S): FK PARTNERS
   LIMITED, JETCRAFT
3  DEFENDANT(S), FAZAL-KARIM,
   BOMBARDIER DEFENDANT(S), AND
4  ECN CAPITAL
   FR. 12-11-19, 1-22-20, 3-11,
5  7-22, 9-30, 10-14, 2-17-21,
   3-31, 6-30, 7-14, 9-15, 4-27-
6  22, 6-29, 10-12, 11-08, 11-
   30,
7  DOCKET 1

8  #13.00 HRG RE FOURTH INTERIM
   APPLICATION OF DLA PIPER
9  FOR ALLOWANCE OF COMPENSATION
   FOR SERVICES RENDERED AND FOR
10 REIMBURSEMENT OF EXPENSES
   AS COUNSEL TO THE CHAPTER 7
11 TRUSTEE
   PERIOD: 7/1/2021 TO 9/30/2021
12 FEE: $1,604,684.00, EXPENSES:
   $78,846.07
13 FR. 3-2-22, 3-9, 4-27, 6-29,
   10-12, 11-08, 1-25-23,
14 DOCKET 1729

15 #14.00 HRG RE FIFTH INTERIM
   APPLICATION OF DLA PIPER FOR
16 ALLOWANCE OF COMPENSATION FOR
   SERVICES RENDERED AND FOR
17 REIMBURSEMENT OF EXPENSES
   INCURRED AS COUNSEL TO THE
18 CHAPTER 7 TRUSTEE
   PERIOD: 10/1/2021 TO
19 3/31/2022,
   FEE: $3,113,631.50, EXPENSES:
20 $95,019.68
   FR. 10-12-22, 11-08, 1-25-23,
21 FR. 6-29-22
   DOCKET 1852

22

23

24

25

3

| | |
|---|---|
| 1 | #15.00 HRG RE SIXTH INTERIM APPLICATION OF DLA PIPER |
| 2 | FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND FOR |
| 3 | REIMBURSEMENT OF EXPENSES INCURRED AS COUNSEL TO THE |
| 4 | CHAPTER 7 TRUSTEE PERIOD: 4/1/2022 TO 6/30/2022 |
| 5 | FEE: $1,603,758.50, EXPENSES: $27,967.45. |
| 6 | FR. 11-08-22, 1-25-23, DOCKET 1949 |
| 7 | |
| 8 | #16.00 HRG RE SEVENTH INTERIM APPLICATION OF DLA PIPER |
| 9 | FOR ALLOWANCE OF COMPENSATION FOR SERVICES |
| 10 | RENDERED AND FOR REIMBURSEMENT OF EXPENSES |
| 11 | INCURRED AS COUNSEL TO THE CHAPTER 7 TRUSTEE |
| 12 | PERIOD: 7/1/2022 TO 9/30/2022, |
| 13 | FEE: $1,067,827.00, EXPENSES: $27,341.26 |
| 14 | FR. 1-25-23, DOCKET 2018 |

15                    TRANSCRIPT OF PROCEEDINGS
             BEFORE THE HONORABLE SANDRA R. KLEIN
16                UNITED STATES BANKRUPTCY JUDGE

17   APPEARANCES (All present by video or telephone):
     For the FK and Jetcraft      MICHAEL J. CIATTI, ESQ.
18   Defendants:                  King & Spalding LLP
                                  1700 Pennsylvania Avenue Northwest
19                                Suite 900
                                  Washington, DC 20006
20                                (202)661-7828

21   For the Chapter 7 Trustee,   JONATHAN D. KING, ESQ.
     Jonathan D. King:            JOE ROSELIUS, ESQ.
22                                JOHN K. LYONS, ESQ.
                                  JEFFREY S. TOROSIAN, ESQ.
23                                DLA Piper LLP (US)
                                  444 West Lake Street
24                                Suite 900
                                  Chicago, IL 60606
25                                (312)368-7034

4

```
 1  For the Jetcraft Settling    JONATHAN W. JORDAN, ESQ., PRO HAC
    Defendants:                  VICE
 2                                King & Spalding LLP
                                  1180 Peachtree Street Northeast
 3                               Suite 1600
                                 Atlanta, GA 30309
 4                               (404)572-3568

 5  For Universal Leader         MICHAEL B. BERNSTEIN, ESQ.
    Investment Ltd. and Glove    Arnold & Porter Kaye Scholer LLP
 6  Assets Investment Ltd.:      601 Massachusetts Ave, Northwest
                                  Washington, DC 20001
 7                               (202)942-5227

 8  For the Bombardier           CAROLINA A. FORNOS, ESQ.
    Entities:                    Pillsbury Winthrop Shaw Pittman
 9                               LLP
                                 31 West 52nd Street
10                               New York, NY 10019
                                 (212)858-1000
11
    For the Fee Examiner,        J. SCOTT BOVITZ, ESQ.
12  Nancy Rapoport:              Bovitz & Spitzer
                                 1100 Wilshire Boulevard
13                               Suite 2403
                                 Los Angeles, CA 90017
14                               (213)346-8300

15  For Objecting Creditor,      KRISTINA S. AZLIN, ESQ.
    CAVIC Aviation Leasing       Holland & Knight LLP
16  (Ireland) 22 Co. DAC:        400 South Hope Street
                                  8th Floor
17                               Los Angeles, CA 90071
                                 (213)896-2400
18
    For Former Employees on      BLAKE J. LINDEMANN, ESQ.
19  DLA Piper Applications:      Lindemann Law Firm, APC
                                  9777 Wilshire Boulevard
20                               4th Floor
                                 Beverly Hills, CA 90212
21                               (310)279-5269

22  Also Present:                Prof. Nancy B. Rapoport
                                  Fee Examiner
23

24

25
```

5

17  Court Recorder:                  WANDA TOLIVER
                                     United States Bankruptcy Court
18                                   Edward R. Roybal Federal Building
                                     255 East Temple Street
19                                   Room 940
                                     Los Angeles, CA 90012
20                                   (855)460-9641

21  Transcriber:                     RIVER WOLFE
                                     eScribers, LLC
22                                   7227 N. 16th Street
                                     Suite #207
23                                   Phoenix, AZ 85020
                                     (800) 257-0885
24
    Proceedings recorded by electronic sound recording;
25  transcript provided by transcription service.

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

6

1    LOS ANGELES, CALIFORNIA, WEDNESDAY, FEBRUARY 15, 2023, 9:29 AM

2                               -oOo-

3        (Call to order of the Court.)

4            THE CLERK:  Please come to order.  This court is now

5    in session, the Honorable Sandra R. Klein presiding.

6            THE COURT:  Good morning.  This is Judge Klein.  And

7    even though we're not in the courtroom, today is an official

8    court hearing, and everyone is expected to treat it like they

9    would if they were in court.  The audio of today's hearing is

10   being recorded, so each time you speak and each time you speak

11   after someone else has spoken, please identify yourself so that

12   the record is clear.

13           The remaining matters on calendar are all in this

14   Zetta Jet case.  I'm going to take all appearances now.  I'm

15   just going to go in the order that I see people on the screen.

16   If you wish to record your appearance, please turn your video

17   on.  If I don't see your video on, I will not call on you.

18           So the first person I see is Mr. Ciatti.

19           MR. CIATTI:  Good morning, Your Honor.  Michael Ciatti

20   from King & Spalding on behalf of the FK and Jetcraft

21   defendants.

22           THE COURT:  Good morning.

23           Mr. Roselius.

24           MR. ROSELIUS:  Morning, Your Honor.  Joe Roselius on

25   behalf of the trustee.

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

7

1              THE COURT:  Good morning.

2              Mr. King.

3              MR. KING:  Good morning, Your Honor.  Jon King, the

4    Chapter 7 trustee.

5              THE COURT:  Good morning.

6              Mr. Jordan.

7              MR. JORDAN:  Good morning, Your Honor.  Jon Jordan of

8    King & Spalding on behalf of the Jetcraft settling defendants.

9    I have a pro hac that is pending before the Court.

10              THE COURT:  Thank you.

11              Mr. Bernstein.

12              MR. BERNSTEIN:  Yes.  Good morning, Your Honor.

13    Michael Bernstein of Arnold & Porter on behalf of Universal

14    Leader Investments and Glove Asset Investments.

15              THE COURT:  Good morning.

16              Mr. Lyons.

17              MR. LYONS:  Good morning, Your Honor.  John Lyons on

18    behalf of the trustee.

19              THE COURT:  Good morning.

20              Ms. Fornos.

21              MS. FORNOS:  Good morning, you Honor.  Caroline Fornos

22    with Pillsbury Winthrop on behalf of the Bombardier entities.

23              THE COURT:  Good morning.

24              Mr. Bovitz.

25              MR. BOVITZ:  Good morning.  J. Scott Bovitz, Bovitz &

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

8

1  Spitzer, on behalf of the fee examiner, Nancy Rapoport.

2            THE COURT:  Good morning.

3            Mr. Torosian.

4            MR. TOROSIAN:  Good morning, Your Honor.  Jeff

5  Torosian of DLA Piper for the trustee.

6            THE COURT:  Good morning.

7            Prof. Rapoport.

8            PROF. RAPOPORT:  Good morning, Your Honor.  Nancy

9  Rapoport, fee examiner.

10           THE COURT:  Good morning.

11           Ms. Azlin.

12           MS. AZLIN:  Good morning, Your Honor.  Kristina Azlin

13  with Holland & Knight on behalf of objecting creditor, CAVIC

14  Aviation Leasing Ireland 22 Company DAC.

15           THE COURT:  Good morning.

16           I don't see any other videos on, so I'll assume no one

17  else wishes to be heard today.

18           MR. LINDEMANN:  Your Honor, this is Blake Lindemann.

19  I'm appearing via audio on former employees on the DLA Piper

20  applications only.

21           THE COURT:  Okay.  Hold on.  I'm going to change your

22  screen name, Mr. Lindemann.

23           MR. LINDEMANN:  Thank you.

24           THE COURT:  Oh, someone already got you.  Okay.

25  Perfect.

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

9

1        Anyone else who wishes to be heard?

2        Okay.  Before we get started, I want to put on the

3 record that my term law clerk was invited to a judicial

4 clerkship event in late January of this year.  She did not

5 realize that it was hosted by a law firm, and in particular, by

6 King & Spalding, who represent the FK and Jetcraft defendants,

7 until after she arrived at the restaurant where the event was

8 being held.

9        During the event, she engaged in small talk only.  She

10 did not discuss any case that is before me, nor did she discuss

11 the inner workings of my chambers.  A week later, when I

12 learned that she had attended the event, my law clerk sent an

13 email to everyone at King & Spalding whose email addresses she

14 had.  In that email, my law clerk stated the following.

15        She did not realize the event was hosted by a law firm

16 and in particular that firm.  If she had, she would not have

17 RSVP'd or participated.  She also stated that she would not

18 apply for a position with King & Spalding during her clerkship

19 or at any time in the future, and she would not entertain any

20 unsolicited offers from that firm during her clerkship or at

21 any time in the future.

22        Since participating in the event, my term law clerk

23 did not do any substantive work on the 9019 motion or any other

24 Zetta Jet matter.  She has been walled off from all Zetta Jet

25 matters, and she will continue to be walled off for the

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

1  remainder of her clerkship.  I believe that there is nothing

2  more that needs to be said regarding this matter, and I intend

3  to move forward with today's hearings.

4       I would like to start with matter number 11, the 9019

5  motion.  Who will be arguing on behalf of the trustee?

6       MR. ROSELIUS:  Good morning, Your Honor.  Joe Roselius

7  for the trustee.

8       THE COURT:  Okay.  And Ms. Fornos, I assume you'll be

9  arguing on behalf of BAC?

10      MS. FORNOS:  Yes, Your Honor.

11      THE COURT:  Okay.  And I issued an order in terms of

12 the procedures.

13      So Mr. Roselius, you'll have fifteen minutes.  Ms.

14 Fornos, you'll have fifteen minutes.  Mr. Roselius, if you want

15 to reserve time to respond, you can.  And then there will be

16 five minutes, Mr. Roselius, to address the position papers by

17 CAVIC as well as Universal Leader.

18      So Mr. Roselius, would you like to reserve any time?

19      MR. ROSELIUS:  Your Honor, just one point of

20 clarification.  Mr. Lyons will also be arguing the CAVIC and

21 Universal Leader pieces of this.

22      THE COURT:  Okay.  That's fine.  That's fine.  So for

23 the first fifteen minutes, which addresses the Bombardier

24 response, Mr. Roselius, would you like to reserve any time?

25      MR. ROSELIUS:  Three minutes, Your Honor.

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

11

1          THE COURT:  Okay.  Thank you.

2          So I'll ask that my staff set the clock for twelve

3   minutes, and then you'll have three minutes to respond.

4          All right.  And I am going to be typing.  Sometimes I

5   write in longhand, but it's easier to type, so I'm going to be

6   typing while you speak.

7          Okay.  Mr. Roselius, the floor is yours.

8          MR. ROSELIUS:  Thank you, Your Honor.

9          Just a brief overview of the settlement, under the

10  terms of the settlement, the settling defendants will pay 9.5

11  million to the trustee in two installments, one after approval,

12  another in July of this year.  And the settlement includes some

13  significant protections for the trustee if the settling

14  defendants are unable to make the second payment, either to

15  take a consent judgment or retain the first installment and

16  continue the litigation.  The settling defendants are also

17  agreeing to withdraw proofs of claim and then a mutual general

18  release.  And then really what is, I think, the focus of the

19  discussion here today is a good-faith settlement finding under

20  California Civil Code Section 877.6 and a bar order reflecting

21  the same.

22          So just to start with the 9019 factors, the Court need

23  only determine that the settlement agreement is reasonable,

24  fair, and equitable and that the proposed settlement exceeds

25  the lowest point in the range of reasonableness, giving

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

12

1    deference to the trustee's business judgment.  And the

2    considerations include probability of success in the

3    litigation; difficulties, if any, with collection; complexity,

4    expense, inconvenience, and delay of continuing litigation; and

5    then the interest of the creditors in getting the largest

6    possible recovery as quickly as possible.

7         The proposed settlement needs all of those factors.

8    It's well within the range of reasonableness considering the

9    surviving claims, the claims that are on appeal against the

10   settling defendants, the inherent risk of litigation, the

11   ongoing burden and expense, the profits that we allege were

12   earned by the settling defendants, and perhaps most

13   significantly, the collection risk, both based on the overall

14   financial status of the settling defendants and the

15   international nature of the settling defendants in their

16   business, including the potential need to collect in foreign

17   countries.  So taking all that into account, the trustee

18   believes the settlement is in the best interests of the

19   creditors.

20        In terms of Bombardier's objection, first, the Court

21   may enter a bar order in connection with a 9019 settlement

22   motion.  A number of cases cited in our reply have held the

23   entry of a bar order pursuant to a settlement does not require

24   a separate adversary proceeding.  None of the objecting parties

25   have cited a case from the Ninth Circuit that holds otherwise.

Case 2:17-bk-21386-SK   Doc 2082   Filed 02/20/23   Entered 02/20/23 05:07:19   Desc
Main Document     Page 13 of 163
**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

13

1  The Hartog case from Florida, which we cited in our brief, is

2  the closest to the fact pattern here.  The district court

3  affirmed a bar order in a 9019 order and expressly rejected the

4  Rule 7001 argument Bombardier makes.

5         Other cases besides Hartog, also cited in our reply at

6  pages 4 and 5, approved similar bar orders in the 9019 context.

7  That's Land Resource, Fundamental Long Term Care, Superior

8  Homes and Investments, and Munford.

9         The objecting parties cite no case from the Ninth

10  Circuit holding otherwise in the context of a statutory

11  settlement bar, like Section 877.6.  They only cite Zale, a

12  Fifth Circuit case that is not binding on this Court, and it's

13  not in the context of a statutory bar.

14         Hartog and the other cases we cited provide the better

15  approach to approving a litigation bar authorized by Section

16  877.6 for several reasons.  First, the text of Rule 7001(7)

17  addresses equitable relief, not a statutory bar like what's at

18  issue here.  It refers to injunctions and other equitable

19  relief.  It addresses, essentially, injunctions governed by

20  Federal Rule of Civil Procedure 65, which incorporates the four

21  well-known prongs for injunctive relief, irreparable harm, lack

22  of adequate remedy at law, balancing of equities, and public

23  interest.

24         In this case, those equitable tests are not relevant

25  to the contribution bar because it involves no balancing of the

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

1  equities.  It's really a black-letter statutory test governed

2  by six different standards that are described in our brief on

3  page 6.  And I'll get to those, how they apply to this specific

4  settlement, in a minute.  But here, the settlement meeting

5  these different factors as a matter of law bars contribution

6  claims of the type set out in the proposed order.

7        So second, Bankruptcy Code Section 105 permits the

8  court to enter an injunction through the 9019 process.  That's

9  in Hartog as well.  It talks about how Section 105 gives the

10  court the procedural power to enter a bar as long as it is not

11  the kind of prohibition that you would have to look to Rule 65

12  to obtain.  And it's important to note here, Your Honor, that

13  the issue is not whether Section 105 creates a substantive

14  right to a contribution bar, only that Section 105 gives the

15  Court procedural order to consider a substantive right created

16  by the California statute.

17        Third, Bankruptcy Rule 7016 governs the adversary

18  proceeding the trustee is settling.  It gives the Court broad

19  authority to take any appropriate action to settle a case or

20  use special procedures to assist in resolving the dispute.  And

21  in this case, the California Code Section 105 and the All Writs

22  Act provide the substantive and procedural authorization to

23  enter the settlement order.

24        The Zale case is not only not binding on this Court,

25  but it doesn't address these points.  It involved an injunction

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

15

1   under Rule 65, not a statutory bar.  It did not take into

2   account the effect of Rule 7016 or the All Writs Act.  It

3   simply assumed that Rule 7001 would apply to the statutory --

4   to statutory settlement bars.

5           And we also cited the Mirant case, decided within the

6   Fifth Circuit after Zale, and in Mirant, the district court

7   approved the settlement with an injunction in connection with

8   the 363 sale motion.  A separate adversary proceeding was

9   required for the injunction because it was part of the 363

10  order, just as the contribution bar is part of the 9019 order.

11          Requiring an adversary proceeding here would be

12  duplicative because the order settles an adversary proceeding.

13  We already have an adversary proceeding with Bombardier, the

14  one we are settling right now.  It'd be redundant and

15  inefficient to open another adversary proceeding simply to

16  settle this one -- to settle the first one.  The 9019 motion,

17  was served in accordance with Bankruptcy Rule 2002, so it went

18  to far more parties than would have applied in a simple

19  adversary proceeding.  Bombardier also doesn't point to any

20  procedural rights that it was denied -- that it would have

21  received if this had been open as an adversary proceeding.

22          The requirements to approve this motion under Rule

23  9019 are effectively a finding that California Code Section

24  877.6 applies.  And if you approve this settlement motion, then

25  almost by definition, Section 877.6 would apply.  But we also

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

16

1   meet the factors in 877.6, and it's Bombardier's burden, not

2   ours, to show that those factors have not been met.  A separate

3   adversary proceeding would only affirm what we're asking for in

4   the 9019 motion, with the additional time and expense lost from

5   opening up a new adversary proceeding.  And so as a practical

6   matter, a new adversary proceeding would be no different from

7   this contested motion.

8          Now, moving on to the next point, California law, not

9   New York law, governs these issues because California law

10  governs the tort claims against the settling defendants.  And

11  thus, the settling defendants should be afforded the

12  protections of Section 877.6.  We cited the Nucorp Energy case

13  that chose California law over New York and Texas in a similar

14  context.

15         Now, Bombardier contends that the claims bar should be

16  denied because it seeks to bind nonparties to California law,

17  but that's not really the right way to look at this.  The Court

18  has determined that California law applies to the claims

19  against the defendants, and Bombardier cites nothing for the

20  idea that the state law that governs claims against it should

21  govern other parties' settlements.  It's telling that

22  Bombardier cites no authority for this position, despite good-

23  faith settlement issues that come up in tort settlements in

24  hundreds of courtrooms across the country each day.  If the

25  Court accepted Bombardier's position, the Court would have to

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

17

1   identify and rule on all possible state laws that might apply

2   to all possible claims that might involve all possible third

3   parties before approving any settlement.  That would be

4   inefficient and wasteful.

5         It also cites nothing for the more specific

6   proposition that Bombardier's choice of law in purchase

7   agreements to which the settling defendants were not parties

8   would affect the choice of law governing the settlement, or why

9   New York law would govern when, for example, Quebec law governs

10  its agreements with the settling defendants.  It cites several

11  inapposite cases in a string cite on page 10 of its brief, but

12  none involved the California settlement statute at issue here,

13  and they only apply for the unremarkable proposition that

14  settlement agreements do not bind nonparties.  Nucorp, I think,

15  is more persuasive here and involves a more direct, factually-

16  analogous situation.

17        In terms of whether the bar order exceeds the scope of

18  Section 877.6, the trustee and the settling defendants have

19  agreed to submit a revised bar order, making clear that its

20  scope matches that of the statute.  And the relief in the

21  revised bar order will be the same as the relief under the

22  statute.

23        Moving on to the good-faith settlement factors, so

24  Bombardier contends that the trustee has not satisfied the

25  good-faith factors.  But it really focus only on proportionate

Case 2:17-bk-21386-SK   Doc 2082   Filed 02/20/23   Entered 02/20/23 05:07:19   Desc
Main Document      Page 18 of 163
**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

18

1    liability, and that's incorrect for several reasons.

2         First, Bombardier has the proof to show that the

3    settlement was not made in good faith under Section 877.6.  The

4    considerations are not just proportionate liability.  There's

5    at least five other considerations, and it's more of a

6    totality-of-the-circumstances test.  Those include the amount

7    paid in the settlement, recognition that the settlor should pay

8    less than it would have if found liable after trial, the

9    allocation of settlement proceeds, the financial conditions and

10   insurance limits of the settling defendants, which is

11   effectively collectability, and then evidence of collusion,

12   fraud, or tortious conduct.

13        Bombardier fails to meet its burden to show that the

14   settlement is so far out of the ballpark and grossly

15   disproportionate to be inconsistent with the objectives of

16   Section 877.6, which are to encourage settlement without

17   permitting a bad-faith settlement.  Bombardier tries to make

18   this a math problem, but the Court is not required to determine

19   liability with precision, or say, with exactitude, that the

20   settlement is exactly what the settling defendants' share of

21   proportionate liability would be.

22        And here, the collectability risk alone shows that the

23   settlement was made in good faith.  As the Tech-Bilt court

24   noted, one of the considerations is the financial conditions

25   and insurance policy limits of settling defendants.  Bombardier

Case 2:17-bk-21386-SK   Doc 2082   Filed 02/20/23   Entered 02/20/23 05:07:19   Desc
Main Document    Page 19 of 163
**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

19

1  here is a publicly traded company, involves much less

2  collection risk, whereas the settling defendants involve a

3  significant collection risk, in the trustee's judgment.

4       THE COURT:  Mr. Roselius, you have about a minute left

5  of your twelve minutes.

6       MR. ROSELIUS:  Okay.  Another key consideration is the

7  amount of the settlement.  This isn't a nominal settlement, but

8  nine and a half million dollars.

9       And also, keep in mind, the Court dismissed Bombardier

10  entirely.  So Bombardier claims it will be left holding the

11  bag, but that only is true if the Court's decision is

12  substantially or entirely overturned on appeal.  If that

13  happens, then Bombardier's liability will be much more

14  significant in this court as opposed to what it is now, as

15  things stand today.

16       And also, Judge Gross, the mediator, submitted a

17  declaration -- submitted two declarations confirming the

18  parties' good faith.  And I understand he's on the call today,

19  if necessary, if the Court wants to ask any questions.  Judge

20  Gross served a full term as a highly esteemed judge on the

21  bankruptcy court for the District of Delaware and is also a

22  highly respected mediator, and you have both of his

23  declarations.

24       In terms of jurisdiction, the Court has related-to

25  jurisdiction for any matter directly or indirectly related to

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

20

1   bankruptcy.  And here, these kind of issues would be directly

2   related to any sort of contribution or indemnity claim between

3   Bombardier and the settling defendants.

4        And finally, the bar order is not a de facto third-

5   party release, because I mean, first of all, other courts have

6   approved this.  It's not prohibited by Bankruptcy Code Section

7   524(e).  That deals with the effect of discharge on claims.  It

8   doesn't apply here because the debtor is not getting a

9   discharge.

10        The trustee has never argued that indemnity and

11  contribution claims would be barred by virtue of Section 524,

12  but rather under Section 877.6.  And the case that Bombardier

13  cites, which is called Presta, actually makes the same point

14  against them and supports our argument.  Thank you, Your Honor.

15        THE COURT:  Thank you, Mr. Roselius.  You actually

16  ended up using about all of your fifteen minutes, but I'll give

17  you about a minute or so to respond to Ms. Fornos' argument.

18        Ms. Fornos, are you ready to proceed?

19        MS. FORNOS:  Yes, Your Honor.  Thank you very much.

20        THE COURT:  Thank you.

21        MS. FORNOS:  Your Honor, in response to Mr. Roselius'

22  arguments, I think we can frame this into three larger points

23  whether good faith has been satisfied and specifically, whether

24  the Court has or not to make a finding of fact as to good

25  faith.

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

21

1          The second category would be the California law, and

2     we'll explain why.  Absolutely, as the Court has found, it is

3     New York law that applies to all the claims that have been

4     brought by the trustee against Bombardier.

5          And we'll address the injunction because although they

6     have proffered that they will amend what has been submitted,

7     the motion that's still pending before the Court is that which

8     was filed and which exceeds the bounds of 877.

9          So starting with the issue of good faith, there's no

10    dispute, Your Honor, it's this Court that has to make a finding

11    under the Tech-Bilt factors.  And with all respect to Judge

12    Gross -- he was wonderful, we had the pleasure of meeting

13    him -- his statement on the record that the parties considered

14    Tech-Bilt is insufficient for Bombardier to determine and to

15    establish that that good faith has been made, and it's

16    insufficient, more importantly, for the Court to determine the

17    good faith has been established.

18         And all that the Court needs to do to determine that

19    good faith has not been established and that Bombardier can

20    meet its burden of proof is simply by looking at the admissions

21    that the trustee has made.  At page 15 of the reply, at lines

22    19 through 21, the trustee admits it is impossible at this

23    point to determine either the damages that the trustee will

24    recover or the relative liability of the settling defendants

25    and Bombardier.  That is an admission that they cannot meet the

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

22

1   very first and most important element of the good-faith

2   analysis under Tech-Bilt, and that's why they're not entitled

3   to the claims bar.

4           And yes, there are other deficiencies.  We have no --

5   notwithstanding Mr. Roselius' representations, we have no

6   visibility as to the settling party's financial condition.  We

7   have no visibility as to how they intend to allocate the

8   various payments vis-a-vis the two estates.  Certainly, we have

9   no visibility as to insurance policy limits.

10          And it's not just us, Your Honor.  It's the Court.

11  The California Supreme Court has made clear that this is an

12  issue of fact.  And it is the Court's responsibility once a

13  claims bar is put forth to make a finding of fact on this

14  issue.

15          And at the minimum, Your Honor, Bombardier would be

16  entitled to seek discovery on this issue and to peel back the

17  layers that are set forth in the affidavit and declaration

18  that's been submitted by Judge Gross.  That's not to say that

19  it's not correct.  We just don't have any visibility, and the

20  Court needs to have the sufficient facts to make that finding.

21          As to the issue of California law -- and one other

22  point, Your Honor, on the good faith, which is important.  The

23  good faith and 877 is not for the benefit of the settling

24  defendants.  It's for the benefit of the nonsettling

25  defendants.

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

23

1          The objective of that analysis that the Court needs to

2     undertake is to preserve the equities.  And here, it is

3     Bombardier that is being adversely affected by the claims bar

4     that the trustee seeks to impose upon the nonsettling

5     defendant.  And this brings me to the issue of California law

6     and why California law should not apply in this action.

7          The Court has already determined that all claims

8     against Bombardier, these joint tortfeasor claims, are actually

9     governed by New York law.  The issue is not, Your Honor, the

10    agreements between Bombardier and Jetcraft.  The issue here is

11    the credit allocation of what this claims bar does.

12         The claims bar is in two parts.  One, it bars a

13    nonsettling defendant from bringing an action against the

14    settling defendant.  But the credit allocation, what a party,

15    the nonsettlor, owes to the debtor in that action is actually

16    governed by the contract between the debtor and Bombardier.

17    It's not governed by the contract that may exist between joint

18    tortfeasors.

19         The credit that will have -- the adverse effect of

20    applying California law in this case to the contractual

21    relations between Bombardier and Zetta are illustrated by

22    simply underscoring that under New York law, Bombardier is

23    entitled to the greater of the full amount of the allocated

24    share of liability to the settling defendants or the amount

25    paid by the settling defendants.

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

24

1    In a hypothetical where a hundred million dollars is

2    found to be at issue, and in a hypothetical here, where nine

3    million dollars is attributable to Jetcraft as the paying -- as

4    the settling defendant, but ninety-nine percent of the

5    liability is attributable to the settling defendant.  The only

6    defendant left with viable claims that the Court has not

7    dismissed and the defendant that features prominently

8    throughout the complaint as having actually made allegedly

9    payments, in that analysis, under California law, the only

10   credit that Bombardier would be entitled to, assuming a ninety-

11   nine percentage of liability against Jetcraft, in that case,

12   under the California law, Bombardier would be responsible for

13   ninety-one million dollars because the only credit it can get

14   are the nine million that Jetcraft is settling.

15   But under New York law, we would be entitled to

16   ninety-nine percent credit, meaning only one million is left.

17   The absolute prejudice to Bombardier is illustrated by simply

18   comparing those two statutes.  And importantly, Your Honor,

19   it's not just the claims bar.  It's the second component.  It's

20   the credit to which Bombardier is entitled, and that is an

21   obligation vis-a-vis Bombardier and Zetta.  And that is

22   governed by the purchase agreement that Bombardier entered

23   into.

24   Finally, Your Honor, with respect to the injunction,

25   as the Court is aware, a motion was filed and purported to

Case 2:17-bk-21386-SK   Doc 2082   Filed 02/20/23   Entered 02/20/23 05:07:19   Desc
Main Document      Page 25 of 163
**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

25

1  bind all parties, current defendants and future defendants,

2  against bringing any claims against the settling defendant.

3  Your Honor, there cannot be any clearer action than injunctive

4  relief -- than the trustee seeking injunctive relief to find a

5  whole host of individuals who have not received notice.  And

6  although Mr. Roselius has indicated that they're willing to

7  revise these provisions, these provisions have not been filed

8  with the Court.  There is nothing on the record that the Court

9  can actually consider by way of a written proposed settlement.

10        Accordingly, Your Honor, in this case, one thing to

11  underscore.  If Jetcraft and the trustee want to settle, they

12  can settle.  But the minute that they want this Court to adopt

13  a claims bar in a situation where Bombardier is contesting the

14  good faith, that is where the Court needs to consider that

15  either there's enough on the record to confirm that there is a

16  lack of good faith, i.e. admissions, that the trustee cannot

17  satisfy the Tech-Bilt factors because of the rough

18  approximation of plaintiffs' total recovery.  They admit they

19  can't (indiscernible) assessment.  They admit that they can't

20  make the proportional reliability assessment.

21        This is a matter where the Court must make that

22  finding, and if the Court believes more is needed, then at a

23  minimum, Your Honor, we request discovery on these issues to

24  enable to have an ability to fully assess these issues.

25        THE COURT:  Thank you, Ms. Fornos.

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

26

1        Mr. Roselius, would you like to respond?  You have

2   about a minute.

3        MR. ROSELIUS:  Yes, Your Honor.

4        Ms. Fornos made a false statement in that we didn't

5   put anything on the record about the scope of the injunction.

6   It's on page 14 of our reply brief.  We state specifically how

7   we would modify it.

8        Whatever credit Bombardier is allowed to get is not

9   affected by Jetcraft getting the benefit of the California

10  statute, which clearly applies to our claims.  And there's no

11  cite -- they cite no case otherwise.

12       The hypothetical she talks about will never happen

13  because the only way that type of situation happens is if the

14  case comes back down on appeal and Bombardier is found to be

15  significantly more liable than in the hypothetical.

16       And with respect to whether it's possible to determine

17  proportionate liability, that is not what we said in the brief.

18  The point is that it's impossible to determine with exactitude

19  exactly what the proportionate liability will be without going

20  all the way through trial.  Here, the Court's only required to

21  make an educated guess.  That's well within the record.

22       The settlement amount is not nominal.  It's related to

23  proportionate liability.  It's related to the amount of the

24  alleged profits that the settling defendants earned.  And it's

25  entirely appropriate.  There's no showing here.  Bombardier

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

27

1  cannot meet its burden to show a lack of good faith.  And it's

2  Bombardier's burden, not the trustee's.  Thank you.

3          THE COURT:  Thank you, Mr. Roselius.

4          All right.  Mr. Lyons, do you wish -- you have five

5  minutes to address the issues, and solely the issues, that were

6  raised in -- I'll start with CAVIC, and then you can go on to

7  Universal Leaders.

8          So Mr. Lyons.

9          MR. LYONS:  Thank you, Your Honor.

10         Well, Your Honor, first of all, Mr. Roselius covered a

11  lot of the points that are raised in CAVIC's joinder.  CAVIC's

12  paper adopts a lot of the arguments used by Bombardier, and

13  those have been addressed by Mr. Roselius.

14         CAVIC also addressed that the claims went beyond the

15  scope of 887.6 (sic).  Again, that's been addressed by the

16  revised order, which tracks the California statute and does not

17  go beyond that.  So we believe that has been addressed.

18         And Your Honor, a more fundamental issue is that the

19  trustee has not alleged tort claims against CAVIC.  It hasn't

20  alleged claims in either the Jetcraft action or the CAVIC

21  action.  And so CAVIC is -- since they're not alleged to have

22  been tortfeasor, I'm not sure how they have an objection based

23  upon a disproportionate adjudication of liability in the

24  measuring factors, Your Honor, including they make a statement

25  in paragraph 7 that the trustee's seeking more than 200 million

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

28

1  from all defendants and can't show proportionate liability of

2  the settling defendants.  Well, Your Honor, CAVIC is not

3  included even in that 200-million-dollar number.  The trustee

4  has not alleged tort claims against CAVIC.

5          Your Honor, and fundamentally, again, we submitted the

6  declaration of Judge Gross, who was appointed by Your Honor to

7  conduct a mediation.  He conducted that mediation, and he has

8  stated his view on the trustee's and the parties' good faith in

9  reaching that -- in reaching that settlement.

10         So unless Your Honor has any questions, I believe that

11  addresses the points raised in CAVIC's opposition.

12         THE COURT:  Thank you.  Mr. Lyons, just one point of

13  clarification.  I'm not sure that I appointed Judge Gross.  I

14  authorized the parties to go to mediation, but I certainly

15  didn't select Judge Gross.  That was a mutual agreement between

16  the trustee and the defendants.  I just wanted --

17         MR. LYONS:  Right.

18         THE COURT:  -- to clarify that.  Correct, Mr. Lyons?

19         MR. LYONS:  Yes, correct.  You didn't --

20         THE COURT:  Okay.

21         MR. LYONS:  -- appoint him but approved his services

22  as a mediator --

23         THE COURT:  Correct --

24         MR. LYONS:  -- (indiscernible).

25         THE COURT:  -- I approved payment of his fees, but I

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

29

1  certainly didn't say you have to go to Judge Gross or go to any

2  other mediator.  I just said I thought that the case would

3  definitely benefit from mediation.

4       MR. LYONS:  Correct, Your Honor.

5       THE COURT:  All right.  Thank you.

6       And Ms. Azlin, would you like to be heard?

7       MS. AZLIN:  Yes, Your Honor.  I will try not to repeat

8  most of the arguments that were addressed by Ms. Fornos, other

9  than to say that CALI, as Mr. Lyons recognized, joined in most

10  of the arguments by Bombardier and urges this Court to deny the

11  current motion to approve the Jetcraft settlement for the

12  reasons set forth in the underlying documents.

13       I do want to emphasize one point, and that is first,

14  Your Honor, as you know, CALI is not a party and never has been

15  properly made a party to the adversary proceeding.  And as

16  such, we believe that CALI would be unfairly prejudiced by the

17  scope and nature of the current order sought by the trustee and

18  the settling parties to that case.

19       And on this issue, Your Honor, Mr. Lyons just put his

20  finger on, in fact, the exact issue that we find problematic

21  here, and that is that, again, CALI is not a party to the

22  Jetcraft adversary proceeding itself.  As Your Honor knows, the

23  trustee attempted to belatedly add CALI to that case.  That

24  effort was rejected because, among other reasons, the claims

25  that the trustee sought to add CALI to were barred by the

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

30

1   applicable statute of limitations.

2           Despite the fact that CALI's not a party to that case,

3   we believe that the trustee is seeking to do here that which it

4   would not be allowed to do and in fact would not be effective

5   had the motion for a good-faith settlement determination been

6   properly filed in that adversary proceeding as we believe it

7   ought to have been.

8           The terms of the California statute is clear.  We

9   believe it provides in relevant part that, "Any party to an

10  action in which it is alleged that two or more parties are

11  joint tortfeasors or coobligors on a contract debt shall be

12  entitled to a hearing on the issue of the good faith of a

13  settlement entered into by the plaintiff or other claimant and

14  one or more of the alleged joint tortfeasors or coobligors.

15          Your Honor, again, CALI is not alleged in this action,

16  where the trustee has purported to file this motion ,or any

17  other to be an alleged joint tortfeasor or coobligor with any

18  of the settling Jetcraft defendants, nor does it believe that

19  it has any such coliability.  And so we believe that the scope

20  of the relief sought by the trustee and the settling defendants

21  as set forth in the settlement agreement is just patently

22  overbroad.

23          Your Honor, the trustee now attempts to pretend that

24  the 877 order sought and the request for injunction in the

25  pending motion are one and the same.  We believe that the

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

31

1    settlement agreement is clear on this issue, as was the

2    original proposed order sought by the trustee, and that

3    settlement agreement, again, upon which the entire settlement

4    is expressly contingent, right, is clear.  And in the section

5    of the settlement agreement governing the Rule 9019 approval

6    order that the trustee was to seek here had two different

7    sections.

8         Section C required the trustee to seek an order making

9    all necessary findings and concluding that the settlement is in

10   good faith pursuant to California Code of Procedure 877.6.  And

11   section D requires that the trustee seek an order -- and again,

12   the entire settlement is contingent upon this -- ordering that,

13   "All the parties to the Chapter 7 cases and all current or

14   future defendants in the litigation are barred, enjoined, and

15   prohibited from seeking contribution or indemnity in any

16   respect from the settling defendants on account of claims

17   asserted in the litigation."

18        Now, this is actually in the terms of the settlement

19   agreement itself, and despite Mr. Lyons' and Mr. Roselius'

20   statements to the Court today that they intend to submit a

21   revised proposed order, that is not what the settling

22   defendants and the trustee agreed to in the settlement

23   agreement itself, again, which is contingent upon this Court

24   issuing an order that hits those two points.  We believe that

25   these are two different types of relief sought, section C and

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

32

1  section D, one being the 877 potential order and one being the

2  claims bar.  We believe that those are governed by different

3  substantive and procedural rules.

4        To the extent, Your Honor, that the trustee only seeks

5  the protection of Section 877.6 of the California Code of

6  Procedure, we believe that the parties were required to file

7  the proper motion under that statute in the Jetcraft adversary

8  proceeding itself, where it would be limited in its impact and

9  effect on the parties to that proceeding and the alleged joint

10  tortfeasors and coobligors, if any, to that proceeding.

11        And again, this is if they can meet the underlying

12  Tech-Bilt factors, which with again, all due respect to the

13  parties' statements on this issue, regardless of whether or not

14  the settling parties actually "considered" those factors in

15  reaching the settlement here, we don't think that they've made

16  the necessary presentation that would enable this Court to make

17  those findings.  And specifically, we echo Bombardier's

18  concerns in regards to the proportionality factor aspect when

19  coming from the position of CALI, which is an alleged, I would

20  say, we believe, an innocent bystander to much of the wrongs

21  alleged here.

22        Whereas on the face of the trustee's complaint in the

23  Jetcraft adversary itself, it makes clear that the very

24  settling parties at issue here are amongst the parties that the

25  trustee himself has contended committed the vast majority of

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

33

1  the underlying wrongdoing.

2          THE COURT:  Thank you, Ms. Azlin.

3          Mr. Lyons, if you'd like to respond for a minute or

4  two, you didn't use your whole time.  And Ms. Azlin did go over

5  a bit, although I didn't cut her off.

6          MR. LYONS:  Yes, Your Honor.

7          Again, the proposed order that we're submitting is by

8  the agreement of both Jetcraft and the trustee, subject, of

9  course, to Your Honor's approval.  And we believe that tracks

10  the statute.

11          And I invite Mr. Ciatti to weigh in on that if he

12  could take thirty seconds of that extra minute just to confirm

13  that.

14          THE COURT:  Certainly.  Is there anything else, Mr.

15  Lyons, though, because I'll then turn to your argument

16  regarding Universal Leader?

17          MR. LYONS:  Nothing further from me, Your Honor.

18          THE COURT:  Okay.  Mr. Ciatti, did you wish to be

19  heard, just on that specific issue?

20          MR. CIATTI:  Good morning, Your Honor.  Michael Ciatti

21  on behalf of the Jetcraft and FK defendants.

22          Just to confirm what we put in our consent that we

23  would agree to the modification of the order as proposed by the

24  trustee and consider that to be compliant with the settlement

25  agreement that Ms. Azlin referred to.

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

34

1          THE COURT:  Thank you, Mr. Ciatti.

2          All right.  Mr. Lyons, turning to the issues raised by

3     Universal Leader, if you'd please address those.

4          MR. LYONS:  Yes, thank you, Your Honor.  And I think

5     these issues are fairly straightforward.  I think we've

6     discussed these issues about estate allocation in a lot of

7     detail, and it certainly is going to come up in the cash-

8     management -- or the cash-budget motion as well.

9          Your Honor, right now this is a lawsuit brought by

10    both of the estates.  Certainly, we are not in any way taking a

11    position on ultimately whether the estate should be

12    substantively consolidated.  We settled both these claims.

13    Ultimately, at the point in time when the trustee proposes a

14    plan of liquidation or an interim distribution, the allocation

15    issues will be then -- will then be relevant.  And at that

16    point, we may well decide to seek subsequent consolidation or

17    some other allocation.

18         But right now, it's about bringing the money in the

19    door is what the purpose of this settlement is.  And

20    ultimately, it's subject to every parties rights, including Mr.

21    Bernstein's clients, to object to the ultimate disbursement and

22    the allocation of how these proceeds should be, if they should

23    be, distinguished between the estates.  But it's just premature

24    right now, Your Honor, and shouldn't in any way impede approval

25    of the settlement.

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

35

1          THE COURT:  Thank you, Mr. Lyons.

2          Mr. Bernstein.

3          MR. BERNSTEIN:  Thank you, Your Honor.  Again, for the

4    record, Michael Bernstein of Arnold & Porter for Universal and

5    Glove.

6          So as Mr. Lyons said and as Your Honor knows, our

7    objection raised the issue of there being two separate

8    bankruptcy estates in the absence of any evidence as to which

9    of those two separate estates owns these claims and therefore

10   should benefit from the settlement if it's approved.  As the

11   Court knows, the trustee has in some context in the past

12   treated the estate as if they were one, as if they had been

13   consolidated.  And we have raised this issue before about there

14   being two separate estates with separate assets and separate

15   creditors.

16         With that said, I want to do two things here.  One is

17   respond briefly to the arguments that Mr. Lyons' made in his

18   reply brief for today and then to offer a solution that would

19   address at least a bar issue that the Court could consider.

20         So Mr. Lyons basically made -- the trustee basically

21   made in his reply brief three arguments.  One is he said that

22   the Chapter 11 cash management order allows him to put all of

23   the cash in one of the Chapter 7 debtors' estates.  The second

24   is he said both debtors owned Jetcraft clams.  And third is he

25   said, today and in his brief, that we can reallocate it

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

36

1    sometime down the road if necessary as between the two debtors.

2              So on the first issue, as this Court recognized when

3    the trustee made almost exactly the same argument in the

4    context of the fee-application objection, and Your Honor then

5    took a recess to go review the Chapter 11 cash-management

6    order, the trustee is simply wrong.  The Chapter 11 cash-

7    management order has no application to the issues in the

8    Chapter 7 cases that we're dealing with now.

9              That order dealt with ordinary-course operational

10   issues in the Chapter 11 cases.  It authorized money to be

11   taken from a DIP account, the DIP operating account, and put

12   into two separate accounts, one for payroll and one for

13   nonpayroll ordinary-course operating expenses.  And then it

14   dealt with compliance with various U.S. Trustee guidelines

15   governing debtor-in-possession accounts.  It certainly did not

16   authorize a Chapter 7 trustee in future Chapter 7 cases, a

17   trustee that didn't even exist in that capacity at that time,

18   to comingle the assets of two separate Chapter 7 estates.

19             Second, with respect to Mr. Lyons' comments in his

20   brief and today that both debtors own the Jetcraft claims

21   because the trustee loosely referred to the debtors

22   collectively in the adversary complaint without distinguishing

23   between them, that's just not good enough.  Determining which

24   of the two estates owns the claims or whether both of them own

25   them in some way requires evidence.  Among other things, it

Case 2:17-bk-21386-SK   Doc 2082   Filed 02/20/23   Entered 02/20/23 05:07:19   Desc
Main Document    Page 37 of 163
**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

37

1  requires looking at the underlying transactions and the

2  transaction documents that formed the basis for the Jetcraft

3  claims to see what interest, if any, each of the two debtors

4  might have in those claims.

5       And if the trustee continues to take the position that

6  both of the debtors owned an interest in the claims, he needs

7  to present evidence to substantiate that assertion, and he

8  would need to propose an allocation as between the two,

9  because, of course, even if both of them own the claims, that

10 doesn't mean it's 50/50, and he would need to present evidence

11 to demonstrate that his allocation is reflective of reality and

12 not arbitrary because otherwise, you could give one estate and

13 its creditors a windfall at the expense of the others.  But of

14 course, the trustee hasn't done any of this, and it's critical

15 because there are separate estates with separate creditors,

16 including our client.

17      Finally, the idea that we can figure this all down the

18 road, the kick-the-can-down-the-road approach, doesn't work

19 without some important protections, at least, because it is

20 entirely possible that if Your Honor were at some point in the

21 future to order a reallocation, the obligor estate, if you

22 will, would not have sufficient resources to make the obligee

23 estate whole.  So it's not something we can kick down the

24 road -- kick that down the road.

25      But that does lead me to a suggestion that Your Honor

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

38

1   might consider that would reconcile the trustee's desire to get

2   some dollars in the door with our, I think, very legitimate

3   concern that each of the respective estates and their creditors

4   be treated fairly, and that is this.  If the Court is inclined

5   to approve the settlement, notwithstanding the other objections

6   that have been raised, it could, and we respectfully submit

7   should, include in the settlement order a provision that says

8   these settlement proceeds will be held in a separate,

9   segregated account and will not be spent on anything, on

10  allowed administrative expenses or anything else, until such

11  time as this Court has entered a final order, either

12  substantively consolidating the estates or in the alternative,

13  determining who owns these dollars.

14          That would have the effect of getting the dollars in

15  the door as the trustee wants, but it would do so without

16  prejudicing either estate and without prejudicing the creditors

17  of a particular estate.  Unless Your Honor has any questions

18  about our position, that's all I have to say.

19          THE COURT:  I do not.  Thank you, Mr. Bernstein.

20          Mr. Lyons, is there anything you'd like to respond to

21  regarding Mr. Bernstein's comments?

22          MR. LYONS:  Your Honor, just very briefly, every

23  dollar we spend is subject to Your Honor's approval.  Any party

24  can object.  If there needs to be money spent, we're going to

25  be talking about the budget motion.  So everything is fully

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

39

1  transparent.  We have a detailed listing of all of the

2  expenditures.

3       Nothing in putting this these funds into a single

4  account prejudices any creditors to the ultimate allocation of

5  these resources.  It is for administrative convenience.  It was

6  a single DIP account that was established for, really,

7  administrative purposes.  And certainly, the trustee's taken no

8  position that this somehow results in a de facto substantive

9  consolidation.

10       All parties will have an opportunity to look at post-

11  allocation at the time when distributions are made, Your Honor.

12  And so we have accounting and all the -- the main receipts,

13  Your Honor, have been the adversary actions, and everybody that

14  has full visibility, the debt structure, the coliability of the

15  debtors under all these -- under all these different documents.

16       So it's something, Your Honor, that I think is not

17  prejudicial in any way.  And Your Honor, certainly nothing will

18  be spent without Your Honor's approval.

19       THE COURT:  All right.  Thank you.

20       I want to take a look at a couple of things that were

21  addressed in the argument.  It's now about 10:20 here.  We'll

22  be in recess till 10:45.  At that point, I will rule on this

23  motion, and then I'll proceed with the other motions that are

24  on calendar as well.  So we'll be off the record for about

25  twenty-five minutes until 10:45.

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

40

1          (Recess from 10:20 a.m., until 10:48 a.m.)

2          THE COURT:  All right.  Good morning, again.  This is

3    Judge Klein.  We're back on the record in matter number 11 in

4    the Zetta Jet case.

5          Just so everybody has the roadmap of how the rest of

6    the day is going to go, I'll rule on the 9019 motion.  That

7    will probably take us right up to lunchtime on the West Coast.

8    We'll take a lunchtime break.  Then we'll all come back, and

9    I'll address all of the other matters on calendar.

10         So as I mentioned, I wanted to look at a few things.

11   The argument was very helpful.  I appreciate hearing from both

12   sides, and I'm ready to rule now on the 9019 motion.

13         So before the Court is a motion for order approving

14   settlement agreement by and among the Chapter 7 trustee and the

15   various Jetcraft entities and the various FK entities.  In

16   support of the motion, Jonathan King, the Chapter 7 trustee of

17   Zetta Jet USA and Zetta Jet PTE, which we refer to as Zetta

18   Singapore, filed a declaration.

19         On November 29th, retired bankruptcy Judge Kevin

20   Gross, who mediated the dispute, filed a report.  Bombardier

21   and its related entities filed an opposition to the motion.

22   CAVIC filed an opposition as well.  And Universal Leader and

23   Glove Assets filed a limited objection.

24         On January 11th, the trustee filed a reply in support

25   of the motion, and the trustee also filed a mediator statement.

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

41

1    That was on January 11th.  The FK defendants and the Jetcraft

2    defendants filed a notice of consent to modify proposed order

3    and joinder in reply.

4         The history of this case is well set out in the

5    numerous written and oral rulings.  Suffice it to say that

6    Zetta USA and Zetta Singapore filed Chapter 11 petitions in

7    2017.  Mr. King was appointed as the Chapter 11 trustee, and

8    then after the cases were converted, he was appointed as the 7

9    trustee.

10        Jetcraft Corp. filed a 91,062.26 unsecured proof of

11   claim in the Zetta Singapore case.  On 9/13, the trustee filed

12   an adversary complaint against Jetcraft and numerous other

13   entities.  There was a settlement with Element Aviation and

14   ECN.  There were two rounds of motions to dismiss.  The most

15   recent was motions to dismiss the first amended complaint, and

16   that complaint was filed on January 28th, '21.

17        The Court granted Bombardier and its related entities'

18   motion to dismiss the first amended complaint without leave to

19   amend.  The Court granted in part and denied in part the FK

20   defendants' motion to dismiss the first amended complaint

21   without leave to amend.  And the Court granted in part and

22   denied in part the Jetcraft entities' motion to dismiss the

23   first amended complaint with prejudice.

24        On 9/7, the Court -- 9/7 of last year, the Court

25   entered an order granting the Bombardier entities' motion for

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

42

1  entry of a final judgment.

2          Turning to the arguments, the trustee seeks approval

3  of a settlement agreement with the FK and Jetcraft defendants,

4  who I call the settling defendants, under 105 and FRBP 9019.

5  According to the trustee, the settling defendants and he

6  engaged in mediation conducted by retired Judge Gross,

7  resulting in a settlement that provides the following.

8          The settling defendants will pay the trustee 9.5

9  million in two equal payments, the first within three business

10 days after an order approving the motion becomes final and

11 nonappealable, and the second, no later than July 10th of this

12 year.  If the settling defendants fail to make the second

13 payment and fail to cure within thirty days, the trustee may

14 either obtain a 4.75-million-dollar consent judgment and a one-

15 million-dollar penalty plus interest, or retain the first

16 installment and resume litigating against the settling

17 defendants.

18         The second part of the settlement is that Jetcraft

19 Corp. will withdraw its proof of claim, number 17.1.

20         The third provision, or third substantive part of the

21 settlement, is within three business days after the trustee

22 receives the second installment.  He will dismiss all claims

23 pending against the settling defendants.

24         Next, the trustee and the settling defendants will

25 mutually release each other from all claims.  Next, all parties

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

43

1   to the Chapter 7 case and all current or future defendants in

2   the litigation will be barred, enjoined, and prohibited from

3   seeking contribution or indemnity in any respect from the

4   settling defendants.  That's called the claims bar.  If a

5   nonsettling party violates the claims bar, the trustee will

6   cooperate with the settling defendants to enforce the bar.

7          Finally, the trustee will file an approval order,

8   which is defined as an order granting the motion that the

9   trustee seeks from the Court, in a case that's currently

10  pending in the Superior Court Province of Quebec, District of

11  Montreal.

12         The trustee argues that in the Ninth Circuit, courts

13  consider the following factors to determine whether to approve

14  a settlement:  The probability of success in litigation,

15  expected difficulties, if any, in the matter of collection; the

16  complexity, expenses, inconvenience and delay related to the

17  litigation; and finally, the paramount interests of the

18  creditors.  The trustee contends that each of these factors

19  weighs in favor of the Court granting the motion.

20         He expresses confidence that the adversary proceeding

21  would be successful, however, due to the complexity of the

22  issues involved, he concedes that success is uncertain.  He

23  highlights that the settling time-consuming and burdensome

24  litigation is encouraged.  He asserts that collecting a future

25  judgment from the settling defendants would be challenging

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

44

1   because several of them are based in foreign countries, which

2   would require the trustee to navigate foreign laws while

3   incurring significant costs.

4        He argues that the complexity, expense, inconvenience

5   and potential delay of continuing litigation all weigh heavily

6   in favor of approving the settlement.  He claims that the

7   settlement agreement is in the paramount interest of creditors

8   because it provides the maximum possible recovery in the

9   shortest amount of time.  According to the trustee, California

10  law applies because the litigation was initiated, prosecuted,

11  and ultimately settled in California concerning a California

12  entity.

13       The trustee argues that a release given in good faith

14  against one codefendant shall not discharge any other such

15  party from liability unless its terms so provide, but it does

16  discharge the party to whom it is given from all liability for

17  any contribution to any other parties, citing Cal. Civil

18  Procedure Code 866 and 877(b).  He asserts that when a court

19  determines a settlement was executed in good faith, other

20  tortfeasors are barred from any future claims against the

21  settling tortfeasor or coobligor for equitable comparative

22  contribution or partial or comparative indemnity based on

23  comparative negligence or comparative fault.  The trustee

24  contends that under California law, courts consider a number of

25  factors to determine whether a settlement was executed in good

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

45

1   faith.  I'll call those the good-faith factors, which are

2   announced in Tech-Bilt, 38 Cal.3d 488, 1985.

3        He similarly asserts that the settlement agreement

4   satisfies the good-faith factors because while the settling

5   defendants liability exceeds the 9.5-million-dollar settlement,

6   it is recognized that a settlor should pay less in a settlement

7   than it would have if found liable after trial.  The trustee

8   acknowledges that it is uncertain whether he will be successful

9   litigating claims against the settling defendants or the other

10  defendants, and the amount of the settlement agreement is fair

11  in light of the strengths and weaknesses of the trustee's

12  claim, the expense and delay of litigation, and the risks

13  attendant to all litigation.  He concludes there's no collusion

14  or fraud.  The settlement agreement is the result of good-faith

15  mediation.

16       Bombardier and its related entities argue that the

17  motion and settlement agreement seeks relief beyond the scope

18  of this Court's authority.  BAC acknowledges that they do not

19  take issue with a negotiated agreement between the trustee and

20  the settling defendants, providing that the resolution is

21  limited to the claims involving those parties only.  They do,

22  however, take issue with the overbroad, overreaching, and

23  unsupportive relief required by the settlement agreement and

24  sought by the motion.

25       BAC and related entities assert that the motion seeks

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

46

injunctive relief but bypasses FRBP 7001(7), which requires
that injunctions be sought by complaint.  BAC and the related
entities note that courts have been near universal in reversing
injunctions which have been issued without complying with Rule
7001.  According to BAC, courts have likewise denied injunctive
relief when embedded in settlement motions for failing to be
brought via an adversary proceeding.

BAC argued that the trustee failed to provide
Constitutionally-required notice to all parties, who he
attempts to bind by the terms of the settlement agreement.
They highlight that there were 459 proofs of claim filed in the
Chapter 7 cases, but notice of the motion was only provided to
about 100 entities, and providing notice calculated to reach
potentially-affected parties is a fundamental tenet of due
process, which has not occurred here.

They assert that the order limiting notice that was
entered by the Court early in the Chapter 11 cases could not
conceivably apply to a request to enjoin every party-in-
interest in these cases, and it could not apply to any
adversary proceeding where the FRBP-specific notice, summons,
and service requirements are applicable.  They contend that
even if the Court were to address the merits of the motion, the
claims bar, which is based on California law, cannot bind them
or any nonparties to the settlement.

They contend that the claims bar cannot possibly apply

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

47

1   to them because they're not parties to the settlement

2   agreement, did not participate in its negotiations, and did not

3   agree to the California choice of law or inclusion of the

4   claims bar.  They argue that the trustee's reliance on Nucorp,

5   a nonbankruptcy case which applied California's choice-of-law

6   test to determine substantive law is misplaced because

7   bankruptcy courts in the Ninth Circuit apply the Restatement

8   (Second) of Conflicts of Law to determine substantive law.

9        They highlight that the settlement agreement involves

10  the same tort claims that were alleged against them in the

11  first amended complaint.  They note that the Court previously

12  rejected the trustee's argument that California law applies to

13  these claims against BAC and its related entities, finding

14  instead that based on the Zetta-BAC asset purchase agreements,

15  New York law applied to all tort claims against BAC and its

16  related entities.

17       They argue that the APA's broad choice-of-law

18  provisions also encompass their contribution claims.  They

19  argue that in contrast to California law, New York law provides

20  that when a joint tortfeasor settles, the plaintiff's claims

21  against the nonsettling tortfeasors are reduced to the extent

22  of any amount stipulated by the release or in the amount of the

23  released tortfeasor's equitable share of the damages, whichever

24  is greater.

25       BAC and its related entities contend that under New

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

48

1   York law, the trustee cannot recover from them more than their

2   equitable share of damages because his claims will be reduced

3   by the greater of Jetcraft and FK defendants' relative share of

4   fault or amount paid.  They argue that even if California law

5   were to apply, the claims bar exceeds the scope of Cal. Civil

6   Procedure Code 877 and 877.6.  They highlight that the claims

7   bar would bar, enjoin, restrain, and extinguish any claim they

8   or any person has against the settling defendants, even claims

9   not based on comparative fault.

10          They note that the trustee seeks a good-faith finding

11  that purportedly satisfies the California contribution bar

12  statute, but they claim that the trustee is overreaching,

13  because 877 and 877.6 apply only to claims based on comparative

14  contribution, comparative negligence, or comparative fault and

15  concern only equitable indemnification, not contractual

16  indemnification.  BAC and its related entities assert that even

17  if the relief requested were limited to what is authorized

18  under California law, the motion does not support a good-faith

19  finding because it does not establish that the settlement

20  agreement accounts for the settling defendants' proportionate

21  liability for the total amount of the trustee's approximate

22  recovery.

23          According to BAC and its related entities, the trustee

24  glosses over and misapplies the proportionality factor, which

25  is one of the most important ways that a court determines good

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

49

1    faith.  They contend that the Court cannot make a good-faith

2    finding here because there's no substantial evidence to support

3    a critical assumption as to the nature and extent of the

4    settling defendants' proportional liability.  And they assert

5    that the trustee's apparent exclusive reliance on the November

6    29th mediators' report fails because Tech-Bilt requires more.

7            They contend that a bankruptcy court does not have

8    jurisdiction to effectuate a claims bar regarding claims

9    between nondebtor parties that do not affect the debtor's

10   estate.  The claims bar requested by the trustee exceeds this

11   Court's jurisdiction, BAC and its related entities assert,

12   because it bars all claims, including direct actions that

13   cannot be estate property.  They highlight that settlement

14   agreements barring all actions exceed a bankruptcy court's

15   related-to jurisdiction.

16           Finally, BAC and its related entities argue that the

17   settlement agreement also would operate as a de facto third-

18   party release, which is contrary to Ninth Circuit law.  They

19   contend that the Ninth Circuit historically and categorically

20   has had that there is no authority to restrain third parties

21   from pursuing independent claims like contribution,

22   reimbursement, or contractual indemnity by nondebtors against

23   other nondebtors.  BAC and its related entities recognize that

24   in Blixseth, the Ninth Circuit arguably narrowed the complete

25   prohibition on third-party releases, but they assert that

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

1   neither of the conditions that led to that decision are present

2   here.

3          BAC requests that the Court deny the motion in its

4   entirety, or if the Court decides to reach the merits, to

5   schedule a further evidentiary hearing to provide BAC and its

6   related entities time to conduct discovery.

7          CAVIC adopts and incorporates by reference the BAC and

8   its related entities' opposition.  It also notes that the

9   trustee seeks more than 200 million in damages from all

10  defendants, but he has not and cannot show that the

11  proportionate liability of the settling defendants is only 9.5

12  million, and nothing in the November 29th mediator's report

13  provides a rough approximation of the trustee's total recovery

14  and the settling defendants' proportionate liability.

15         Universal Leader and Glove note that in addition to

16  the procedural and substantive objections raised by Bombardier

17  and CAVIC, the trustee seeks approval of the settlement

18  agreement on behalf of both the Zetta USA and Zetta Singapore

19  estates, without identifying which estate owns the claims and

20  causes of action being settled and without allocating the

21  settlement or proceeds therefrom between each estate.  They

22  highlight that the trustee treats the two estates as if they

23  have been substantively consolidated, but they have not.

24         Universal Leader and Glove conclude that the trustee

25  must show which of those two estates owns the claims and causes

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

1  of action that he proposes to settle with competent evidence.

2  And he must then ensure that the proceeds are deposited into

3  that estate's account and used only for the benefit of that

4  estate and its creditors.

5          In the reply, the trustee asserts that the relief

6  requested in the motion is within the bounds of ordinary good-

7  faith settlements.  He argues that California courts routinely

8  grant relief under Cal. Civil Procedure Code 877.6, discharging

9  settling defendants from any liability for contribution or

10  indemnity to any other alleged tortfeasor.

11         He refutes Bombardier's assertion that the claims bar

12  is an injunction that requires the mechanism of an adversary

13  proceeding.  Instead, he contends that the claims bar seeks a

14  statutory litigation bar under 877.6 as part of a settlement

15  agreement, which is appropriately sought via a 9019 motion.  To

16  support his position that a separate adversary proceeding is

17  unnecessary, he cites Hartog, a Southern District of Florida

18  case, Land Resource, a Middle District of Florida case, Estate

19  of Jackson, a Middle District of Florida case, Superior Homes,

20  an Eleventh Circuit unpublished case, and In re: Munford, an

21  Eleventh District published case.

22         The trustee notes that he is not seeking a finding

23  that 105 provides a substantive basis for a bar order, but

24  rather that it provides a procedural vehicle for applying 877.6

25  through a 9019 motion rather than an adversary proceeding.  The

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

52

1    trustee acknowledges that a claims bar and an injunction both

2    have the effect of precluding specified conduct, but he states

3    they are different remedies governed by different procedures

4    emanating from different sources of authority.  He highlights

5    that a California statutory bar is governed by the Tech-Bilt

6    good-faith factors, and injunctions are governed by FRBP 65.

7        The trustee argues that the BAC's reliance on Zale

8    Corp., a Fifth Circuit 1995 case, is misplaced because the

9    injunction in Zale was based on FRCP 65, not a separate statute

10   like 877.6.  He contends that subsequent cases from within the

11   Fifth Circuit have entered injunctions without requiring an

12   adversary proceeding, citing Mirant, a 2005 Northern District

13   of Texas case.  According to the trustee, the FRBP 9019

14   standard is more exacting because the movant has the burden of

15   proof, whereas under 877.6, the burden is on the challenger.

16   Therefore, the trustee asserts, if a court approves a

17   settlement under FRBP 9019, a good-faith finding under the

18   less-stringent 877.6 standard flows.

19       The trustee argues that because BAC and the settling

20   defendants are actively involved in the Jetcraft AP, there is

21   no need to file an additional adversary proceeding.  He

22   recognizes BAC's concerns regarding a lack of notice to parties

23   not served with a copy of the settlement agreement.  He

24   contends that this objection can be addressed by reducing the

25   scope of the bar order to include only those parties served

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

53

1  with notice, as established by the trustee's certificate of

2  service.  The trustee proposes draft language addressing this

3  issue and claims that with the revisions, no party will be

4  subject to the bar order without first receiving notice.

5        Regarding the applicable law governing the settlement

6  agreement, the trustee alleges that the Court has already

7  determined that California law applies to the substantive

8  claims against the settling defendants.  California law also

9  applies to indemnity contribution claims arising from those

10  claims, and it's appropriate that they be afforded the

11  protections of 877.6.

12        The trustee contends that he and the settling

13  defendants appropriately chose California law to govern the

14  settlement because the trustee's tort claims were initiated,

15  prosecuted, and ultimately settled in California, and the

16  claims concern a California entity, Zetta Jet USA.  He

17  discounts BAC's conclusory assertion that New York law would

18  govern any potential contribution action, alleging that the

19  Court ruled that New York law applied to the trustee's claims

20  against BAC based on the APA's.

21        The trustee asserts that numerous courts have held

22  that California law would apply to a contribution or indemnity

23  claim arising out of California claims, similar to the claims

24  asserted against the settling defendants.  The trustee explains

25  that the claims bar seeks nothing more than to have the

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

54

1    protections of 877.6 apply.  But to the extent that a broader

2    interpretation could be inferred from the order authorized in

3    Allstate, that's 214 WL 12621185, District of Arizona, 2014,

4    the modified proposed order has been reworked to clarify that

5    it only applies to equitable comparative contribution or

6    partial or comparative indemnity based on a comparative

7    negligence or comparative fault, which resolves BAC's and its

8    entities' concern about a more expansive interpretation.

9        The trustee maintains that the settlement agreement

10    satisfies the Tech-Bilt good-faith factors.  He rejects BAC's

11    argument that there is not enough evidence to support such a

12    finding.  He asserts that a finding of good faith may be

13    challenged only when the settlement is grossly disproportionate

14    to what a reasonable person at the time of the settlement would

15    estimate the settling parties' liability to be.

16        He argues that BAC places too much emphasis on the

17    proportionate liability factor, and in fact, a court is not

18    required to determine approximate liability with precision, but

19    an educated guess is sufficient.  He contends that BAC

20    completely discounts the November 29th mediator's report and

21    the January 11th mediator's statement.

22        The trustee highlights cases where courts have

23    approved settlements with a significant discrepancy between the

24    alleged damages and the settlement amount.  The trustee

25    contends that this Court has related-to jurisdiction to enter

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

55

1    the claims-bar order because in the Ninth Circuit, bankruptcy

2    courts have jurisdiction over any matter that could have a

3    conceivable impact on the estate.  The trustee argues that the

4    claims bar has a conceivable impact on the estate because the

5    settlement agreement will provide significant funds to the

6    estate.

7           He highlights Munford, an Eleventh Circuit case, and

8    argues that the Eleventh Circuit found the nexus between the

9    claims of the nonsettling defendants against the settling

10   defendants was sufficiently close to the proposed settlement

11   agreement to confer related-to jurisdiction on the bankruptcy

12   court.  The trustee contends that absent the prohibition

13   against indemnity claims as provided under 877.6, the settling

14   defendants would be unwilling to settle without holding back

15   funds to defend against potential future claims, and the estate

16   would be negatively affected by receiving less money.

17          The trustee argues that any of the BAC's barred claims

18   against the settling defendants are inextricably intertwined

19   with the claims the trustee asserts against the settling

20   defendant.  And he contends that as comparative claims, they

21   were properly and automatically barred under California law if

22   the Court makes a good-faith finding.  The trustee contends

23   that In re: Archer, a case from the Northern District of Ohio,

24   supports his position rather than BAC's because it involved a

25   bar order that enjoined any person from future claims, versus a

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

56

1   claims bar applicable only to nonsettling defendants, which is

2   at issue here.

3        The trustee disputes BAC's assertion that the claims

4   bar is the functional equivalent of a third-party release.  He

5   contends that the authority for the claims bar rests in Cal.

6   Civil Procedure Code 877.6, nor in 524 of the Bankruptcy Code.

7   He asserts that BAC is blurring the lines between a prohibited

8   all-persons third-party release and a statutory contribution

9   order of the type approved by courts in Munford and Hartog.

10       The trustee contends that CAVIC's opposition should be

11  overruled, and Universal Leader-Gloves' opposition is without

12  merit.

13       Turning to the legal standard, FRBP 9019 provides that

14  on motion by a trustee and after notice in a hearing, the Court

15  may approve a compromise or a settlement.  A bankruptcy court

16  has great latitude in approving compromise agreements.  The

17  Court's discretion, however, is not unlimited.  A bankruptcy

18  court should approve a settlement if it was the result of good-

19  faith negotiations and is fair and equitable.  That's In re: a

20  C Properties, 784 F.2d 1377 (9th Cir. 1986).

21       When determining whether a proposed settlement

22  agreement is fair and equitable, courts must consider, one, the

23  probability of success in the litigation, two, the

24  difficulties, if any, to be encountered in the matter of

25  collection, three, the complexity of the litigation involved

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

57

1    and the expense, inconvenience, and delay necessarily attending

2    it, and four, the paramount interests of the creditors and a

3    proper deference to their reasonable views in the premises.

4    The trustee has the burden of demonstrating that the compromise

5    is fair and equitable and should be approved.

6         A settlement may be approved if it is fair and

7    equitable when comparing the claims being compromised against

8    the likely rewards of litigation.  Further, when assessing a

9    compromise, courts need not rule upon the disputed facts and

10   questions of law, but rather must only canvass the issues.

11   When analyzing proposed settlement, the Court should not

12   substitute its judgment for that of the trustee.  Instead, the

13   Court must determine whether the settlement falls below the

14   lowest point in the range of reasonableness.

15        While the Court should consider the reasonable view of

16   creditors, objections do not rule.  It is well-established that

17   compromises are favored in bankruptcy.  As noted by the Supreme

18   Court in administering reorganization proceedings in an

19   economical and practical manner will often be wise to arrange

20   the settlement of claims as to which there are substantial and

21   reasonable doubts.

22        In terms of the analysis, the first issue the Court

23   will address is whether or not the settlement agreement can be

24   approved via 9019 motion or required a separate adversary.  In

25   the motion, the trustee did not address FRBP 7001's requirement

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

58

or whether the relief requested can be obtained via motion or
requires an adversary proceeding.

In the opposition, BAC assert that FRBP 7001(7)
mandates that injunctive relief be sought via complaint, a
requirement the trustee cannot avoid by embedding the relief in
a 9019 motion.  They contend that courts have denied injunctive
relief included in settlement agreements due to a failure to
satisfy Rule 7001's procedural requirements.  BAC state that
the trustee's attempt to obtain an injunction by filing a
motion rather than initiating an adversary proceeding is a
fatal flaw that precludes the Court from granting the relief
requested.

In the reply, the trustee argues that the Court can
grant the requested relief without a separate adversary
proceeding because he is not seeking an FRCP 65 injunction
under the Court's equitable powers to maintain the status quo
pending the outcome of a new legal dispute.  Rather, he claims
he is seeking an order approving a statutory bar against
contribution and indemnity claims by joint tortfeasors as part
of a settlement agreement under FRBP 9019.

He asserts that BAC's arguments regarding FRBP 7001(7)
do not account for the specific context of a bar order included
in a 9019 motion, and he advances four reasons why Rule 7001(7)
is inapplicable.  One, Courts have entered settlement bar
provisions in 9019 settlements under FRBP 7016(c)(2), 11 U.S.C.

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

59

1   105, and the All Writs Act.  Two, approval under FRBP 9019 is

2   effectively a finding that Cal. Civil Procedure Code 877.6

3   applies.  Three, the due process rights of BAC or other

4   nonsettling parties will not be affected.  And four, an

5   adversary proceeding already exists.  The trustee argues that

6   the modified bar order should extinguish BAC's notice concerns.

7           As an initial matter, because the trustee did not

8   address whether a 9019 motion or an adversary proceeding was

9   required in the motion, the Court need not consider any

10  authority or argument the trustee advanced in the reply.  It is

11  well-established in the Ninth Circuit that issues cannot be

12  raised for the first time in reply briefs.  The Local

13  Bankruptcy Rules in this district also provide that new

14  arguments or matters raised for the first time in reply

15  documents will not be considered.

16          Although the trustee may contend -- and he didn't in

17  his reply, but he could contend that he was only responding to

18  BAC's arguments in the opposition, the Court would not find

19  that persuasive.  The trustee and trustee's counsel are

20  sophisticated and certainly knew that whether the requested

21  relief could be obtained via motion rather than an adversary

22  proceeding would be an issue that would be raised.  Rather than

23  addressing the issue in the motion, they chose to sit back and

24  wait to provide authority and analysis in the reply, to which

25  BAC had no opportunity to respond.

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

60

1          Even if that were not the case, and even if the Court

2     considered, and it did consider, the argument and authority the

3     trustee provided in the reply, it would not make a difference.

4     The Court finds the trustee's reliance on five cases from

5     within the Eleventh Circuit are not persuasive.  Two of those

6     cases are from the circuit itself.  One is Munford from 1996,

7     and one is Superior Homes, an unpublished decision.  Neither of

8     those cases, however, addressed or even mentioned whether an

9     adversary proceeding was necessary for imposition of a bar

10    order.

11          In Munford, Munford, Inc. filed bankruptcy after a

12    failed leveraged buyout and then filed an adversary proceeding

13    seeking avoidance and recovery of transfers from numerous

14    defendants, including VRC.  VRC offered to settle the adversary

15    proceeding claims for 350,000 of its 400,000 liability

16    insurance policy.  Conditions on the bankruptcy court enjoining

17    the nonsettling defendants from seeking contribution from VRC

18    or its insurer.  The bankruptcy court approved the settlement

19    agreement, permanently enjoining the nonsettling defendants

20    from asserting contribution and indemnity claims against VRC

21    under 105 and FRCP 16.

22          The nonsettling defendants appealed, and the Eleventh

23    Circuit first addressed whether the bankruptcy court had

24    subject-matter jurisdiction over nonsettling defendants'

25    unasserted state law contributions and indemnity claims, and it

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

61

1    determined that the bankruptcy court did.  It next focused on

2    105 and FRCP 16, concluding that 105 and FRCP 16 authorize the

3    bankruptcy court to enter bar orders where such orders are

4    integral to settlement in an adversary proceeding.

5            In Superior Homes, an unpublished decision, the

6    Eleventh Circuit was confronted with whether the bankruptcy

7    court had subject-matter jurisdiction over state-court

8    litigation involving nondebtor defendants.  Citing Munford, the

9    court noted that bankruptcy-court jurisdiction extends to

10   disputes between third parties in litigation and empowered the

11   bankruptcy court to bar litigation via a 9019 compromise.

12           In one of the district court cases the trustee cites

13   from within the Eleventh Circuit, Land Resources, Land

14   Resources and its affiliates filed Chapter 11 cases that were

15   converted to Chapter 7 and jointly administered.  The Chapter 7

16   trustee, Meininger, filed several actions against Robert Ward,

17   the CEO of Land Resources, his family members, and an

18   indemnitor of certain bonds issued on behalf of Land Resources

19   in state and federal court seeking to avoid fraudulent

20   transfers.  Meininger also filed a claim on behalf of the

21   debtors in a probate action involving Ward's deceased wife.

22           Bond Safeguard Insurance and Lexon Insurance

23   companies, the insurers who had issued bonds on behalf of Land

24   Resources and its subsidiaries, filed two separate actions in

25   district court.  Other actions including a writ of attachment

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

62

1    and garnishment actions were filed in Georgia and Florida state

2    court.  The trustee also filed an adversary proceeding against

3    the debtors' joint-venture partners, including Realan

4    Investment Partners and Weeks-Grey Rock, who had allegedly been

5    beneficiaries of fraudulent transfers while the debtors were

6    insolvent.  That was called the Euram litigation.

7         The trustee eventually settled with the Ward parties

8    for 925,000 dollars in exchange for, among other things, the

9    trustee's voluntary dismissal or withdrawal of the debtors'

10   claims in the probate action and the adversary proceedings.

11   The trustee filed a 9019 motion seeking a bar order permanently

12   enjoining the trustee and debtors' creditors from pursuing any

13   actions against the Ward parties arising from, related to, or

14   based upon or deriving from the debtors' business activities.

15        Separately, the trustee filed a 9019 motion seeking

16   approval of an agreement with the insurers through which they

17   agreed to fund all professional fees and costs up to 750,000

18   dollars associated or related to the trustee's prosecution of

19   the Euram litigation, and in return, the insurers would receive

20   a specific portion of any award or a settlement achieved in

21   that case.  According to the trustee, the two settlement

22   agreements would result in about fifty million reduction in the

23   insurers' allowed claims and reclassification from

24   administrative to general unsecured.

25        Realan and Weeks-Grey objected to the trustee's 9019

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

63

1  motion regarding the settlement with the Ward party, arguing,

2  among other things, that a bar order could only be entered in

3  an adversary proceeding.  The bankruptcy court overruled the

4  objection and approved the settlement.

5          Realan and Weeks-Grey appealed.  The district court

6  affirmed, focusing primarily on the bankruptcy court's

7  Constitutional authority to approve the Ward's settlement

8  agreement, which contained the bar order, as well as its

9  subject-matter jurisdiction to approve the bar order.  In a

10  footnote, the district court stated that the Eleventh Circuit

11  had upheld bankruptcy courts' approval of bar orders in

12  conjunction with a 9019 motion rather than an adversary

13  proceeding, citing Superior Court (sic).  But as noted, the

14  issue of whether an adversary proceeding was necessary was not

15  raised or addressed in Superior Home.

16          In Estate of Jackson, that involved a complex, eleven-

17  year litigation, and the bankruptcy court was confronted with

18  whether to approve two settlements, which would bring

19  approximately twenty million into the bankruptcy estate.  The

20  litigation emanated from six wrongful-death lawsuits filed by

21  probate estates against THMI, debtor's wholly-owned subsidiary

22  and THMI's former corporate parent.  The settlements were

23  conditioned on the court entering a bar order barring the

24  nonsettling defendants, who prevailed, after dismissal, summary

25  judgment, or trial from suing the settling defendants for

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

64

1  indemnification contribution or other claims.

2           The nonsettling defendants objected to the

3  settlements, particularly the bar order.  Addressing the issue

4  that is currently before this Court, the bankruptcy court

5  stated that the Eleventh Circuit had expressly held that 105

6  "is ample authority for entry of a bar order".  In response to

7  the nonsettling defendants' argument that their request for a

8  permanent injunction was not procedurally proper because a

9  separate adversary had not been filed, the Court noted that in

10  addition to 105, the Eleventh Circuit has recognized that the

11  All Writ Act codifies the long-recognized power of courts of

12  equity to effectuate their decrees by injunctions or writs of

13  assistance.

14           Finally, in Hartog, Exporther Bonded Corporation, EBC,

15  filed a Chapter 11 in the United States through the Alcohol and

16  Tobacco Tax and Trade Bureau held a 1.7-million-dollar allowed

17  claim against the estate.  Pre-petition Rivero Investment Group

18  bought real property from which the debtor operated.

19  Continental Duty Free operated from the same location.  Three

20  persons named Rivero owned and controlled both entities.

21           The debtor funded about 217,000 dollars of the real

22  property's deposit, and the Riveros and Continental contributed

23  about 650,000 dollars.  RIG rented the property to the debtor

24  and Continental.  During the bankruptcy case, the property was

25  sold, resulting in four million in proceeds.  As of the

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

65

1   petition date, RIG owed the debtor about 890,000 dollars.

2   About a year after the case was filed, it was converted to 7,

3   and Hartog was appointed as the Chapter 7 trustee.  He

4   informally asserted various claims against Continental and RIG,

5   eventually entering into a pre-suit settlement, providing that

6   Continental and RIG would pay 965,000 dollars to the estate.

7        The settlement was contingent on entry of a bar order

8   enjoining creditors from pursuing the settling parties or their

9   properties arising out of or related to any of the facts,

10  occurrences, or transactions alleged, or which could have been

11  alleged, by the trustee that arise out of or relate in any way

12  to the debtor, the bankruptcy case, or any claims available to

13  the debtor's bankruptcy case.  The trustee filed a 9019 motion,

14  and the ATT objected because it wanted to pursue claims against

15  RIG and Continental to collect the full tax owed by the debtor

16  based on the sale of the real property.  ATT conceded that its

17  claims belong to the bankruptcy estate.  The bankruptcy court

18  approved the settlement and bar order.

19       One of the issues that ATT raised on appeal was that

20  the bankruptcy court erred in issuing an injunction outside of

21  an adversary proceeding.  Citing Superior Homes, Land

22  Resources, and relying on 105, FRCP 16, and the All Writs Act,

23  the district court held that an adversary proceeding was not

24  necessary.  The court discounted ATT's reliance on Zale, a

25  Fifth Circuit case from 1995, and that court's holding that an

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

66

1    adversary proceeding was required to enjoin third-party claims

2    based on what the Court described as "binding Eleventh Circuit

3    precedent".

4          The Court does not find the cases from within the

5    Eleventh Circuit persuasive for a number of reasons.  First, a

6    careful reading of the two Eleventh Circuit cases the trustee

7    cites reveals that the Eleventh Circuit was not confronted with

8    and did not address whether an adversary proceeding was

9    required to issue an injunction or a bar order.  Second, the

10    bankruptcy and district court from within the Eleventh Circuit

11    relied on 105, FRCP 16, and the All Writs Act to find that

12    adversary proceedings were not required, which this Court does

13    not find compelling.

14          First, in Law v. Siegel, the Supreme Court held that

15    bankruptcy courts cannot use 105 to override other sections of

16    the Bankruptcy Code.  In the Ninth Circuit, this has been

17    extended to the FRBP.  That's Anwar versus Johnson, 720 F.3d

18    1183 (9th Cir. 2013).  And in that case, the Ninth Circuit held

19    that bankruptcy courts may only exercise their equitable powers

20    within the confines of the Bankruptcy Code, which includes

21    deadlines set by the FRBP, because granting retroactive

22    extension of a deadline would conflict with the plain language

23    of FRBP 4007 and 9006.  The Court could not rely on equitable

24    powers under 105 to do so.

25          Although the trustee asserts that he is not seeking a

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

67

1   finding that 105 provides a substantive basis for a bar order,

2   but rather that it provides a procedural vehicle for applying

3   877.6 via a 9019 motion, the Court does not find this argument

4   compelling.  He cites no authority for this distinction, and

5   the Court was able to locate any.  Additionally, based on the

6   Court's reading of Anwar, the Ninth Circuit would disagree with

7   the trustee's assertion.

8         Second, although the courts in Fundamental Long Term

9   care and Hartog based their authority to issue the bar order,

10   at least in part on the All Writs Acts, the Ninth Circuit has

11   not yet determined whether bankruptcy courts fall within the

12   scope of the All Writs Act.

13         Third, FRCP generally governs pre-trial procedures,

14   including conferences, scheduling, and management.  In

15   contrast, FRBP 7001(7) is much more specific and provides that

16   a proceeding to obtain injunctive or other equitable relief

17   must be sought via adversary proceeding.  A general rule of

18   statutory construction is that the specific governs over the

19   general.

20         In contrast to the Eleventh Circuit cases cited by the

21   trustee, the Fifth Circuit has directly addressed the issue of

22   whether an injunction can be sought via motion.  In Zale, after

23   Zale Corporation and its affiliates filed Chapter 11, the

24   official creditors' committees began investigating claims

25   against Zale's former directors.  Those were Gerstein, Gill,

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

68

1  Gillies, and Feld and others.

2          Under the threat of litigation, the directors began

3  negotiations and settlement discussions with the creditor

4  committees.  The negotiations included discussions regarding

5  Zale's D&O liability policy.  Cigna Insurance had issued a ten-

6  million-dollar primary policy, National Union Fire had issued

7  an excess policy up to fifteen million, and there was another

8  ten million policy that covered Gerstein, Gill, and Gillies.

9          Zale and Gerstein, Gill, and Gillies on one side and

10  Cigna on the other filed a motion seeking approval of a

11  settlement agreement.  The settlement indicated that Gerstein,

12  Gill, and Gillies would agree to a thirty-two-million-dollar

13  judgment against them to be paid out of insurance proceeds, and

14  they were to sign to Zale all rights under the policy.

15  Included in the agreement was a provision that conditioned the

16  settlement on the grant of a permanent injunction, preventing

17  parties from suing the settling parties for their actions in

18  reaching the settlement or from otherwise seeking to

19  collaterally attack the settlement agreement.

20          The purported reason for the injunction was to prevent

21  NUFIC, who is National Union Fire Insurance Company, and Feld,

22  the director excluded from the agreement, from bringing claims

23  against Cigna.  There was also a provision under which Zale

24  agreed to indemnify Cigna for bad faith or other claims against

25  it, regardless of the settlement.

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

69

1        The bankruptcy court approved the settlement motion

2    over the objection of NUFIC and Feld.  They appealed, arguing

3    that the injunction deprive them of rights, which the Court

4    could not do because neither NUFIC nor Feld were parties to the

5    agreement.  The district court affirmed.

6        NUFIC and Feld appealed to the Fifth Circuit, arguing,

7    among other things, that the bankruptcy court erred in granting

8    the injunction without conducting a full adversary proceeding.

9    The Fifth Circuit noted that Cigna and Zale had not filed a

10   complaint to determine injunctive relief, but instead simply

11   added the injunction to the settlement agreement.  The Fifth

12   Circuit stated that "including a matter governed by Rule 7001

13   in another matter already before the court does not satisfy the

14   Procedural Rules required by Rule 7001."

15       The Fifth Circuit concluded that Cigna and Zale failed

16   to initiate properly their request for injunctive relief, and

17   the Fifth Circuit reversed the district court's order approving

18   the settlement, vacated the settlement, and remanded to the

19   district court.

20       The Court finds that the Fifth Circuit's analysis in

21   Zale is compelling and more persuasive than the Eleventh

22   Circuit cases the trustee relies on, which contain no

23   discussion or analysis of whether an adversary or a 9019 motion

24   was required.  Although in the reply, the trustee claims that

25   after Zale, courts within the Fifth Circuit have entered

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

70

1    injunctions and not required adversary proceedings, this

2    argument requires little analysis.

3            In the case cited by the trustee, Mirant, debtor

4    sought district-court approval of a settlement agreement and

5    363 sale between Mirant and settling parties.  The settlement

6    agreement provided that after the settlement, all parties

7    holding interests against or in the debtor or other transferred

8    assets would be barred from asserting that the persons or

9    entities' interests against the party acquiring the transferred

10   assets.

11           Mirant is inapposite.  First, it contained no

12   discussion or analysis of whether an adversary proceeding was

13   required.  Further, it involved a 9019 motion as part of a sale

14   motion, rather than a bar against nonsettling defendants from

15   seeking indemnity or contribution, which is the issue here.

16           The trustee contends that he's seeking a bar order and

17   not an injunction, and therefore he can contends that FRBP 7001

18   is inapplicable.  The Court disagrees.  The difference between

19   a bar order and an injunction is a matter of semantics.

20   Black's Law Dictionary defines a bar as to prevent or prohibit

21   and an injunction as a court order preventing an action.

22           The trustee also seems to argue that FRBP 7001(7) is

23   limited to injunctions brought under FRBP, but the plain

24   language of FRBP 7001(7) is not that narrow.  If Congress had

25   meant to limit the reach of FRBP 7001(7) to apply only to

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

71

1   injunctions brought under FRBP 7065, it would have said so.

2          The Court recognizes that the standard for making a

3   good-faith finding under 877.6, which the trustee describes as

4   a bar order, and an injunction are different.  However, the end

5   result, which is the issue here, is the same.  One party, in

6   this case, BAC, CAVIC, and Universal Leader, Glove Assets would

7   be enjoined from any and all claims in any state or federal

8   jurisdiction or any other forum or tribunal against the

9   settling defendants or for equitable comparative contribution

10  or partial or comparative indemnity based on comparative

11  negligence or comparative fault.

12         And that portion that I just mentioned has been

13  described as a modified bar order, but the Court notes that

14  there is no modified bar order on the docket.  It is a

15  statement in the trustee's reply about how the bar order would

16  be modified.

17         Finally, as stated succinctly by the Ninth Circuit in

18  the context of a sale motion, "Bankruptcy Rule 7001 designates

19  ten categories of proceedings as adversary proceedings.  The

20  trustee may obtain the authority he seeks only through an

21  adversary proceeding.  The bankruptcy court's equitable powers

22  do not allow it to derogate from Rule 7001".  And that's In re:

23  Lyons, 995 F.2d 923 (9th Cir. 1993).

24         Because the motion is not the proper procedural

25  mechanism in which to seek a bar order, the Court could deny

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

72

1   the motion on that basis alone.  But even if that were not the

2   case, the motion must still be denied for the following

3   substantive reasons.

4           First, which law applies to the settlement agreement.

5   In a footnote in the motion, the trustee summarily states that

6   California law applies.  That's footnote 3 in the motion.

7           In the opposition, BAC and its related entities argue

8   that the Court rejected the trustee's position that California

9   law applies to the tort claims against them, instead finding

10  that New York law applied to those claims when it dismissed

11  with prejudice the FAC against BAC.

12          BAC highlight that the Court found that the choice of

13  law provisions in the Zetta BAC APAs were broad, governing both

14  the routine aspects of a contractual relationship as well as

15  any related claims arising under common law or statute,

16  including claim sounding and torts.  BAC assert that New York

17  law applies with equal force to any potential contribution or

18  indemnification liability that BAC may face.

19          In the reply, the trustee argues that because

20  California law governs the tort claims against the settling

21  defendants, it should also govern the settlement agreement.  He

22  highlights that the claims against the settling defendants were

23  initiated, prosecuted, and ultimately settled in California,

24  and they concern a California entity, Zetta Jet USA.  The

25  trustee posits that the only reason New York law governed the

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

73

1  BAC claims was the choice of law provision in the Zetta and BAC

2  APAs and the choice of law provision that the trustee and the

3  settling defendants included in the settlement agreements

4  specify that California law applies.

5        The trustee did not fully address the issue of what

6  law applied in the motion.  In fact, the trustee's position

7  that California law applied was mentioned in passing in a

8  three-sentence footnote -- excuse me, in a three-line footnote.

9  It was not until the reply that the trustee explained why he

10  believed that California law applied and cited a few cases, in

11  addition to Nucorp, which was mentioned in the motion to

12  support his position that California law applies.

13        Therefore, as previously noted, the Court need not

14  consider the argument or citations the trustee advanced for the

15  first time in the reply regarding the applicable law.  Even if

16  that were not the case and the trustee -- and the Court did

17  consider the argument and the authority the trustee cites in

18  the reply, the Court finds that the trustee's position is not

19  well taken.  In the reply, the trustee cites Nucorp, Commercial

20  Union, and Chen.  The first two cases are district court cases,

21  and the third one is from the California Supreme Court.

22        Nucorp involved securities litigation stemming from

23  the sale of Nucorp securities.  The plaintiffs engaged in

24  intensive settlement negotiations, resulting in the plaintiffs

25  and certain defendants, primarily Nucorp's officers and

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

74

1   directors, executing a forty-one-million-dollar settlement.

2   The settlement provided that it was made in good faith under

3   877 and 877.6, and all claims for contribution or

4   indemnification against the settling defendants arising under

5   federal securities law or state law in favor of any person

6   asserted to be a joint tortfeasor were extinguished,

7   discharged, satisfied, and/or otherwise unenforceable.

8         After a hearing, the magistrate judge found that the

9   settlement was executed in good faith.  Four of the nonsettling

10  defendants sought de novo review from the district court of the

11  good-faith finding and the order barring indemnification and

12  contribution.  The nonsettling defendants argued that if they

13  were found liable as joint tortfeasors with the settling

14  defendants under the pendent state law claims, they would have

15  state law contribution and indemnification causes of action.

16        Two of the nonsettling defendants allege that

17  California law didn't apply to the contribution and

18  indemnification claims, which they claim should be governed by

19  Texas and New York law.  The court disagreed, noting that

20  federal courts exercising pendent jurisdiction must apply the

21  choice of law and rules of the state in which it sits.  It

22  indicated that California courts apply the governmental

23  interest analysis to resolve choice-of-law problems.

24        According to the court, although Texas and New York

25  had some interest in the litigation, one of the nonsettling

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

75

1   defendants was headquartered in New York and another was

2   incorporated in Texas, the settlement was negotiated and

3   executed in California, a partially-terminated multidistrict

4   litigation that was initiated and consolidated in California,

5   and the litigation involved a corporation whose chief operation

6   during the alleged fraud was in San Diego.  Therefore, the

7   court held that California law applied.

8          Similarly in Commercial Union, John Meyers sued

9   Haberfelde, Ford, and Ford Motor Company for injuries he

10  incurred in an automobile accident rendering him a

11  quadriplegic.  In a tactical maneuver on the eve of trial, he

12  dismissed Ford from the suit, and the trial proceeded against

13  Haberfelde, with the jury rendering a verdict of 3.25 million.

14  Before and during the trial, Meyers offered to settle, first

15  for 150,000 and then for 350.  Commercial Union, Haberfelde's

16  insurer, refused both settlement offers.

17         After trial, Commercial settled the case for 2.875.

18  Commercial then sued Ford for partial indemnity regarding that

19  payment.  Although Ford contended that Washington or Oregon law

20  controlled the question of indemnity, the court noted that

21  California had an interest in applying the indemnity law.

22  Because Haberfelde was a California resident, the underlying

23  personal injury action was tried in a California court, and

24  Haberfelde's negligence in repairing the car, which was the

25  basis for the judgment against it, occurred in California.

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

76

1        Finally, the trustee cites Chen, a state court case

2   involving a lawsuit that was filed after a fatal bus crash,

3   which potentially implicated four jurisdictions, Indiana,

4   Arizona, California, and China.  The trial court determined

5   that the governmental interest test required application of

6   Indiana law.  Before trial, the plaintiff settled and dismissed

7   the Indiana defendant from the action.  The issue before the

8   appellate court was whether after dismissal of the Indiana

9   defendant, the trial court was required to reconsider its prior

10  choice-of-law ruling.  The court of appeals answered that

11  question no.

12       In contrast to Nucorp, this case does not involve

13  pendent jurisdiction over the claims the trustee seeks to

14  settle.  Further, unlike Commercial Union, a case in which

15  subject-matter jurisdiction was based on diversity, here, the

16  Court has original jurisdiction over the Jetcraft adversary

17  proceeding claims.

18       And Chen is inapposite.  It was a state court case

19  where the court utilized the governmental interest test to

20  determine applicable state law.  In contrast, in bankruptcy

21  cases, as the trustee has acknowledged, under binding Ninth

22  Circuit precedent, courts utilized the Restatement (Second)

23  Conflicts of Law to determine the applicable law.  The trustee

24  acknowledged this in the opposition to BAC and its related

25  entities' motion to dismiss.  That was filed on January 14,

Case 2:17-bk-21386-SK   Doc 2082   Filed 02/20/23   Entered 02/20/23 05:07:19   Desc
Main Document      Page 77 of 163
**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

77

1    '22.  That's docket number 349.

2             Although the trustee cites In re: Allstate, a District

3    of Arizona decision, in both the motion and reply, his reliance

4    on that case is not persuasive.  There, an Arizona district

5    court approved an unopposed settlement agreement which

6    contained a bar order, which was issued with a settlement

7    agreement in a consolidated securities-fraud action.

8             The problem for the trustee is the order he -- is that

9    in that order which he cites, it does not contain any

10   information regarding the evidence substantiating the court's

11   good-faith finding.  Without more, it merely indicates that

12   based on facts in that case, which are impossible to discern

13   from the order, the Court found that contribution and

14   indemnification claims under Federal Securities Law, Arizona

15   statutes and Cal. Civil Procedure Code 877 were barred.

16            Further, the trustee asserts that the tort claims that

17   are at issue in the settlement agreement were initiated,

18   prosecuted, and ultimately settled in California concerning a

19   California entity.  That argument is unavailing.  It is true

20   that the Jetcraft AP was filed in California, but there's no

21   evidence before the Court that this settlement occurred in

22   California.  It is beyond dispute that the trustee and

23   trustee's lead counsel are in Chicago, and all litigation

24   appears to be directed from there.

25            Retired Judge Gross, who mediated the case, is located

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

78

1    in Delaware.  Lead counsel for the FK defendants and Jetcraft

2    defendants are located in Washington, D.C.  Fazal-Karim is a

3    resident of Dubai.  And Jetcraft Corp. is a Delaware

4    corporation with a principal place of business in North

5    Carolina.  Jetcraft Global and Jetcraft Asia are British Virgin

6    Islands corporations with their principal place of business in

7    North Carolina.  Jetcoast is a Delaware corporation with a

8    North Carolina mailing address.

9         And the trustee's assertion that the settlement

10   involved a California entity, Zetta USA is only minimally

11   correct.  The trustee is leaving out the fact that he is a

12   trustee for two separate debtors, Zetta Singapore and Zetta

13   USA.  Each debtor filed its own case, and the cases have not

14   been consolidated.  And it is clear from the FAAC's allegations

15   regarding the tort claims that Zetta Singapore, not Zetta USA,

16   executed each of the APAs that are at issue in the tort claims.

17        The FAAC indicates that Zetta USA operated the planes

18   under its Part 135 certificates, which were required to comply

19   with FAA regulations, and Zetta USA also guaranteed the

20   aircraft financing.  But it's undisputed that Zetta USA did not

21   execute the APAs or enter into any agreements to buy more

22   aircraft that were at issue in the tort claims.

23        As the Court noted when ruling on the FK and related

24   entities' motion to dismiss, this is docket 384, "central to

25   the allegation supporting the tort claims", those are counts I,

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

1    II, III, VI, and VII, "is that the FK defendants, Jetcraft, and

2    BAC (indiscernible) paid Cassidy two 500,000-dollar bribes,

3    provided him with Formula One tickets, and promised him sea

4    dues to cause the debtor to enter transactions and take

5    delivery of overpriced aircraft.

6         In the ruling on the FK defendant's motion to dismiss

7    the first amended complaint, the Court addressed a similar

8    argument that the trustee advances here regarding conduct

9    occurring in California.  In the context of ruling on Count

10   III, the California unfair competition claim, the Court

11   determined there were insufficient allegations to support a

12   California nexus because Zetta Singapore executed Plane 1 and

13   10's APAs, not Zetta USA, which obligated Zetta Singapore to

14   pay for those aircraft.

15        The Court also considered and rejected the trustee's

16   position that the debtors' primary base of operation was

17   California because the trustee argued that the debtors' key

18   personnel were located here, and they operated revenue-

19   generating flights in California.

20        Although Seagrim and Walter, directors of both Zetta

21   Singapore and Zetta USA were located in Burbank, Zetta

22   Singapore bought the aircrafts and the transactions did not

23   close in California and the kickbacks and sea due credit

24   against the Nyota were not authorized or received in

25   California.  The law of the case doctrine and prohibits this

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

80

1  Court from considering again whether the debtors' primary base

2  of operation was in California.

3         It is true that when ruling on the motion to dismiss

4  the first amended complaint, the Court applied California law

5  to the tort claims against the FK defendants.  But contrary to

6  the trustee's assertion, the Court made no findings that the

7  torts the trustee seeks to settle actually occurred in

8  California.  In fact, as noted, the Court found to the

9  contrary.

10         The trustee, who has burden on a 9019 motion, has not

11  analyzed or provided any authority that the Restatement

12  (Second) Conflict of Law would require the Court to apply

13  California law to the settlement agreement.  Therefore, the

14  Court finds the trustee has not met his burden of demonstrating

15  that California law applies to the settlement.  Even if,

16  however, the trustee had presented sufficient evidence,

17  argument, and analysis substantiating his assertion that

18  California law applied to the settlement agreement, it would

19  not matter because as the Court will analyze, there is

20  insufficient evidence from which the Court can make a good-

21  faith finding under Tech-Bilt.

22         In the motion, the trustee argues that the settlement

23  agreement satisfies the relevant Tech-Bilt good-faith factors.

24  Although the trustee acknowledges that the settling defendants'

25  liability exceeds the 9.5-million-dollar settlement amount, he

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

81

1    reasons that it is recognized that a settlor should pay less

2    than it would if found liable after trial.

3         The trustee contends that a settlor -- the trustee

4    contends that the likelihood of success if the claims were

5    litigated is uncertain and the settlement amount is fair in

6    light of the strengths and weaknesses of the trustee's claims

7    and the expense, delay, and risk inherent in litigation.  The

8    trustee explains that there is no evidence of fraud or

9    collusion that would injure the nonsettling parties and the

10   settlement agreement resulted from good-faith mediation.

11        BAC and its related entities respond that the trustee

12   cannot satisfy the good-faith factors.  They assert that

13   California courts have consistently held that a settling

14   defendants' proportional liability is one of the most important

15   factors, and courts regularly deny settlement when the moving

16   party fails to demonstrate that its settling parties' liability

17   for the plaintiff's approximate recovery is roughly consistent

18   with the amount being paid in settlement.

19        BAC highlight that the trustee's position that the

20   settling defendants' liability exceeds the settlement amount

21   falls short of what is required.  They argue that relying on

22   mediation and the November 29th mediator's report to

23   demonstrate good faith is insufficient for the Court to make a

24   good-faith finding, which would require a full evidentiary

25   hearing based on a developed record in accordance with 877.6.

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

82

1          In the reply, the trustee reiterates that he has

2    satisfied the good-faith factors and asserts that BAC's focus

3    on proportionate liability is misplaced.  He argues that the

4    party asserting lack of good faith has the burden of proof,

5    which can only be met if they showed that the settlement is so

6    far out of the ballpark of good faith that the settlement is

7    inconsistent with the equitable objectives of the statute.  The

8    trustee contends that good faith may be challenged only when

9    the settlement is grossly disproportionate to what a reasonable

10   person at the time of the settlement was estimate the settling

11   parties' liability to be.  He asserts that a court is not

12   required to determine approximate liability with precision, but

13   an educated guess will suffice.

14          Cal. Civil Procedure Code 877 provides where a

15   release, dismissal with or without prejudice, or a covenant not

16   to sue is given in good faith before a verdict or judgment to

17   one or more of a number of tortfeasors claimed to be liable for

18   the same tort, or to one or more coobligors mutually subject to

19   contribution rights, it shall have the following effect:  A, it

20   shall not discharge any other such party from liability unless

21   its terms so provide, but it shall reduce the claims against

22   the others in the amount stipulated by the release, the

23   dismissal, or the covenant, or in the amount of the

24   consideration paid for it, whichever is the greater; and B, it

25   shall discharge the party to whom it is given from all

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

83

1   liability for any contribution to any other party.

2        Cal. Civil Procedure Code 877.6 is titled

3   "Determination of good faith of settlement with one or more

4   tortfeasors or obligors".  Section (a)(2) provides, "a settling

5   party may give notice of settlement to all parties and to the

6   court, together with an application for determination of good-

7   faith settlement and a proposed order.  The application shall

8   indicate the settling parties, and the basis, terms, and amount

9   of the settlement."

10        (b), "The issue of good faith of a settlement may be

11   determined by the party (sic) on the basis of affidavits served

12   with the notice of hearing, and any counter-affidavits filed in

13   response, or the court may, in its discretion, receive other

14   evidence in the hearing."

15        (c), "A determination by the court that the settlement

16   was made in good faith shall bar any other joint tortfeasor or

17   coobligor from any further claims against the settling

18   tortfeasor coobligor for equitable comparative contribution, or

19   partial or comparative indemnity, based on comparative

20   negligence or comparative fault.

21        "The party asserting lack of good faith shall have the

22   burden of proof on the issue."

23        According to the California Supreme Court in assessing

24   whether a settlement is made in good faith, courts examine

25   whether the amount of the settlement is within the reasonable

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

84

1   range of the settling tortfeasor's proportional share of

2   comparative liability for the plaintiff's injury.  That's from

3   Tech-Bilt.  Factors that the courts consider, and these are

4   called the good-faith factors:

5        A rough approximation of plaintiff's total recovery

6   and the settlor's proportionate liability; two, the amount paid

7   in the settlement; three, the allocation of settlement proceeds

8   among plaintiffs; four, a recognition that a settlor should pay

9   less in settlement than it would if it were found liable after

10  trial; five, the financial conditions and insurance policy

11  limits of settling defendants; six, the existence of collusion,

12  fraud, or tortious conduct aimed to injure the nonsettling

13  defendants' interests.

14       According to the California Supreme Court, 877.6

15  requires courts to review agreements "to ensure that such

16  settlements approximately balance the contribution statute's

17  dual objectives, which are equal sharing of costs among parties

18  at fault and encouragement of settlement.  Determining whether

19  a settlement is in good faith is a matter left to the sound

20  discretion of the trial court."  That's Navarro, 2018 WL

21  6242155, Central District California, 2018.

22       If the issue of good faith is contested, there must be

23  a sufficient showing of all Tech-Bilt factors, either in the

24  original moving papers or in counter declarations.  That's

25  Navarro at *4.  One of the most important factors is the

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

85

1   settling parties' proportionate liability.  That's Toyota Motor

2   Sales, 220 Cal.App.3d 864, 1990.

3         As the court in Tech-Bilt noted, the question is

4   whether the settlement presents a good-faith determination of

5   the defendant's relative liabilities.  If there is no

6   substantial evidence to support a critical assumption as to the

7   nature and extent of a settling defendant's liability, then a

8   determination of good faith is an abuse of discretion.  Toyota,

9   200 Cal.App.3d at 871.

10        A party asserting a lack of good faith who has the

11  burden of proof on that issue should be allowed to present

12  evidence demonstrating that the settlement is so out of the

13  ballpark to be inconsistent with the equitable objectives of

14  877.6.  Tech-Bilt.

15        Both the trustee and BAC cite and rely on

16  Zahnleuter -- I'm not saying that correctly; it's 2021 WL

17  4975392 -- to support their respective positions.  In that

18  case, the district court was confronted with whether to approve

19  a settlement agreement under 877.6.  Katherine Zahnleuter

20  alleged that her sister, Amy Mueller, conspired with an

21  attorney, Gabriel Lenhart and his firm, collectively called

22  Lenhart, to fraudulently amend a family trust.

23        Zahnleuter asserted that the fraudulent amendment

24  forced her to seek costly relief in a state court case which

25  ended abruptly during trial when evidence of the fraud came to

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

86

1  light.  Zahnleuter sued in federal court, seeking damages for

2  attorneys' fees and other expenses she incurred in the state

3  court litigation.

4        Lenhart and Zahnleuter then reached a settlement

5  agreement.  Lenhart would pay 105,000 to Zahnleuter in exchange

6  for her release of all claims against him.  Lenhart submitted

7  two declarations from the attorney who represented him and

8  (indiscernible) finding from the Court that the settlement

9  complied with 877.6 good-faith requirements.

10       After citing the Tech-Bilt factors, the court noted

11  that there needed to be some evidentiary basis for evaluating

12  the proportionate liability and total approximate recovery.

13  According to the court, proportionate liability is one of the

14  most important factors a court must examine when determining a

15  settlement has been made in good faith under 877.6.  And if

16  there is not substantial evidence to support a critical

17  assumption as to the nature and extent of a settling

18  defendant's liability, then a determination of good faith based

19  on some such assumption is an abuse of discretion.  That's

20  Zahnleuter citing Toyota Motors.

21       The court in Zahnleuter indicated that based on the

22  record, it could not determine whether the settlement properly

23  took account of Lenhart's proportionate liability, and it could

24  not conclude it was made in good faith.  The only estimate of

25  total damages, 400,000 dollars, was included in Zahnleuter's

Case 2:17-bk-21386-SK   Doc 2082   Filed 02/20/23   Entered 02/20/23 05:07:19   Desc
Main Document     Page 87 of 163
**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

87

1    initial disclosures, and even assuming that amount was

2    accurate, the 105,000-dollar settlement accounted for

3    approximately twenty-five percent of the defendant's total

4    exposure, although Lenhart defendants had greatest potential

5    liability.

6          Counsel represented that the settlement was reasonable

7    because he believed that Lenhart would be found no more than

8    fifty per liable, but the court indicated there was no

9    explanation for why that was so.  In dicta, the court opined

10   that a declaration or testimony from an expert familiar with

11   pertinent valuation criteria may be sufficient to show a

12   settlement falls within a reasonable range.  So can a

13   declaration from an experienced settlement negotiator.

14         But the court determined that two conclusory

15   declarations from counsel were insufficient.  And that court

16   concluded by citing Espinoza, an Eastern District of California

17   case, "Whatever method is utilized in a contested case, the

18   information provided must be sufficient to reasonably place a

19   value on the underlying claim so the court can conduct a Tech-

20   Bilt analysis."

21         Both sides also refer to Navarro from the Central

22   District of California to support their positions.  In Navarro,

23   the district court was confronted with whether there was

24   sufficient evidence to make a good faith finding under 877.6.

25   Norma Navarro and Waldemar Valentin were driving in a car that

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

1  was involved in an automobile accident with a tractor-trailer

2  truck that Fred Hamilton had parked on the side of the freeway.

3  Valentin, who was driving, lost control of the vehicle,

4  collided with the truck.  Valentin and Navarro were both

5  seriously injured and sued Hamilton and his company for various

6  negligence causes of action.

7       Hamilton removed the case to district court, and

8  counterclaims alleging that Valentin, who pled guilty to DUI,

9  was driving under the influence, which was a sole or

10  substantial factor in his and Navarro's injuries.  Hamilton

11  asserted equitable indemnity and contribution claims against

12  Valentin.  Valentin and Navarro settled for 15,000 dollars in

13  exchange for a release of all claims arising from the accident,

14  and Valentin sought a good-faith finding under 877.6.

15       The court began its analysis by recognizing that

16  principle among the Tech-Bilt factors is whether the amount

17  paid in settlement bears a reasonable relationship to the

18  settlor's proportionate share.  The court noted that the

19  parties had not provided a sufficient evidentiary basis to

20  determine whether the settlement was made in good faith.

21       The court recognized that in most cases, a settling

22  defendant's good faith is uncontested and a bare bones motion

23  and declaration would suffice.  Then, the burden would shift to

24  the nonsettlor to demonstrate lack of good faith.  But if the

25  issue of good faith was contested, the settling tortfeasor must

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

89

1  make a sufficient showing of all Tech-Bilt factors, either in

2  the original moving papers or in counter declarations.

3       The court concluded by quoting City of Grand Terrace,

4  192 Cal.App.3d 1251, "A necessary corollary to the definition

5  of good faith in Tech-Bilt is that the trial court's

6  consideration of the settlement agreement and its relationship

7  to the entire litigation in a contested setting must proceed

8  upon a sufficient evidentiary basis to enable the court to

9  consider and evaluate the various aspects of the settlement.

10  If there is no substantial evidence to support a critical

11  assumption, then a court would abuse its discretion in making a

12  good-faith finding."

13       Here, there is a dearth of evidence from which the

14  Court could make a good-faith finding.  First, in the trustee's

15  declaration, he summarily states the following, "I further

16  believe that the settlement agreement satisfies each of the

17  good-faith factors relevant to finding that the settlement

18  agreement was entered into good faith."

19       The only other evidence that the trustee presented to

20  support his position that 877.6 good-faith factors are met is

21  the November 29th mediator's report and the January 11th

22  mediator's statement.  A careful reading of both those reports

23  or statements does not advance the trustee's position.  In the

24  November 29th mediator's report, the mediator mentioned good

25  faith three times.

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

90

1          The parties "worked hard, consciously and in good

2     faith, to finalize a resolution".  Two, he was "fully satisfied

3     that it is only by virtue of the parties' good faith and

4     commitment to achieving a settlement".  That one was reached.

5     And three, the parties, in particular, the trustee, negotiated

6     the settlement with commitment and in good faith.  These

7     statements address how the parties participated in the

8     negotiations before the mediator but provide no evidence from

9     which the Court can make a good-faith finding required by

10    877.6.

11         The January 11th mediator's statement likewise is

12    insufficient.  It indicates that the trustee and the Jetcraft

13    defendants and FK defendants were aware of the Tech-Bilt

14    factors and took those factors into account in reaching a

15    settlement.  The mediator opines that BAC, CAVIC, and

16    University Leader and Glove's opposition "do not treat the

17    trustee and the Jetcraft and FK defendants fairly regarding

18    their consideration of what a good-faith settlement requires."

19         The problem for the trustee is whether he and the

20    Jetcraft defendants considered the settlement to be in good

21    faith is not determinative.  What is determinative is whether

22    the Court has sufficient evidence before it from which to find

23    that the good-faith factors have been met, and it does not.  It

24    is undisputed that the trustee had the ability to provide

25    evidence necessary from which the Court could determine the

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

91

1 | proportionate liability of the FK and Jetcraft defendants.

2 |       The trustee's financial advisers, first, Seabury and

3 | now FTI, have billed and been paid approximately a million

4 | dollars combined.  The trustee did not present any evidence to

5 | substantiate a good-faith finding, other than a conclusory

6 | statement indicating that he believed the settlement agreement

7 | satisfies the good-faith factors and the January 11th

8 | mediator's statement that the trustee and settling defendants

9 | were aware of the Tech-Bilt factors and took them into account.

10 |       This is a far cry from being sufficient for the Court

11 | to evaluate the proportional liability of the settling

12 | defendants and the total approximate recovery.  The trustee is

13 | correct that the burden is on the party asserting lack of good

14 | faith to show that the settlement is so out of the ballpark

15 | that it is inconsistent with the good-faith principles.  But

16 | here, there is no evidence of what that ballpark actually is.

17 |       Finally, the trustee's assertion that good faith may

18 | only be challenged if a settlement is grossly disproportionate

19 | to what a reasonable person would estimate the settling

20 | parties' liability would be is a correct statement of the law.

21 | Here, however, there is no evidence from which a reasonable

22 | person could estimate the settling defendants' liability.

23 |       The trustee's argument in the reply brief regarding,

24 | one, what Bombardier's and the settling defendant's liability

25 | would be if he prevailed at trial; two, that Bombardier

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

92

1    benefited more from the settling defendants; and three,

2    Bombardier would be independently liable for fraudulent

3    transfer claims, which should not be factored into the settling

4    defendants' proportional liability, do not alter this

5    conclusion.  Argument is not evidence.  Therefore, even if

6    California law did apply to the settlement agreement without

7    sufficient evidence from which to make a good-faith finding, it

8    cannot be approved.

9         The trustee also argues that Bombardier's concerns

10   about proportionate liability are baseless because it has been

11   dismissed with prejudice from the Jetcraft adversary

12   proceeding.  But the trustee has appealed that ruling, so any

13   argument that Bombardier's concerns are irrelevant is

14   unavailing.

15        Finally, although the motion was brought under Rule

16   9019, both the opposition and reply focus almost exclusively on

17   whether 877.6 and the Tech-Bilt good-faith factors are met.  As

18   the trustee acknowledges, the standard for approving a 9019

19   motion is the same, or as one court opined, more exacting, than

20   the 877.6 standard because the trustee has the burden of proof

21   on a 9019 motion.  As noted, there is insufficient evidence

22   from which the Court can make a good-faith finding under Tech-

23   Bilt.

24        Therefore, the Court finds that the trustee has not

25   met his burden of demonstrating that the 9019 motion should or

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

93

1    could be granted.

2           There were a couple of other issues that I want to

3    address regarding this motion in particular, and then we will

4    take a recess, as I noted, and we'll come back for the

5    remaining matters.

6           There were a couple of troubling issues involving the

7    briefing.  Regarding a number of issues, the trustee either did

8    not address them in the motion, such as whether an adversary

9    proceeding or a motion was appropriate for the relief

10   requested, or summarily addressed them in a few lines, such as

11   the applicability of California law.  It was only in the reply

12   brief that the trustee even addressed the proper procedural

13   mechanism for seeking the relief requested, and he cited

14   additional cases to support his position that California law

15   applied.

16          And in the reply brief, the trustee changed the terms

17   of the order after BAC raised issues regarding its scope that

18   there was no modified order on the docket.  The trustee as well

19   as trustee's counsel are sophisticated, and they know it's

20   inappropriate to sit back, wait to see if an opponent or the

21   Court notices an issue, and then fully reply to it and fully

22   brief it in a reply.

23          As the Court noted in its ruling, the Court need not

24   consider an argument or case raised for the first time in the

25   reply.  In the future, if this type of briefing continues by

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

94

1    any party, I will not consider any argument, case, statute, et

2    cetera that was not specifically mentioned in the motion.

3          There was also another issue that did not go

4    unnoticed.  The reply brief contained lengthy footnotes.  As

5    I'm sure each of the parties can recall, during a November

6    17th, 2021, status conference which the Court held because the

7    trustee had filed an oversized brief without first receiving

8    authorization to do so, the Court addressed a number of issues

9    regarding parties flouting the rules, filing late briefs, et

10   cetera.  One of the issues that the Court specifically

11   mentioned was that footnotes had gotten out of control, with

12   some being a third or a half page long, and I ordered that

13   footnotes would be limited to three lines.  The reply brief in

14   numerous places violates the Court's instruction.

15         To avoid any doubt in the future, if any party

16   violates those direct orders, not just regarding footnotes, but

17   regarding anything else that the Court addressed during that

18   hearing, and that's Jetcraft docket number 343, there will be

19   consequences, including but not limited to striking whatever

20   argument, striking footnotes, up to and possibly striking an

21   entire brief.  I want to make sure everybody's on notice

22   because that was the issue of a hearing, and the Court said in

23   no uncertain terms and indicated what would be authorized and

24   what would not be authorized.

25         With that, the hearing on the 9019 motion concludes.

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

95

1        Ms. Fornos, you are the prevailing party.  If you

2   would please upload an order within seven days via LOU that

3   just says, for the reasons stated on the record, the motion is

4   denied, that would be appreciated.

5        We will now be in recess.  It's 12:13.  We'll be in

6   recess till 1:15, when the Court will take up the other matters

7   in this case.  Off the record.

8      (Recess from 12:13 p.m., until 1:15 p.m.)

9        THE COURT:  Good afternoon, again.  Calling matter

10   number 10 in the Zetta Jet matter, which is the Chapter 7

11   trustee's seventh motion under LBR 2016-2 for approval of cash

12   disbursements.

13        I see a number of people with their videos on.  If

14   you're going to be arguing this motion, I'll ask that you keep

15   your video on.  If you are not, then I'll ask you to turn off

16   your video.

17        I see Mr. Bovitz.

18        MR. BOVITZ:  Yes, J. Scott Bovitz, Bovitz & Spitzer,

19   for the fee examiner, Nancy Rapaport.

20        THE COURT:  Thank you.

21        Mr. Bernstein.

22        MR. BERNSTEIN:  Good afternoon, Your Honor.  Michael

23   Bernstein of Arnold & Porter on behalf of Universal Leader and

24   Glove Asset Investments.

25        THE COURT:  Good afternoon.

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

96

1         Mr. Lyons.

2         MR. LYONS:  Yes, Your Honor.  John Lyons on behalf of

3    the trustee.

4         THE COURT:  Good afternoon.

5         And Mr. King.

6         MR. KING:  Good afternoon, Judge.  It's John King, the

7    Chapter 7 trustee.  I am present but will not be arguing.

8         THE COURT:  Okay.  Thank you.

9         So normally, these are very uncontroversial motions,

10   but obviously there was an objection filed by Universal Leader

11   and Glove Assets.  And some of the issues raised by Universal

12   Leader, Glover Assets are concerns for the Court, and the Court

13   actually has other concerns.

14        I did issue an order yesterday asking for the

15   appraisal that's referenced.  There was a response filed

16   indicating that the report contains highly sensitive

17   information that if publicly disclosed may adversely impact the

18   trustee's ability to maximize value for the estates.

19        Mr. Lyons, does that mean you can't give the Court a

20   figure?

21        MR. LYONS:  Your Honor, that's part of the issue we

22   have.  I mean, Your Honor, we will do with whatever Your Honor

23   orders, obviously, but we're heading into an auction, and to

24   disclose what that valuation number might be, Your Honor, might

25   basically impose a ceiling on other bidders.  So it has a very

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

97

1   detrimental effect.  We're a participant.  We're a judgment

2   creditor.  The bailiff is going to be selling the boat.  But

3   disclosing that figure could kill bidding, and that's why we

4   wanted to talk to Your Honor first.

5           THE COURT:  Okay.  So I have a number of questions.

6   The motion indicates that you've been in discussions with the

7   Australian authorities regarding replacing the seizure warrant

8   with the judgment that this Court issued.  And we are --

9   because it sounds like the auction is going forward, but there

10  was nothing in your motion that said when that would be or how

11  it would be or what would happen.

12          MR. LYONS:  Yes, Your Honor, that's still ongoing.

13  We're working through DLA Australia with the Australia Federal

14  Police, and they're working on the mechanics to do that.  So we

15  don't have a date yet.  And we wanted to get this advance

16  authority from Your Honor so once it does go forward, we're

17  ready to go.  But we don't have a date yet.  It's still in

18  process.

19          THE COURT:  Okay.  So I'm certainly not an expert in

20  seizure warrants, but it appears that the District court here

21  issued the seizure warrant, and it was relayed to the

22  Australian authorities.  Have you been in communication with

23  the parties who obtained the seizure warrant here to see if

24  they would be in agreement with what you're proposing that the

25  Australian authorities do?

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

98

1          MR. LYONS:  Yes, we have, Your Honor.  Right now, the

2   channel, though, is directly with the AFP because then they in

3   turn discuss it with the Department of Justice here in the U.S.

4          THE COURT:  Okay.  How much is the monthly storage

5   fee?

6          MR. LYONS:  Boy, Your Honor, let me see this -- give

7   me one second.

8          MR. KING:  If I could just interject for one second,

9   Your Honor.  We have had discussions with the Department of

10  Justice ourselves.  I don't want to get into the details unless

11  Your Honor requires it, but I also want that to be known.

12         THE COURT:  That's fine.  But it just seems to me the

13  Australian authorities are merely doing what the Department of

14  Justice are telling them to do.  So it seems like you might not

15  be talking to the entity that issued the warrant.  And I don't

16  think you were talking to the entity that issued the seizure

17  warrant.  And it seems like discussions should be ongoing with

18  that entity, rather than the entity that's merely enforcing

19  that seizure warrant.

20         MR. KING:  Yes.

21         THE COURT:  Okay.  Mr. Lyons, how much are the storage

22  fees?

23         MR. LYONS:  Your Honor, I am trying to find it.  I do

24  have the stay here.  I know it's in this -- because it is an

25  issue that Mr. Lack did look at and believed to be reasonable.

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

99

1          THE COURT:  Mr. who?

2          MR. KING:  Mr. Lack, Your Honor.  He's the Australian

3  Marine Surveyor who we noted in our --

4          THE COURT:  Yes.

5          MR. LYONS:  Well, I'll tell you what.  I'd give it by

6  foot.  It's $2.48 per foot, Australian dollars, to store it per

7  day.  So I'm trying to extrapolate that into the monthly fee.

8          I apologize, Your Honor.  This isn't handy to me.  It

9  requires some math, but let me see if I can --

10          THE COURT:  All right.  Well, I'll let you work on

11  that.  I had other questions.  What does that monthly storage

12  fee entail?

13          I'm just thinking, and this is an imperfect

14  comparison, but if I had a car that were sitting out for five

15  years, it would require significant maintenance before it could

16  be used.  It would need -- the engine would need to turn over.

17  It would need to be maintained.  And the yard is in salt water,

18  which is extremely corrosive, and ships and boats and yachts

19  need to be maintained.  And I don't know what Morimoto

20  (phonetic) is doing for this yacht.

21          MR. LYONS:  Your Honor, it's now out of the water

22  actually.  It's in shrink wrap.  So it's no longer -- it's no

23  longer in seawater.  But Your Honor -- and I don't want to

24  reveal too much sensitive information, but Mr. Lack did take

25  into account the current state of the boat.

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

1          THE COURT:  And that was that was my question.  But

2  it's no longer sitting in the water?

3          MR. LYONS:  Yes It is no longer sitting In the water,

4  correct.  It sits on a dry dock, shrink-wrapped.

5          THE COURT:  When was it removed from the water?

6          MR. LYONS:  I believe it was -- and perhaps the

7  trustee has a better recollection, but I believe it was

8  beginning of this year or towards the end of last year.  But it

9  was in the water for a period of time.  And certainly, that

10  didn't enhance the value.  I mean, it was purchased for over

11  3.4 million dollars back in 2017.  So there has been some

12  degradation of value.  But now, it's out of the water.  And

13  certainly the valuation we have takes that into account.

14          THE COURT:  And when you said beginning of this year

15  or end of last year, you're talking about beginning of 2023?

16          MR. LYONS:  Yes, I believe so, Your Honor.  That's

17  right.

18          THE COURT:  So it was in the water from the beginning

19  of this case for basically five years?

20          MR. LYONS:  It was.  Since the time it was seized,

21  correct.

22          THE COURT:  Okay.  And was it maintained?  Was someone

23  turning the engine over?  Was someone doing what regular

24  maintenance of a boat in salt water needs to do?

25          MR. LYONS:  We don't have direct information for that

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

1    because if Your Honor recalls, we were unable to obtain the

2    writ of attachment, and it remained in Linkage's name.  So we

3    don't have a lot of visibility into actually what was happening

4    during that time frame.

5            But I don't believe it was being operated or the

6    engines run.  I think it was just basically in the water being

7    stored until it was then removed from the water.

8            THE COURT:  And the fees that you indicate are

9    currently owed are 225,000 dollars.  That translates into U.S.

10   dollars of roughly 150,000.  You're actually asking for 75,000

11   dollars more than what the current amount is.

12           MR. LYONS:  Yeah, I guess, Your Honor, we wanted to

13   build in a little bit of buffer in case there are unforeseen

14   costs that we're unaware of, and also for perhaps a limited

15   time -- if we were to take title, judicial title.  So there's a

16   little bit of buffer into that.  We would obviously endeavor to

17   keep that as low as possible.  And in the best of all worlds,

18   Your Honor, the boat will be sold at a price that the trustee

19   believes is within the range of market value.

20           THE COURT:  And one thing that's troubling me about

21   this, Mr. Lyons, and I just don't understand.  Assuming I were

22   to authorize the 225, okay, then you'd wait for the auction,

23   and then you would credit bid that, hypothetically, and --

24           MR. LYONS:  (Indiscernible).

25           THE COURT:  -- you would then have to turn around and

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

1  sell the boat, or the yacht, whatever you want to call it.  So

2  why would you obtain more for the sale in a boat that's older

3  than the authorities will be obtaining when they do their

4  auction?

5      MR. LYONS:  Well, Your Honor, I think part of it is

6  that we're not in direct control of the marketing process.  The

7  judicial officer is.  And if the bid -- if a bid would come in

8  for just the storage costs, Your Honor, it would be just

9  dramatically below the fair-market value.  And it may well

10  be -- certainly, and Your Honor, this is where I don't want to

11  get into too much information because I think it -- I don't

12  know how we can do this, Your Honor, because certain of the

13  information, I think, falls into that highly sensitive

14  information that I think would not be for the benefit of the

15  estate.

16      THE COURT:  Well --

17      MR. LYONS:  More than just the number, Your Honor.

18  More than just the number of the fair-market value.

19      THE COURT:  I understand your concerns about

20  confidentiality, Mr. Lyons, but the problem is I need to make

21  an informed decision.  And right now, you're asking me to make

22  a decision based upon insufficient facts because you're saying

23  that the value is significantly higher.  You haven't given me

24  anything to demonstrate that.

25      I don't know, and I'm going to take a recess for you

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

103

1   to calculate what the storage fees are, because assuming I

2   granted the motion, then you credit bid it, then you'd have to

3   store the yacht for the amount of time that you'd be marketing

4   it.  And I looked at the Code provision that you cited, and it

5   looks like they generally market and sell property.  You cited

6   the entire civil code, but I did look for the sale procedures

7   mechanism, and at least to me, at first blush, it looks like

8   they're going to do essentially what you do.

9           MR. LYONS:  Your Honor, can I make a suggestion?

10          THE COURT:  Certainly.

11          MR. LYONS:  Because we want to get you this

12  information because I think this will definitely inform Your

13  Honor's decision on this.  Would it be possible to file a

14  supplemental declaration, under seal, and the basis is this is

15  highly confidential commercial information going to the bidding

16  for the boat.  If Your Honor disagrees that it should be under

17  seal, you'll certainly deny the motion, and we can file it.

18  But at least it will give you the information, Your Honor.  And

19  certainly, at the conclusion of the auction, don't need to seal

20  it anymore.  This is just a very temporarily limited sensitive

21  information.

22          But I think it will inform Your Honor on the issues

23  that you're raising.  I'm trying to think of a way here, Your

24  Honor, to not divulge that information because I think once I

25  reveal it, Your Honor will understand why I'm so sensitive

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

104

1   about revealing this.

2          THE COURT:  Well, in terms of an appraisal, and again,

3   I've never been involved with the sale of a seventy-foot yacht,

4   but I would assume anybody bidding on it would get their own

5   appraisal before they bid on it, or do people bid on these

6   things sight-unseen and they just assume it's going to have a

7   certain value?

8          MR. LYONS:  Well, no, Your Honor, but if you're a

9   bidder and someone knows what your number is, they're not going

10  to bid a penny over it.  And I need to stop there because I'd

11  love to add more and you'd see it in a proper context but -- I

12  mean, Your Honor, listen, if you're requiring that, I'll lay it

13  out.  But I think it would be potentially detrimental to the

14  ultimate values that we're going to be able to recover.

15         THE COURT:  Well, let's do this, Mr. Lyons.  Nobody

16  has objected to, nor does the Court have the objection to, the

17  50,000 you're asking for enforcement expenses and the 50,000

18  that you're seeking of the other expenses.  I don't believe Mr.

19  Bernstein has objected, and there's been no objection by any

20  other party.  So those are authorized.

21         If you want to continue with this request for the

22  Court to authorize 225,000 to pay off Morimoto, even though the

23  amount is 151,000, I'm not sure where the buffer would come in.

24  And that's why I was asking what are the monthly storage fees

25  to have a better idea of, well, maybe if the auction didn't

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

105

1   happen for a year, maybe that's where that was coming in.  But

2   you weren't able to give me that information readily, although

3   I'm sure you can.

4            So I'll authorize the 100,000 dollars, as I stated.

5   And if you want to pursue the 225, then it's going to have to

6   be explained in much more detail than it is here.

7            MR. LYONS:  Understood, Your Honor.  Could I suggest

8   this as to get a holding date?  We could file a supplemental

9   declaration.  We'll make sure and have unredacted the storage

10  costs, everything else that isn't very sensitive, and we'll get

11  that number to you.

12           But the sensitive information, we're going to -- we'd

13  propose we file a motion to file it under seal, and we file an

14  unredacted copy with Your Honor but on the docket, a redacted

15  copy.  And then, Your Honor, you can decide whether you're

16  going to grant the motion to seal or not.  And then we could

17  continue the portion for the credit-bid cost over to -- at a

18  next date -- there's no urgency right now.  There hasn't been

19  an auction date set.  I'm trying to figure out the best

20  procedural way to do this, but I --

21           THE COURT:  Well, I think the best procedural

22  mechanism, Mr. Lyons, is as you said, there is no urgency.

23  There is no auction date set.  I assume, an auction date today,

24  they aren't going to see the auction's tomorrow.  I would

25  assume that they would want to get the best and highest bid,

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

106

1  and there might be at least a few weeks, if not a month, where

2  the auction is publicized if it's anything like auctions of

3  seized goods in the U.S.  And then in that situation, you can

4  come back and you can provide admissible evidence that the

5  Court can consider in terms of whether or not it should

6  authorize what you were asking for.

7          MR. LYONS:  Yeah, sure.  And I just want to let Your

8  Honor know in advance, some of that information, we're going to

9  request be kept under seal until the conclusion of the auction,

10  and we'll file the appropriate motion for that for Your Honor's

11  consideration and redact that information in the public

12  version.  And then the remainder of the supplemental

13  declaration outlining the storage costs, we would then -- that

14  would be in the public version that would be filed.

15          THE COURT:  And just to --

16          MR. TOROSIAN:  So just to be clear, Your Honor -- Jeff

17  Torosian for the trustee -- it's more than just under seal.  It

18  has to be -- if Your Honor would entertain in-camera review, ex

19  parte in-camera review, or at the very least, limited to

20  attorney's-eyes only, because this is main-case stuff with

21  parties who may -- we can't keep it from the parties if it's

22  filed under seal.  That doesn't really get us the protections

23  we need.

24          We would need something even more than that, which

25  would be attorney's-eyes only.  Maybe that might get us there.

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

107

1   But anything short of that, we're hurting value.  And we're

2   getting very close to the line, I'm saying too much now, by

3   hurting value, and that just hurts creditors.  So we have to be

4   very careful on even filing it under seal.  That might not in

5   and of itself be enough.  It probably needs to be AEO

6   protections as well.

7          THE COURT:  Well -- yes, Mr. Bovitz.

8          MR. BOVITZ:  Your Honor, J. Scott Bovitz for Nancy

9   Rapoport.

10          We don't need to have a party on the boat, but one of

11   the ways that the Court has reviewed expenses of professionals

12   in this case is they're attached to fee applications, and the

13   fee examiner reviews the application, the expenses, has

14   discussion and dialog.  And if the expenses were being advanced

15   by DLA with respect to a mediator, she cares.  Professor

16   Rapaport will have something to say and have a discussion.

17          With respect to boat storage charges, she's not sure

18   whether she's supposed to play a role in that.  It's an expense

19   of the estate.  But it is an expense, and it's something where

20   she could, confidentially or otherwise -- I don't know about

21   the seal issues; I don't have any opinion -- but she could

22   review this if the Court wants her to.

23          But we don't want to -- she doesn't want to step out

24   of her lane.  If her lane is review expenses, including boat

25   charges, dock charges, and so forth, she will, and she'll be

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

1  happy to give her opinion.  That may help on this.  I don't

2  know.  We would love some instruction from the Court.

3         THE COURT:  Thank you.  I appreciate that, Mr. Bovitz.

4         I want to see what the storage charges are.  I need

5  more information.  That's all I can say, Mr. Lyons.

6         MR. LYONS:  Yeah, we --

7         THE COURT:  How you choose to get it to me is up to

8  you --

9         MR. LYONS:  Okay.

10        THE COURT:  -- but you are asking me blindly to say,

11  here's 225,000 dollars that you may or may not use, and trust

12  me, it's going to generate more funds for the estate.  And as I

13  said, to me, if you credit -- if I gave you the funds and if

14  you credit bid, then you haven't provided any basis to

15  substantiate that you would be likely to get more funds than

16  what the auction would generate, and you would definitely be

17  incurring more expenses because you'd have to pay the storage

18  fees every month.  So that's why the storage fees were

19  important to the Court as well.

20        So I'm going to grant the two 50,000 figures, the

21  50,000 in terms of enforcement expenses, the 50,000 in terms of

22  other expenses.  I'm going to deny the 225 without prejudice.

23  If you want to bring it, you can try to bring it in whatever

24  way you think is appropriate.  But I'm going to deny it right

25  now, so I don't think it's worthwhile to expend more funds to

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

1  file a declaration now.  I would wait until there's actually.

2  An auction because it may never happen this year.  You're

3  discussing it.  It may not happen.

4         MR. LYONS:  Yeah, Your Honor, because we don't control

5  it.  But okay, I'll tell you.  Okay, Your Honor.  Understood.

6  We will act accordingly.  If for whatever reason, though, this

7  auction gets scheduled quickly, we may be back in front of you

8  on an emergency basis.  And I hate to do that.

9         THE COURT:  And I understand that.  And I understand

10 that, but if you know the auction is scheduled on March 1st and

11 the auction is scheduled for April 15th and you bring your

12 emergency motion on April 7th, the Court isn't going to look

13 kindly on that, right?

14        MR. LYONS:  I understand.

15        THE COURT:  So you need to be the one to bring this to

16 the Court in a timely manner.  If you bring it on shortened

17 notice, and I want when you bring it on shortened notice, if

18 that's the issue, you need to file a declaration signed under

19 penalty of perjury the day that you learned when the auction

20 would be.  Because I don't want there to be gamesmanship.  I

21 don't want it to be, oh, we don't need to do it now.  We'll get

22 in on shortened notice.

23        There needs to be a demonstrated reason in the record

24 why it needs to be on shortened notice.  And if you find out

25 about it on March 1st and the auction is six weeks away, I

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

110

1  don't consider that any reason to file it on shortened notice.

2  You have sufficient time to put it on regular notice.

3          MR. TOROSIAN:  Judge --

4          MR. LYONS:  Okay.

5          MR. TOROSIAN:  -- (indiscernible) Your Honor.  And

6  again, I don't know who we'd be gaming in this situation, and

7  certainly, we don't game anyone in anything we do.  But just to

8  be clear, we're still not addressing the confidentiality issue.

9          THE COURT:  Well, you're going to have --

10          MR. TOROSIAN:  Does Your Honor have a view for --

11  because once we do that on shortened notice, emergency notice,

12  regular notice, doesn't matter, you're going to want to see

13  what we're telling you right now we're going to have difficulty

14  showing you.  And so I'd prefer if we had a solution to that

15  now, rather than just addressing this and incurring the ire of

16  the Court when we're facing down an auction.  Because it's

17  going to be even worse then, because then bidders are getting

18  ready to bid and they're going to know what our thinking of

19  value is if we file something that's disclosed to the public,

20  or even just the parties to this main case.

21          THE COURT:  Well, Mr. Torosian, I'll leave it to you

22  and Mr. Lyons how you propose to proceed.  We'll take a recess.

23          I also do want to know what the storage fees are, Mr.

24  Lyons.

25          MR. LYONS:  Yes.

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

111

1          THE COURT:  And during that recess, you can provide a

2     figure when we come back.  And then you can propose, and then

3     we can talk about it.

4          Just so everybody knows, I have a hard stop at 2:30.

5     If we're not done at 2:30, we'll have to pick this up either

6     tomorrow afternoon or another day.

7          So I want to move on to the other matters on calendar

8     in terms -- we'll come back to this after a recess with a

9     proposal from Mr. Torosian and/or Mr. Lyons about how to deal

10    with the issues of confidentiality that they indicate prohibit

11    them from filing on the docket the --

12          MR. TOROSIAN:  I don't want to belabor the point, Your

13    Honor, but that is the suggestion that we file it under seal

14    with AEO protections at the time that we're ready to proceed

15    with the auction.  That is our suggested solution, and we're

16    willing to entertain comments from Mr. Bernstein or others as

17    to that.

18          But we're obviously happy to have Your Honor look at

19    it, we're happy to have counsel of record look at it, but not

20    parties (indiscernible) --

21          MR. LYONS:  Right, and --

22          MR. TOROSIAN:  -- proposed solution.

23          MR. LYONS:  -- then Mr. Bernstein represents the only

24    objector.  So we certainly can provide it to Mr. Bernstein

25    attorneys'-eyes only if that would satisfy some concerns.

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

1       THE COURT:  Well, let me hear from Mr. Bernstein.

2       MR. BERNSTEIN:  Yes, Your Honor.  Thank you.

3       So look, with respect to information that in good

4  faith is properly designated as highly confidential, that

5  portion of what they're going to file, I'm fine with

6  attorneys'-eyes-only.  I think that's a reasonable way to deal

7  with that portion of what they're going to file, not a whole

8  motion, but that portion, which in good faith is reasonably

9  designated as highly confidential.

10      As a general matter, attorneys'-eyes only is

11 obviously, as the Court, very problematic because we consult

12 with our clients to develop positions in litigation.  And if we

13 can't consult with our clients, that is fighting a battle with

14 both arms behind our back.  But if it is limited to what is in

15 good faith properly designated as highly confidential

16 information, the disclosure of which would damage the estate,

17 then on that basis, I think attorneys'-eyes only in this

18 particular contested matter is reasonable, and it would be --

19 and it would be acceptable to us.

20      THE COURT:  And the other issue that will be raised, I

21 expect, is that other counsel who didn't object to the 2016

22 motion will want to see it as well.

23      So Mr. Torosian, is your proposal only to provide it

24 to Mr. Bernstein or to all counsel who want --

25      MR. TOROSIAN:  No, I said all counsel of record, but I

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

1  mean, this is main case.  We'd have to go through the list of

2  who that would be.

3  　　　　MR. LYONS:  Yeah, it would be unwieldy, Your Honor.

4  　　　　MR. TOROSIAN:  It might be dozens of people.  And it's

5  just --

6  　　　　THE COURT:  So then who --

7  　　　　MR. TOROSIAN:  And it's just -- first of all --

8  　　　　THE COURT:  Mr. Torosian, who would you propose that

9  you provide it to, then?  If it's going to be unwieldy -- you

10  said all counsel of record, but then Mr. Lyons said something

11  different.  So what are you proposing in terms of who you --

12  because this is where we start getting into issues.

13  　　　　MR. TOROSIAN:  Right.

14  　　　　THE COURT:  So Mr. Lyons or Mr. Torosian, who do you

15  propose that it be presented to?

16  　　　　MR. LYONS:  Your Honor, I would propose certainly Mr.

17  Maroko, the U.S. trustee's office, Mr. Bernstein, who raised an

18  objection to the cash management order.  We'd provide one to

19  the fee examiner too.  That wouldn't be any issue.

20  　　　　Your Honor, we could reach out to Bombardier and

21  CAVIC.  They seem to be the only other parties here who are

22  really involved, as well as Jetcraft.  But again, I think

23  really the only objector, here, is Mr. Bernstein to the relief.

24  So the broader we -- attorneys'-eyes only, look, we have fine

25  counsel.  I have no doubt that they're going to adhere to

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

1    confidentiality.  But I'm just wondering if it's just going to

2    add that one bit of confidential, sensitive information that

3    Your Honor raised regarding the report.

4            THE COURT:  Well, I think because of the nature of

5    this litigation, I do believe you need to present it to Mr.

6    Bernstein, CAVIC, Bombardier.  I'm not seeing anybody from

7    Jetcraft, FK, but I assume they would want to see it as well.

8    The fee examiner, Mr. Maroko, and me, of course.

9            MR. BOVITZ:  Your Honor.

10           THE COURT:  Yes.

11           MR. BOVITZ:  J. Scott Bovitz for the fee examiner.  If

12   you don't want the fee examiner to weigh in on this, don't pass

13   the secret information to us where they can torture the fee

14   examiner and get the details.  No, I'm kidding about the

15   torture part.  But if you want her input, yes, then we need the

16   information.  So the Court needs to, please, do you want her

17   assistance or not her assistance on this?

18           THE COURT:  On this, I do not believe so.  So thank

19   you for raising that, Mr. Bovitz.  And thank you --

20           MR. BOVITZ:  Thank you.

21           THE COURT:  -- Prof. Rapoport.

22           MR. TOROSIAN:  And just to be clear, Your Honor,

23   obviously, we'd be happy to have the examiner look at it, or

24   either way is fine with us.  I don't think she's in the market

25   for a yacht like this, but maybe, you never know.  But I assume

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

1   when we just went through that litany of parties, those are

2   just counsel for those parties because it would be AEO.

3              THE COURT:  That's correct.  It would be --

4              MR. TOROSIAN:  Great, and --

5              THE COURT:  -- counsel for those parties.

6              MR. TOROSIAN:  And we're okay with that, and we would

7   obviously file this at the appropriate time when we have a date

8   for the auction.  And then we'll file a declaration in

9   conjunction with that as to when exactly we learned of the date

10  of the auction.

11             THE COURT:  Correct.

12             Mr. Bovitz.

13             MR. BOVITZ:  Your Honor, if there's going to be a

14  disclosure to the fee examiner, don't give it to me.  Give it

15  to the fee examiner.  And that way, we'll skip me because I

16  can't not have a communication with someone if her input was

17  interested.  The Court has indicated no, so please, Mr.

18  Torosian's offer is incredibly fine and nice, but don't give it

19  to us because there's no need if she's not going to give an

20  input and there's no reason to have an additional potential

21  leakage of the secret information.

22             THE COURT:  All right.  So please do not provide it to

23  Prof. Rappaport.

24             MR. LYONS:  Okay.

25             THE COURT:  All right.  So Mr. Torosian, would you

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

1   please read out the names of the attorneys for the parties who

2   you will be providing it to so there is no confusion.

3         MR. TOROSIAN:  Your Honor, I wasn't writing it down,

4   and I don't have all their names handy --

5         MR. LYONS:  I can --

6         MR. TOROSIAN:  -- but were you doing it, Mr. Lyons?

7         MR. LYONS:  Yeah.  Yeah, I could.  Well, since

8   they're -- I see them on the call.  How about Ms. Fornos for

9   Bombardier, Mr. Ciatti from Jetcraft, Mr. Bernstein, of course,

10  for Universal Leader, and Mr. Maroko and --

11        THE COURT:  Ms. Azlin for CAVIC?

12        MR. LYONS:  -- Ms. Azlin.  Ms. Azlin, right, for

13  CAVIC.

14        THE COURT:  Hold on.  And the Court?

15        MR. LYONS:  Yes, and the Court.

16        THE COURT:  Okay.  And Jetcraft and the FK defendants,

17  they're represented by the same counsel; is that correct?

18        MR. LYONS:  Yes.

19        THE COURT:  Okay.  So providing it to Mr. Ciatti would

20  provide it to Jetcraft -- and Mr. Ciatti just turned his video

21  on, and he's nodding yes.  Okay.

22        MR. CIATTI:  Yes.  Yes, Your Honor.  Thank you.

23        THE COURT:  I just wanted to make sure that we didn't

24  come back here with one party saying they were not privy to the

25  information.

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

1          MR. CIATTI:  Understood.

2          THE COURT:  Okay.

3          MR. CIATTI:  Thank you, Your Honor.

4          THE COURT:  Okay.

5          MR. LYONS:  And Your Honor, I'll make sure to sign a

6     declaration of that effect.

7          THE COURT:  Okay.  All right.  So I think we've solved

8     that issue, but right now we don't have to address it because

9     again, we don't know when or if that auction is going to take

10    place.  So in terms of the ruling -- and I did see you wanting

11    to speak, Mr. Bernstein, just one moment -- I'm going to grant

12    as to the 50,000 and the 50,000 and deny without prejudice the

13    other request.

14         MR. TOROSIAN:  Thank you, Your Honor.

15         THE COURT:  Thank you.

16         Mr. Bernstein.

17         MR. BERNSTEIN:  Thank you, Your Honor.  Just two quick

18    points.

19         One is just a clarification that I assume goes without

20    saying, but so Mr. Lyons read out a name of individual

21    attorneys.  I assume that I'll be permitted to share this with

22    my colleagues at Arnold & Porter who are also working with me

23    on the Zetta Jet matter.

24         THE COURT:  That's my understanding, but Mr. Lyons.

25         MR. LYONS:  Well, why don't I speak in terms of the

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

118

1    law firm, then, Your Honor?

2           MR. BERNSTEIN:  Yeah.

3           THE COURT:  I think that's a better way of doing it.

4           MR. BERNSTEIN:  Yeah.  Yeah, that would be good.

5           MR. LYONS:  Counsel for CAVIC, counsel for Bombardier.

6           THE COURT:  I think that's appropriate.

7           MR. BERNSTEIN:  Great.  Thanks.

8           The only other issue is, and I'm happy to have the

9    Court this on or not take this up as Your Honor chooses, but

10   just given the comments that the Court and Mr. Lyons made about

11   timing issues, as the Court knows, it is our view that if the

12   trustee elects to purchase the yacht -- to make a credit bid to

13   purchase the yacht, that that requires court approval because

14   it's an out of the ordinary course use of estate assets.  And I

15   think they'd be credit bidding not only storage charges but

16   their lien or up to the full amount of the lien.

17          And I'm prepared to argue that point if necessary.

18   I'm happy not to argue it right now since you've ruled for

19   today.  The reason I'm mentioning it is we're talking about

20   possibility of future dates, of scheduling, and Mr. Lyons said

21   he might come in on an expedited notice to reseek these storage

22   fees.  And I just want it on the Court's radar that at least in

23   our view, it's clear that under the applicable case law, not

24   only is the paying storage fees require court approval, but

25   buying a giant yacht requires court approval as well.

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

119

1        And again, I just want to mention that, and we can
2    address it now or address it later today or address it sometime
3    in the future.  And I leave that to Your Honor.

4        THE COURT:  It may be a nonissue because again, we're
5    trying to read the tea leaves about when this auction might
6    take place and what will happen.

7        But Mr. Lyons, if you care to weigh in and respond to
8    that, I'd be interested in hearing your response.

9        MR. LYONS:  Oh, well, Your Honor, I think, look, we
10   have a judgment that Your Honor issued, and we're trying to
11   enforce it in a foreign country, in Australia, and there's a
12   judicial sale.  I mean, I'm not sure what remedy we would have.
13   Would we have -- would we have some kind of cross-border
14   communication while the auction is going?  Because prices move
15   up, and they move down.  We have a five-million-dollar
16   judgment.

17       So I'm not sure how, mechanically, that would work
18   because it's on the other side of the world.  If we get into an
19   auction, it prevents a lot of issues.  The trustee, it has its
20   business judgment.  And he's going to have additional
21   authorization to maintain the boat, or then we're back in front
22   of Your Honor.  So I'm just not sure how exactly that would
23   work.

24       I mean, we could set up a cross-border, some kind of,
25   like, hearing.  But that's going to be pretty problematic.

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

120

1          THE COURT:  Mr. Bernstein.

2          MR. BERNSTEIN:  Yeah, for sure I wasn't envisioning

3    the Court staying up in the middle of the night in real-time

4    with the clanging of boats in the background.

5          But the point is that if under the case law and

6    ordinary-course use of estate assets is something that a

7    company, either this company or comparable companies, does in

8    the everyday, ordinary, typical course of its business

9    operations, the Ninth Circuit case law refers to the vertical

10   test, which means what this company typically does day in and

11   day out, or the horizontal test is what other comparable,

12   similar companies in the same business do day in and day out,

13   things like retailers selling their inventory to customers or

14   airlines selling tickets or paying landing fees or buying fuel

15   and paying FEOs and so forth.  And that's ordinary course.

16         And this is just -- this is just not ordinary course,

17   buying a giant seventy-foot allegedly-multimillion-dollar

18   yacht, whether it's by credit bid or by cash, is not something

19   that a charter jet company, or particularly a defunct charter

20   jet company that's not operating a business, does every day in

21   the ordinary course.

22         Other cases within this circuit say ordinary course

23   means something that a creditor doing business with this

24   company would expect the company to be doing day in and day out

25   as a normal course of its business.  And a creditor of a

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

121

1   charter jet company or a defunct chart company, either way, I

2   wouldn't expect the company to be -- it would be selling block

3   hours, if it were still operating, and paying its pilots and

4   wages and so forth.  It wouldn't be buying seventy-foot yachts.

5   So we think it's really clear under the case law that this is

6   not ordinary course.

7          That doesn't mean that -- well, let me say this.  It's

8   even more true in this case for a reason that Your Honor

9   mentioned, which is that when you buy this yacht for a credit

10  bid, if they buy it, you're necessarily taking on a whole host

11  of other expenses.  We've focused in the little discussion

12  today on storage expenses, and Your Honor properly raised the

13  question of it's not just these 225 or 150,000, but it's the

14  future storage expenses for who knows how long until they

15  resell out the boat, if they're able to resell the boat.

16         But it's other stuff.  It's security and it's

17  maintenance and it's insurance and it's cost of marketing and

18  sale and so forth.  And once you buy the bulk, you're

19  necessarily taking those things on.  The trustee says, we'll

20  come back to the Court, but what's the Court going to do once

21  you have a boat there?  If you buy the boat, you're

22  necessarily -- so it's not only a big credit bid of an out-of-

23  the-ordinary-course nature, but you're necessarily then taking

24  on a bunch of other expenses, the amount of which we don't

25  know.  And that's why Your Honor sought the monthly charge

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

1    information for storage, but there's a lot of other stuff

2    besides storage when you own a boat.

3            And so it seems very clear to me that this is out of

4    the ordinary course.  And that's why we raised this, because

5    the only stated purpose of paying the 225,000, or 150,000,

6    whatever it is, if you use U.S. dollars, is because the trustee

7    says, well, if we make the credit bid and buy the boat, we're

8    going to have to pay those storage charges.  I mean, there's no

9    evidence to support that so I don't know if it's true or not,

10   but that's what they say.

11           But anyway, if the only purpose of paying the $225,000

12   in accrued storage charges is in connection with buying the

13   boat, and if buying the boat, as we believe, requires court

14   approval, then it doesn't make any sense for the Court to

15   authorize 225,000 dollars in storage charges before the Court

16   has even been asked to approve the out-of-the-ordinary-course

17   purchase of the boat.  It's putting the cart before the horse.

18           Now, I'm not saying with all of this that the trustee

19   could not meet the legal standard to convince Your Honor to

20   authorize the purchase of the boat.  You'd have to -- there's a

21   bunch of issues because right now, they haven't even sought

22   that so they haven't presented any evidence.  So what is the

23   boat worth, then.

24           As Your Honor asked, what makes anybody think they're

25   going to be able to -- the trustee is going to be able to sell

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

123

1    it more afterward after they own it than it's going to sell for

2    at the auction where it's being marketed and how long is it

3    going to take to sell and what are the costs of sale and how

4    much is this future storage charges, not the 225, and how much

5    are the maintenance costs and the security costs and the

6    insurance costs and balance that all against the benefit to the

7    estate of buying this yacht.

8           And I don't know, maybe they can meet the standard,

9    but for now, they haven't presented any evidence, and they

10   haven't even asked Your Honor to approve it.  And so that's why

11   I raised this issue because if they're just asking you to

12   authorize the 225,000, then I think that doesn't make any sense

13   without seeking and obtaining approval to make a credit bid

14   because that would be the only purpose.

15          So I think if they're going to seek renewed approval

16   to seek approval to pay the accrued past storage charges, first

17   of all, we should get the number right, without fudge factors

18   and whatever you call it, extra dollars baked in.  We should

19   get the number right, but then they should also, at the same

20   time or prior to that, seek approval to make a credit bid

21   because they need that approval in order to do it.  And if they

22   don't get that approval, then paying the storage charges

23   doesn't make any sense at all, by their own reasoning.

24          THE COURT:  Mr. Lyons.

25          MR. LYONS:  Your Honor, if I may respond.  Your Honor,

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

124

1   this is not -- this is a judgment.  Mr. Bernstein has cited no

2   cases in support of the proposition that a trustee before

3   executing a judgment against an asset to recover an asset needs

4   court approval.  That's what we're doing here.  We are going to

5   recover this boat to have title.

6          Now, we're going to be looking at the auction and

7   trying to -- if we can get a good price out of it, then we're

8   going to -- then the trustee and his exercises business

9   judgment, we'll take it.  But if we would have title to the

10  boat, Your Honor, then no question, if we would have to -- if

11  we would resell it, we would then -- it would be subject to

12  Your Honor's higher or better 363.

13         But right now, we're just executing a judgment.  I

14  mean, as Mr. Bernstein's suggesting, if we have a judgment

15  against, okay, Mr. Wu, who entered the judgment against, are we

16  supposed to hold off on executing that judgment in a foreign

17  jurisdiction to recover a valuable asset?  That's not what the

18  Code says.  And he's cited no case to say that you need 363

19  approval to execute a judgment that Your Honor -- that Your

20  Honor (indiscernible).  It would hamstring the trustees

21  worldwide when they're in foreign jurisdictions to recover

22  assets.

23         THE COURT:  Okay.  So this isn't before me right now.

24  Obviously, this is a peripheral issue for what was addressed in

25  the 2016 motion.

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

125

1          Mr. Lyons, you're on notice that Mr. Bernstein is
2     likely to raise this when/if you file the motion to pay the
3     storage fees, and so you can address it at that point.  Mr.
4     Bernstein, you can respond.  And then the Court will have an
5     opportunity to weigh in on it.  But right now, I don't have
6     that before me, and I'm not going to opine on something that
7     neither side has briefed and I haven't had a chance to analyze
8     or review the law on.
9          So anyway, in terms of what's before me, I'm granting
10    the 2016 motion for the 50,000, 50,000.  I am denying without
11    prejudice the 225.  And we've already talked about how that
12    needs to be brought again.
13         But I do again want to caution, if you are going to
14    seek relief on an expedited basis, there has to be a
15    declaration signed under penalty of perjury explaining exactly
16    when you found out about the date of the auction and why you
17    waited a week, two weeks, three weeks and why it needs to be
18    held on shortened notice.  Because just coming in saying the
19    auction is next week, that is not going to be persuasive.
20         Okay.  All right.  So that's it on the 2016 motion.
21         I did want to say one other thing.  There's an issue
22    that was raised in terms of the 9019 motion.  It was raised
23    again by Mr. Bernstein in opposition or in response to the
24    2016.  It's regarding treating Zetta USA and Zetta Singapore's
25    estate as one.  Universal Leader highlights that there are two

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

126

1  separate debtors, two separate estates with separate assets and

2  liabilities.

3       The trustee responds that the Court authorized him to

4  use one debtor-in-possession account.  That misses the point in

5  the context of a first-day emergency motion in the then-Chapter

6  11 to authorize the continued use of debtors' cash-management

7  system.  In authorizing the maintenance of pre-petition bank

8  accounts, the Court granted the trustee authority to have the

9  debtors' accounts receivable be deposited from the DIP account

10  into two others, one for general payables and one for payroll.

11       Nowhere in that motion, which was docket 23, or the

12  order, docket 368, was the Court asked or did the Court rule

13  that the debtors do not have to maintain separate accountings

14  of assets and liability.  So I want to make sure everybody's on

15  the same page.  Saying that I authorized it in that order,

16  which was a first-day motion, is not correct.  Okay.

17       I don't believe any more argument is necessary.  Mr.

18  Lyons, if there's something you'd like to say, you're welcome

19  to, but I think we're pretty much done with that.

20       MR. LYONS:  There is certainly accounting for all the

21  moneys received, Your Honor.  And we laid it out, I think, in

22  my previous reply, where ninety-five percent of the proceeds

23  arise from the settlements we've had in the adversary actions.

24  So ultimately people will be able to object or frankly, review

25  what a proposed distribution would be based upon those

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

127

1    settlements.  It really is those settlements accounts that took

2    the assets of the estate.

3         THE COURT:  But again, I don't think that's the issue

4    raised by Mr. Bernstein.  The issue raised by Mr. Bernstein is

5    there's the fifteen-million-dollar element settlement, how much

6    should be allocated to Zetta USA and how much -- the fact they

7    came in --

8         MR. LYONS:  Right.

9         THE COURT:  -- from three or four settlements, I don't

10   think that's looking at it on the opposite end.  It's what

11   estate, USA or Singapore, is the one that should receive those

12   funds.  So I think it's a different focus, Mr. Lyons.

13        MR. LYONS:  Yes, and ultimately, the trustee will

14   propose the allocation and Mr. Bernstein and others can object

15   and Your Honor will determine what the allocation should be.

16   But I mean, I guess to do it now, the money's in the door.  I

17   mean, we will.  If Your Honor would like us to move for

18   substantive consolidation, if that's the right remedy, or if

19   the --

20        THE COURT:  I'm not telling you, Mr. Lyons, how to

21   address the case.  I'm not telling you how to handle the case.

22   I'm not saying it should or it shouldn't be substantively

23   consolidated.  All I'm saying is indicating that the Court

24   authorized you not to keep separate accounting of the assets

25   and liabilities of the two debtors based upon an order that was

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

128

1  entered in a first-day motion is not an accurate statement of

2  what was before the Court or what the Court ruled in that

3  order.  I just want to make sure we're all on the same page of

4  that.  Okay.  Thank you.

5          MR. LYONS:  Understood, Your Honor.

6          THE COURT:  All right.  Hold on.

7          THE COURT:  Yes, Mr. Torosian.  Oh, Mr. Bovitz.

8          MR. BOVITZ:  Mr. Bovitz.

9          THE COURT:  Mr. Bovitz.

10         MR. BOVITZ:  We look the same.

11         Your Honor, the fee examiner shares the concern, but

12  from an administrative and accounting standpoint, because if a

13  professional is doing work with respect to Zetta Jet Singapore,

14  as you will call it, or Zetta Jet USA, they should be allocated

15  and billed and authorized accordingly.  Otherwise, it may

16  already be a nightmare kind of as we get to final fee

17  applications.

18         But it is time for professionals to consider whether

19  they should be billing just to a single Zetta Jet account or to

20  the respective estates.  And the Court may wish in the future

21  to hear the fee examiner's report.  And of course, that also

22  means that with respect to what's appropriate work, what's

23  reasonable for that at the time when incurred makes sense with

24  respect to USA versus Singapore.

25         So I don't know when.  There's no motion for

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

129

1   substantive consolidation before the Court.  You raised the

2   issue.  I wanted to share the examiner's concern.

3        THE COURT:  I appreciate that, Mr. Bovitz.  Thank you.

4   And you're right, there is nothing before the Court, but it's

5   been raised at least two times by Mr. Bernstein, I believe.

6        And it's something that's not going to go away, Mr.

7   Lyons.  How you get a ruling on it, I don't know, and I'm

8   certainly not saying.  Whether it's okay to wait until the

9   absolute end of these cases, I don't know.  But that seems to

10  be what you're planning to do, and I don't know whether that is

11  or isn't appropriate.  That's all I'm saying.  It's your case.

12  You have to deal with it.  And you know it's an issue that's

13  not going to go away is best I can say.

14       I just wanted to make sure there was no

15  misunderstanding of what was asked in the first-day motion and

16  there's no misunderstanding of what was before the Court and

17  there's no misunderstanding of what the court's order meant.

18  And it absolutely did not say that the debtors did not have to

19  maintain separate accountings of their assets and their

20  liabilities.

21       So I think we've said plenty regarding that.  Moving

22  on to the next matter on calendar is the status conference in

23  King v. Jetcraft.

24       Mr. Lyons, how do you wish to proceed?

25       MR. LYONS:  Your Honor, I think I'll let Mr. Torosian

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

130

1  address the next steps.

2        THE COURT:  Mr. Torosian.

3        MR. TOROSIAN:  Yeah, Your Honor, we're going to have

4  to circle back with Mr. Ciatti on the one hand to see if, given

5  your ruling -- first of all, we have to digest your ruling.

6  Secondly, we have to circle back with Mr. Ciatti to see if

7  there is a settlement to salvage.

8        We're going to have to circle back with Judge Gross to

9  see if he's even willing to consider further mediation of this

10  or if he's so insulted by the parties' arguments to this that

11  he doesn't want anything to do with it.  I don't know the

12  answer to that.  I can see the latter being a strong

13  possibility.

14        We're going to have to consider what we're doing as a

15  law firm because right now, we're owed fifteen million dollars,

16  and we're basically being forced to proceed with a case that

17  I'm not sure the parties even want to proceed with at this

18  point.  So we have a lot to digest.  I have to talk to my

19  senior leadership at my firm, my CEO and managing partner.  We

20  have to talk to the parties.  We have to talk to Judge Gross.

21        So I suggest -- the good news is I don't think I've

22  heard Your Honor or Bombardier's counsel speak so highly of our

23  claims against Bombardier until today, so I think we all know

24  those claims are coming back from appeal.  But regardless, we

25  need to get through all of that and then circle back to Your

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

131

1   Honor and tell Your Honor what we think we should do.  And we'd

2   ask for a two-week continuance to report back to Your Honor on

3   status.

4          THE COURT:  Okay.  So today is February 15th.  You're

5   suggesting that we come back on March 1st so you can report how

6   you intend to proceed; is that what you're suggesting, Mr.

7   Torosian?

8          MR. TOROSIAN:  If that meets with Mr. Ciatti, because

9   he's a party to this as well, if that meets with

10  his scheduling --

11         THE COURT:  Mr. Ciatti.

12         MR. CIATTI:  Thank you, Your Honor.  Michael Ciatti on

13  behalf of the Jetcraft and FK defendants.

14         I mean, I agree that there are a lot -- a lot needs to

15  be done, and I do have some concern that trying to do it in two

16  weeks is reasonable.  And so I don't want to come back to the

17  Court with a nonreport, so I guess I would suggest we might

18  need a little bit more time, just to make it a productive next

19  session so --

20         THE COURT:  I agree.  I agree.  So hold on one sec.

21  Let me check another calendar.

22         Let's go to March 22nd.  Does that work?  I'll just go

23  around and ask everybody I see on screen.

24         Mr. Bovitz.

25         MR. BOVITZ:  Fine, Your Honor.

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

132

```
 1              THE COURT:  Mr. Lyons.

 2              MR. LYONS:  Yes, that works.

 3              THE COURT:  Mr. King.

 4              MR. KING:  Yes, Judge.

 5              THE COURT:  Prof. Rapoport.

 6              PROF. RAPOPORT:  Your Honor, except for something

 7    that's probably going to happen between 9 and 10, it works for

 8    me, but Mr. Bovitz can cover it for me if he's available.

 9              THE COURT:  Mr. Bovitz.

10              MR. BOVITZ:  I'm available on the 22nd, Your Honor.

11              THE COURT:  Okay.  Mr. Torosian.

12              MR. TOROSIAN:  I'm available.  But Your Honor, this is

13    just for status of Jetcraft.  I don't think we need the fee

14    examiner and fee examiner counsel for that hearing, but I'm

15    happy --

16              THE COURT:  Okay.

17              MR. TOROSIAN:  -- happy to have them attend if you

18    think we do.

19              THE COURT:  I don't believe so, but I wanted to give

20    everybody an opportunity to be heard.

21              Mr. Ciatti.

22              MR. CIATTI:  Your Honor, the 22nd works.  Thank you.

23              THE COURT:  Okay.  Mr. Bernstein.  I don't know if you

24    wish to be heard.

25              MR. BERNSTEIN:  That's fine.  If we participate, I'll
```

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

133

1   be on or one of my colleagues will be available.

2          THE COURT:  Okay.  And just in case the fee examiner

3   does want to participate, I'll say March 22nd at 10.  So that

4   way, you don't feel excluded, Professor.

5          PROF. RAPOPORT:  Thank you, Your Honor.

6          THE COURT:  All right.  So that's matter number 12.

7          The rest of the matters, unless I'm missing them, are

8   the interim fee applications of DLA Piper.  And as I said

9   almost a year ago, I wanted the fee applications to be filed

10  every three months.  I wanted the fee examiner to have a chance

11  to review them, opine on them, and provide her report.  I am

12  not going to rule on any fee applications of DLA Piper until

13  all of the appeals are finally resolved.  So I'm just going to

14  keep continuing these.  That shouldn't be a surprise.  I had

15  mentioned that at an April hearing last year, and that's what

16  I've been doing for all of DLA's fee applications.

17         For the other professionals, their fees are

18  insignificant in the scheme of things when you consider DLA's

19  fee applications.

20         Mr. Bovitz.

21         MR. BOVITZ:  Your Honor, the fee examiner might

22  suggest that given the modest amount of other professional fees

23  that perhaps you'd like to move the next fee hearing to May

24  instead of the fairly short run that you'd had.  We'd suggest

25  mid-May, but there's nothing magic about that, simply to allow

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

134

1  a little bit bigger buildup of professional fees relative to

2  the fee application expenses.

3         THE COURT:  I think that makes sense.  We could do

4  this.  Either May 17th or June 28th, either one works for the

5  Court.

6         MR. BOVITZ:  They're both fine with me.  And the fee

7  examiner has her hand up, Your Honor.

8         THE COURT:  Prof. Rapoport.

9         PROF. RAPOPORT:  Thanks, Your Honor.  I have a slight

10  preference for May 17th because I'm not sure when I'm going to

11  have a little bit of eye surgery.

12         THE COURT:  Oh, no.  Okay.

13         PROF. RAPOPORT:  Okay.

14         THE COURT:  Then we'll do May 17th.  And we'll just

15  continue DLA's.  And then, that will be the date for the

16  hearing on all of the other professionals' fee applications as

17  well.

18         I believe those are all the matters on calendar.  I'll

19  just go around and see if I missed anything.

20         Mr. Bovitz.

21         MR. BOVITZ:  Was it 9 a.m. on the 17th, Your Honor?

22         THE COURT:  9 a.m. on the 17th, Professor, unless

23  you're teaching because I know sometimes Wednesdays are

24  difficult.

25         PROF. RAPOPORT:  The good news, Your Honor, is I'm

**Zetta Jet USA, Inc., et al.; King v. Jetcraft Corp. et al.**

135

1    free that day.

2         THE COURT:  Okay.  Great.  So fee apps will be

3    Wednesday, May 17th at 9.

4         Mr. Lyons, anything further?

5         MR. LYONS:  Nothing further, Your Honor.

6         THE COURT:  Thank you.

7         Mr. King, anything further?

8         MR. KING:  No, Your Honor.

9         THE COURT:  Thank you.

10        Prof. Rapoport.

11        PROF. RAPOPORT:  Thank you, Your Honor.  Nothing

12   further.

13        THE COURT:  Thank you.

14        Mr. Bernstein.

15        MR. BERNSTEIN:  Nothing for me, Your Honor.  Thank

16   you.

17        THE COURT:  Thank you.

18        Mr. Torosian.

19        MR. TOROSIAN:  Nothing for me, Your Honor.  Thank you.

20        THE COURT:  Thank you.  And there's a number of people

21   still on, but they don't have their videos on, so I assume that

22   means they don't wish to be heard.  All right.  That concludes

23   the hearings for today.  Off the record.

24        MR. TOROSIAN:  Thank you, Your Honor.

25     (Whereupon these proceedings were concluded at 2:12 PM)

136

1                                    I N D E X

2    RULINGS:                                             PAGE  LINE

3    Trustee's motion for order approving              72      3

4    settlement agreement is denied

5    Trustee's seventh motion granted in part,        117     13

6    denied in part, as noted on the record

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

137

1           C E R T I F I C A T I O N

2

3    I, River Wolfe, certify that the foregoing transcript is a true

4    and accurate record of the proceedings.

5

6

7

8    _____

9    /s/ RIVER WOLFE, CDLT-265

10

11   eScribers

12   7227 N. 16th Street, Suite #207

13   Phoenix, AZ 85020

14

15   Date:  February 20, 2023

16

17

18

19

20

21

22

23

24

25

Case 2:17-bk-21386-SK    Doc 2082    Filed 02/20/23    Entered 02/20/23 05:07:19    Desc
ZETTA JET USA, INC., ET AL.    Main Document    Page 138 of 163

February 15, 2023

**$**

**$2.48 (1)**
99:6
**$225,000 (1)**
122:11

**\***

**\*4 (1)**
84:25

**A**

**a2 (1)**
83:4
**ability (3)**
25:24;90:24;96:18
**able (7)**
67:5;104:14;105:2;
121:15;122:25,25;
126:24
**abruptly (1)**
85:25
**absence (1)**
35:8
**absent (1)**
55:12
**absolute (2)**
24:17;129:9
**Absolutely (2)**
21:2;129:18
**abuse (3)**
85:8;86:19;89:11
**acceptable (1)**
112:19
**accepted (1)**
16:25
**accident (3)**
75:10;88:1,13
**accordance (2)**
15:17;81:25
**According (10)**
42:5;44:9;46:5;
48:23;52:13;62:21;
74:24;83:23;84:14;
86:13
**Accordingly (3)**
25:10;109:6;128:15
**account (18)**
12:17;15:2;31:16;
36:11,11;38:9;39:4,6;
51:3;58:22;86:23;
90:14;91:9;99:25;
100:13;126:4,9;
128:19
**accounted (1)**
87:2
**accounting (4)**
39:12;126:20;
127:24;128:12
**accountings (2)**
126:13;129:19
**accounts (6)**
36:12,15;48:20;
126:8,9;127:1
**accrued (2)**
122:12;123:16
**accurate (2)**
87:2;128:1
**achieved (1)**
62:20
**achieving (1)**
90:4
**acknowledged (2)**
76:21,24
**acknowledges (5)**
45:8,18;52:1;80:24;
92:18
**acquiring (1)**
70:9
**across (1)**
16:24
**Act (8)**
14:22;15:2;59:1;
64:11;65:22;66:11;
67:12;109:6
**action (20)**
14:19;23:6,13,15;
25:3;27:20,21;30:10,
15;50:20;51:1;53:18;
61:21;62:10;70:21;
74:15;75:23;76:7;
77:7;88:6
**actions (10)**
39:13;49:12,14;
61:16,24,25;62:1,13;
68:17;126:23
**actively (1)**
52:20
**activities (1)**
62:14
**Acts (1)**
67:10
**actually (15)**
20:13,15;23:8,15;
24:8;25:9;31:18;
32:14;80:7;91:16;
96:13;99:22;101:3,
10;109:1
**add (4)**
29:23,25;104:11;
114:2
**added (1)**
69:11
**addition (3)**
50:15;64:10;73:11
**additional (3)**
16:4;52:21;93:14;
115:20;119:20
**Additionally (1)**
67:5
**address (24)**
10:16;14:25;21:5;
27:5;34:3;35:19;40:9;
46:22;57:23,25;59:8;
66:8;73:5;78:8;90:7;
93:3,8;117:8;119:2,2,
2;125:3;127:21;130:1
**addressed (17)**
27:13,14,15,17;
29:8;39:21;52:24;
60:8,23;63:15;67:21;
79:7;93:10,12;94:8,
17;124:24
**addresses (5)**
9:13;10:23;13:17,
19;28:11
**addressing (5)**
53:2;59:23;64:3;
110:8,15
**adequate (1)**
13:22
**adhere (1)**
113:25
**adjudication (1)**
27:23
**administered (1)**
61:15
**administering (1)**
57:18
**administrative (5)**
38:10;39:5,7;62:24;
128:12
**admissible (1)**
106:4
**admission (1)**
21:25
**admissions (2)**
21:20;25:16
**admit (2)**
25:18,19
**admits (1)**
21:22
**adopt (1)**
25:12
**adopts (2)**
27:12;50:7
**advance (3)**
89:23;97:15;106:8
**advanced (3)**
59:10;73:14;107:14
**advances (2)**
58:23;79:8
**adversary (61)**
12:24;14:17;15:8,
11,12,13,15,19,21;
16:3,5,6;29:15,22;
30:6;32:7,23;36:22;
39:13;41:12;43:20;
46:7,20;51:12,16,25;
52:12,21;57:24;58:2,
10,14;59:5,8,21;60:9,
12,14;61:4;62:2,10;
63:3,12,14;64:9;
65:21,23;66:1,8,12;
67:17;69:8,23;70:1,
12;71:19,21;76:16;
92:11;93:8;126:23
**adverse (1)**
23:19
**adversely (2)**
23:3;96:17
**advisers (1)**
91:2
**AEO (3)**
107:5;111:14;115:2
**affect (2)**
17:8;49:9
**affected (4)**
23:3;26:9;55:16;
59:4
**affidavit (1)**
22:17
**affidavits (1)**
83:11
**affiliates (2)**
61:14;67:23
**affirm (1)**
16:3
**affirmed (3)**
13:3;63:6;69:5
**afforded (2)**
16:11;53:10
**AFP (1)**
98:2
**afternoon (6)**
95:9,22,25;96:4,6;
111:6
**afterward (1)**
123:1
**Again (24)**
27:15;28:5;29:21;
30:15;31:3,11,23;
32:11,12;33:7;35:3;
40:2;80:1;95:9;104:2;
110:6;113:22;117:9;
119:1,4;125:12,13,23;
127:3
**against (69)**
12:9;16:10,19,20;
20:14;21:4;23:8,13;
24:11;25:2,2;27:19;
28:4;41:12;42:16,23;
44:14,20;45:9;47:10,
13,15,21;48:8;49:22;
53:8,20,24;55:9,13,
15,18,19;57:7;58:18;
60:20;61:16;62:2,13;
63:21;64:17;65:4,14;
67:25;68:13,23,24;
70:7,9,14;71:8;72:9,
11,20,22;74:4;75:12,
25;79:24;80:5;82:21;
83:17;86:6;88:11;
123:6;124:3,15,15;
130:23
**ago (1)**
133:9
**agree (6)**
33:23;47:3;68:12;
92:11;93:8;126:23
**agreed (4)**
17:19;31:22;62:17;
68:24
**agreeing (1)**
11:17
**agreement (63)**
11:23;24:22;28:15;
30:21;31:1,3,5,19,23;
33:8,25;40:14;42:3;
44:7;45:3,10,14,17,
19,23;46:10;47:2,9;
48:20;49:17;50:18;
51:15;52:23;53:6;
54:9;55:5,11;56:22;
57:23;58:20;60:19;
62:16;63:8;68:11,15,
19,22;69:5,11;70:4,6;
72:4,21;77:5,7,17;
80:13,18,23;81:10;
85:19;86:5;89:6,16,
18;91:6;92:6;97:24
**agreements (12)**
17:7,10,14;23:10;
47:14;49:14;56:16;
58:7;62:22;73:3;
78:21;84:15
**aimed (1)**
84:12
**aircraft (4)**
78:20,22;79:5,14
**aircrafts (1)**
79:22
**airlines (1)**
120:14
**Alcohol (1)**
64:15
**allegation (1)**
78:25
**allegations (2)**
78:14;79:11
**allege (1)**
12:11;74:16
**alleged (19)**
26:24;27:19,20,21;
28:4;30:10,14,15,17;
32:9,19,21;47:10;
51:10;54:24;65:10,
11;75:6;85:20
**allegedly (2)**
24:8;62:4
**allegedly-multimillion-dollar (1)**
120:17
**alleges (1)**
53:6
**alleging (2)**
53:18;88:8
**allocate (1)**
22:7
**allocated (3)**
23:23;127:6;128:14
**allocating (1)**
50:20

Case 2:17-bk-21386-SK    Doc 2082    Filed 02/20/23    Entered 02/20/23 05:07:19    Desc
ZETTA JET USA, INC., ET AL.    Main Document    Page 139 of 163

February 15, 2023

**allocation (14)**
18:9;23:11,14;34:6,
14,17,22;37:8,11;
39:4,11;84:7;127:14,
15
**allow (2)**
71:22;133:25
**allowed (6)**
26:8;30:4;38:10;
62:23;64:16;85:11
**allows (1)**
35:22
**all-persons (1)**
56:8
**Allstate (2)**
54:3;77:2
**almost (4)**
15:25;36:3;92:16;
133:9
**alone (2)**
18:22;72:1
**alter (1)**
92:4
**alternative (1)**
38:12
**although (15)**
21:5;25:6;33:5;
59:16;66:25;67:8;
69:24;74:24;75:19;
77:2;79:20;80:24;
87:4;92:15;105:2
**amend (4)**
21:6;41:19,21;
85:22
**amended (7)**
41:15,18,20,23;
47:11;79:7;80:4
**amendment (1)**
85:23
**among (9)**
29:24;36:25;40:14;
62:8;63:2;69:7;84:8,
17;88:16
**amongst (1)**
32:24
**amount (30)**
18:6;19:7;23:23,24;
26:22,23;44:9;45:10;
47:22,22;48:4,21;
54:24;80:25;81:5,18,
20;82:22,23;83:8,25;
84:6;87:1;88:16;
101:11;103:3;104:23;
118:16;121:24;
133:22
**ample (1)**
64:6
**Amy (1)**
85:20
**analogous (1)**
17:16
**analysis (13)**
22:2;23:1;24:9;

57:22;59:24;69:20,
23;70:2,12;74:23;
80:17;87:20;88:15
**analyze (2)**
80:19;125:7
**analyzed (1)**
80:11
**analyzing (1)**
57:11
**and/or (2)**
74:7;111:9
**ANGELES (1)**
6:1
**announced (1)**
45:2
**answered (1)**
76:10
**Anwar (2)**
66:17;67:6
**anymore (1)**
103:20
**AP (2)**
52:20;77:20
**APAs (5)**
72:13;73:2;78:16,
21;79:13
**APA's (2)**
47:17;53:20
**apologize (1)**
99:8
**apparent (1)**
49:5
**appeal (5)**
12:9;19:12;26:14;
65:19;130:24
**appealed (5)**
60:22;63:5;69:2,6;
92:12
**appeals (2)**
76:10;133:13
**appearance (1)**
6:16
**appearances (1)**
6:14
**appearing (1)**
8:19
**appears (2)**
77:24;97:20
**appellate (1)**
76:8
**applicability (1)**
93:11
**applicable (8)**
30:1;46:21;53:5;
56:1;73:15;76:20,23;
118:23
**application (6)**
36:7;76:5;83:6,7;
107:13;134:2
**applications (9)**
8:20;107:12;
128:17;133:8,9,12,16,
19;134:16

**applied (12)**
15:18;47:5,15;
53:19;72:10;73:6,7,
10;75:7;80:4,18;
93:15
**applies (17)**
15:24;16:18;21:3;
26:10;44:10;47:12;
53:7,9;54:5;59:3;
72:4,6,9,17;73:4,12;
80:15
**apply (22)**
9:18;14:3;15:3,25;
17:1,13;20:8;23:6;
46:18,19,25;47:7;
48:5,13;53:22;54:1;
70:25;74:17,20,22;
80:12;92:6
**applying (4)**
23:20;51:24;67:2;
75:21
**appoint (1)**
28:21
**appointed (5)**
28:6,13;41:7,8;65:3
**appraisal (3)**
96:15;104:2,5
**appreciate (3)**
40:11;108:3;129:3
**appreciated (1)**
95:4
**approach (2)**
13:15;37:18
**appropriate (10)**
14:19;26:25;53:10;
93:9;106:10;108:24;
115:7;118:6;128:22;
129:11
**appropriately (2)**
51:15;53:13
**approval (27)**
11:11;31:5;33:9;
34:24;38:23;39:18;
42:2;43:7;50:17;59:1;
62:16;63:11;68:10;
70:4;95:11;118:13,
24,25;122:14;123:13,
15,16,20,21,22;124:4,
19
**approve (13)**
15:22,24;29:11;
38:5;43:13;56:15,18;
63:7,9,18;85:18;
122:16;123:10
**approved (17)**
13:6;15:7;20:6;
28:21,25;35:10;
54:23;56:9;57:5,6,24;
60:18;63:4;65:18;
69:1;77:5;92:8
**approves (1)**
52:16
**approving (9)**

13:15;17:3;40:13;
42:10;44:6;56:16;
58:18;69:17;92:18
**approximate (6)**
48:21;54:18;81:17;
82:12;86:12;91:12
**approximately (4)**
63:19;84:16;87:3;
91:3
**approximation (3)**
25:18;50:13;84:5
**apps (1)**
135:2
**April (3)**
109:11,12;133:15
**arbitrary (1)**
37:12
**Archer (1)**
55:23
**arguably (1)**
49:24
**argue (11)**
45:16;47:4,17,19;
48:4;49:16;70:22;
72:7;81:21;118:17,18
**argued (4)**
20:10;46:8;74:12;
79:17
**argues (16)**
43:12;44:4,13;51:7;
52:7,19;54:16;55:3,8,
17;58:13;59:5;72:19;
80:22;82:3;92:9
**arguing (8)**
10:5,9,20;63:1;
69:2,6;95:14;96:7
**argument (26)**
13:4;20:14,17;
33:15;36:3;39:21;
40:11;47:12;54:11;
59:10;60:2;64:7;67:3;
70:2;73:14,17;77:19;
79:8;80:17;91:23;
92:5,13;93:24;94:1,
20;126:17
**arguments (11)**
20:22;27:12;29:8,
10;35:17,21;42:2;
58:21;59:14,18;
130:10
**arise (2)**
65:11;126:23
**arising (7)**
53:9,23;62:13;65:9;
72:15;74:4;88:13
**Arizona (5)**
54:3;76:4;77:3,4,14
**arms (1)**
112:14
**Arnold (4)**
7:13;35:4;95:23;
117:22
**around (3)**

101:25;131:23;
134:19
**arrange (1)**
57:19
**arrived (1)**
9:7
**Asia (1)**
78:5
**aspect (1)**
32:18
**aspects (2)**
72:14;89:9
**assert (9)**
45:25;46:16;48:16;
49:4,11,25;58:3;
72:16;81:12
**asserted (6)**
31:17;53:24;65:4;
74:6;85:23;88:11
**asserting (6)**
60:20;70:8;82:4;
83:21;85:10;91:13
**assertion (9)**
37:7;51:11;53:17;
56:3;67:7;78:9;80:6,
17;91:17
**asserts (14)**
43:24;44:18;45:3;
51:5;52:16;53:21;
54:12;55:19;56:7;
58:21;66:25;77:16;
82:2,11
**assess (1)**
25:24
**assessing (2)**
57:8;83:23
**assessment (2)**
25:19,20
**Asset (6)**
7:14;47:14;95:24;
124:3,3,17
**assets (16)**
35:14;36:18;40:23;
70:8,10;71:6;96:11,
12;118:14;120:6;
124:22;126:1,14;
127:2,24;129:19
**assist (1)**
14:20
**assistance (3)**
64:13;114:17,17
**associated (1)**
62:18
**assume (11)**
8:16;10:8;104:4,6;
105:23,25;114:7,25;
117:19,21;135:21
**assumed (1)**
15:3
**assuming (4)**
24:10;87:1;101:21;
103:1
**assumption (5)**

49:3;85:6;86:17,19;
89:11
**ATT (3)**
65:14,16,19
**attached (1)**
107:12
**attachment (2)**
61:25;101:2
**attack (1)**
68:19
**attempt (1)**
58:9
**attempted (1)**
29:23
**attempts (2)**
30:23;46:10
**attend (1)**
132:17
**attendant (1)**
45:13
**attended (1)**
9:12
**attending (1)**
57:1
**attorney (2)**
85:21;86:7
**attorneys (2)**
116:1;117:21
**attorneys' (1)**
86:2
**attorneys'-eyes (4)**
111:25;112:10,17;
113:24
**attorney's-eyes (2)**
106:20,25
**attorneys'-eyes-only (1)**
112:6
**attributable (2)**
24:3,5
**ATT's (1)**
65:24
**auction (30)**
96:23;97:9;101:22;
102:4;103:19;104:25;
105:19,23,23;106:2,9;
108:16;109:2,7,10,11,
19,25;110:16;111:15;
115:8,10;117:9;
119:5,14,19;123:2;
124:6;125:16,19
**auctions (1)**
106:2
**auction's (1)**
105:24
**audio (2)**
6:9;8:19
**Australia (3)**
97:13,13;119:11
**Australian (6)**
97:7,22,25;98:13;
99:2,6
**authorities (5)**
97:7,22,25;98:13;

102:3
**authority (18)**
14:19;16:22;45:18;
49:20;52:4;56:5;
59:10,24;60:2;63:7;
64:6;67:4,9;71:20;
73:17;80:11;97:16;
126:8
**authorization (3)**
14:22;94:8;119:21
**authorize (10)**
36:16;61:2;101:22;
104:22;105:4;106:6;
122:15,20;123:12;
126:6
**authorized (13)**
13:15;28:14;36:10;
48:17;54:2;79:24;
94:23,24;104:20;
126:3,15;127:24;
128:15
**authorizing (1)**
126:7
**automatically (1)**
55:21
**automobile (2)**
75:10;88:1
**available (5)**
65:12;132:8,10,12;
133:1
**Aviation (2)**
8:14;41:13
**avoid (3)**
58:5;61:19;94:15
**avoidance (1)**
60:13
**award (1)**
62:20
**aware (3)**
24:25;90:13;91:9
**away (3)**
109:25;129:6,13
**Azlin (11)**
8:11,12,12;29:6,7;
33:2,4,25;116:11,12,
12

## B

**BAC (42)**
10:9;45:18,25;46:2,
5,8;47:13,15,25;
48:16,23;49:11,16,23;
50:3,5,7;52:19;53:20;
54:16,19;56:7;58:3,8;
59:3,25;71:6;72:7,11,
12,13,16,18;73:1,1;
76:24;79:2;81:11,19;
85:15;90:15;93:17
**back (25)**
22:16;26:14;40:3,8;
55:14;59:23;93:4,20;
100:11;106:4;109:7;

111:2,8;112:14;
116:24;119:21;
121:20;130:4,6,8,24,
25;131:2,5,16
**background (1)**
120:4
**BAC's (12)**
52:7,22;53:17;54:7,
10;55:17,24;56:3;
58:21;59:6,18;82:2
**bad (1)**
68:24
**bad-faith (1)**
18:17
**bag (1)**
19:11
**bailiff (1)**
97:2
**baked (1)**
123:18
**balance (2)**
84:16;123:6
**balancing (2)**
13:22,25
**ballpark (5)**
18:14;82:6;85:13;
91:14,16
**bank (1)**
126:7
**Bankruptcy (49)**
14:7,17;15:17;
19:21;20:1,6;35:8;
40:19;47:7;49:7,14;
55:1,11;56:6,15,17;
57:17;59:13;60:11,
16,18,23;61:3,6,11;
63:3,6,11,17,19;64:4,
24;65:12,13,17,17,20;
66:10,15,16,19,20;
67:11;69:1,7;71:18,
21;76:20
**bankruptcy-court (1)**
61:9
**bar (85)**
11:20;12:21,23;
13:3,6,11,13,15,17,
25;14:10,14;15:1,10;
16:15;17:17,19,21;
20:4;22:3,13;23:3,11,
12;24:19;25:13;32:2;
35:19;43:4,5,6;46:23,
25;47:4;48:5,7,7,11;
49:8,10;51:11,13,14,
23;52:1,5,25;53:4,25;
55:4,25;56:1,4,5;
58:18,22,24;59:6;
60:9;61:3,11;62:11;
63:2,8,9,11,23;64:3,6;
65:7,18;66:9;67:1,9;
70:14,16,19,20;71:4,
13,14,15,25;77:6;
83:16
**bare (1)**

88:22
**barred (9)**
20:11;29:25;31:14;
43:2;44:20;55:17,21;
70:8;77:15
**barring (3)**
49:14;63:23;74:11
**bars (4)**
14:5;15:4;23:12;
49:12
**base (2)**
79:16;80:1
**based (26)**
12:13;27:22;44:1,
22;46:23;47:14;48:9,
13;52:9;53:20;54:6;
62:14;65:16;66:2;
67:5,9;71:10;76:15;
77:12;81:25;83:19;
86:18,21;102:22;
126:25;127:25
**baseless (1)**
92:10
**basically (6)**
35:20,20;96:25;
100:19;101:6;130:16
**basis (15)**
37:2;51:23;67:1;
72:1;75:25;83:8,11;
86:11;88:19;89:8;
103:14;108:14;109:8;
112:17;125:14
**battle (1)**
112:13
**bears (1)**
88:17
**becomes (1)**
42:10
**began (3)**
67:24;68:2;88:15
**beginning (4)**
100:8,14,15,18
**behalf (18)**
6:20,25;7:8,13,18,
22;8:1,13;10:5,9;
33:21;50:18;61:18,
20,23;95:23;96:2;
131:13
**behind (1)**
112:14
**belabor (1)**
111:12
**belatedly (1)**
29:23
**believes (3)**
12:18;25:22;101:19
**belong (1)**
65:17
**below (2)**
57:13;102:9
**beneficiaries (1)**
62:5
**benefit (8)**

22:23,24;26:9;29:3;
35:10;51:3;102:14;
123:6
**benefited (1)**
92:1
**Bernstein (41)**
7:11,12,13;35:2,3,
4;38:19;95:21,22,23;
104:19;111:16,23,24;
112:1,2,24;113:17,23;
114:6;116:9;117:11,
16,17;118:2,4,7;
120:1,2;124:1;125:1,
4,23;127:4,4,14;
129:5;132:23,25;
135:14,15
**Bernstein's (3)**
34:21;38:21;124:14
**besides (2)**
13:5;122:2
**best (6)**
12:18;101:17;
105:19,21,25;129:13
**better (5)**
13:14;100:7;
104:25;118:3;124:12
**beyond (4)**
27:14,17;45:17;
77:22
**bid (17)**
101:23;102:7,7;
103:2;104:5,5,10;
105:25;108:14;
110:18;118:12;
120:18;121:10,22;
122:7;123:13,20
**bidder (1)**
104:9
**bidders (2)**
96:25;110:17
**bidding (4)**
97:3;103:15;104:4;
118:15
**big (1)**
121:22
**bigger (1)**
134:1
**billed (2)**
91:3;128:15
**billing (1)**
128:19
**Bilt (2)**
87:20;92:23
**bind (5)**
16:16;17:14;25:1;
46:10,23
**binding (4)**
13:12;14:24;66:2;
76:21
**bit (7)**
33:5;101:13,16;
114:2;131:18;134:1,
11

**black-letter (1)**
14:1
**Black's (1)**
70:20
**Blake (1)**
8:18
**blindly (1)**
108:10
**Blixseth (1)**
49:24
**block (1)**
121:2
**blurring (1)**
56:7
**blush (1)**
103:7
**boat (24)**
97:2;99:25;100:24;
101:18;102:1,2;
103:16;107:10,17,24;
119:21;121:15,15,21,
21;122:2,7,13,13,17,
20,23;124:5,10
**boats (2)**
99:18;120:4
**Bombardier (52)**
7:22;10:23;13:4;
15:13,19;16:15,19,22;
17:24;18:2,13,17,25;
19:9,10;20:3,12;21:4,
14,19,25;22:15;23:3,
8,10,16,21,22;24:10,
12,17,20,21,22;25:13;
26:8,14,25;27:12;
29:10;40:20;41:17,
25;45:16;50:16;
91:25;92:2;113:20;
114:6;116:9;118:5;
130:23
**Bombardier's (12)**
12:20;16:1,25;17:6;
19:13;27:2;32:17;
51:11;91:24;92:9,13;
130:22
**Bond (1)**
61:22
**Bonded (1)**
64:14
**bonds (2)**
61:18,23
**bones (1)**
88:22
**both (25)**
12:13;19:22;33:8;
34:10,12;35:24;
36:20,24;37:6,9;
40:11;50:18;52:1;
64:20;72:13;75:16;
77:3;79:20;85:15;
87:21;88:4;89:22;
92:16;112:14;134:6
**bought (2)**
64:18;79:22

**bounds (2)**
21:8;51:6
**Bovitz (35)**
7:24,25,25,25;
95:17,18,18,18;107:7,
8,8;108:3;114:9,11,
11,19,20;115:12,13;
128:7,8,8,9,10;129:3;
131:24,25;132:8,9,10;
133:20,21;134:6,20,
21
**Boy (1)**
98:6
**break (1)**
40:8
**bribes (1)**
79:2
**brief (18)**
11:9;13:1;14:2;
17:11;26:6,17;35:18,
21,25;36:20;91:23;
93:12,16,22;94:4,7,
13,21
**briefed (1)**
125:7
**briefing (2)**
93:7,25
**briefly (1)**
35:17;38:22
**briefs (2)**
59:12;94:9
**bring (7)**
63:18;108:23,23;
109:11,15,16,17
**bringing (4)**
23:13;25:2;34:18;
68:22
**brings (1)**
23:5
**British (1)**
78:5
**broad (3)**
14:18;47:17;72:13
**broader (2)**
54:1;113:24
**brought (7)**
21:4;34:9;46:7;
70:23;71:1;92:15;
125:12
**budget (1)**
38:25
**buffer (3)**
101:13,16;104:23
**build (1)**
101:13
**buildup (1)**
134:1
**bulk (1)**
121:18
**bunch (2)**
121:24;122:21
**Burbank (1)**
79:21

**burden (18)**
12:11;16:1;18:13;
21:20;27:1,2;52:14,
15;57:4;80:10,14;
82:4;83:22;85:11;
88:23;91:13;92:20,25
**burdensome (1)**
43:23
**Bureau (1)**
64:16
**bus (1)**
76:2
**business (14)**
12:1,16;42:9,21;
62:14;78:4,6;119:20;
120:8,12,20,23,25;
124:8
**buy (6)**
78:21;121:9,10,18,
21;122:7
**buying (7)**
118:25;120:14,17;
121:4;122:12,13;
123:7
**buyout (1)**
60:12
**bypasses (1)**
46:1
**bystander (1)**
32:20

# C

**Cal (8)**
44:17;48:5;51:8;
56:5;59:2;77:15;
82:14;83:2
**Cal3d (1)**
45:2
**CalApp3d (3)**
85:2,9;89:4
**calculate (1)**
103:1
**calculated (1)**
46:13
**calendar (7)**
6:13;39:24;40:9;
111:7;129:22;131:21;
134:18
**CALI (8)**
29:9,14,16,21,23,
25;30:15;32:19
**CALIFORNIA (92)**
6:1;11:20;14:16,21;
15:23;16:8,9,13,16,
18;17:12;21:1;22:11,
21;23:5,6,20;24:9,12;
26:9;27:16;30:8;
31:10;32:5;44:9,11,
11,24;46:23;47:3,12,
19;48:4,11,18;51:7;
52:5;53:7,8,13,15,16,
22,23;55:21;72:6,8,

20,23,24;73:4,7,10,
12,21;74:17,22;75:3,
4,7,21,22,23,25;76:4;
77:18,19,20,22;78:10;
79:9,10,12,17,19,23,
25;80:2,4,8,13,15,18;
81:13;83:23;84:14,
21;87:16,22;92:6;
93:11,14
**California's (1)**
47:5
**CALI's (1)**
30:2
**Call (9)**
6:3,17;19:18;42:4;
45:1;102:1;116:8;
123:18;128:14
**called (5)**
20:13;43:4;62:6;
84:4;85:21
**Calling (1)**
95:9
**came (2)**
85:25;127:7
**can (52)**
10:15;20:22;21:19;
24:13;25:9,12;27:6;
32:11;35:25;37:17,
23;38:24;52:24;
57:23;58:1,13;67:22;
70:17;80:20;82:5;
87:12,19;90:9;92:22;
94:5;99:9;102:12;
103:9,17;105:3,15;
106:3,4,5;108:5,23;
111:1,2,3,24;114:13;
116:5;119:1;123:8;
124:7;125:3,4;
127:14;129:13;
130:12;131:5;132:8
**canvass (1)**
57:10
**capacity (1)**
36:17
**car (3)**
75:24;87:25;99:14
**Care (3)**
13:7;67:9;119:7
**careful (3)**
66:6;89:22;107:4
**cares (1)**
107:15
**Carolina (3)**
78:5,7,8
**Caroline (1)**
7:21
**cart (1)**
122:17
**case (83)**
6:14;9:10;12:25;
13:1,9,12,24;14:19;
21,24;15:5;16:12;
20:12;23:20;24:11;

25:10;26:11,14;29:2,
18,23;30:2;40:4;41:4,
11;43:1,9;47:5;51:18,
18,19,20,21;52:8,13;
55:7,23;60:1;62:21;
64:24;65:2,12,13,25;
66:18;70:3;71:6;72:2;
73:16;75:17;76:1,12,
14,18;77:4,12,25;
78:13;79:25;85:18,
24;87:17,17;88:7;
93:24;94:1;95:7;
100:19;101:13;
107:12;110:20;113:1;
118:23;120:5,9;
121:5,8;124:18;
127:21,21;129:11;
130:16;133:2
**cases (33)**
12:22;13:5,14;
17:11;31:13;36:8,10,
16;41:8;46:12,17,19;
52:10;54:22;60:4,6,8;
61:12,14;66:4,6;
67:20;69:22;73:10,
20,20;76:21;78:13;
88:21;93:14;120:22;
124:2;129:9
**cash (5)**
35:22,23;95:11;
113:18;120:18
**cash- (2)**
34:7;36:6
**cash-budget (1)**
34:8
**cash-management (2)**
36:5;126:6
**Cassidy (1)**
79:2
**categorically (1)**
49:19
**categories (1)**
71:19
**category (1)**
21:1
**cause (1)**
79:4
**causes (4)**
50:20,25;74:15;
88:6
**caution (1)**
125:13
**CAVIC (20)**
8:13;10:17,20;27:6,
14,19,20,21;28:2,4;
40:22;50:7,17;71:6;
90:15;113:21;114:6;
116:11,13;118:5
**CAVIC's (4)**
27:11,11;28:11;
56:10
**ceiling (1)**
96:25

**central (3)**
78:24;84:21;87:21

**CEO (1)**
61:17;130:19

**certain (4)**
61:18;73:25;
102:12;104:7

**Certainly (22)**
22:8;28:14;29:1;
33:14;34:7,10;36:15;
39:7,17;59:20;97:19;
100:9,13;102:10;
103:10,17,19;110:7;
111:24;113:16;
126:20;129:8

**certificate (1)**
53:1

**certificates (1)**
78:18

**cetera (2)**
94:2,10

**challenged (3)**
54:13;82:8;91:18

**challenger (1)**
52:15

**challenging (1)**
43:25

**chambers (1)**
9:11

**chance (2)**
125:7;133:10

**change (1)**
8:21

**changed (1)**
93:16

**channel (1)**
98:2

**Chapter (26)**
7:4;31:13;35:22,23;
36:5,6,8,10,16,16,18;
40:14,16;41:6,7;43:1;
46:12,17;61:14,15,15;
64:15;65:3;67:23;
95:10;96:7

**charge (1)**
121:25

**charges (11)**
107:17,25,25;
108:4;118:15;122:8,
12,15;123:4,16,22

**chart (1)**
121:1

**charter (3)**
120:19,19;121:1

**check (1)**
131:21

**Chen (3)**
73:20;76:1,18

**Chicago (1)**
77:23

**chief (1)**
75:5

**China (1)**

**76:4**

**choice (7)**
17:6,8;47:3;72:12;
73:1,2;74:21

**choice-of-law (4)**
47:5,17;74:23;
76:10

**choose (1)**
108:7

**chooses (1)**
118:9

**chose (3)**
16:13;53:13;59:23

**Ciatti (22)**
6:18,19,19;33:11,
18,20,20;34:1;116:9,
19,20,22;117:1,3;
130:4,6;131:8,11,12,
12;132:21,22

**Cigna (6)**
68:5,10,23,24;69:9,
15

**Cir (3)**
56:20;66:18;71:23

**circle (4)**
130:4,6,8,25

**Circuit (47)**
12:25;13:10,12;
15:6;43:12;47:7;
49:18,19,24;51:20;
52:8,11;55:1,7,8;
59:11;60:5,6,23;61:6,
13;63:10;64:5,10;
65:25;66:2,5,6,7,10,
16,18;67:6,10,20,21;
69:6,9,12,15,17,22,
25;71:17;76:22;
120:9,22

**Circuit's (1)**
69:20

**citations (1)**
73:14

**cite (6)**
13:9,11;17:11;
26:11,11;85:15

**cited (15)**
12:22,25;13:1,5,14;
15:5;16:12;67:20;
70:3;73:10;93:13;
103:4,5;124:1,18

**cites (14)**
16:19,22;17:5,10;
20:13;51:17;61:12;
66:7;67:4;73:17,19;
76:1;77:2,9

**citing (8)**
44:17;52:12;61:8;
63:13;65:21;86:10,
20;87:16

**City (1)**
89:3

**Civil (11)**
11:20;13:20;44:17;

48:5;51:8;56:6;59:2;
77:15;82:14;83:2;
103:6

**claim (15)**
11:17;20:2;41:11;
42:19;45:12;46:11;
48:7,12;53:23;61:20;
64:17;72:16;74:18;
79:10;87:19

**claimant (1)**
30:13

**claimed (1)**
82:17

**claims (139)**
12:9,9;14:6;16:10,
15,18,20;17:2;19:10;
20:7,11;21:3;22:3,13;
23:3,7,8,11,12;24:6,
19;25:2,13;26:10;
27:14,19,20;28:4;
29:24;31:16;32:2;
34:12;35:9;36:20,24;
37:3,4,6,9;42:22,25;
43:4,5;44:6,20;45:9,
21;46:23,25;47:4,10,
13,15,18,20;48:2,5,6,
8,13;49:8,8,10,12,21;
50:19,25;51:11,13;
52:1;53:3,8,9,10,14,
16,19,23,23,25;55:4,
9,13,15,17,19,20,25;
56:1,3,5;57:7,20;
58:17,19;60:15,20,25;
62:10,23;64:1;65:4,
12,14,17;66:1;67:24;
68:22,24;69:24;71:7;
72:9,10,15,20,22;
73:1;74:3,14,18;
76:13,17;77:14,16;
78:15,16,22,25;80:5;
81:4,6;82:21;83:17;
86:6;88:11,13;92:3;
130:23,24

**claims-bar (1)**
55:1

**clams (1)**
35:24

**clanging (1)**
120:4

**clarification (3)**
10:20;28:13;117:19

**clarify (2)**
28:18;54:4

**clear (14)**
6:12;17:19;22:11;
30:8;31:1,4;32:23;
78:14;106:16;110:8;
114:22;118:23;121:5;
122:3

**clearer (1)**
25:3

**clearly (1)**
26:10

**CLERK (5)**
6:4;9:3,12,14,22

**clerkship (9)**
9:4,18,20;10:1

**client (1)**
37:16

**clients (3)**
34:21;112:12,13

**clock (1)**
11:2

**close (3)**
55:10;79:23;107:2

**closest (1)**
13:2

**Coast (1)**
40:7

**Code (21)**
11:20;14:7,21;
15:23;20:6;31:10;
32:5;44:18;48:6;51:8;
56:6,6;59:2;66:16,20;
77:15;82:14;83:2;
103:4,6;124:18

**codefendant (1)**
44:14

**codifies (1)**
64:11

**coliability (2)**
30:19;39:14

**collaterally (1)**
68:19

**colleagues (2)**
117:22;133:1

**collect (2)**
12:16;65:15

**collectability (2)**
18:11,22

**collecting (1)**
43:24

**collection (6)**
12:3,13;19:2,3;
43:15;56:25

**collectively (2)**
36:22;85:21

**collided (1)**
88:4

**collusion (4)**
18:11;45:13;81:9;
84:11

**combined (1)**
91:4

**coming (4)**
32:19;105:1;
125:18;130:24

**comingle (1)**
36:18

**comments (4)**
36:19;38:21;
111:16;118:10

**Commercial (7)**
73:19;75:8,15,17,
18;76:14;103:15

**commitment (2)**

**90:4,6**

**committed (1)**
32:25

**committees (2)**
67:24;68:4

**common (1)**
72:15

**communication (3)**
97:22;115:16;
119:14

**companies (3)**
61:23;120:7,12

**Company (15)**
8:14;19:1;68:21;
75:9;88:5;120:7,7,10,
19,20,24,24;121:1,1,2

**comparable (2)**
120:7,11

**comparative (22)**
44:21,22,23,23;
48:9,13,14,14;54:5,6,
6,7;55:20;71:9,10,10,
11;83:18,19,19,20;
84:2

**comparing (2)**
24:18;57:7

**comparison (1)**
99:14

**compelling (3)**
66:13;67:4;69:21

**competent (1)**
51:1

**competition (1)**
79:10

**complaint (15)**
24:8;32:22;36:22;
41:12,15,16,18,20,23;
46:2;47:11;58:4;
69:10;79:7;80:4

**complete (1)**
49:24

**completely (1)**
54:20

**complex (1)**
63:16

**complexity (5)**
12:3;43:16,21;44:4;
56:25

**compliance (1)**
36:14

**compliant (1)**
33:24

**complied (1)**
86:9

**comply (1)**
78:18

**complying (1)**
46:4

**component (1)**
24:19

**compromise (5)**
56:15,16;57:4,9;
61:11

**compromised (1)**
57:7
**compromises (1)**
57:17
**conceded (1)**
65:16
**concedes (1)**
43:22
**conceivable (2)**
55:3,4
**conceivably (1)**
46:18
**concern (8)**
38:3;48:15;53:16;
54:8;72:24;128:11;
129:2;131:15
**concerning (2)**
44:11;77:18
**concerns (9)**
32:18;52:22;59:6;
92:9,13;96:12,13;
102:19;111:25
**conclude (2)**
50:24;86:24
**concluded (4)**
69:15;87:16;89:3;
135:25
**concludes (3)**
45:13;94:25;135:22
**concluding (2)**
31:9;61:2
**conclusion (3)**
92:5;103:19;106:9
**conclusory (2)**
53:17;87:14;91:5
**condition (1)**
22:6
**conditioned (2)**
63:23;68:15
**conditions (5)**
18:9,24;50:1;60:16;
84:10
**conduct (7)**
18:12;28:7;50:6;
52:2;79:8;84:12;
87:19
**conducted (2)**
28:7;42:6
**conducting (1)**
69:8
**confer (1)**
55:11
**conference (2)**
94:6;129:22
**conferences (1)**
67:14
**confidence (1)**
43:20
**confidential (5)**
103:15;112:4,9,15;
114:2
**confidentiality (4)**
102:20;110:8;

111:10;114:1
**confidentially (1)**
107:20
**confines (1)**
66:20
**confirm (3)**
25:15;33:12,22
**confirming (1)**
19:17
**conflict (2)**
66:22;80:12
**Conflicts (2)**
47:8;76:23
**confronted (5)**
61:6;63:17;66:7;
85:18;87:23
**confusion (1)**
116:2
**Congress (1)**
70:24
**conjunction (2)**
63:12;115:9
**connection (3)**
12:21;15:7;122:12
**consciously (1)**
90:1
**consent (4)**
11:15;33:22;41:2;
42:14
**consequences (1)**
94:19
**consider (24)**
14:15;25:9,14;
33:24;35:19;38:1;
43:13;44:24;56:22;
57:15;59:9;60:2;
73:14,17;84:3;89:9;
93:24;94:1;106:5;
110:1;128:18;130:9,
14;133:18
**consideration (5)**
19:6;82:24;89:6;
90:18;106:11
**considerations (4)**
12:2;18:4,5,24
**considered (6)**
21:13;32:14;59:15;
60:2;79:15;90:20
**considering (2)**
12:8;80:1
**consistent (1)**
81:17
**consistently (1)**
81:13
**consolidated (7)**
34:12;35:13;50:23;
75:4;77:7;78:14;
127:23
**consolidating (1)**
38:12
**consolidation (4)**
34:16;39:9;127:18;
129:1

**conspired (1)**
85:20
**Constitutional (1)**
63:7
**Constitutionally-required (1)**
46:9
**construction (1)**
67:18
**consult (2)**
112:11,13
**contain (2)**
69:22;77:9
**contained (4)**
63:8;70:11;77:6;
94:4
**contains (1)**
96:16
**contend (9)**
46:21,25;47:25;
49:1,7,19;58:6;59:16,
17
**contended (2)**
32:25;75:19
**contends (9)**
16:15;17:24;43:18;
44:24;51:13;52:10,
24;53:12;54:19,25;
55:12,20,22;56:5,10;
70:16,17;81:3,4;82:8
**contested (6)**
16:7;84:22;87:17;
88:25;89:7;112:18
**contesting (1)**
25:13
**context (11)**
13:6,10,13;16:14;
35:11;36:4;58:22;
71:18;79:9;104:11;
126:5
**Continental (6)**
64:19,22,24;65:4,6,
15
**contingent (4)**
31:4,12,23;65:7
**continuance (1)**
131:2
**continue (5)**
9:25;11:16;104:21;
105:17;134:15
**continued (1)**
126:6
**continues (2)**
37:5;93:25
**continuing (3)**
12:4;44:5;133:14
**contract (3)**
23:16,17;30:11
**contractual (4)**
23:20;48:15;49:22;
72:14
**contrary (3)**
49:18;80:5,9
**contrast (5)**

47:19;67:15,20;
76:12,20
**contributed (1)**
64:22
**contribution (37)**
13:25;14:5,14;
15:10;20:2,11;31:15;
43:3;44:17,22;47:18;
48:11,14;49:21;51:9;
53:9,18,22;54:5;56:8;
58:19;60:17,20;64:1;
70:15;71:9;72:17;
74:3,12,15,17;77:13;
82:19;83:1,18;84:16;
88:11
**contributions (1)**
60:25
**control (4)**
88:3;94:11;102:6;
109:4
**controlled (2)**
64:20;75:20
**convenience (1)**
39:5
**converted (3)**
41:8;61:15;65:2
**convince (1)**
122:19
**coobligor (4)**
30:17;44:21;83:17,
18
**coobligors (4)**
30:11,14;32:10;
82:18
**cooperate (1)**
43:6
**copy (3)**
52:23;105:14,15
**corollary (1)**
89:4
**Corp (4)**
41:10;42:19;52:8;
78:3
**corporate (1)**
63:22
**Corporation (5)**
64:14;67:23;75:5;
78:4,7
**corporations (1)**
78:6
**correctly (1)**
85:16
**corrosive (1)**
99:18
**cost (2)**
105:17;121:17
**costly (1)**
85:24
**costs (11)**
44:3;62:17;84:17;
101:14;102:8;105:10;
106:13;123:3,5,5,6
**counsel (19)**

59:19;77:23;78:1;
87:6,15;93:19;
111:19;112:21,24,25;
113:10,25;115:2,5;
116:17;118:5,5;
130:22;132:14
**Count (1)**
79:9
**counter (2)**
84:24;89:2
**counter-affidavits (1)**
83:12
**counterclaims (1)**
88:8
**countries (2)**
12:17;44:1
**country (2)**
16:24;119:11
**counts (1)**
78:25
**couple (3)**
39:20;93:2,6
**course (15)**
33:9;37:9,14;114:8;
116:9;118:14;120:8,
15,16,21,22,25;121:6;
122:4;128:21
**Court (404)**
6:3,4,6,8,9,22;7:1,5,
9,10,15,19,23;8:2,6,
10,15,21,24;10:8,11,
22;11:1,22;12:20;
13:2,12;14:8,10,15,
18,24;15:6;16:17,25,
25;18:18,23;19:4,9,
14,19,21,24;20:15,20,
24;21:2,7,10,16,18;
22:10,11,20;23:1,7;
24:6,25;25:8,8,12,14,
21,22,25;27:3;28:12,
18,20,23,25;29:5,10;
31:20,23;32:16;33:2,
14,18;34:1;35:1,11,
19;36:2;38:4,11,19;
39:19;40:2,13;41:17,
19,21,24,24;43:9,10,
19;44:18;46:17,22;
47:11;48:25;49:1,7;
50:3,4;52:16;53:6,19;
54:17,25;55:12,22;
56:14,15,18;57:11,13,
15,18,22;58:11,13;
59:9,18;60:1,4,16,18,
23;61:1,3,7,9,11,12,
19,25;62:2;63:3,5,10,
13,17,23;64:4,4,9;
65:17,20,23,24;66:2,
4,10,12,14,23;67:3,5;
69:1,3,5,7,13,16,18,
70:18,21;71:2,13,25;
72:8,12;73:13,16,18,
20,21;74:10,19,24;
75:7,20,23;76:1,4,8,9,

Case 2:17-bk-21386-SK    Doc 2082    Filed 02/20/23    Entered 02/20/23 05:07:19    Desc
ZETTA JET USA, INC., ET AL.    Main Document    Page 144 of 163

February 15, 2023

10,16,18,19;77:5,13,
21;78:23;79:7,10,15;
80:1,4,6,8,12,14,19,
20;81:23;82:11;83:6,
13,15,23;84:14,20;
85:3,18,24;86:1,3,8,
10,13,14,21;87:8,9,
14,15,19,23;88:7,15,
18,21;89:3,8,11,14;
90:9,22,25;91:10;
92:19,22,24;93:21,23,
23;94:6,8,10,17,22;
95:6,9,20,25;96:4,8,
12,12,19;97:5,8,19,
20;98:4,12,21;99:1,4,
10;100:1,5,14,18,22;
101:8,20,25;102:16,
19;103:10;104:2,15,
16,22;105:21;106:5,
15;107:7,11,22;108:2,
3,7,10,19;109:9,12,
15,16;110:9,16,21;
111:1;112:1,11,20;
113:6,8,14;114:4,10,
16,18,21;115:3,5,11,
17,22,25;116:11,14,
14,15,16,19,23;117:2,
4,7,15,24;118:3,6,9,
10,11,13,24,25;119:4;
120:1,3;121:20,20;
122:13,14,15;123:24;
124:4,23;125:4;
126:3,8,12,12;127:3,
9,20,23;128:2,2,6,7,9,
20;129:1,3,4,16;
130:2;131:4,11,17,20;
132:1,3,5,9,11,16,19,
23;133:2,6;134:3,5,8,
12,14,22;135:2,6,9,
13,17,20

**courtroom (1)**
6:7
**courtrooms (1)**
16:24
**courts (29)**
20:5;43:12;44:24;
46:3,5;47:7;51:7;
53:21;54:22;55:2;
56:9,22;57:9;58:6,24;
64:11;66:15,19;67:8,
11;69:25;74:20,22;
76:22;81:13,15;
83:24;84:3,15
**courts' (1)**
63:11
**Court's (18)**
19:11;22:12;26:20;
45:18;49:11,14;
56:17;58:16;63:6;
65:25;67:6;69:17;
71:21;77:10;89:5;
94:14;118:22;129:17
**covenant (2)**

82:15,23
**cover (1)**
132:8
**covered (2)**
27:10;68:8
**crash (1)**
76:2
**created (1)**
14:15
**creates (1)**
14:13
**credit (21)**
23:11,14,19;24:10,
13,16,20;26:8;79:23;
101:23;103:2;108:13,
14;118:12,15;120:18;
121:9,22;122:7;
123:13,20
**credit-bid (1)**
105:17
**creditor (5)**
8:13;68:3;97:2;
120:23,25
**creditors (16)**
12:5,19;35:15;
37:13,15;38:3,16;
39:4;43:18;44:7;51:4;
57:2,16;62:12;65:8;
107:3
**creditors' (1)**
67:24
**criteria (1)**
87:11
**critical (5)**
37:14;49:3;85:6;
86:16;89:10
**cross-border (2)**
119:13,24
**cry (1)**
91:10
**cure (1)**
42:13
**current (7)**
25:1;29:11,17;
31:13;43:1;99:25;
101:11
**currently (3)**
43:9;64:4;101:9
**customers (1)**
120:13
**cut (1)**
33:5

**D**

**D&O (1)**
68:5
**DAC (1)**
8:14
**damage (1)**
112:16
**damages (7)**
21:23;47:23;48:2;

50:9;54:24;86:1;25
**date (12)**
65:1;97:15,17;
105:8,18,19,23,23;
115:7,9;125:16;
134:15
**dates (1)**
118:20
**day (13)**
16:24;40:6;99:7;
109:19;111:6;120:10,
11,12,12,20,24,24;
135:1
**days (4)**
42:10,13,21;95:2
**DC (1)**
78:2
**de (4)**
20:4;39:8;49:17;
74:10
**deadline (1)**
66:22
**deadlines (1)**
66:21
**deal (3)**
111:9;112:6;129:12
**dealing (1)**
36:8
**deals (1)**
20:7
**dealt (2)**
36:9,14
**dearth (1)**
89:13
**debt (2)**
30:11;39:14
**debtor (13)**
20:8;23:15,16;
64:18,21,23;65:1,12,
15;70:3,7;78:13;79:4
**debtor-in-possession (2)**
36:15;126:4
**debtors (14)**
35:24;36:1,20,21;
37:3,6;39:15;61:21;
62:5;78:12;126:1,13;
127:25;129:18
**debtors' (10)**
35:23;62:3,9,12,14;
79:16,17;80:1;126:6,
9
**debtor's (3)**
49:9;63:21;65:13
**deceased (1)**
61:21
**decide (2)**
34:16;105:15
**decided (1)**
15:5
**decides (1)**
50:4
**decision (8)**
19:11;50:1;60:7;

61:5;77:3;102:21,22;
103:13
**declaration (16)**
19:17;22:17;28:6;
40:18;87:10,13;
88:23;89:15;103:14;
105:9;106:13;109:1,
18;115:8;117:6;
125:15
**declarations (6)**
19:17,23;84:24;
86:7;87:15;89:2
**decrees (1)**
64:12
**defend (1)**
55:15
**defendant (11)**
23:5,13,14;24:4,5,6,
7;25:2;55:20;76:7,9
**defendants (104)**
6:21;7:8;9:6;11:10,
14,16;12:10,12,14,15;
16:10,11,19;17:7,10,
18;18:10,25;19:2;
20:3;21:24;22:24,25;
23:24,25;25:1,1;
26:24;28:1,2,16;
30:18,20;31:14,16,22;
33:21;41:1,2;42:3,4,5,
8,12,17,23,24;43:1,4,
6,25;45:5,9,10,20;
48:8;50:10,11;51:9;
52:20;53:8,13,24;
55:9,10,14,18;56:1;
60:14,17,19,22;61:8;
63:24,25;64:2;70:14;
71:9;72:21,22;73:3,
25;74:4,10,12,14,16;
75:1;78:1,2;79:1;
80:5;84:11;87:4;
90:13,13,17,20;91:1,
8,12;92:1;116:16;
131:13
**defendants' (14)**
18:20;41:20;48:3,
20;49:4;50:14;60:24;
64:7;80:24;81:14,20;
84:13;91:22;92:4
**defendant's (7)**
79:6;85:5,7;86:18;
87:3;88:22;91:24
**deference (2)**
12:1;57:3
**deficiencies (1)**
22:4
**defined (1)**
43:8
**defines (1)**
70:20
**definitely (3)**
29:3;103:12;108:16
**definition (2)**
15:25;89:4

61:5;77:3;102:21,22;
103:13
**defunct (2)**
120:19;121:1
**degradation (1)**
100:12
**Delaware (4)**
19:21;78:1,3,7
**delay (2)**
12:4;43:16;44:5;
45:12;57:1;81:7
**delivery (1)**
79:5
**demonstrate (5)**
37:11;81:16,23;
88:24;102:24
**demonstrated (1)**
109:23
**demonstrating (4)**
57:4;80:14;85:12;
92:25
**denied (8)**
15:20;16:16;41:19,
22;46:5;58:6;72:2;
95:4
**deny (8)**
29:10;50:3;71:25;
81:15;103:17;108:22,
24;117:12
**denying (1)**
125:10
**Department (3)**
98:3,9,13
**deposit (1)**
64:22
**deposited (2)**
51:2;126:9
**deprive (1)**
69:3
**deriving (1)**
62:14
**derogate (1)**
71:22
**described (3)**
14:2;66:2;71:13
**describes (1)**
71:3
**designated (3)**
112:4,9,15
**designates (1)**
71:18
**desire (1)**
38:1
**despite (3)**
16:22;30:2;31:19
**detail (2)**
34:7;105:6
**detailed (1)**
39:1
**details (2)**
98:10;114:14
**determination (7)**
30:5;83:3,6,15;
85:4,8;86:18
**determinative (2)**

90:21,21
**determine (22)**
11:23;18:18;21:14,
16,18,23;26:16,18;
43:13;44:25;47:6,8;
54:18;57:13;69:10;
76:20,23;82:12;
86:22;88:20;90:25;
127:15
**determined (9)**
16:18;23:7;53:7;
61:1;67:11;76:4;
79:11;83:11;87:14
**determines (2)**
44:19;48:25
**Determining (5)**
36:23;38:13;56:21;
84:18;86:14
**detrimental (2)**
97:1;104:13
**develop (1)**
112:12
**developed (1)**
81:25
**dialog (1)**
107:14
**dicta (1)**
87:9
**Dictionary (1)**
70:20
**Diego (1)**
75:6
**difference (2)**
60:3;70:18
**different (13)**
14:2,5;16:6;31:6,
25;32:2;39:15;52:3,3,
4;71:4;113:11;127:12
**difficult (1)**
134:24
**difficulties (3)**
12:3;43:15;56:24
**difficulty (1)**
110:13
**digest (2)**
130:5,18
**DIP (4)**
36:11,11;39:6;
126:9
**direct (5)**
17:15;49:12;94:16;
100:25;102:6
**directed (1)**
77:24
**directly (4)**
19:25;20:1;67:21;
98:2
**director (1)**
68:22
**directors (4)**
67:25;68:2;74:1;
79:20
**disagree (1)**

67:6
**disagreed (1)**
74:19
**disagrees (2)**
70:18;103:16
**disbursement (1)**
34:21
**disbursements (1)**
95:12
**discern (1)**
77:12
**discharge (6)**
20:7,9;44:14,16;
82:20,25
**discharged (1)**
74:7
**discharging (1)**
51:8
**disclose (1)**
96:24
**disclosed (2)**
96:17;110:19
**disclosing (1)**
97:3
**disclosure (2)**
112:16;115:14
**disclosures (1)**
87:1
**discounted (1)**
65:24
**discounts (2)**
53:17;54:20
**discovery (3)**
22:16;25:23;50:6
**discrepancy (1)**
54:23
**discretion (6)**
56:17;83:13;84:20;
85:8;86:19;89:11
**discuss (3)**
9:10,10;98:3
**discussed (1)**
34:6
**discussing (1)**
109:3
**discussion (6)**
11:19;69:23;70:12;
107:14,16;121:11
**discussions (5)**
68:3,4;97:6;98:9,17
**dismiss (10)**
41:14,15,18,20,22;
42:22;76:25;78:24;
79:6;80:3
**dismissal (5)**
62:9;63:24;76:8;
82:15,23
**dismissed (6)**
19:9;24:7;72:10;
75:12;76:6;92:11
**disproportionate (5)**
18:15;27:23;54:13;
82:9;91:18

dispute (5)
14:20;21:10;40:20;
58:17;77:22
**disputed (1)**
57:9
**disputes (2)**
56:3;61:10
**distinction (1)**
67:4
**distinguished (1)**
34:23
**distinguishing (1)**
36:22
**distribution (2)**
34:14;126:25
**distributions (1)**
39:11
**district (32)**
13:2;15:6;19:21;
43:10;51:17,18,19,21;
52:12;54:3;55:23;
59:13;61:12,25;63:5,
10;65:23;66:10;69:5,
17,19;73:20;74:10;
77:2,4;84:21;85:18;
87:16,22,23;88:7;
97:20
**district-court (1)**
70:4
**diversity (1)**
76:15
**divulge (1)**
103:24
**DLA (6)**
8:5,19;97:13;
107:15;133:8,12
**DLA's (3)**
133:16,18;134:15
**dock (2)**
100:4;107:25
**docket (9)**
71:14;77:1;78:24;
93:18;94:18;105:14;
111:11;126:11,12
**doctrine (1)**
79:25
**documents (4)**
29:12;37:2;39:15;
59:15
**dollar (1)**
38:23
**dollars (27)**
19:8;24:1,3,13;
38:2,13,14;62:8,18;
64:21,23;65:1,6;
86:25;88:12;91:4;
99:6;100:11;101:9,
10,11;105:4;108:11;
122:6,15;123:18;
130:15
**done (4)**
37:14;111:5;
126:19;131:15

door (4)
34:19;38:2,15;
127:16
**doubt (2)**
94:15;113:25
**doubts (1)**
57:21
**down (8)**
26:14;36:1;37:17,
23,24;110:16;116:3;
119:15
**dozens (1)**
113:4
**draft (1)**
53:2
**dramatically (1)**
102:9
**driving (3)**
87:25;88:3,9
**dry (1)**
100:4
**dual (1)**
84:17
**Dubai (1)**
78:3
**due (6)**
32:12;43:21;46:14;
58:7;59:3;79:23
**dues (1)**
79:4
**DUI (1)**
88:8
**duplicative (1)**
15:12
**During (11)**
9:9,18,20;64:24;
75:6,14;85:25;94:5,
17;101:4;111:1
**Duty (1)**
64:19

# E

**early (1)**
46:17
**earned (2)**
12:12;26:24
**easier (1)**
11:5
**Eastern (1)**
87:16
**EBC (1)**
64:14
**echo (1)**
32:17
**ECN (1)**
41:14
**economical (1)**
57:19
**educated (3)**
26:21;54:19;82:13
**effect (9)**
15:2;20:7;23:19;

32:9;38:14;52:2;
82:19;97:1;117:6
**effective (1)**
30:4
**effectively (3)**
15:23;18:11;59:2
**effectuate (2)**
49:8;64:12
**effort (1)**
29:24
**either (16)**
11:14;21:23;25:15;
27:20;38:11,16;
42:14;84:23;89:1;
93:7;111:5;114:24;
120:7;121:1;134:4,4
**elects (2)**
118:12
**element (3)**
22:1;41:13;127:5
**eleven- (1)**
63:16
**Eleventh (18)**
51:20,21;55:7,8;
60:5,22;61:6,13;
63:10;64:5,10;66:2,5,
6,7,10;67:20;69:21
**else (7)**
6:11;8:17;9:1;
33:14;38:10;94:17;
105:10
**email (3)**
9:13,13,14
**emanated (1)**
63:20
**emanating (1)**
52:4
**embedded (1)**
46:6
**embedding (1)**
58:5
**emergency (4)**
109:8,12;110:11;
126:5
**emphasis (1)**
54:16
**emphasize (1)**
29:13
**employees (1)**
8:19
**empowered (1)**
61:10
**enable (3)**
25:24;32:16;89:8
**encompass (1)**
47:18
**encountered (1)**
56:24
**encourage (1)**
18:16
**encouraged (1)**
43:24
**encouragement (1)**

84:18
end (5)
71:4;100:8,15;
127:10;129:9
endeavor (1)
101:16
ended (2)
20:16;85:25
Energy (1)
16:12
enforce (2)
43:6;119:11
enforcement (2)
104:17;108:21
enforcing (1)
98:18
engaged (3)
9:9;42:6;73:23
engine (2)
99:16;100:23
engines (1)
101:6
enhance (1)
100:10
enjoin (3)
46:18;48:7;66:1
enjoined (4)
31:14;43:2;55:25;
71:7
enjoining (4)
60:16,19;62:12;
65:8
enough (4)
25:15;36:23;54:11;
107:5
ensure (2)
51:2;84:15
entail (1)
99:12
enter (8)
12:21;14:8,10,23;
54:25;61:3;78:21;
79:4
entered (12)
24:22;30:13;38:11;
41:25;46:17;52:11;
58:24;63:2;69:25;
89:18;124:15;128:1
entering (2)
63:23;65:5
entertain (3)
9:19;106:18;111:16
entire (5)
31:3,12;89:7;94:21;
103:6
entirely (4)
19:10,12;26:25;
37:20
entirety (1)
50:4
entities (21)
7:22;40:15,15,21;
41:13;45:16,25;46:3,

13;47:13,16,25;48:16,
23;49:11,16,23;50:6;
64:20;72:7;81:11
entities' (8)
41:17,22,25;50:8;
54:8;70:9;76:25;
78:24
entitled (7)
22:2,16;23:23;
24:10,15,20;30:12
entity (9)
44:12;53:16;72:24;
77:19;78:10;98:15,
16,18,18
entry (4)
12:23;42:1;64:6;
65:7
envisioning (1)
120:2
equal (3)
42:9;72:17;84:17
equitable (23)
11:24;13:17,18,24;
44:21;47:23;48:2,15;
54:5;56:19,22;57:5,7;
58:16;66:19,23;
67:16;71:9,21;82:7;
83:18;85:13;88:11
equities (3)
13:22;14:1;23:2
equity (1)
64:12
equivalent (1)
56:4
erred (2)
65:20;69:7
Espinoza (1)
87:16
essentially (2)
13:19;103:8
establish (2)
21:15;48:19
established (4)
21:17,19;39:6;53:1
estate (33)
34:6,11;35:12;
37:12,21,23;38:16,17;
49:10,13;50:19,21;
51:4,18;55:3,4,6,15;
63:16,19;64:17;65:6,
17;102:15;107:19;
108:12;112:16;
118:14;120:6;123:7;
125:25;127:2,11
estates (19)
22:8;34:10,23;35:8,
9,14,23;36:18,24;
37:15;38:3,12;50:19,
22,25;63:21;96:18;
126:1;128:20
estate's (1)
51:3
esteemed (1)

19:20
estimate (5)
54:15;82:10;86:24;
91:19,22
et (2)
94:1,9
Euram (2)
62:6,19
evaluate (2)
89:9;91:11
evaluating (1)
86:11
eve (1)
75:11
even (28)
6:7;28:3;36:17;
37:9;46:22;48:4,8,16;
60:1,1,8;72:1;73:15;
80:15;87:1;92:5;
93:12;104:22;106:24;
107:4;110:17,20;
121:8;122:16,21;
123:10;130:9,17
event (6)
9:4,7,9,12,15,22
eventually (2)
62:7;65:5
everybody (5)
39:13;40:5;111:4;
131:23;132:20
everybody's (2)
94:21;126:14
everyday (1)
120:8
everyone (2)
6:8;9:13
evidence (35)
18:11;35:8;36:25;
37:7,10;49:2;51:1;
54:11;77:10,21;
80:16,20;81:8;83:14;
85:6,12,25;86:16;
87:24;89:10,13,19;
90:8,22,25;91:4,16,
21;92:5,7,21;106:4;
122:9,22;123:9
evidentiary (5)
50:5;81:24;86:11;
88:19;89:8
ex (1)
106:18
exact (1)
29:20
exacting (2)
52:14;92:19
exactitude (2)
18:19;26:18
exactly (6)
18:20;26:19;36:3;
115:9;119:22;125:15
examine (2)
83:24;86:14
examiner (19)

8:1,9;95:19;107:13;
113:19;114:8,11,12,
14,23;115:14,15;
128:11;132:14,14;
133:2,10,21;134:7
examiner's (2)
128:21;129:2
example (1)
17:9
exceed (1)
49:14
exceeds (8)
11:24;17:17;21:8;
45:5;48:5;49:10;
80:25;81:20
except (1)
132:6
excess (1)
68:7
exchange (3)
62:8;86:5;88:13
excluded (2)
68:22;133:4
exclusive (1)
49:5
exclusively (1)
92:16
excuse (1)
73:8
execute (2)
78:21;124:19
executed (6)
44:19,25;74:9;75:3;
78:16;79:12
executing (4)
74:1;124:3,13,16
exercise (1)
66:19
exercises (1)
124:8
exercising (1)
74:20
exist (2)
23:17;36:17
existence (1)
84:11
exists (1)
59:5
expansive (1)
54:8
expect (3)
112:21;120:24;
121:2
expected (2)
6:8;43:15
expedited (2)
118:21;125:14
expend (1)
108:25
expenditures (1)
39:2
expense (10)
12:4,11;16:4;37:13;

44:4;45:12;57:1;81:7;
107:18,19
expenses (18)
36:13;38:10;43:16;
86:2;104:17,18;
107:11,13,14,24;
108:17,21,22;121:11,
12,14,24;134:2
experienced (1)
87:13
expert (2)
87:10;97:19
explain (1)
21:2
explained (2)
73:9;105:6
explaining (1)
125:15
explains (2)
53:24;81:8
explanation (1)
87:9
Exporther (1)
64:14
exposure (1)
87:4
expresses (1)
43:20
expressly (3)
13:3;31:4;64:5
extended (1)
66:17
extends (1)
61:9
extension (1)
66:22
extent (6)
32:4;47:21;49:3;
54:1;85:7;86:17
extinguish (2)
48:7;59:6
extinguished (1)
74:6
extra (2)
33:12;123:18
extrapolate (1)
99:7
extremely (1)
99:18
eye (1)
134:11

F

F2d (2)
56:20;71:23
F3d (1)
66:17
FAA (1)
78:19
FAAC (1)
78:17
FAAC's (1)

Case 2:17-bk-21386-SK   Doc 2082   Filed 02/20/23   Entered 02/20/23 05:07:19   Desc
ZETTA JET USA, INC., ET AL.   Main Document   Page 147 of 163

February 15, 2023

78:14
**FAC (1)**
72:11
**face (2)**
32:22;72:18
**facing (1)**
110:16
**fact (12)**
13:2;20:24;22:12,
13;29:20;30:2,4;
54:17;73:6;78:11;
80:8;127:6
**facto (3)**
20:4;39:8;49:17
**factor (4)**
32:18;48:24;54:17;
88:10
**factored (1)**
92:3
**factors (40)**
11:22;12:7;14:5;
16:1,2;17:23,25;
21:11;25:17;27:24;
32:12,14;43:13,18;
44:25;45:1,4;52:6;
54:10;80:23;81:12,
15;82:2;84:3,4,23,25;
86:10,14;88:16;89:1,
17,20;90:14,14,23;
91:7,9;92:17;123:17
**facts (5)**
22:20;57:9;65:9;
77:12;102:22
**factually- (1)**
17:15
**fail (2)**
42:12,13
**failed (3)**
46:8;60:12;69:15
**failing (1)**
46:6
**fails (3)**
18:13;49:6;81:16
**failure (1)**
58:7
**fair (4)**
11:24;45:10;56:19,
22;57:5,6;81:5
**fairly (4)**
34:5;38:4;90:17;
133:24
**fair-market (2)**
102:9,18
**faith (64)**
16:23;18:3,23;
19:18;20:23,25;21:9,
15,17,19;22:22,23;
25:14,16;27:1;28:8;
30:12;31:10;44:13,
19;45:1;49:1;51:7;
54:12;56:19;68:24;
74:2,9;80:21;81:23;
82:4,6,8,16;83:3,7,10,

16,21,24;84:19,22;
85:8,10;86:15,18,24;
87:24;88:20,22,24,25;
89:5,18,25;90:2,3,6,
21;91:14,17;112:4,8,
15
**fall (1)**
67:11
**falls (4)**
57:13;81:21;87:12;
102:13
**false (1)**
26:4
**familiar (1)**
87:10
**family (2)**
61:17;85:22
**far (4)**
15:18;18:14;82:6;
91:10
**fatal (2)**
58:11;76:2
**fault (8)**
44:23;48:4,9,14;
54:7;71:11;83:20;
84:18
**favor (3)**
43:19;44:6;74:5
**favored (1)**
57:17
**Fazal-Karim (1)**
78:2
**features (1)**
24:7
**FEBRUARY (2)**
6:1;131:4
**Federal (8)**
13:20;61:19;71:7;
74:5,20;77:14;86:1;
97:13
**fee (33)**
8:1,9;95:19;98:5;
99:7,12;107:12,13;
113:19;114:8,11,12,
13;115:14,15;128:11,
16,21;132:13,14;
133:2,8,9,10,12,16,19,
21,23;134:2,6,16;
135:2
**fee-application (1)**
36:4
**feel (1)**
133:4
**fees (17)**
28:25;62:17;86:2;
98:22;101:8;103:1;
104:24;108:18,18;
110:23;118:22,24;
120:14;125:3;133:17,
22;134:1
**Feld (5)**
68:1,21;69:2,4,6
**FEOs (1)**

120:15
**few (4)**
40:10;73:10;93:10;
106:1
**fifteen (6)**
10:13,14,23;20:16;
68:7;130:15
**fifteen-million-dollar (1)**
127:5
**Fifth (13)**
13:12;15:6;52:8,11;
65:25;67:21;69:6,9,
11,15,17,20,25
**fifty (2)**
62:22;87:8
**fighting (1)**
112:13
**figure (5)**
37:17;96:20;97:3;
105:19;111:2
**figures (1)**
108:20
**file (21)**
30:16;32:6;43:7;
52:21;103:13,17;
105:8,13,13,13;
106:10;109:1,18;
110:1,19;111:13;
112:5,7;115:7,8;
125:2
**filed (46)**
21:8;24:25;25:7;
30:6;40:18,20,21,22,
23,24,25;41:2,6,10,
11,16;46:11;60:11,
12;61:14,16,20,24;
62:1,2,11,15;63:20;
64:9,15;65:2,13;
67:23;68:10;69:9;
76:2,25;77:20;78:13;
83:12;94:7;96:10,15;
106:14,22;133:9
**filing (4)**
58:9;94:9;107:4;
111:11
**final (4)**
38:11;42:1,10;
128:16
**finalize (1)**
90:2
**finally (12)**
20:4;24:24;37:17;
43:7,17,19;49:16;64:14;
71:17;76:1;91:17;
92:15;133:13
**financial (6)**
12:14;18:9,24;22:6;
84:10;91:2
**financing (1)**
78:20
**find (10)**
25:4;29:20;59:18;
66:4,11,13;67:3;

90:22;98:23;109:24
**finding (34)**
11:19;15:23;20:24;
21:10;22:13,20;
25:22;47:13;48:10,
19;49:2;51:22;52:17;
54:12,12;55:22;59:2;
67:1;71:3;72:9;74:11;
77:11;80:21;81:24;
86:8;87:24;88:14;
89:12,14,17;90:9;
91:5;92:7,22
**findings (3)**
31:9;32:17;80:6
**finds (5)**
60:4;69:20;73:18;
80:14;92:24
**fine (10)**
10:22,22;98:12;
112:5;113:24;114:24;
115:18;131:25;
132:25;134:6
**finger (1)**
29:20
**Fire (2)**
68:6,21
**firm (8)**
9:5,15,16,20;85:21;
118:1;130:15,19
**first (42)**
6:18;10:23;11:15;
12:20;13:16;15:16;
18:2;20:5;22:1;27:10;
29:13;36:2;41:15,18,
20,23;42:9,15;47:11;
53:4;57:22;59:12,14;
60:23;66:5,14;70:11;
72:4;73:15,20;75:14;
79:7;80:4;89:14;91:2;
93:24;94:7;97:4;
103:7;113:7;123:16;
130:5
**first-day (4)**
126:5,16;128:1;
129:15
**five (7)**
10:16;18:5;27:4;
60:4;84:10;99:14;
100:19
**five-million-dollar (1)**
119:15
**FK (19)**
6:20;9:6;33:21;
40:15;41:1,19;42:3;
48:3;78:1,23;79:1,6;
80:5;90:13,17;91:1;
114:7;116:16;131:13
**flaw (1)**
58:11
**flights (1)**
79:19
**floor (1)**
11:7

**Florida (5)**
13:1;51:17,18,19;
62:1
**flouting (1)**
94:9
**flows (1)**
52:18
**focus (2)**
11:18;17:25;82:2;
92:16;127:12
**focused (2)**
61:1;121:11
**focusing (1)**
63:6
**following (6)**
9:14;42:7;43:13;
72:2;82:19;89:15
**foot (2)**
99:6,6
**footnote (5)**
63:10;72:5,6;73:8,8
**footnotes (5)**
94:4,11,13,16,20
**force (1)**
72:17
**forced (2)**
85:24;130:16
**Ford (5)**
75:9,9,12,18,19
**foreign (6)**
12:16;44:1,2;
119:11;124:16,21
**formed (1)**
37:2
**former (3)**
8:19;63:22;67:25
**Formula (1)**
79:3
**Fornos (14)**
7:20,21,21;10:8,10,
14;20:18,19,21;
25:25;26:4;29:8;95:1;
116:8
**Fornos' (1)**
20:17
**forth (8)**
22:13,17;29:12;
30:21;107:25;120:15;
121:4,18
**forty-one-million-dollar (1)**
74:1
**forum (1)**
71:8
**forward (3)**
10:3;97:9,16
**found (15)**
18:8;21:2;24:2;
26:14;45:7;55:8;
72:12;74:8,13;77:13;
80:8;81:2;84:9;87:7;
125:16
**four (9)**
13:20;57:2;58:23;

59:4;64:25;74:9;76:3;
84:8;127:9
**frame (2)**
20:22;101:4
**frankly (1)**
126:24
**fraud (6)**
18:12;45:14;75:6;
81:8;84:12;85:25
**fraudulent (4)**
61:19;62:5;85:23;
92:2
**fraudulently (1)**
85:22
**FRBP (22)**
42:4;46:1;52:6,13,
17;56:13;57:25;58:3,
20,21,25;59:1;66:17,
21,23;67:15;70:17,22,
23,24,25;71:1
**FRBP-specific (1)**
46:20
**FRCP (8)**
52:9;58:15;60:21;
61:2,2;65:22;66:11;
67:13
**Fred (1)**
88:2
**Free (2)**
64:19;135:1
**freeway (1)**
88:2
**front (2)**
109:7;119:21
**FTI (1)**
91:3
**fudge (1)**
123:17
**fuel (1)**
120:14
**full (7)**
19:20;23:23;39:14;
65:15;69:8;81:24;
118:16
**fully (6)**
25:24;38:25;73:5;
90:2;93:21,21
**functional (1)**
56:4
**fund (1)**
62:17
**Fundamental (4)**
13:7;27:18;46:14;
67:8
**fundamentally (1)**
28:5
**funded (1)**
64:21
**funds (8)**
39:3;55:5,15;
108:12,13,15,25;
127:12
**further (13)**

33:17;50:5;57:8;
70:13;76:14;77:16;
83:17;89:15;130:9;
135:4,5,7,12
**future (18)**
9:19,21;25:1;31:14;
36:16;37:21;43:1,24;
44:20;55:15,25;
93:25;94:15;118:20;
119:3;121:14;123:4;
128:20

### G

**Gabriel (1)**
85:21
**game (1)**
110:7
**gamesmanship (1)**
109:20
**gaming (1)**
110:6
**garnishment (1)**
62:1
**gave (1)**
108:13
**general (6)**
11:17;62:24;67:17,
19;112:10;126:10
**generally (2)**
67:13;103:5
**generate (2)**
108:12,16
**generating (1)**
79:19
**Georgia (1)**
62:1
**Gerstein (4)**
67:25;68:8,9,11
**gets (1)**
109:7
**giant (2)**
118:25;120:17
**Gill (4)**
67:25;68:8,9,12
**Gillies (4)**
68:1,8,9,12
**given (8)**
44:13,16;82:16,25;
102:23;118:10;130:4;
133:22
**gives (3)**
14:9,14,18
**giving (1)**
11:25
**Global (1)**
78:5
**glosses (1)**
48:24
**Glove (8)**
7:14;35:5;40:23;
50:15,24;71:6;95:24;
96:11

**Glover (1)**
96:12
**Glove's (1)**
90:16
**goes (1)**
117:19
**Good (92)**
6:6,19,22;7:1,3,5,7,
12,15,17,19,21,23,25;
8:2,4,6,8,10,12,15;
10:6;18:3,23;19:18;
20:23,24;21:9,15,17,
19;22:22,23;25:14,
16;27:1;28:8;30:12;
31:10;33:20;36:23;
40:2;44:13,19,25;
48:25;54:12;74:2,9;
81:23;82:4,6,8,16;
83:3,10,16,21,24;
84:19,22;85:8,10;
86:15,18,24;87:24;
88:20,22,24,25;89:5,
18,24;90:1,3,6,20;
91:13,17;95:9,22,25;
96:4,6;112:3,8,15;
118:4;124:7;130:21;
134:25
**good- (5)**
16:22;51:6;56:18;
80:20;83:6
**good-faith (40)**
11:19;17:23,25;
22:1;30:5;45:1,4,14;
48:10,18;49:1;52:6,
17;54:10;55:22;71:3;
74:11;77:11;80:23;
81:10,12,24;82:2;
84:4;85:4;86:9;88:14;
89:12,14,17,20;90:9,
18,23;91:5,7,15;92:7,
17,22
**goods (1)**
106:3
**govern (5)**
16:21;17:9;53:13,
18;72:21
**governed (13)**
13:19;14:1;23:9,16,
17;24:22;32:2;52:3,5,
6;69:12;72:25;74:18
**governing (5)**
17:8;31:5;36:15;
53:5;72:13
**governmental (3)**
74:22;76:5,19
**governs (8)**
14:17;16:9,10,20;
17:9;67:13,18;72:20
**Grand (1)**
89:3
**grant (6)**
51:8;58:14;68:16;
105:16;108:20;

117:11
**granted (6)**
41:17,19,21;93:1;
103:2;126:8
**granting (7)**
41:25;43:8,19;
58:11;66:21;69:7;
125:9
**great (4)**
56:16;115:4;118:7;
135:2
**greater (4)**
23:23;47:24;48:3;
82:24
**greatest (1)**
87:4
**Gross (13)**
19:16,20;21:12;
22:18;28:6,13,15;
29:1;40:20;42:6;
77:25;130:8,20
**grossly (4)**
18:14;54:13;82:9;
91:18
**Group (1)**
64:17
**guaranteed (1)**
78:19
**guess (6)**
26:21;54:19;82:13;
101:12;127:16;
131:17
**guidelines (1)**
36:14
**guilty (1)**
88:8

### H

**Haberfelde (3)**
75:9,13,22
**Haberfelde's (2)**
75:15,24
**hac (1)**
7:9
**half (2)**
19:8;94:12
**Hamilton (4)**
88:2,5,7,10
**hamstring (1)**
124:20
**hand (2)**
130:4;134:7
**handle (1)**
127:21
**handy (2)**
99:8;116:4
**happen (7)**
26:12;97:11;105:1;
109:2,3;119:6;132:7
**happening (1)**
101:3
**happens (2)**

19:13;26:13
**happy (8)**
108:1;111:18,19;
114:23;118:8,18;
132:15,17
**hard (2)**
90:1;111:4
**harm (1)**
13:21
**Hartog (9)**
13:1,5,14;14:9;
51:17;56:9;64:14;
65:3;67:9
**hate (1)**
109:8
**heading (1)**
96:23
**headquartered (1)**
75:1
**hear (2)**
112:1;128:21
**heard (8)**
8:17;9:1;29:6;
33:19;130:22;132:20,
24;135:22
**hearing (19)**
6:8;9:30:12;40:11;
50:5;56:14;74:8;
81:25;83:12,14;
94:18,22,25;119:8,25;
132:14;133:15,23;
134:16
**hearings (2)**
10:3;135:23
**heavily (1)**
44:5
**held (13)**
9:8;12:22;38:8;
53:21;64:5,16;65:23;
66:14,18;75:7;81:13;
94:6;125:18
**help (1)**
108:1
**helpful (1)**
40:11
**here's (1)**
108:11
**higher (2)**
102:23;124:12
**highest (1)**
105:25
**highlight (7)**
46:11;47:9;48:6;
49:13;50:22;72:12;
81:19
**highlights (6)**
43:23;52:4;54:22;
55:7;72:22;125:25
**highly (6)**
19:20,22;96:16;
102:13;103:15;112:4,
9,15;130:22
**himself (1)**

Case 2:17-bk-21386-SK    Doc 2082    Filed 02/20/23    Entered 02/20/23 05:07:19    Desc
ZETTA JET USA, INC., ET AL.    Main Document    Page 149 of 163

February 15, 2023

32:25
**historically (1)**
49:19
**history (1)**
41:4
**hits (1)**
31:24
**Hold (5)**
8:21;116:14;
124:16;128:6;131:20
**holding (6)**
13:10;19:10;55:14;
65:25;70:7;105:8
**holds (1)**
12:25
**Holland (1)**
8:13
**Home (1)**
63:15
**Homes (5)**
13:8;51:19;60:7;
61:5;65:21
**Honor (172)**
6:19,24;7:3,7,12,17,
21;8:4,8,12,18;10:6,
10,19,25;11:8;14:12;
20:14,19,21;21:10;
22:10,15,22;23:9;
24:18,24;25:3,10,23;
26:3;27:9,10,18,24;
28:2,5,6,10;29:4,7,14,
19,22;30:15,23;32:4;
33:6,17,20;34:4,9,24;
35:3,6;36:4;37:20,25;
38:17,22;39:11,13,16,
17;95:22;96:2,21,22,
22,24;97:4,12,16;
98:1,6,9,11,23;99:2,8,
21,23;100:16;101:1,
12,18;102:5,8,10,12,
17;103:9,16,18,22,24,
25;104:8,12;105:7,14,
15;106:8,16,18;
107:8;109:4,5;110:5,
10;111:13,18;112:2;
113:3,16,20;114:3,9,
22;115:13;116:3,22;
117:3,5,14,17;118:1,
9;119:3,9,10,22;
121:8,12,25;122:19,
24;123:10,25,25;
124:10,19,20;126:21;
127:15,17;128:5,11;
129:25;130:3,22;
131:1,1,2,12,25;
132:6,10,12,22;133:5,
21;134:7,9,21,25;
135:5,8,11,15,19,24
**Honorable (1)**
6:5
**Honor's (6)**
33:9;38:23;39:18;
103:13;106:10;

124:12
**horizontal (1)**
120:11
**horse (1)**
122:17
**host (2)**
25:5;121:10
**hosted (2)**
9:5,15
**hours (1)**
121:3
**hundred (1)**
24:1
**hundreds (1)**
16:24
**hurting (2)**
107:1,3
**hurts (1)**
107:3
**hypothetical (4)**
24:1,2;26:12,15
**hypothetically (1)**
101:23

**I**

**idea (3)**
16:20;37:17;104:25
**identify (2)**
6:11;17:1
**identifying (1)**
50:19
**ie (1)**
25:16
**II (1)**
79:1
**III (2)**
79:1,10
**illustrated (2)**
23:21;24:17
**impact (4)**
32:8;55:3,4;96:17
**impede (1)**
34:24
**imperfect (1)**
99:13
**implicated (1)**
76:3
**important (9)**
14:12;22:1,22;
37:19;48:25;81:14;
84:25;86:14;108:19
**importantly (2)**
21:16;24:18
**impose (2)**
23:4;96:25
**imposition (1)**
60:9
**impossible (3)**
21:22;26:18;77:12
**inapplicable (2)**
58:24;70:18
**inapposite (3)**

17:11;70:11;76:18
**inappropriate (1)**
93:20
**Inc (1)**
60:11
**in-camera (2)**
106:18,19
**inclined (1)**
38:4
**include (4)**
12:2;18:6;38:7;
52:25
**included (7)**
28:3;58:7,22;68:4,
15;73:3;86:25
**includes (2)**
11:12;66:20
**including (13)**
12:16;27:24;34:20;
37:16;49:12;60:14;
61:25;62:3;67:14;
69:12;72:16;94:19;
107:24
**inclusion (1)**
47:3
**inconsistent (4)**
18:15;82:7;85:13;
91:15
**inconvenience (4)**
12:4;43:16;44:4;
57:1
**incorporated (1)**
75:2
**incorporates (2)**
13:20;50:7
**incorrect (1)**
18:1
**incredibly (1)**
115:18
**incurred (3)**
75:10;86:2;128:23
**incurring (3)**
44:3;108:17;110:15
**indemnification (9)**
48:15,16;64:1;
72:18;74:4,11,15,18;
77:14
**indemnify (1)**
68:24
**indemnitor (1)**
61:18
**indemnity (21)**
20:2,10;31:15;43:3;
44:22;49:22;51:10;
53:9,22;54:6;55:13;
58:19;60:20,25;
70:15;71:10;75:18,
20,21;83:19;88:11
**independent (1)**
49:21
**independently (1)**
92:2
**Indiana (4)**

76:3,6,7,8
**indicate (3)**
83:8;101:8;111:10
**indicated (7)**
25:6;68:11;74:22;
86:21;87:8;94:23;
115:17
**indicates (4)**
77:11;78:17;90:12;
97:6
**indicating (3)**
91:6;96:16;127:23
**indirectly (1)**
19:25
**indiscernible (8)**
25:19;28:24;79:2;
86:8;101:24;110:5;
111:20;124:20
**individual (1)**
117:20
**individuals (1)**
25:5
**inefficient (2)**
15:15;17:4
**inextricably (1)**
55:18
**inferred (1)**
54:2
**influence (1)**
88:9
**inform (2)**
103:12,22
**informally (1)**
65:4
**information (26)**
77:10;87:18;96:17;
99:24;100:25;102:11,
13,14;103:12,15,18,
21,24;105:2,12;106:8,
11;108:5;112:3,16;
114:2,13,16;115:21;
116:25;122:1
**informed (1)**
102:21
**inherent (2)**
12:10;81:7
**initial (2)**
59:7;87:1
**initiate (1)**
69:16
**initiated (5)**
44:10;53:14;72:23;
75:4;77:17
**initiating (1)**
58:10
**injunction (26)**
14:8;25;15:7,9;
21:5;24:24;26:5;
30:24;51:12;52:1,9;
58:9,15;64:8;65:20;
66:9;67:22;68:16,20;
69:3,8,11;70:17,19,
21;71:4

**injunctions (10)**
13:18,19;46:2,4;
52:6,11;64:12;70:1,
23;71:1
**injunctive (10)**
13:21;25:3,4;46:1,
5;58:4,6;67:16;69:10,
16
**injure (2)**
81:9;84:12
**injured (1)**
88:5
**injuries (2)**
75:9;88:10
**injury (2)**
75:23;84:2
**inner (1)**
9:11
**innocent (1)**
32:20
**input (3)**
114:15;115:16,20
**insignificant (1)**
133:18
**insolvent (1)**
62:6
**installment (3)**
11:15;42:16,22
**installments (1)**
11:11
**instead (6)**
47:14;51:13;57:12;
69:10;72:9;133:24
**instruction (2)**
94:14;108:2
**insufficient (9)**
21:14,16;79:11;
80:20;81:23;87:15;
102:19;92:21;102:22
**insulted (1)**
130:10
**insurance (12)**
18:10,25;22:9;
60:16;61:22,22;68:5,
13,21;84:10;121:17;
123:6
**insurer (2)**
60:18;75:16
**insurers (3)**
61:23;62:16,19
**insurers' (1)**
62:23
**integral (1)**
61:4
**intend (4)**
10:2;22:7;31:20;
131:6
**intensive (1)**
73:24
**interest (12)**
12:5;13:23;37:3,6;
42:15;44:7;46:19;
74:23,25;75:21;76:5,

19
**interested (2)**
115:17;119:8
**interests (6)**
12:18;43:17;57:2;
70:7;9;84:13
**interim (2)**
34:14;133:8
**interject (1)**
98:8
**international (1)**
12:15
**interpretation (2)**
54:2,8
**intertwined (1)**
55:18
**into (28)**
12:17;15:1;20:22;
24:23;30:13;36:12;
39:3;51:2;63:19;65:5;
78:21;89:18;90:14;
91:9;92:3;96:23;
98:10;99:7,25;
100:13;101:3,9,16;
102:11,13;113:12;
119:18;126:10
**inventory (1)**
120:13
**investigating (1)**
67:24
**Investment (2)**
62:4;64:17
**Investments (4)**
7:14,14;13:8;95:24
**invite (1)**
33:11
**invited (1)**
9:3
**involve (3)**
17:2;19:2;76:12
**involved (14)**
14:25;17:12;43:22;
52:20;55:24;56:25;
63:16;70:13;73:22;
75:5;78:10;88:1;
104:3;113:22
**involves (4)**
13:25;17:15;19:1;
47:9
**involving (5)**
45:21;61:8,21;76:2;
93:6
**ire (1)**
110:15
**Ireland (1)**
8:14
**irrelevant (1)**
92:13
**irreparable (1)**
13:21
**Islands (1)**
78:6
**issue (67)**

13:18;14:13;17:12;
21:9;22:12,14,16,21;
23:5,9,10;24:2;27:18;
29:19,20;30:12;31:1;
32:13,24;33:19;35:7,
13,19;36:2;45:19,22;
53:3;56:2;57:22;
59:22,23;63:14;64:3;
66:9;67:9,21;70:15;
71:5;73:5;76:7;77:17;
78:16,22;83:10,22;
84:22;85:11;88:25;
93:21;94:3,22;96:14,
21;98:25;109:18;
110:8;112:20;113:19;
117:8;118:8;123:11;
124:24;125:21;127:3,
4;129:2,12
**issued (12)**
10:11;46:4;61:18,
23;68:5,6;77:6;97:8,
21;98:15,16;119:10
**issues (31)**
16:9,23;20:1;25:23,
24;27:5,5;34:2,5,6,15;
36:7,10;43:22;57:10;
59:11;65:19;93:2,6,7,
17;94:8,10;96:11;
103:22;107:21;
111:10;113:12;
118:11;119:19;
122:21
**issuing (2)**
31:24;65:20

**J**

**Jackson (2)**
51:19;63:16
**January (9)**
9:4;40:24;41:1,16;
54:21;76:25;89:21;
90:11;91:7
**Jeff (2)**
8:4;106:16
**Jet (16)**
6:14;9:24,24;40:4,
17,17;53:16;72:24;
95:10;117:23;120:19,
20;121:1;128:13,14,
19
**Jetcoast (1)**
78:7
**Jetcraft (50)**
6:20;7:8;9:6;23:10;
24:3,11,14;25:11;
26:9;27:20;29:11,22;
30:18;32:7,23;33:8,
21;35:24;36:20;37:2;
40:15;41:1,10,12,22;
42:3,18;48:3;52:20;
76:16;77:20;78:1,3,5,
5;79:1;90:12,17,20;

91:1;92:11;94:18;
113:22;114:7;116:9,
16,20;129:23;131:13;
132:13
**Joe (2)**
6:24;10:6
**John (4)**
7:17;75:8;96:2,6
**Johnson (1)**
66:17
**joinder (2)**
27:11;41:3
**joined (1)**
29:9
**joint (11)**
23:8,17;30:11,14,
17;32:9;47:20;58:19;
74:6,13;83:16
**jointly (1)**
61:15
**joint-venture (1)**
62:3
**Jon (2)**
7:3,7
**Jonathan (1)**
40:16
**Jordan (3)**
7:6,7,7
**Judge (20)**
6:6;19:16,19,20;
21:11;22:18;28:6,13,
15;29:1;40:3,19;42:6;
74:8;77:25;96:6;
110:3;130:8,20;132:4
**judgment (24)**
11:15;12:1;19:3;
42:1,14;43:25;57:12;
63:25;68:13;75:25;
82:16;97:1,8;119:10,
16,20;124:1,3,9,13,
14,15,16,19
**judicial (4)**
9:3;101:15;102:7;
119:12
**July (2)**
11:12;42:11
**June (1)**
134:4
**jurisdiction (18)**
19:24,25;49:8,11,
15;54:25;55:2,11;
60:24;61:7,9;63:9;
71:8;74:20;76:13,15,
16;124:17
**jurisdictions (2)**
76:3;124:21
**jury (1)**
75:13
**Justice (3)**
98:3,10,14

**K**

91:1;92:11;94:18;
**Katherine (1)**
85:19
**keep (6)**
19:9;95:14;101:17;
106:21;127:24;
133:14
**kept (1)**
106:9
**Kevin (1)**
40:19
**key (2)**
19:6;79:17
**kick (2)**
37:23,24
**kickbacks (1)**
79:23
**kick-the-can-down-the-road (1)**
37:18
**kidding (1)**
114:14
**kill (1)**
97:3
**kind (5)**
14:11;20:1;119:13,
24;128:16
**kindly (1)**
109:13
**King (21)**
6:20;7:2,3,3,8;9:6,
13,18;40:16;41:7;
96:5,6,6;98:8,20;
99:2;129:23;132:3,4;
135:7,8
**Klein (3)**
6:5,6;40:3
**knew (1)**
59:20
**Knight (1)**
8:13
**known (1)**
98:11
**knows (7)**
29:22;35:6,11;
104:9;111:4;118:11;
121:14
**Kristina (1)**
8:12

**L**

**lack (12)**
13:21;25:16;27:1;
52:22;82:4;83:21;
85:10;88:24;91:13;
98:25;99:2,24
**laid (1)**
126:21
**Land (8)**
13:7;51:18;61:13,
13,17,18,23;65:21
**landing (1)**
120:14
**lane (2)**

107:24,24
**language (3)**
53:2;66:22;70:24
**larger (1)**
20:22
**largest (1)**
12:5
**last (4)**
41:24;100:8,15;
133:15
**late (2)**
9:4;94:9
**later (3)**
9:11;42:11;119:2
**latitude (1)**
56:16
**latter (1)**
130:12
**law (106)**
9:3,5,12,14,15,22;
13:22;14:5;16:8,9,9,
13,16,18,20;17:6,8,9,
9;21:1,3;22:21;23:5,
6,9,20,22;24:9,12,15;
44:10,24;46:23;47:3,
6,8,8,12,15,19,19;
48:1,4,18;49:18;53:5,
7,8,13,17,19,22;
55:21;57:10;60:25;
66:14;70:20;72:4,6,9,
10,13,15,17,20,25;
73:1,2,4,6,7,10,12,15;
74:5,5,14,15,17,19,
21;75:7,19,21;76:6,
20,23,23;77:14;
79:25;80:4,12,13,15,
18;91:20;92:6;93:11,
14;118:1,23;120:5,9;
121:5;125:8;130:15
**laws (2)**
17:1;44:2
**lawsuit (1)**
34:9;76:2
**lawsuits (1)**
63:20
**lay (1)**
104:12
**layers (1)**
22:17
**LBR (1)**
95:11
**lead (3)**
37:25;77:23;78:1
**Leader (15)**
7:14;10:17,21;
33:16;34:3;40:22;
50:15,24;71:6;90:16;
95:23;96:10,12;
116:10;125:25
**Leader-Gloves' (1)**
56:11
**Leaders (1)**
27:7

Case 2:17-bk-21386-SK    Doc 2082    Filed 02/20/23    Entered 02/20/23 05:07:19    Desc
ZETTA JET USA, INC., ET AL.    Main Document    Page 151 of 163

February 15, 2023

**leadership (1)**
130:19
**leakage (1)**
115:21
**learned (3)**
9:12;109:19;115:9
**Leasing (1)**
8:14
**least (10)**
18:5;35:19;37:19;
67:10;103:7,18;
106:1,19;118:22;
129:5
**leave (4)**
41:18,21;110:21;
119:3
**leaves (1)**
119:5
**leaving (1)**
78:11
**led (1)**
50:1
**left (5)**
19:4,10;24:6,16;
84:19
**legal (3)**
56:13;58:17;122:19
**legitimate (1)**
38:2
**lengthy (1)**
94:4
**Lenhart (7)**
85:21,22;86:4,5,6;
87:4,7
**Lenhart's (1)**
86:23
**less (6)**
18:8;19:1;45:6;
55:16;81:1;84:9
**less-stringent (1)**
52:18
**leveraged (1)**
60:12
**Lexon (1)**
61:22
**liabilities (4)**
85:5;126:2;127:25;
129:20
**liability (54)**
18:1,4,19,21;19:13;
21:24;23:24;24:5,11;
26:17,19,23;27:23;
28:1;44:15,16;45:5;
48:21;49:4;50:11,14;
51:9;54:15,17,18;
60:15;68:5;72:18;
80:25;81:14,16,20;
82:3,11,12,20;83:1;
84:2,6;85:1,7;86:12,
13,18,23;87:5;91:1,
11,20,22,24;92:4,10;
126:14
**liable (9)**

18:8;26:15;45:7;
74:13;81:2;82:17;
84:9;87:8;92:2
**lien (2)**
118:16,16
**light (3)**
45:11;81:6;86:1
**likelihood (1)**
81:4
**likely (3)**
57:8;108:15;125:2
**likewise (2)**
46:5;90:11
**limit (1)**
70:25
**limitations (1)**
30:1
**limited (11)**
32:8;40:23;45:21;
48:17;70:23;94:13,
19;101:14;103:20;
106:19;112:14
**limiting (1)**
46:16
**limits (2)**
18:10,25;22:9;
84:11
**Lindemann (4)**
8:18,18,22,23
**line (1)**
107:2
**lines (4)**
21:21;56:7;93:10;
94:13
**Linkage's (1)**
101:2
**liquidation (1)**
34:14
**list (1)**
113:1
**listen (1)**
104:12
**listing (1)**
39:1
**litany (1)**
115:1
**litigated (1)**
81:5
**litigating (2)**
42:16;45:9
**litigation (37)**
11:16;12:3,4,10;
13:15;31:14,17;43:2,
14,17,24;44:5,10;
45:12,13;51:14;
56:23,25;57:8;61:8,
10,11;62:6,19;63:17,
20;68:2;73:22;74:25;
75:4,5;77:23;81:7;
86:3;89:7;112:12;
114:5
**little (7)**
70:2;101:13,16;

121:11;131:18;134:1,
11
**Local (1)**
59:12
**locate (1)**
67:5
**located (4)**
77:25;78:2;79:18,
21
**location (1)**
64:19
**Long (6)**
13:7;14:10;67:8;
94:12;121:14;123:2
**longer (4)**
99:22,23;100:2,3
**longhand (1)**
11:5
**long-recognized (1)**
64:11
**look (15)**
14:11;16:17;39:10,
20;40:10;98:25;
103:6;109:12;111:18,
19;112:3;113:24;
114:23;119:9;128:10
**looked (1)**
103:4
**looking (4)**
21:20;37:1;124:6;
127:10
**looks (2)**
103:5,7
**loosely (1)**
36:21
**LOS (1)**
6:1
**lost (2)**
16:4;88:3
**lot (9)**
27:11,12;34:6;
101:3;119:19;122:1;
130:18;131:14,14
**LOU (1)**
95:2
**love (2)**
104:11;108:2
**low (1)**
101:17
**lowest (2)**
11:25;57:14
**lunchtime (2)**
40:7,8
**Lyons (107)**
7:16,17,17;10:20;
27:4,8,9;28:12,17,18,
19,21,24;29:4,9,19;
33:3,6,15,17;34:2,4;
35:1,6,20;38:20,22;
71:23;96:1,2,2,19,21;
97:12;98:1,6,21,23;
99:5,21;100:3,6,16,
20,25;101:12,21,24;

102:5,17,20;103:9,11;
104:8,15;105:7,22;
106:7;108:5,6,9;
109:4,14;110:4,22,24,
25;111:9,21,23;113:3,
10,14,16;115:24;
116:5,6,7,12,15,18;
117:5,20,24,25;118:5,
10,20;119:7,9;123:24,
25;125:1,1;126:18,20;
127:8,12,13,20;128:5;
129:7,24,25;132:1,2;
135:4,5
**Lyons' (3)**
31:19;35:17;36:19

**M**

**magic (1)**
133:25
**magistrate (1)**
74:8
**mailing (1)**
78:8
**main (3)**
39:12;110:20;113:1
**main-case (1)**
106:20
**maintain (4)**
58:16;119:21;
126:13;129:19
**maintained (3)**
99:17,19;100:22
**maintains (1)**
54:9
**maintenance (5)**
99:15;100:24;
121:17;123:5;126:7
**majority (1)**
32:25
**makes (7)**
13:4;20:13;32:23;
55:22;122:24;128:23;
134:3
**making (4)**
17:19;31:8;71:2;
89:11
**management (5)**
34:8;35:22;36:7;
67:14;113:18
**managing (1)**
130:19
**mandates (1)**
58:4
**maneuver (1)**
75:11
**manner (2)**
57:19;109:16
**March (5)**
109:10,25;131:5,
22;133:3
**Marine (1)**
99:3

**market (3)**
101:19;103:5;
114:24
**marketed (1)**
123:2
**marketing (3)**
102:6;103:3;121:17
**Maroko (3)**
113:17;114:8;
116:10
**matches (1)**
17:20
**math (2)**
18:18;99:9
**matter (25)**
9:24;10:2,4;14:5;
16:6;19:25;25:21;
40:3;43:15;55:2;
56:24;59:7;69:12,13;
70:19;80:19;84:19;
95:9,10;110:12;
112:10,18;117:23;
129:22;133:6
**matters (9)**
6:13;9:25;40:9;
59:14;93:5;95:6;
111:7;133:7;134:18
**maximize (1)**
96:18
**maximum (1)**
44:8
**may (35)**
12:21;23:17;34:16;
42:13;54:12;56:15;
57:6;59:16;66:19;
71:20;72:18;82:8;
83:5,10,13;87:11;
91:17;96:17;102:9;
106:21;108:1,11,11;
109:2,3,7;119:4;
123:25;128:15,20;
133:23;134:4,10,14;
135:3
**maybe (5)**
104:25;105:1;
106:25;114:25;123:8
**mean (15)**
20:5;37:10;96:19,
22;100:10;104:12;
113:1;119:12,24;
121:7;122:8;124:14;
127:16,17;131:14
**meaning (1)**
24:16
**means (4)**
120:10,23;128:22;
135:22
**meant (2)**
70:25;129:17
**measuring (1)**
27:24
**mechanically (1)**
119:17

**mechanics (1)**
97:14
**mechanism (5)**
51:12;71:25;93:13;
103:7;105:22
**mediated (2)**
40:20;77:25
**mediation (9)**
28:7,7,14;29:3;
42:6;45:15;81:10,22;
130:9
**mediator (9)**
19:16,22;28:22;
29:2;40:25;89:24;
90:8,15;107:15
**mediators' (1)**
49:6
**mediator's (7)**
50:12;54:20,21;
81:22;89:21,22,24;
90:11;91:8
**meet (8)**
16:1;18:13;21:20,
25;27:1;32:11;
122:19;123:8
**meeting (2)**
14:4;21:12
**meets (2)**
131:8,9
**Meininger (2)**
61:16,20
**members (1)**
61:17
**mention (1)**
119:1
**mentioned (10)**
40:10;60:8;71:12;
73:7,11;89:24;94:2,
11;121:9;133:15
**mentioning (1)**
118:19
**merely (3)**
77:11;98:13,18
**merit (1)**
56:12
**merits (2)**
46:22;50:4
**met (7)**
16:2;80:14;82:5;
89:20;90:23;92:17,25
**method (1)**
87:17
**Meyers (2)**
75:8,14
**Michael (6)**
6:19;7:13;33:20;
35:4;95:22;131:12
**Middle (3)**
51:18,19;120:3
**mid-May (1)**
133:25
**might (15)**
17:1,2;37:4;38:1;

96:24,24;98:14;
106:1,25;107:4;
113:4;118:21;119:5;
131:17;133:21
**million (20)**
11:11;19:8;24:1,3,
13,14,16;27:25;42:9;
50:9,12;62:22;63:19;
64:25;68:7,8;75:13;
91:3;100:11;130:15
**million-dollar (2)**
42:15;68:6
**mind (1)**
19:9
**minimally (1)**
78:10
**minimum (2)**
22:15;25:23
**minute (7)**
14:4;19:4;20:17;
25:12;26:2;33:3,12
**minutes (11)**
10:13,14,16,23,25;
11:3,3;19:5;20:16;
27:5;39:25
**Mirant (6)**
15:5,6;52:12;70:3,
5,11
**misapplies (1)**
48:24
**misplaced (3)**
47:6;52:8;82:3
**missed (1)**
134:19
**misses (1)**
126:4
**missing (1)**
133:7
**misunderstanding (3)**
129:15,16,17
**modest (1)**
133:22
**modification (1)**
33:23
**modified (6)**
54:4;59:6;71:13,14,
16;93:18
**modify (2)**
26:7;41:2
**moment (1)**
117:11
**money (4)**
34:18;36:10;38:24;
55:16
**moneys (1)**
126:21
**money's (1)**
127:16
**month (2)**
106:1;108:18
**monthly (5)**
98:4;99:7,11;
104:24;121:25

**months (1)**
133:10
**Montreal (1)**
43:11
**more (47)**
10:2;15:18;17:5,15,
15;18:5;19:13;21:16;
25:22;26:15;27:18,
25;30:10,14;48:1;
49:6;50:9;52:14;
53:25;54:8;67:15;
69:21;77:11;78:21;
82:17,18;83:3;87:7;
92:1,19;101:11;
102:2,17,18;104:11;
105:6;106:17,24;
108:5,12,15,17,25;
121:8;123:1;126:17;
131:18
**Morimoto (2)**
99:19;104:22
**morning (25)**
6:6,19,22,24;7:1,3,
5,7,12,15,17,19,21,23,
25;8:2,4,6,8,10,12,15;
10:6;33:20;40:2
**most (10)**
12:12;22:1;29:8,9;
41:14;48:25;81:14;
84:25;86:14;88:21
**motion (114)**
9:23;10:5;12:22;
15:8,16,22,24;16:4,7;
21:7;24:25;29:11;
30:5,16,25;32:7;34:8;
38:25;39:23;40:6,12,
13,16,21,25;41:18,20,
22,25;42:10;43:8,19;
45:17,24,25;46:12,22;
48:18;50:3;51:6,15,
25;56:14;57:24,25;
58:1,6,10,23;59:8,9,
21,23;62:11,15;63:1,
12;65:13;67:3,22;
68:10;69:1,23;70:13,
14;71:18,24;72:1,2,5,
6;73:6,11;76:25;77:3;
78:24;79:6;80:3,10,
22;88:22;92:15,19,21,
25;93:3,8,9;94:2,25;
95:3,11,14;97:6,10;
103:2,17;105:13,16;
106:10;109:12;112:8,
22;124:25;125:2,10,
20,22;126:5,11,16;
128:1,25;129:15
**motions (5)**
39:23;41:14,15;
46:6;96:9
**Motor (2)**
75:9;85:1
**Motors (1)**
86:20

**movant (1)**
52:14
**move (6)**
10:3;111:7;119:14,
15;127:17;133:23
**moving (5)**
16:8;17:23;81:15;
84:24;89:2;129:21
**much (17)**
19:1,13;20:19;
32:20;54:16;67:15;
98:4,21;99:24;
102:11;105:6;107:2;
123:4,4;126:19;
127:5,6
**Mueller (1)**
85:20
**multidistrict (1)**
75:3
**Munford (8)**
13:8;51:20;55:7;
56:9;60:6,11,11;61:8
**must (14)**
25:21;50:25;51:2;
56:22;57:10,13;
67:17;72:2;74:20;
84:22;86:14;87:18;
88:25;89:7
**mutual (2)**
11:17;28:15
**mutually (2)**
42:25;82:18

# N

**name (3)**
8:22;101:2;117:20
**named (1)**
64:20
**names (1)**
116:1,4
**Nancy (4)**
8:1,8;95:19;107:8
**narrow (1)**
70:24
**narrowed (1)**
49:24
**National (2)**
68:6,21
**nature (7)**
12:15;29:17;49:3;
85:7;86:17;114:4;
121:23
**Navarro (7)**
84:20,25;87:21,22,
25;88:4,12
**Navarro's (1)**
88:10
**navigate (1)**
44:2
**near (1)**
46:3
**necessarily (5)**

57:1;121:10,19,22,
23
**necessary (11)**
19:19;31:9;32:16;
36:1;60:9;63:14;
65:24;89:4;90:25;
118:17;126:17
**need (31)**
11:22;12:16;37:8,
10;52:21;57:9;59:9;
73:13;93:23;99:16,
16,17,19;102:20;
103:19;104:10;
106:23,24;107:10;
108:4;109:15,18,21;
114:5,15;115:19;
123:21;124:18;
130:25;131:18;
132:13
**needed (2)**
25:22;86:11
**needs (17)**
10:2;12:7;21:18;
22:20;23:1;25:14;
37:6;38:24;100:24;
107:5;109:23,24;
114:16;124:3;125:12,
17;131:14
**negatively (1)**
55:16
**negligence (7)**
44:23;48:14;54:7;
71:11;75:24;83:20;
88:6
**negotiated (3)**
45:19;75:2;90:5
**negotiations (6)**
47:2;56:19;68:3,4;
73:24;90:8
**negotiator (1)**
87:13
**neither (4)**
50:1;60:7;69:4;
125:7
**new (22)**
16:5,6,9,13;17:9;
21:3;23:9,22;24:15;
47:15,19,25;53:17,19;
58:17;59:13;72:10,
16,25;74:19,24;75:1
**news (2)**
130:21;134:25
**next (10)**
16:8;42:24,25;61:1;
105:18;125:19;
129:22;130:1;131:18;
133:23
**nexus (2)**
55:8;79:12
**nice (1)**
115:18
**night (1)**
120:3

Case 2:17-bk-21386-SK   Doc 2082   Filed 02/20/23   Entered 02/20/23 05:07:19   Desc
ZETTA JET USA, INC., ET AL.   Main Document   Page 153 of 163

February 15, 2023

**nightmare (1)**
128:16
**nine (4)**
19:8;24:2,11,14
**ninety- (1)**
24:10
**ninety-five (1)**
126:22
**ninety-nine (2)**
24:4,16
**ninety-one (1)**
24:13
**Ninth (16)**
12:25;13:9;43:12;
47:7;49:18,19,24;
55:1;59:11;66:16,18;
67:6,10;71:17;76:21;
120:9
**Nobody (1)**
104:15
**nodding (1)**
116:21
**nominal (2)**
19:7;26:22
**nonappealable (1)**
42:11
**nonbankruptcy (1)**
47:5
**nondebtor (2)**
49:9;61:8
**nondebtors (2)**
49:22,23
**None (2)**
12:24;17:12
**nonissue (1)**
119:4
**nonparties (3)**
16:16;17:14;46:24
**nonpayroll (1)**
36:13
**nonreport (1)**
131:17
**nonsettling (22)**
22:24;23:4,13;43:5;
47:21;55:9;56:1;59:4;
60:17,19,22,24;63:24;
64:2,7;70:14;74:9,12,
16,25;81:9;84:12
**nonsettlor (2)**
23:15;88:24
**nor (5)**
9:10;30:18;56:6;
69:4;104:16
**Norma (1)**
87:25
**normal (1)**
120:25
**normally (1)**
96:9
**North (3)**
78:4,7,8
**Northern (2)**
52:12;55:23

**note (5)**
14:12;46:3;47:11;
48:10;50:15
**noted (17)**
18:24;57:17;61:9;
63:13;64:9;69:9;
73:13;75:20;78:23;
80:8;85:3;86:10;
88:18;92:21;93:4,23;
99:3
**notes (3)**
50:8;51:22;71:13
**notice (27)**
25:5;41:2;46:9,12,
13,16,20;52:22;53:1,
4;56:14;59:6;83:5,12;
94:21;109:17,17,22,
24;110:1,2,11,11,12;
118:21;125:1,18
**notices (1)**
93:21
**noting (1)**
74:19
**notwithstanding (2)**
22:5;38:5
**November (8)**
40:19;49:5;50:12;
54:20;81:22;89:21,
24;94:5
**novo (1)**
74:10
**Nowhere (1)**
126:11
**Nucorp (8)**
16:12;17:14;47:4;
73:11,19,22,23;76:12
**Nucorp's (1)**
73:25
**NUFIC (4)**
68:21;69:2,4,6
**number (24)**
10:4;12:22;28:3;
40:3;42:19;44:24;
66:5;77:1;82:17;93:7;
94:8,18;95:10,13;
96:24;97:5;102:17,
18;104:9;105:11;
123:17,19;133:6;
135:20
**numerous (5)**
41:5,12;53:21;
60:13;94:14
**Nyota (1)**
79:24

**O**

**object (5)**
34:21;38:24;
112:21;126:24;
127:14
**objected (5)**
62:25;64:2;65:14;

104:16,19
**objecting (3)**
8:13;12:24;13:9
**objection (12)**
12:20;27:22;35:7;
36:4;40:23;52:24;
63:4;69:2;96:10;
104:16,19;113:18
**objections (3)**
38:5;50:16;57:16
**objective (1)**
23:1
**objectives (4)**
18:15;82:7;84:17;
85:13
**objector (2)**
111:24;113:23
**obligated (1)**
79:13
**obligation (1)**
24:21
**obligee (1)**
37:22
**obligor (1)**
37:21
**obligors (2)**
83:4
**obtain (7)**
14:12;42:14;58:9;
67:16;71:20;101:1;
102:2
**obtained (3)**
58:1;59:21;97:23
**obtaining (2)**
102:3;123:13
**obviously (8)**
96:10,23;101:16;
111:18;112:11;
114:23;115:7;124:24
**occurred (4)**
46:15;75:25;77:21;
80:7
**occurrences (1)**
65:10
**occurring (1)**
79:9
**off (9)**
9:24,25;33:5;39:24;
95:7,15;104:22;
124:16;135:23
**offer (2)**
35:18;115:18
**offered (2)**
60:14;75:14
**offers (2)**
9:20;75:16
**office (1)**
113:17
**officer (1)**
102:7
**officers (1)**
73:25
**official (2)**

6:7;67:24
**often (1)**
57:19
**Ohio (1)**
55:23
**older (1)**
102:2
**once (6)**
22:12;97:16;
103:24;110:11;
121:18,20
**one (67)**
8:16;10:19;11:11;
15:14,16,16;18:24;
22:21;23:12;24:16;
25:10;28:12;29:13;
30:14,25;32:1,1;
35:12,16,21,23;36:12,
12;37:12;44:14;
48:25;56:22;58:24;
60:6,7;61:12;65:19;
68:9;71:5;73:21;
74:25;79:3;81:14;
82:17,18;83:3;84:25;
86:13;90:4;91:24;
92:19;94:10;98:7,8;
101:20;107:10;
109:15;113:18;114:2;
116:24;117:11,19;
125:21,25;126:4,10,
10;127:11;130:4;
131:20;133:1;134:4
**one- (1)**
42:14
**ongoing (3)**
12:11;97:12;98:17
**only (59)**
8:20;9:9;11:23;
13:11;14:14,24;16:3;
17:13,25;19:11;24:5,
9,13,16;26:13,20;
32:4;45:21;46:12;
48:13,15;50:11;51:3;
52:25;54:5,13;56:1;
57:10;59:17;63:2;
66:19;70:25;71:20;
72:25;78:10;82:5,8;
86:24;89:19;90:3;
91:18;93:11;106:20,
25;111:23,25;112:10,
17,23;113:21,23,24;
118:8,15,24;121:22;
122:5,11;123:14
**oOo- (1)**
6:2
**open (2)**
15:15,21
**opening (1)**
16:5
**operate (1)**
49:17
**operated (5)**
64:18,19;78:17;

79:18;101:5
**operating (4)**
36:11,13;120:20;
121:3
**operation (3)**
75:5;79:16;80:2
**operational (1)**
36:9
**operations (1)**
120:9
**opine (2)**
125:6;133:11
**opined (2)**
87:9;92:19
**opines (1)**
90:15
**opinion (2)**
107:21;108:1
**opponent (1)**
93:20
**opportunity (4)**
39:10;59:25;125:5;
132:20
**opposed (1)**
19:14
**opposite (1)**
127:10
**opposition (13)**
28:11;40:21,22;
50:8;56:10,11;58:3;
59:18;72:7;76:24;
90:16;92:16;125:23
**oral (1)**
41:5
**order (95)**
6:3,4,15;10:11;
11:20;12:21,23;13:3,
3;14:6,15,23;15:10,
10,12;17:17,19,21;
20:4;27:16;29:17;
30:24;31:2,6,8,11,21,
24;32:1;33:7,23;
35:22;36:6,7,9;37:21;
38:7,11;40:13;41:2,
25;42:10;43:7,8;
46:16;51:23;52:25;
53:4;54:2,4;55:1,25;
56:9;58:18,22;59:6;
60:10;62:11;63:2,8,9,
23;64:3,6;65:7,18;
66:9;67:1,9;69:17;
70:16,19,21;71:4,13,
14,15,25;74:11;77:6,
8,9,13;83:7;93:17,18;
95:2;96:14;113:18;
123:21;126:12,15;
127:25;128:3;129:17
**ordered (1)**
94:12
**ordering (1)**
31:12
**orders (6)**
13:6;61:3,3;63:11;

94:16;96:23

**ordinary (9)**
51:6;118:14;120:8,
15,16,21,22;121:6;
122:4

**ordinary-course (1)**
36:9,13;120:6

**Oregon (1)**
75:19

**original (4)**
31:2;76:16;84:24;
89:2

**others (6)**
37:13;68:1;82:22;
111:16;126:10;
127:14

**otherwise (8)**
12:25;13:10;26:11;
37:12;68:18;74:7;
107:20;128:15

**ought (1)**
30:7

**ours (1)**
16:2

**ourselves (1)**
98:10

**out (31)**
14:6;18:14;41:4;
53:23;65:9,11;68:13;
78:11;82:6;85:12;
91:14;94:11;99:14,
21;100:12;104:13;
105:19;107:23;
109:24;113:20;116:1;
117:20;118:14;
120:11,12,24;121:15;
122:3;124:7;125:16;
126:21

**outcome (1)**
58:17

**outlining (1)**
106:13

**out-of- (1)**
121:22

out-of-the-ordinary-course (1)
122:16

**outside (1)**
65:20

**over (15)**
16:13;33:4;48:24;
55:2;60:24;61:7;
67:18;69:2;76:13,16;
99:16;100:10,23;
104:10;105:17

**overall (1)**
12:13

**overbroad (2)**
30:22;45:22

**overpriced (1)**
79:5

**overreaching (2)**
45:22;48:12

**override (1)**

66:15

**overruled (2)**
56:11;63:3

**oversized (1)**
94:7

**overturned (1)**
19:12

**overview (1)**
11:9

**owed (4)**
65:1,15;101:9;
130:15

**owes (1)**
23:15

**own (8)**
36:20,24;37:9;
78:13;104:4;122:2;
123:1,23

**owned (3)**
35:24;37:6;64:20

**owns (5)**
35:9;36:24;38:13;
50:19,25

**P**

**page (7)**
14:3;17:11;21:21;
26:6;94:12;126:15;
128:3

**pages (1)**
13:6

**paid (10)**
18:7;23:25;48:4;
68:13;79:2;81:18;
82:24;84:6;88:17;
91:3

**paper (1)**
27:12

**papers (3)**
10:16;84:24;89:2

**paragraph (1)**
27:25

**paramount (3)**
43:17;44:7;57:2

**parent (1)**
63:22

**parked (1)**
88:2

**part (17)**
15:9,10;30:9;41:19,
19,21,22;42:18,20;
51:14;58:19;67:10;
70:13;78:18;96:21;
102:5;114:15

**parte (1)**
106:19

**partial (5)**
44:22;54:6;71:10;
75:18;83:19

**partially-terminated (1)**
75:3

**participant (1)**

97:1

**participate (3)**
47:2;132:25;133:3

**participated (2)**
9:17;90:7

**participating (1)**
9:22

**particular (6)**
9:5,16;38:17;90:5;
93:3;112:18

**particularly (2)**
64:3;120:19

**parties (60)**
12:24;13:9;15:18;
17:3,7;21:13;25:1;
28:14;29:18;30:10;
31:13;32:6,9,14,24,
24;34:20;39:10;
42:25;44:17;45:21;
46:9,14;47:1;49:9,20;
52:22,25;59:4;61:10;
62:7,13;65:8;68:17,
17;69:4;70:5,6;81:9;
83:5,8;84:17;88:19;
90:1,5,7;94:5,9;
97:23;106:21,21;
110:20;111:20;
113:21;115:1,2,5;
116:1;130:17,20

**parties' (11)**
16:21;19:18;28:8;
32:13;54:15;81:16;
82:11;85:1;90:3;
91:20;130:10

**partner (1)**
130:19

**partners (2)**
62:3,4

**parts (1)**
23:12

**party (33)**
20:5;23:14;29:14,
15,21;30:2,9;38:23;
43:5;44:15,16;49:18;
53:3;63:1;70:9;71:5;
81:16;82:4,20,25;
83:1,5,11,21;85:10;
91:13;94:1,15;95:1;
104:20;107:10;
116:24;131:9

**party-in- (1)**
46:18

**party's (1)**
22:6

**pass (1)**
114:12

**passing (1)**
73:7

**past (2)**
35:11;123:16

**patently (1)**
30:21

**pattern (1)**

13:2

**pay (14)**
11:10;18:7;42:8;
45:6;65:6;79:14;81:1;
84:8;86:5;104:22;
108:17;122:8;123:16;
125:2

**payables (1)**
126:10

**paying (8)**
24:3;118:24;
120:14,15;121:3;
122:5,11;123:22

**payment (4)**
11:14;28:25;42:13;
75:19

**payments (3)**
22:8;24:9;42:9

**payroll (2)**
36:12;126:10

**peel (1)**
22:16

**penalty (3)**
42:15;109:19;
125:15

**pendent (3)**
74:14,20;76:13

**pending (6)**
7:9;21:7;30:25;
42:23;43:10;58:17

**penny (1)**
104:10

**people (6)**
6:15;95:13;104:5;
113:4;126:24;135:20

**per (3)**
87:8;99:6,6

**percent (4)**
24:4,16;87:3;
126:22

**percentage (1)**
24:11

**Perfect (1)**
8:25

**perhaps (6)**
12:12;100:6;
101:14;133:23

**period (1)**
100:9

**peripheral (1)**
124:24

**perjury (2)**
109:19;125:15

**permanent (2)**
64:8;68:16

**permanently (2)**
60:19;62:11

**permits (1)**
14:7

**permitted (1)**
117:21

**permitting (1)**
18:17

**person (8)**
6:18;48:8;54:14;
55:25;74:5;82:10;
91:19,22

**personal (1)**
75:23

**personnel (1)**
79:18

**persons (2)**
64:20;70:8

**persuasive (7)**
17:15;59:19;60:5;
66:5;69:21;77:4;
125:19

**pertinent (1)**
87:11

**petition (1)**
65:1

**petitions (1)**
41:6

**phonetic (1)**
99:20

**pick (1)**
111:5

**pieces (1)**
10:21

**Pillsbury (1)**
7:22

**pilots (1)**
121:3

**Piper (4)**
8:5,19;133:8,12

**place (5)**
78:4,6;87:18;
117:10;119:6

**places (2)**
54:16;94:14

**plain (2)**
66:22;70:23

**plaintiff (2)**
30:13;76:6

**plaintiffs (3)**
73:23,24;84:8

**plaintiffs' (1)**
25:18

**plaintiff's (4)**
47:20;81:17;84:2,5

**plan (1)**
34:14

**Plane (1)**
79:12

**planes (1)**
78:17

**planning (1)**
129:10

**play (1)**
107:18

**Please (9)**
6:4,11,16;34:3;
95:2;114:16;115:17,
22;116:1

**pleasure (1)**
21:12

Case 2:17-bk-21386-SK    Doc 2082    Filed 02/20/23    Entered 02/20/23 05:07:19    Desc
ZETTA JET USA, INC., ET AL.    Main Document    Page 155 of 163

February 15, 2023

**pled (1)**
  88:8
**plenty (1)**
  129:21
**plus (1)**
  42:15
**pm (3)**
  95:8,8;135:25
**point (21)**
  10:19;11:25;15:19;
  16:8;20:13;21:23;
  22:22;26:18;28:12;
  29:13;34:13,16;
  37:20;39:22;57:14;
  111:12;118:17;120:5;
  125:3;126:4;130:18
**points (6)**
  14:25;20:22;27:11;
  28:11;31:24;117:18
**Police (1)**
  97:14
**policy (9)**
  18:25;22:9;60:16;
  68:5,6,7,8,14;84:10
**Porter (4)**
  7:13;35:4;95:23;
  117:22
**portion (6)**
  62:20;71:12;
  105:17;112:5,7,8
**position (20)**
  9:18;10:16;16:22,
  25;32:19;34:11;37:5;
  38:18;39:8;51:16;
  55:24;72:8;73:6,12,
  18;79:16;81:19;
  89:20,23;93:14
**positions (2)**
  85:17;87:22;112:12
**posits (1)**
  72:25
**possibility (2)**
  118:20;130:13
**possible (10)**
  12:6,6;17:1,2,2;
  26:16;37:20;44:8;
  101:17;103:13
**possibly (2)**
  46:25;94:20
**post- (1)**
  39:10
**potential (8)**
  12:16;32:1;44:5;
  53:18;55:15;72:17;
  87:4;115:20
**potentially (2)**
  76:3;104:13
**potentially-affected (1)**
  46:14
**power (2)**
  14:10;64:11
**powers (4)**
  58:16;66:19,24;

71:21
**practical (2)**
  16:5;57:19
**precedent (2)**
  66:3;76:22
**precision (3)**
  18:19;54:18;82:12
**precludes (1)**
  58:11
**precluding (1)**
  52:2
**prefer (1)**
  110:14
**preference (1)**
  134:10
**prejudice (8)**
  24:17;41:23;72:11;
  82:15;92:11;108:22;
  117:12;125:11
**prejudiced (1)**
  29:16
**prejudices (1)**
  39:4
**prejudicial (1)**
  39:17
**prejudicing (2)**
  38:16,16
**premature (1)**
  34:23
**premises (1)**
  57:3
**prepared (1)**
  118:17
**Pre-petition (2)**
  64:17;126:7
**present (7)**
  37:7,10;50:1;85:11;
  91:4;96:7;114:5
**presentation (1)**
  32:16
**presented (5)**
  80:16;89:19;
  113:15;122:22;123:9
**presents (1)**
  85:4
**preserve (1)**
  23:2
**presiding (1)**
  6:5
**Presta (1)**
  20:13
**pre-suit (1)**
  65:5
**pretend (1)**
  30:23
**pre-trial (1)**
  67:13
**pretty (2)**
  119:25;126:19
**prevailed (2)**
  63:24;91:25
**prevailing (1)**
  95:1

**prevent (2)**
  68:20;70:20
**preventing (2)**
  68:16;70:21
**prevents (1)**
  119:19
**previous (1)**
  126:22
**previously (2)**
  47:11;73:13
**price (2)**
  101:18;124:7
**prices (1)**
  119:14
**primarily (2)**
  63:6;73:25
**primary (3)**
  68:6;79:16;80:1
**principal (2)**
  78:4,6
**principle (1)**
  88:16
**principles (1)**
  91:15
**prior (2)**
  76:9;123:20
**privy (1)**
  116:24
**pro (1)**
  7:9
**probability (3)**
  12:2;43:14;56:23
**probably (2)**
  40:7;107:5;132:7
**probate (3)**
  61:21;62:10;63:21
**problem (4)**
  18:18;77:8;90:19;
  102:20
**problematic (3)**
  29:20;112:11;
  119:25
**problems (1)**
  74:23
**procedural (14)**
  14:10,15,22;15:20;
  32:3;50:16;51:24;
  58:8;67:2;69:14;
  71:24;93:12;105:20,
  21
**procedurally (1)**
  64:8
**Procedure (11)**
  13:20;31:10;32:6;
  44:18;48:6;51:8;56:6;
  59:2;77:15;82:14;
  83:2
**procedures (5)**
  10:12;14:20;52:3;
  67:13;103:6
**proceed (9)**
  20:18;39:23;89:7;
  110:22;111:14;

129:24;130:16,17;
  131:6
**proceeded (1)**
  75:12
**proceeding (52)**
  12:24;14:18;15:8,
  11,12,13,15,19,21;
  16:3,5,6;29:15,22;
  30:6;32:8,9,10;43:20;
  46:7,20;51:13,16,25;
  52:12,21;58:2,10,15;
  59:5,8,22;60:9,12,15;
  61:4;62:2;63:3,13,14;
  65:21,23;66:1,8;
  67:16,17;69:8;70:12;
  71:21;76:17;92:12;
  93:9
**proceedings (7)**
  57:18;62:10;66:12;
  70:1;71:19,19;135:25
**proceeds (9)**
  18:9;34:22;38:8;
  50:21;51:2;64:25;
  68:13;84:7;126:22
**process (5)**
  14:8;46:15;59:3;
  97:18;102:6
**productive (1)**
  131:18
**Prof (13)**
  8:7,8;114:21;
  115:23;132:5,6;
  133:5;134:8,9,13,25;
  135:10,11
**professional (4)**
  62:17;128:13;
  133:22;134:1
**professionals (3)**
  107:11;128:18;
  133:17
**professionals' (1)**
  134:16
**Professor (3)**
  107:15;133:4;
  134:22
**proffered (1)**
  21:6
**profits (2)**
  12:11;26:24
**prohibit (2)**
  70:20;111:10
**prohibited (4)**
  20:6;31:15;43:2;
  56:7
**prohibition (3)**
  14:11;49:25;55:12
**prohibits (1)**
  79:25
**prominently (1)**
  24:7
**promised (1)**
  79:3
**prongs (1)**

13:21
**proof (9)**
  18:2;21:20;41:10;
  42:19;52:15;82:4;
  83:22;85:11;92:20
**proofs (2)**
  11:17;46:11
**proper (6)**
  32:7;57:3;64:8;
  71:24;93:12;104:11
**properly (8)**
  29:15;30:6;55:21;
  69:16;86:22;112:4,
  15;121:12
**Properties (2)**
  56:20;65:9
**property (6)**
  49:13;64:18,23,24;
  65:16;103:5
**property's (1)**
  64:22
**proportional (6)**
  25:20;49:4;81:14;
  84:1;91:11;92:4
**proportionality (2)**
  32:18;48:24
**proportionate (20)**
  17:25;18:4,21;
  26:17,19,23;28:1;
  48:20;50:11,14;
  54:17;82:3;84:6;85:1;
  86:12,13,23;88:18;
  91:1;92:10
**proposal (2)**
  111:9;112:23
**propose (8)**
  37:8;105:13;
  110:22;111:2;113:8,
  15,16;127:14
**proposed (16)**
  11:24;12:7;14:6;
  25:9;31:2,21;33:7,23;
  41:2;54:4;55:10;
  56:21;57:11;83:7;
  111:22;126:25
**proposes (3)**
  34:13;51:1;53:2
**proposing (2)**
  97:24;113:11
**proposition (3)**
  17:6,13;124:2
**prosecuted (4)**
  44:10;53:15;72:23;
  77:18
**prosecution (1)**
  62:18
**protection (1)**
  32:5
**protections (8)**
  11:13;16:12;37:19;
  53:11;54:1;106:22;
  107:6;111:14
**provide (20)**

Case 2:17-bk-21386-SK    Doc 2082    Filed 02/20/23    Entered 02/20/23 05:07:19    Desc
ZETTA JET USA, INC., ET AL.    Main Document    Page 156 of 163

February 15, 2023

13:14;14:22;44:15;
46:8;50:5;55:5;59:13,
24;82:21;90:8,24;
106:4;111:1,24;
112:23;113:9,18;
115:22;116:20;
133:11
**provided (10)**
46:12;55:13;60:3;
70:6;74:2;79:3;80:11;
87:18;88:19;108:14
**provides (13)**
30:9;42:7;44:8;
47:19;50:13;51:23,
24;56:13;67:1,2,15;
82:14;83:4
**providing (5)**
45:20;46:13;65:5;
116:2,19
**Province (1)**
43:10
**provision (7)**
38:7;42:20;68:15,
23;73:1,2;103:4
**provisions (5)**
25:7,7;47:18;58:25;
72:13
**PTE (1)**
40:17
**public (4)**
13:22;106:11,14;
110:19
**publicized (1)**
106:2
**publicly (2)**
19:1;96:17
**published (1)**
51:21
**purchase (7)**
17:6;24:22;47:14;
118:12,13;122:17,20
**purchased (1)**
100:10
**purported (3)**
24:25;30:16;68:20
**purportedly (1)**
48:11
**purpose (4)**
34:19;122:5,11;
123:14
**purposes (1)**
39:7
**pursuant (2)**
12:23;31:10
**pursue (2)**
65:14;105:5
**pursuing (3)**
49:21;62:12;65:8
**put (8)**
9:2;22:13;26:5;
29:19;33:22;35:22;
36:11;110:2
**putting (2)**

39:3;122:17

**Q**

**quadriplegic (1)**
75:11
**Quebec (2)**
17:9;43:10
**quick (1)**
117:17
**quickly (2)**
12:6;109:7
**quo (1)**
58:16
**quoting (1)**
89:3

**R**

**radar (1)**
118:22
**raise (1)**
125:2
**raised (28)**
27:6,11;28:11;34:2;
35:7,13;38:6;50:16;
59:12,14,22;63:15;
65:19;93:17,24;
96:11;112:20;113:17;
114:3;121:12;122:4;
123:11;125:22,22;
127:4,4;129:1,5
**raising (2)**
103:23;114:19
**range (6)**
11:25;12:8;57:14;
84:1;87:12;101:19
**Rapaport (2)**
95:19;107:16
**Rapoport (15)**
8:1,7,8,9;107:9;
114:21;132:5,6;
133:5;134:8,9,13,25;
135:10,11
**Rappaport (1)**
115:23
**rather (14)**
20:12;51:24,25;
55:24;57:10;58:10,
17;59:21,22;63:12;
67:2;70:14;98:18;
110:15
**re (5)**
51:20;55:23;56:19;
71:22;77:2
**reach (4)**
46:13;50:4;70:25;
113:20
**reached (2)**
86:4;90:4
**reaching (5)**
28:9,9;32:15;68:18;
90:14

**read (3)**
116:1;117:20;119:5
**readily (1)**
105:2
**reading (3)**
66:6;67:6;89:22
**ready (5)**
20:18;40:12;97:17;
110:18;111:14
**real (3)**
64:18,21;65:16
**Realan (3)**
62:3,25;63:5
**reality (1)**
37:11
**realize (2)**
9:5,15
**reallocate (1)**
35:25
**reallocation (1)**
37:21
**really (10)**
11:18;14:1;16:17;
17:25;39:6;106:22;
113:22,23;121:5;
127:1
**real-time (1)**
120:3
**reason (8)**
68:20;72:25;109:6,
23;110:1;115:20;
118:19;121:8
**reasonable (17)**
11:23;54:14;57:3,
15,21;82:9;83:25;
87:6,12;88:17;91:19,
21;98:25;112:6,18;
128:23;131:16
**reasonableness (3)**
11:25;12:8;57:14
**reasonably (2)**
87:18;112:8
**reasoning (1)**
123:23
**reasons (9)**
13:16;18:1;29:12,
24;58:23;66:5;72:3;
81:1;95:3
**recall (1)**
94:5
**recalls (1)**
101:1
**receipts (1)**
39:12
**receivable (1)**
126:9
**receive (3)**
62:19;83:13;127:11
**received (4)**
15:21;25:5;79:24;
126:21
**receives (1)**
42:22

**receiving (3)**
53:4;55:16;94:7
**recent (1)**
41:15
**recess (11)**
36:5;39:22;40:1;
93:4;95:5,6,8;102:25;
110:22;111:1,8
**reclassification (1)**
62:23
**recognition (2)**
18:7;84:8
**recognize (1)**
49:23
**recognized (6)**
29:9;36:2;45:6;
64:10;81:1;88:21
**recognizes (2)**
52:22;71:2
**recognizing (1)**
88:15
**recollection (1)**
100:7
**reconcile (1)**
38:1
**reconsider (1)**
76:9
**record (20)**
6:12,16;9:3;21:13;
25:8,15;26:5,21;35:4;
39:24;40:3;81:25;
86:22;95:3,7;109:23;
111:19;112:25;
113:10;135:23
**recorded (1)**
6:10
**recover (7)**
21:24;48:1;104:14;
124:3,5,17,21
**recovery (10)**
12:6;25:18;44:8;
48:22;50:13;60:13;
81:17;84:5;86:12;
91:12
**redact (1)**
106:11
**redacted (1)**
105:14
**reduce (1)**
82:21
**reduced (2)**
47:21;48:2
**reducing (1)**
52:24
**reduction (1)**
62:22
**redundant (1)**
15:14
**refer (2)**
40:17;87:21
**reference (1)**
50:7
**referenced (1)**

**96:15**
**referred (2)**
33:25;36:21
**refers (2)**
13:18;120:9
**reflecting (1)**
11:20
**reflective (1)**
37:11
**refused (1)**
75:16
**refutes (1)**
51:11
**regarding (26)**
10:2;33:16;38:21;
49:8;52:22;53:5;
58:21;63:1;68:4;
73:15;75:18;77:10;
78:15;79:8;90:17;
91:23;93:3,7,17;94:9,
16,17;97:7;114:3;
125:24;129:21
**regardless (3)**
32:13;68:25;130:24
**regards (1)**
32:18
**regular (3)**
100:23;110:2,12
**regularly (1)**
81:15
**regulations (1)**
78:19
**reimbursement (1)**
49:22
**reiterates (1)**
82:1
**rejected (5)**
13:3;29:24;47:12;
72:8;79:15
**rejects (1)**
54:10
**relate (1)**
65:11
**related (28)**
19:25;20:2;26:22,
23;40:21;41:17;
43:16;45:16,25;46:2;
47:13,16,25;48:16,23;
49:11,16,23;50:6,6,8;
62:13,18;65:9;72:7,
15;76:24;78:23;81:11
**related-to (4)**
19:24;49:15;54:25;
55:11
**relations (1)**
23:21
**relationship (3)**
72:14;88:17;89:6
**relative (4)**
21:24;48:3;85:5;
134:1
**relayed (1)**
97:21

**release (12)**
11:18;20:5;42:25;
44:13;47:22;49:18;
56:4,8;82:15,22;86:6;
88:13
**released (1)**
47:23
**releases (1)**
49:25
**relevant (5)**
13:24;30:9;34:15;
80:23;89:17
**reliability (1)**
25:20
**reliance (6)**
47:4;49:5;52:7;
60:4;65:24;77:3
**relied (1)**
66:11
**relief (31)**
13:17,19,21;17:20,
21;25:4,4;30:20;
31:25;45:17,23;46:1,
6;48:17;51:5,8;58:1,
4,5,7,11,14;59:21;
67:16;69:10,16;
85:24;93:9,13;
113:23;125:14
**relies (1)**
69:22
**rely (2)**
66:23;85:15
**relying (2)**
65:22;81:21
**remainder (2)**
10:1;106:12
**remained (1)**
101:2
**remaining (2)**
6:13;93:5
**remanded (1)**
69:18
**remedies (1)**
52:3
**remedy (3)**
13:22;119:12;
127:18
**removed (3)**
88:7;100:5;101:7
**rendering (2)**
75:10,13
**renewed (1)**
123:15
**rented (1)**
64:23
**reorganization (1)**
57:18
**repairing (1)**
75:24
**repeat (1)**
29:7
**replacing (1)**
97:7

**reply (35)**
12:22;13:5;21:21;
26:6;35:18,21;40:24;
41:3;51:5;58:13;
59:10,12,14,17,24;
60:3;69:24;71:15;
72:19;73:9,15,18,19;
77:3;82:1;91:23;
92:16;93:11,16,21,22,
25;94:4,13;126:22
**report (13)**
40:20;49:6;50:12;
54:20;81:22;89:21,
24;96:16;114:3;
128:21;131:2,5;
133:11
**reports (1)**
89:22
**represent (1)**
9:6
**representations (1)**
22:5
**represented (3)**
86:7;87:6;116:17
**represents (1)**
111:23
**request (8)**
25:23;30:24;46:18;
64:7;69:16;104:21;
106:9;117:13
**requested (9)**
48:17;49:10;51:6;
58:1,12,14;59:20;
93:10,13
**requests (1)**
50:3
**require (6)**
12:23;44:2;80:12;
81:24;99:15;118:24
**required (22)**
15:9;18:18;26:20;
31:8;32:6;45:23;
54:18;57:24;59:9;
66:1,9,12;69:14,24;
70:1,13;76:5,9;78:18;
81:21;82:12;90:9
**requirement (2)**
57:25;58:5
**requirements (4)**
15:22;46:21;58:8;
86:9
**requires (15)**
31:11;36:25;37:1;
46:1;49:6;51:12;58:2;
70:2;84:15;90:18;
98:11;99:9;118:13,
25;122:13
**Requiring (3)**
15:11;52:11;104:12
**reseek (1)**
118:21
**resell (3)**
121:15,15;124:11

**reserve (3)**
10:15,18,24
**resident (2)**
75:22;78:3
**resolution (2)**
45:20;90:2
**resolve (1)**
74:23
**resolved (1)**
133:13
**resolves (1)**
54:7
**resolving (1)**
14:20
**Resource (2)**
13:7;51:18
**resources (8)**
37:22;39:5;61:13,
14,17,18,24;65:22
**respect (13)**
21:11;24:24;26:16;
31:16;32:12;36:19;
43:3;107:15,17;
112:3;128:13,22,24
**respected (1)**
19:22
**respectfully (1)**
38:6
**respective (3)**
38:3;85:17;128:20
**respond (12)**
10:15;11:3;20:17;
26:1;33:3;35:17;
38:20;59:25;81:11;
119:7;123:25;125:4
**responding (1)**
59:17
**responds (1)**
126:3
**response (7)**
10:24;20:21;64:6;
83:13;96:15;119:8;
125:23
**responsibility (1)**
22:12
**responsible (1)**
24:12
**rest (2)**
40:5;133:7
**Restatement (3)**
47:7;76:22;80:11
**restaurant (1)**
9:7
**restrain (2)**
48:7;49:20
**rests (1)**
56:5
**result (4)**
45:14;56:18;62:22;
71:5
**resulted (1)**
81:10
**resulting (3)**

42:7;64:25;73:24
**results (1)**
39:8
**resume (1)**
42:16
**retailers (1)**
120:13
**retain (2)**
11:15;42:15
**retired (3)**
40:19;42:6;77:25
**retroactive (1)**
66:21
**return (1)**
62:19
**reveal (2)**
99:24;103:25
**revealing (1)**
104:1
**reveals (1)**
66:7
**revenue- (1)**
79:18
**reversed (1)**
69:17
**reversing (1)**
46:3
**review (10)**
36:5;74:10;84:15;
106:18,19;107:22,24;
125:8;126:24;133:11
**reviewed (1)**
107:11
**reviews (1)**
107:13
**revise (1)**
25:7
**revised (4)**
17:19,21;27:16;
31:21
**revisions (1)**
53:3
**rewards (1)**
57:8
**reworked (1)**
54:4
**RIG (5)**
64:23;65:1,4,6,15
**right (46)**
11:4;14:14,15;
15:14;16:17;27:4;
28:17;29:5;31:4;34:2,
9,18,24;39:19;40:2,7;
98:1;99:10;100:17;
102:21;105:18;
108:24;109:13;
110:13;111:21;
113:13;115:22,25;
116:12;117:7,8;
118:18;122:21;
123:17,19;124:13,23;
125:5,20;127:8,18;
128:6;129:4;130:15;

**rights (6)**
15:20;34:20;59:3;
68:14;69:3;82:19
**risk (6)**
12:10,13;18:22;
19:2,3;81:7
**risks (1)**
45:12
**Rivero (2)**
64:17,20
**Riveros (1)**
64:22
**road (4)**
36:1;37:18,24,24
**roadmap (1)**
40:5
**Robert (1)**
61:16
**Rock (1)**
62:4
**role (1)**
107:18
**Roselius (23)**
6:23,24,24;10:6,6,
13,14,16,18,19,24,25;
11:7,8;19:4,6;20:15;
25:6;26:1,3;27:3,10,
13
**Roselius' (3)**
20:21;22:5;31:19
**rough (3)**
25:17;50:13;84:5
**roughly (2)**
81:17;101:10
**rounds (1)**
41:14
**routine (1)**
72:14
**routinely (1)**
51:7
**RSVP'd (1)**
9:17
**Rule (28)**
13:4,16,20;14:11,
17;15:1,2,3,17,22;
17:1;31:5;39:22;40:6,
12;46:4;57:9,16;58:8,
23;67:17;69:12,14;
71:18,22;92:15;
126:12;133:12
**ruled (3)**
53:19;118:18;128:2
**rules (5)**
32:3;59:13;69:14;
74:21;94:9
**ruling (11)**
76:10;78:23;79:6,9;
80:3;92:12;93:23;
117:10;129:7;130:5,5
**rulings (1)**
41:5
**run (2)**

101:6;133:24

## S

**Safeguard (1)**
  61:22
**sale (12)**
  15:8;65:16;70:5,13;
  71:18;73:23;102:2;
  103:6;104:3;119:12;
  121:18;123:3
**Sales (1)**
  85:2
**salt (2)**
  99:17;100:24
**salvage (1)**
  130:7
**same (16)**
  11:21;17:21;20:13;
  30:25;36:3;47:10;
  64:19;71:5;82:18;
  92:19;116:17;120:12;
  123:19;126:15;128:3,
  10
**San (1)**
  75:6
**Sandra (1)**
  6:5
**satisfied (5)**
  17:24;20:23;74:7;
  82:2;90:2
**satisfies (6)**
  45:4;48:11;54:10;
  80:23;89:16;91:7
**satisfy (5)**
  25:17;58:8;69:13;
  81:12;111:25
**saying (12)**
  85:16;102:22;
  107:2;116:24;117:20;
  122:18;125:18;
  126:15;127:22,23;
  129:8,11
**schedule (1)**
  50:5
**scheduled (3)**
  109:7,10,11
**scheduling (3)**
  67:14;118:20;
  131:10
**scheme (1)**
  133:18
**scope (11)**
  17:17,20;26:5;
  27:15;29:17;30:19;
  45:17;48:5;52:25;
  67:12;93:17
**Scott (4)**
  7:25;95:18;107:8;
  114:11
**screen (3)**
  6:15;8:22;131:23
**sea (2)**

79:3,23
**Seabury (1)**
  91:2
**Seagrim (1)**
  79:20
**seal (11)**
  103:14,17,19;
  105:13,16;106:9,17,
  22;107:4,21;111:13
**seawater (1)**
  99:23
**sec (1)**
  131:20
**second (17)**
  11:14;14:7;21:1;
  24:19;35:23;36:19;
  42:11,12,18,22;47:8;
  66:9;67:8;76:22;
  80:12;98:7,8
**Secondly (1)**
  130:6
**seconds (1)**
  33:12
**secret (2)**
  114:13;115:21
**Section (24)**
  11:20;13:11,15;
  14:7,9,13,14,21;
  15:23,25;16:12;
  17:18;18:3,16;20:6,
  11,12;31:4,8,11,25;
  32:1,5;83:4
**sections (2)**
  31:7;66:15
**securities (4)**
  73:22,23;74:5;
  77:14
**securities-fraud (1)**
  77:7
**security (2)**
  121:16;123:5
**seeing (1)**
  114:6
**seek (11)**
  22:16;31:6,8,11;
  34:16;71:25;85:24;
  123:15,16,20;125:14
**seeking (22)**
  25:4;27:25;30:3;
  31:15;43:3;51:22;
  58:15,18;60:13,17;
  61:19;62:11,15;
  66:25;68:10,18;
  70:15,16;86:1;93:13;
  104:18;123:13
**seeks (15)**
  16:16;23:4;32:4;
  42:2;43:9;45:17,25;
  48:10;50:9,17;51:13;
  53:25;71:20;76:13;
  80:7
**seem (1)**
  113:21

**seems (6)**
  70:22;98:12,14,17;
  122:3;129:9
**segregated (1)**
  38:9
**seized (2)**
  100:20;106:3
**seizure (5)**
  97:7,20,21,23;
  98:16,19
**select (1)**
  28:15
**sell (5)**
  102:1;103:5;
  122:25;123:1,3
**selling (4)**
  97:2;120:13,14;
  121:2
**semantics (1)**
  70:19
**senior (1)**
  130:19
**sense (5)**
  122:14;123:12,23;
  128:23;134:3
**sensitive (8)**
  96:16;99:24;
  102:13;103:20,25;
  105:10,12;114:2
**sent (1)**
  9:12
**separate (26)**
  12:24;15:8;16:2;
  35:7,9,14,14,14;
  36:12,18;37:15,15;
  38:8;51:16;52:9;
  57:24;58:14;61:24;
  64:9;78:12;126:1,1,1,
  13;127:24;129:19
**Separately (1)**
  62:15
**seriously (1)**
  88:5
**served (5)**
  15:17;19:20;52:23,
  25;83:11
**service (2)**
  46:21;53:2
**services (1)**
  28:21
**session (2)**
  6:5;131:19
**set (10)**
  11:2;14:6;22:17;
  29:12;30:21;41:4;
  66:21;105:19,23;
  119:24
**setting (1)**
  89:7
**settle (11)**
  14:19;15:16,16;
  25:11,12;51:1;55:14;
  60:14;75:14;76:14;

80:7
**settled (10)**
  34:12;44:11;50:20;
  53:15;62:7;72:23;
  75:17;76:6;77:18;
  88:12
**settlement (199)**
  11:9,10,12,19,23,
  24;12:7,18,21,23;
  13:11;14:4,4,23;15:4,
  7,24;16:23;17:3,8,12,
  14,23;18:3,7,9,14,16,
  17,20,23;19:7,7;25:9;
  26:22;28:9;29:11;
  30:5,13,21;31:1,3,3,5,
  9,12,18,22;32:15;
  33:24;34:19,25;
  35:10;38:5,7,8;40:14;
  41:13;42:3,7,18,21;
  43:14;44:6,7,19,25;
  45:3,5,6,10,14,17,23;
  46:6,10,24;47:1,9;
  48:19;49:13,17;
  50:17,21;51:14;
  52:17,23;53:5,14;
  54:9,13,14,24;55:5,5,
  10;56:15,18,21;57:6,
  11,13,20,23;58:7,20,
  24;60:18;61:4;62:20,
  21;63:1,4,7;65:5,7,18;
  68:3,11,11,16,18,19,
  25;69:1,11,18,18;
  70:4,5,6;72:4,21;73:3,
  24;74:1,2,9;75:2,16;
  77:5,6,17,21;78:9;
  80:13,15,18,22,25;
  81:5,10,15,18,20;
  82:5,6,9,10;83:3,5,7,
  9,10,15,24,25;84:7,7,
  9,18,19;85:4,12,19;
  86:4,8,15,22;87:2,6,
  12,13;88:17,20;89:6,
  9,16,17;90:4,6,15,18,
  20;91:6,14,18;92:6;
  127:5;130:7
**settlements (13)**
  16:21,23;51:7;
  54:23;58:25;63:18,
  22;64:3;84:16;
  126:23;127:1,1,9
**settles (2)**
  15:12;47:20
**settling (101)**
  7:8;11:10,13,16;
  12:10,12,14,15;14:18;
  15:14;16:10,11;17:7,
  10,18;18:10,20,25;
  19:2;20:3;21:24;22:6,
  23;23:14,24,25;24:4,
  5,14;25:2;26:24;28:2;
  29:18;30:18,20;
  31:16,21;32:14,24;
  42:4,5,8,12,16,23,24;

43:4,6,23,25;44:21;
  45:4,9,20;48:8,20;
  49:4;50:11,14;51:9;
  52:19;53:8,12,24;
  54:15;55:9,13,18,19;
  63:25;65:8;68:17;
  70:5;71:9;72:20,22;
  73:3;74:4,13;80:24;
  81:13,16,20;82:10;
  83:4,8,17;84:1,11;
  85:1,7;86:17;88:21,
  25;91:8,11,19,22,24;
  92:1,3
**settlor (5)**
  18:7;45:6;81:1,3;
  84:8
**settlor's (2)**
  84:6;88:18
**seven (1)**
  95:2
**seventh (1)**
  95:11
**seventy-foot (3)**
  104:3;120:17;121:4
**several (5)**
  13:16;17:10;18:1;
  44:1;61:16
**shall (9)**
  30:11;44:14;82:19,
  20,21,25;83:7,16,21
**share (9)**
  18:20;23:24;47:23;
  48:2,3;84:1;88:18;
  117:21;129:2
**shares (1)**
  128:11
**sharing (1)**
  84:17
**shift (1)**
  88:23
**ships (1)**
  99:18
**short (3)**
  81:21;107:1;133:24
**shortened (7)**
  109:16,17,22,24;
  110:1,11;125:18
**shortest (1)**
  44:9
**show (9)**
  16:2;18:2,13;27:1;
  28:1;50:10,25;87:11;
  91:14
**showed (1)**
  82:5
**showing (4)**
  26:25;84:23;89:1;
  110:14
**shows (1)**
  18:22
**shrink (1)**
  99:22
**shrink-wrapped (1)**

Case 2:17-bk-21386-SK    Doc 2082    Filed 02/20/23    Entered 02/20/23 05:07:19    Desc
ZETTA JET USA, INC., ET AL.          Main Document          Page 159 of 163

February 15, 2023

100:4
**sic (3)**
27:15;63:13;83:11
**side (4)**
68:9;88:2;119:18;
125:7
**sides (2)**
40:12;87:21
**Siegel (1)**
66:14
**sight-unseen (1)**
104:6
**sign (2)**
68:14;117:5
**signed (2)**
109:18;125:15
**significant (7)**
11:13;19:3,14;44:3;
54:23;55:5;99:15
**significantly (3)**
12:13;26:15;102:23
**similar (5)**
13:6;16:13;53:23;
79:7;120:12
**similarly (2)**
45:3;75:8
**simple (1)**
15:18
**simply (8)**
15:3,15;21:20;
23:22;24:17;36:6;
69:10;133:25
**Singapore (13)**
40:18;41:6,11;
50:18;78:12,15;
79:12,13,21,22;
127:11;128:13,24
**Singapore's (1)**
125:24
**single (3)**
39:3,6;128:19
**sister (1)**
85:20
**sit (2)**
59:23;93:20
**sits (2)**
74:21;100:4
**sitting (3)**
99:14;100:2,3
**situation (5)**
17:16;25:13;26:13;
106:3;110:6
**six (4)**
14:2;63:20;84:11;
109:25
**skip (1)**
115:15
**slight (1)**
134:9
**small (1)**
9:9
**sold (2)**
64:25;101:18

**sole (1)**
88:9
**solely (1)**
27:5
**solution (4)**
35:18;110:14;
111:15,22
**solved (1)**
117:7
**somehow (1)**
39:8
**someone (6)**
6:11;8:24;100:22,
23;104:9;115:16
**sometime (2)**
36:1;119:2
**Sometimes (2)**
11:4;134:23
**sophisticated (2)**
59:20;93:19
**sort (1)**
20:2
**sought (17)**
29:17,25;30:20,24;
31:2,25;45:24;46:2;
51:15;58:4;67:17,22;
70:4;74:10;88:14;
121:25;122:21
**sound (1)**
84:19
**sounding (1)**
72:16
**sounds (1)**
97:9
**sources (1)**
52:4
**Southern (1)**
51:17
**Spalding (5)**
6:20;7:8;9:6,13,18
**speak (6)**
6:10,10;11:6;
117:11,25;130:22
**special (1)**
14:20
**specific (7)**
14:3;17:5;33:19;
58:22;62:20;67:15,18
**specifically (5)**
20:23;26:6;32:17;
94:2,10
**specified (1)**
52:2
**specify (1)**
73:4
**spend (1)**
38:23
**spent (3)**
38:9,24;39:18
**Spitzer (2)**
8:1;95:18
**spoken (1)**
6:11

**staff (1)**
11:2
**stand (1)**
19:15
**standard (8)**
52:14,18;56:13;
71:2;92:18,20;
122:19;123:8
**standards (1)**
14:2
**standpoint (1)**
128:12
**start (4)**
10:4;11:22;27:6;
113:12
**started (1)**
9:2
**starting (1)**
21:9
**state (18)**
16:20;17:1;26:6;
58:8;60:25;61:19;
62:1;71:7;74:5,14,15,
21;76:1,18,20;85:24;
86:2;99:25
**state-court (1)**
61:7
**stated (10)**
9:14,17;28:8;63:10;
64:5;69:12;71:17;
95:3;105:4;122:5
**statement (12)**
21:13;26:4;27:24;
40:25;54:21;71:15;
89:22;90:11;91:6,8,
20;128:1
**statements (4)**
31:20;32:13;89:23;
90:7
**states (4)**
52:2;64:15;72:5;
89:15
**status (6)**
12:14;58:16;94:6;
129:22;131:3;132:13
**statute (15)**
14:16;17:12,20,22;
26:10;27:16;30:1,8;
32:7;33:10;48:12;
52:9;72:15;82:7;94:1
**statutes (2)**
24:18;77:15
**statute's (1)**
84:16
**statutory (12)**
13:10,13,17;14:1;
15:1,3,4;51:14;52:5;
56:8;58:18;67:18
**stay (1)**
98:24
**staying (1)**
120:3
**stemming (1)**

73:22
**step (1)**
107:23
**steps (1)**
130:1
**still (7)**
21:7;72:2;97:12,17;
110:8;121:3;135:21
**stipulated (2)**
47:22;82:22
**stop (2)**
104:10;111:4
**storage (27)**
98:4,21;99:11;
102:8;103:1;104:24;
105:9;106:13;107:17;
108:4,17,18;110:23;
118:15,21,24;121:12,
14;122:1,2,8,12,15;
123:4,16,22;125:3
**store (2)**
99:6;103:3
**stored (1)**
101:7
**straightforward (1)**
34:5
**strengths (2)**
45:11;81:6
**striking (3)**
94:19,20,20
**string (1)**
17:11
**strong (1)**
130:12
**structure (1)**
39:14
**stuff (3)**
106:20;121:16;
122:1
**subject (6)**
33:8;34:20;38:23;
53:4;82:18;124:11
**subject-matter (4)**
60:24;61:7;63:9;
76:15
**submit (3)**
17:19;31:20;38:6
**submitted (6)**
19:16,17;21:6;
22:18;28:5;86:6
**submitting (1)**
33:7
**subsequent (2)**
34:16;52:10
**subsidiaries (1)**
61:24
**subsidiary (1)**
63:21
**substantial (6)**
49:2;57:20;85:6;
86:16;88:10;89:10
**substantially (1)**
19:12

**substantiate (3)**
37:7;91:5;108:15
**substantiating (2)**
77:10;80:17
**substantive (16)**
9:23;14:13,15,22;
32:3;39:8;42:20;47:6,
8;50:16;51:23;53:7;
67:1;72:3;127:18;
129:1
**substantively (4)**
34:12;38:12;50:23;
127:22
**substitute (1)**
57:12
**success (5)**
12:2;43:14,22;
56:23;81:4
**successful (2)**
43:21;45:8
**succinctly (1)**
71:17
**sue (1)**
82:16
**sued (4)**
75:8,18;86:1;88:5
**Suffice (3)**
41:5;82:13;88:23
**sufficient (15)**
22:20;37:22;54:19;
80:16;84:23;87:11,
18,24;88:19;89:1,8;
90:22;91:10;92:7;
110:2
**sufficiently (1)**
55:10
**suggest (5)**
105:7;130:21;
131:17;133:22,24
**suggested (1)**
111:15
**suggesting (3)**
124:14;131:5,6
**suggestion (3)**
37:25;103:9;111:13
**suing (2)**
63:25;68:17
**suit (1)**
75:12
**summarily (3)**
72:5;89:15;93:10
**summary (1)**
63:24
**summons (1)**
46:20
**Superior (8)**
13:7;43:10;51:19;
60:7;61:5;63:13,15;
65:21
**supplemental (3)**
103:14;105:8;
106:12
**support (17)**

Case 2:17-bk-21386-SK    Doc 2082    Filed 02/20/23    Entered 02/20/23 05:07:19    Desc
ZETTA JET USA, INC., ET AL.    Main Document    Page 160 of 163

February 15, 2023

40:16,24;48:18;
49:2;51:16;54:11;
73:12;79:11;85:6,17;
86:16;87:22;89:10,
20;93:14;122:9;124:2
**supporting (1)**
78:25
**supports (2)**
20:14;55:24
**supposed (2)**
107:18;124:16
**Supreme (6)**
22:11;57:17;66:14;
73:21;83:23;84:14
**sure (20)**
27:22;28:13;94:5,
21;104:23;105:3,9;
106:7;107:17;116:23;
117:5;119:12,17,22;
120:2;126:14;128:3;
129:14;130:17;
134:10
**surgery (1)**
134:11
**surprise (1)**
133:14
**Surveyor (1)**
99:3
**surviving (1)**
12:9
**system (1)**
126:7

**T**

**tactical (1)**
75:11
**talk (6)**
9:9;97:4;111:3;
130:18,20,20
**talked (1)**
125:11
**talking (5)**
38:25;98:15,16;
100:15;118:19
**talks (2)**
14:9;26:12
**Tax (2)**
64:16;65:15
**tea (1)**
119:5
**teaching (1)**
134:23
**Tech- (2)**
87:19;92:22
**Tech-Bilt (23)**
18:23;21:11,14;
22:2;25:17;32:12;
45:2;49:6;52:5;54:10;
80:21,23;84:3,23;
85:3,14;86:10;88:16;
89:1,5;90:13;91:9;
92:17

**telling (5)**
16:21;98:14;
110:13;127:20,21
**temporarily (1)**
103:20
**ten (2)**
68:8;71:19
**ten- (1)**
68:5
**tenet (1)**
46:14
**term (5)**
9:3,22;13:7;19:20;
67:8
**terms (24)**
10:11;11:10;12:20;
17:17;19:24;30:8;
31:18;44:15;46:10;
57:22;82:21;83:8;
93:16;94:23;104:2;
106:5;108:21,21;
111:8;113:11;117:10,
25;125:9,22
**Terrace (1)**
89:3
**test (7)**
14:1;18:6;47:6;
76:5,19;120:10,11
**testimony (1)**
87:10
**tests (1)**
13:24
**Texas (5)**
16:13;52:13;74:19,
24;75:2
**Thanks (2)**
118:7;134:9
**then-Chapter (1)**
126:5
**the-ordinary-course (1)**
121:23
**therefore (8)**
35:9;52:16;70:17;
73:13;75:6;80:13;
92:5,24
**therefrom (1)**
50:21
**thinking (2)**
99:13;110:18
**Third (10)**
14:17;17:2;35:24;
42:20,20;49:20;
61:10;67:13;73:21;
94:12
**third- (2)**
20:4;49:17
**third-party (4)**
49:25;56:4,8;66:1
**thirty (2)**
33:12;42:13
**thirty-two-million-dollar (1)**
68:12
**THMI (1)**

63:21
**THMI's (1)**
63:22
**though (5)**
6:7;33:15;98:2;
104:22;109:6
**thought (1)**
29:2
**threat (1)**
68:2
**Three (17)**
10:25;11:3;20:22;
35:21;42:9,21;56:25;
59:3;64:19;84:7;
89:25;90:5;92:1;
94:13;125:17;127:9;
133:10
**three-line (1)**
73:8
**three-sentence (1)**
73:8
**throughout (1)**
24:8
**thus (1)**
16:11
**tickets (1)**
79:3;120:14
**till (2)**
39:22;95:6
**time-consuming (1)**
43:23
**timely (1)**
109:16
**times (2)**
89:25;129:5
**timing (1)**
118:11
**title (4)**
101:15,15;124:5,9
**titled (1)**
83:2
**Tobacco (1)**
64:16
**today (16)**
6:7;8:17;11:19;
19:15,18;31:20;
35:18,25;36:20;
105:23;118:19;119:2;
121:12;130:23;131:4;
135:23
**today's (2)**
6:9;10:3
**together (1)**
83:6
**tomorrow (2)**
105:24;111:6
**took (5)**
36:5;86:23;90:14;
91:9;127:1
**Torosian (38)**
8:3,4,5;106:16,17;
110:3,5,10,21;111:9,
12,22;112:23,25;

113:4,7,8,13,14;
114:22;115:4,6,25;
116:3,6;117:14;
128:7;129:25;130:2,
3;131:7,8;132:11,12,
17;135:18,19,24
**Torosian's (1)**
115:18
**tort (16)**
16:10,23;27:19;
28:4;47:10,15;53:14;
72:9,20;77:16;78:15,
16,22,25;80:5;82:18
**tortfeasor (10)**
23:8;27:22;30:17;
44:21;47:20;51:10;
74:6;83:16,18;88:25
**tortfeasors (10)**
23:18;30:11,14;
32:10;44:20;47:21;
58:19;74:13;82:17;
83:4
**tortfeasor's (2)**
47:23;84:1
**tortious (2)**
18:12;84:12
**torts (2)**
72:16;80:7
**torture (2)**
114:13,15
**total (8)**
25:18;48:21;50:13;
84:5;86:12,25;87:3;
91:12
**totality-of-the-circumstances (1)**
18:6
**towards (1)**
100:8
**Toyota (3)**
85:1,8;86:20
**tracks (2)**
27:16;33:9
**tractor-trailer (1)**
88:1
**Trade (1)**
64:16
**traded (1)**
19:1
**transaction (1)**
37:2
**transactions (4)**
37:1;65:10;79:4,22
**transfer (1)**
92:3
**transferred (2)**
70:7,9
**transfers (3)**
60:13;61:20;62:5
**translates (1)**
101:9
**transparent (1)**
39:1
**treat (2)**

6:8;90:16
**treated (2)**
35:12;38:4
**treating (1)**
125:24
**treats (1)**
50:22
**trial (17)**
18:8;26:20;45:7;
63:25;75:11,12,14,17;
76:4,6,9;81:2;84:10,
20;85:25;89:5;91:25
**tribunal (1)**
71:8
**tried (1)**
75:23
**tries (1)**
18:17
**troubling (2)**
93:6;101:20
**truck (2)**
88:2,4
**true (5)**
19:11;77:19;80:3;
121:8;122:9
**trust (2)**
85:22;108:11
**trustee (211)**
6:25;7:4,18;8:5;
10:5,7;11:11,13;
12:17;14:18;17:18,
24;20:10;21:4,21,22,
23;23:4;25:4,11,16;
27:19;28:3,16;29:17,
23,25;30:3,16,20,23;
31:2,6,8,11,22;32:4,
25;33:8,24;34:13;
35:11,20;36:3,6,14,
16,17,21;37:5,14;
38:15;40:14,16,24,25;
41:7,9,11;42:2,5,8,13,
21,24;43:5,7,9,12,18;
44:2,9,13,23;45:7,19;
46:8;48:1,10,12,23;
49:10;50:9,17,22,24;
51:5,22;52:1,7,13,16,
19;53:2,6,12,21,24;
54:9,22,24;55:3,12,
17,19,22;56:3,10,14;
57:4,12,25;58:5,13;
59:5,7,10,16,19;60:3;
61:12,16;62:2,7,11,
12,15,21;65:3,11,13;
66:6,25;67:21;69:22,
24;70:3,16,22;71:3,
20;72:5,19,25;73:2,5,
9,14,16,17,19;76:1,
13,21,23;77:2,8,16,
22;78:11,12;79:8,17;
80:7,10,14,16,22,24;
81:3,3,8,11;82:1,8;
85:15;89:19;90:5,12,
17,19,24;91:4,8,12;

92:9,12,18,20,24;
93:7,12,16,18;94:7;
96:3,7;100:7;101:18;
106:17;118:12;
119:19;121:19;122:6,
18,25;124:2,8;126:3,
8;127:13
**trustees (1)**
124:20
**trustee's (43)**
12:1;19:3;27:2,25;
28:8;32:22;38:1;39:7;
45:11;47:4,12;48:21;
49:5;50:13;53:1,14,
19;58:9;59:19;60:4;
62:9,18,25;67:7;
71:15;72:8;73:6,18;
77:23;78:9;79:15;
80:6;81:6,19;89:14,
23;91:2,17,23;93:19;
95:11;96:18;113:17
**try (2)**
29:7;108:23
**trying (8)**
98:23;99:7;103:23;
105:19;119:5,10;
124:7;131:15
**turn (6)**
6:16;33:15;95:15;
98:3;99:16;101:25
**turned (1)**
116:20
**turning (4)**
34:2;42:2;56:13;
100:23
**twelve (2)**
11:2;19:5
**twenty (1)**
63:19
**twenty-five (2)**
39:25;87:3
**two (49)**
11:11;19:17;22:8;
23:12;24:18;30:10;
31:6,24,25;33:4;35:7,
9,14,16;36:1,12,18,
24;37:3,8;41:14;42:9;
50:22,25;56:23;59:1;
60:5;61:24;62:21;
63:18;66:6;73:20;
74:16;78:12;79:2;
84:6;86:7;87:14;90:2;
91:25;108:20;117:17;
125:17,25;126:1,10;
127:25;129:5;131:15
**two-week (1)**
131:2
**type (5)**
11:5;14:6;26:13;
56:9;93:25
**types (1)**
31:25
**typical (1)**

120:8
**typically (1)**
120:10
**typing (2)**
11:4,6

## U

**ultimate (3)**
34:21;39:4;104:14
**ultimately (9)**
34:11,13,20;44:11;
53:15;72:23;77:18;
126:24;127:13
**unable (2)**
11:14;101:1
**unasserted (1)**
60:25
**unavailing (2)**
77:19;92:14
**unaware (1)**
101:14
**uncertain (4)**
43:22;45:8;81:5;
94:23
**uncontested (1)**
88:22
**uncontroversial (1)**
96:9
**under (68)**
11:9,19;15:1,22;
17:21;18:3;20:12;
21:11;22:2;23:22;
24:9,12,15;32:7;
39:15,15;42:4;44:24;
47:25;48:18;51:8,14;
52:15,17,17;55:13,21;
58:16,20,25;59:1;
60:21;66:24;68:2,14,
23;70:23;71:1,3;
72:15;74:2,4,14;
76:21;77:14;78:18;
80:21;85:19;86:15;
87:24;88:9,14;92:15,
22;95:11;103:14,16;
105:13;106:9,17,22;
107:4;109:18;111:13;
118:23;120:5;121:5;
125:15
**underlying (6)**
29:12;32:11;33:1;
37:1;75:22;87:19
**underscore (1)**
25:11
**underscoring (1)**
23:22
**Understood (4)**
105:7;109:5;117:1;
128:5
**undertake (1)**
23:2
**undisputed (2)**
78:20;90:24

**unenforceable (1)**
74:7
**unfair (1)**
79:10
**unfairly (1)**
29:16
**unforeseen (1)**
101:13
**Union (6)**
68:6,21;73:20;75:8,
15;76:14
**United (1)**
64:15
**Universal (18)**
7:13;10:17,21;27:7;
33:16;34:3;35:4;
40:22;46:3;50:15,24;
56:11;71:6;95:23;
96:10,11;116:10;
125:25
**University (1)**
90:16
**unless (7)**
28:10;38:17;44:15;
82:20;98:10;133:7;
134:22
**unlike (1)**
76:14
**unlimited (1)**
56:17
**unnecessary (1)**
51:17
**unnoticed (1)**
94:4
**unopposed (1)**
77:5
**unpublished (3)**
51:20;60:7;61:5
**unredacted (2)**
105:9,14
**unremarkable (1)**
17:13
**unsecured (2)**
41:10;62:24
**unsolicited (1)**
9:20
**unsupportive (1)**
45:23
**unwieldy (2)**
113:3,9
**unwilling (1)**
55:14
**up (17)**
16:5,23;20:16;34:7;
40:7;62:17;68:7;
94:20;95:6;108:7;
111:5;118:9,16;
119:15,24;120:3;
134:7
**upheld (1)**
63:11
**upload (1)**
95:2

**upon (11)**
23:4;27:23;31:3,12,
23;57:9;62:14;89:8;
102:22;126:25;
127:25
**urgency (2)**
105:18,22
**urges (1)**
29:10
**USA (18)**
40:17;41:6;50:18;
53:16;72:24;78:10,
13,15,17,19,20;79:13,
21;125:24;127:6,11;
128:14,24
**USC (1)**
58:25
**use (9)**
14:20;33:4;66:15;
108:11;118:14;120:6;
122:6;126:4,6
**used (3)**
27:12;51:3;99:16
**using (1)**
20:16
**utilized (3)**
76:19,22;87:17

## V

**vacated (1)**
69:18
**Valentin (7)**
87:25;88:3,4,8,12,
12,14
**valuable (1)**
124:17
**valuation (3)**
87:11;96:24;100:13
**value (12)**
87:19;96:18;
100:10,12;101:19;
102:9,18,23;104:7;
107:1,3;110:19
**values (1)**
104:14
**various (7)**
22:8;36:14;40:15,
15;65:4;88:5;89:9
**vast (1)**
32:25
**vehicle (3)**
51:24;67:2;88:3
**verdict (2)**
75:13;82:16
**version (2)**
106:12,14
**versus (3)**
55:25;66:17;128:24
**vertical (1)**
120:9
**VI (1)**
79:1

**via (12)**
8:19;46:7;51:15;
57:24;58:1,4;59:21;
61:11;67:3,17,22;
95:2
**viable (1)**
24:6
**video (5)**
6:16,17;95:15,16;
116:20
**videos (3)**
8:16;95:13;135:21
**view (5)**
28:8;57:15;110:10;
118:11,23
**views (1)**
57:3
**VII (1)**
79:1
**violates (3)**
43:5;94:14,16
**Virgin (1)**
78:5
**virtue (2)**
20:11;90:3
**vis-a-vis (2)**
22:8;24:21
**visibility (6)**
22:6,7,9,19;39:14;
101:3
**voluntary (1)**
62:9
**VRC (4)**
60:14,14,17,20

## W

**wages (1)**
121:4
**wait (5)**
59:24;93:20;
101:22;109:1;129:8
**waited (1)**
125:17
**Waldemar (1)**
87:25
**walled (2)**
9:24,25
**Walter (1)**
79:20
**wants (3)**
19:19;38:15;107:22
**Ward (4)**
61:16;62:7,13;63:1
**Ward's (2)**
61:21;63:7
**warrant (6)**
97:7,21,23;98:15,
17,19
**warrants (1)**
97:20
**Washington (2)**
75:19;78:2

**wasteful (1)**
17:4

**water (11)**
99:17,21;100:2,3,5,
9,12,18,24;101:6,7

**way (18)**
16:17;25:9;26:13,
20;34:10,24;36:25;
39:17;65:11;103:23;
105:20;108:24;112:6;
114:24;115:15;118:3;
121:1;133:4

**ways (2)**
48:25;107:11

**weaknesses (2)**
45:11;81:6

**WEDNESDAY (2)**
6:1;135:3

**Wednesdays (1)**
134:23

**week (3)**
9:11;125:17,19

**weeks (5)**
106:1;109:25;
125:17,17;131:16

**Weeks-Grey (3)**
62:4,25;63:5

**weigh (5)**
33:11;44:5;114:12;
119:7;125:5

**weighs (1)**
43:19

**welcome (1)**
126:18

**well-established (2)**
57:16;59:11

**well-known (1)**
13:21

**weren't (1)**
105:2

**West (1)**
40:7

**what's (5)**
13:17;121:20;
125:9;128:22,22

**when/if (1)**
125:2

**whereas (3)**
19:2;32:22;52:15

**Whereupon (1)**
135:25

**whichever (2)**
47:23;82:24

**whole (5)**
25:5;33:4;37:23;
112:7;121:10

**wholly-owned (1)**
63:21

**whose (2)**
9:13;75:5

**wife (1)**
61:21

**willing (3)**

25:6;111:16;130:9

**windfall (1)**
37:13

**Winthrop (1)**
7:22

**wise (1)**
57:19

**wish (7)**
6:16;27:4;33:18;
128:20;129:24;
132:24;135:22

**wishes (2)**
8:17;9:1

**withdraw (2)**
11:17;42:19

**withdrawal (1)**
62:9

**within (20)**
12:8;15:5;26:21;
42:9,13,21;51:6;
52:10;60:5;61:13;
66:4,10,20;67:11;
69:25;83:25;87:12;
95:2;101:19;120:22

**without (28)**
18:16;26:19;36:22;
37:19;38:15,16;
39:18;41:18,21;46:4;
50:19,20;52:11;53:4;
55:14;56:11;58:14;
69:8;77:11;82:15;
92:6;94:7;108:22;
117:12,19;123:13,17;
125:10

**WL (3)**
54:3;84:20;85:16

**wonderful (1)**
21:12

**wondering (1)**
114:1

**work (8)**
9:23;37:18;99:10;
119:17,23;128:13,22;
131:22

**worked (1)**
90:1

**working (3)**
97:13,14;117:22

**workings (1)**
9:11

**works (4)**
132:2,7,22;134:4

**world (1)**
119:18

**worlds (1)**
101:17

**worldwide (1)**
124:21

**worse (1)**
110:17

**worth (1)**
122:23

**worthwhile (1)**

108:25

**wrap (1)**
99:22

**writ (3)**
61:25;64:11;101:2

**write (1)**
11:5

**writing (1)**
116:3

**Writs (8)**
14:21;15:2;59:1;
64:12;65:22;66:11;
67:10,12

**written (2)**
25:9;41:5

**wrong (1)**
36:6

**wrongdoing (1)**
33:1

**wrongful-death (1)**
63:20

**wrongs (1)**
32:20

**Wu (1)**
124:15

**Y**

**yacht (11)**
99:20;102:1;103:3;
104:3;114:25;118:12,
13,25;120:18;121:9;
123:7

**yachts (2)**
99:18;121:4

**yard (1)**
99:17

**year (14)**
9:4;11:12;41:24;
42:12;63:17;65:2;
100:8,8,14,15;105:1;
109:2;133:9,15

**years (2)**
99:15;100:19

**yesterday (1)**
96:14

**York (18)**
16:9,13;17:9;21:3;
23:9,22;24:15;47:15,
19;48:1;53:17,19;
72:10,16,25;74:19,24;
75:1

**Z**

**Zahnleuter (8)**
85:16,19,23;86:1,4,
5,20,21

**Zahnleuter's (1)**
86:25

**Zale (15)**
13:11;14:24;15:6;
52:7,9;65:24;67:22,

23;68:9,14,23;69:9,
15,21,25

**Zale's (2)**
67:25;68:5

**Zetta (40)**
6:14;9:24,24;23:21;
24:21;40:4,17,17,17;
41:6,6,11;50:18,18;
53:16;72:13,24;73:1;
78:10,12,12,15,15,17,
19,20;79:12,13,13,20,
21,21;95:10;117:23;
125:24,24;127:6;
128:13,14,19

**Zetta-BAC (1)**
47:14

**1**

**1 (1)**
79:12

**1.7-million-dollar (1)**
64:16

**1:15 (2)**
95:6,8

**10 (4)**
17:11;95:10;132:7;
133:3

**10:20 (2)**
39:21;40:1

**10:45 (2)**
39:22,25

**10:48 (1)**
40:1

**100 (1)**
46:13

**100,000 (1)**
105:4

**105 (18)**
14:7,9,13,14,21;
42:4;51:23;59:1;
60:21;61:2,2;64:5,10;
65:22;66:11,15,24;
67:1

**105,000 (1)**
86:5

**105,000-dollar (1)**
87:2

**10's (1)**
79:13

**10th (1)**
42:11

**11 (14)**
10:4;35:22;36:5,6,
10;40:3;41:6,7;46:17;
58:25;61:14;64:15;
67:23;126:6

**1183 (1)**
66:18

**11th (6)**
40:24;41:1;54:21;
89:21;90:11;91:7

**12 (1)**

133:6

**12:13 (2)**
95:5,8

**1251 (1)**
89:4

**12621185 (1)**
54:3

**135 (1)**
78:18

**1377 (1)**
56:20

**14 (2)**
26:6;76:25

**15 (2)**
6:1;21:21

**15,000 (1)**
88:12

**150,000 (4)**
75:15;101:10;
121:13;122:5

**151,000 (1)**
104:23

**15th (2)**
109:11;131:4

**16 (5)**
60:21;61:2,2;65:22;
66:11

**17.1 (1)**
42:19

**17th (7)**
94:6;134:4,10,14,
21,22;135:3

**19 (1)**
21:22

**192 (1)**
89:4

**1985 (1)**
45:2

**1986 (1)**
56:20

**1990 (1)**
85:2

**1993 (1)**
71:23

**1995 (2)**
52:8;65:25

**1996 (1)**
60:6

**1st (3)**
109:10,25;131:5

**2**

**2.875 (1)**
75:17

**2:12 (1)**
135:25

**2:30 (2)**
111:4,5

**200 (3)**
27:25;50:9;85:9

**2002 (1)**
15:17

Case 2:17-bk-21386-SK    Doc 2082    Filed 02/20/23    Entered 02/20/23 05:07:19    Desc
ZETTA JET USA, INC., ET AL.    Main Document    Page 163 of 163

February 15, 2023

**2005 (1)**
52:12
**200-million-dollar (1)**
28:3
**2013 (1)**
66:18
**2014 (1)**
54:3
**2016 (5)**
112:21;124:25;
125:10,20,24
**2016-2 (1)**
95:11
**2017 (2)**
41:7;100:11
**2018 (2)**
84:20,21
**2021 (2)**
85:16;94:6
**2023 (2)**
6:1;100:15
**21 (2)**
21:22;41:16
**214 (1)**
54:3
**217,000 (1)**
64:21
**22 (2)**
8:14;77:1
**220 (1)**
85:2
**225 (6)**
101:22;105:5;
108:22;121:13;123:4;
125:11
**225,000 (6)**
101:9;104:22;
108:11;122:5,15;
123:12
**22nd (4)**
131:22;132:10,22;
133:3
**23 (1)**
126:11
**28th (2)**
41:16;134:4
**29th (7)**
40:19;49:6;50:12;
54:20;81:22;89:21,24

**3**

**3 (1)**
72:6
**3.25 (1)**
75:13
**3.4 (1)**
100:11
**343 (1)**
94:18
**349 (1)**
77:1
**350 (1)**

75:15
**350,000 (1)**
60:15
**363 (5)**
15:8,9;70:5;124:12,
18
**368 (1)**
126:12
**38 (1)**
45:2
**384 (1)**
78:24

**4**

**4 (1)**
13:6
**4.75-million-dollar (1)**
42:14
**400,000 (2)**
60:15;86:25
**4007 (1)**
66:23
**459 (1)**
46:11
**488 (1)**
45:2
**4975392 (1)**
85:17

**5**

**5 (1)**
13:6
**50,000 (9)**
104:17,17;108:20,
21,21;117:12,12;
125:10,10
**50/50 (1)**
37:10
**500,000-dollar (1)**
79:2
**524 (2)**
20:11;56:6
**524e (1)**
20:7

**6**

**6 (1)**
14:3
**6242155 (1)**
84:21
**65 (6)**
13:20;14:11;15:1;
52:6,9;58:15
**650,000 (1)**
64:23

**7**

**7 (19)**
7:4;27:25;31:13;

35:23;36:8,16,16,18;
40:14,16;41:8;43:1;
46:12;61:15,15;65:2,
3;95:10;96:7
**7001 (8)**
13:4;15:3;46:5;
69:12,14;70:17;
71:18,22
**70017 (9)**
13:16;46:1;58:3,21,
23;67:15;70:22,24,25
**7001's (2)**
57:25;58:8
**7016 (2)**
14:17;15:2
**7016c2 (1)**
58:25
**7065 (1)**
71:1
**720 (1)**
66:17
**75,000 (1)**
101:10
**750,000 (1)**
62:17
**784 (1)**
56:20
**7th (1)**
109:12

**8**

**864 (1)**
85:2
**866 (1)**
44:18
**871 (1)**
85:9
**877 (9)**
21:8;22:23;30:24;
32:1;48:6,13;74:3;
77:15;82:14
**877.6 (42)**
11:20;13:11,16;
15:24,25;16:1,12;
17:18;18:3,16;20:12;
31:10;32:5;48:6,13;
51:8,14,24;52:10,15,
18;53:11;54:1;55:13;
56:6;59:2;67:3;71:3;
74:3;81:25;83:2;
84:14;85:14,19;86:9,
15;87:24;88:14;
89:20;90:10;92:17,20
**877b (1)**
44:18
**887.6 (1)**
27:15
**890,000 (1)**
65:1

**9**

**9 (4)**
132:7;134:21,22;
135:3
**9.5 (3)**
11:10;42:8;50:11
**9.5-million-dollar (2)**
45:5;80:25
**9/13 (1)**
41:11
**9/7 (2)**
41:24,24
**9:29 (1)**
6:1
**9006 (1)**
66:23
**9019 (43)**
9:23;10:4;11:22;
12:21;13:3,6;14:8;
15:10,16,23;16:4;
31:5;40:6,12;42:4;
51:15,25;52:13,17;
56:13;57:24;58:6,20,
23,25;59:1,8;61:11;
62:11,15,25;63:12;
65:13;67:3;69:23;
70:13;80:10;92:16,
18,21,25;94:25;
125:22
**91,062.26 (1)**
41:10
**923 (1)**
71:23
**925,000 (1)**
62:8
**965,000 (1)**
65:6
**995 (1)**
71:23
**9th (3)**
56:20;66:18;71:23