DAVID M. RILEY (SBN 292087)
david.riley@us.dlapiper.com
DLA PIPER LLP (US)
2000 Avenue of the Stars
Suite 400 North Tower
Los Angeles, California 90067-4704
Tel:  (310) 595-3000
Fax: (310) 595-3300

JOHN K. LYONS (*Pro Hac Vice*)
john.lyons@us.dlapiper.com
JEFFREY S. TOROSIAN (*Pro Hac Vice*)
jeffrey.torosian@us.dlapiper.com
JOSEPH A. ROSELIUS
joseph.roselius@us.dlapiper.com
DLA PIPER LLP (US)
444 West Lake Street, Suite 900
Chicago, Illinois 60606-0089
Tel:  (312) 368-4000
Fax: (312) 236-7516

Attorneys for Jonathan D. King as Chapter 7 Trustee

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>ZETTA JET USA, INC., a California corporation,<br><br>　　　　Debtor. | Lead Case No.: 2:17-bk-21386-SK<br><br>Chapter 7<br><br>Jointly Administered With:<br>Case No.: 2:17-bk-21387-SK |
| In re:<br><br>ZETTA JET PTE, LTD., a Singaporean corporation,<br><br>　　　　Debtor. | **NINTH INTERIM APPLICATION OF DLA PIPER FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND FOR REIMBURSEMENT OF EXPENSES INCURRED AS COUNSEL TO THE CHAPTER 7 TRUSTEE FOR THE PERIOD FROM JANUARY 1, 2023 THROUGH JUNE 30, 2023** |
| ☒　　　Affects Both Debtors<br><br>☐　　　Affects Zetta Jet USA, Inc., a California corporation, only<br><br>☐　　　Affects Zetta Jet PTE, Ltd., a Singaporean corporation, only | Hearing:<br>Date:　　October 18, 2023<br>Time:　11:00 a.m. (PDT)<br>Courtroom:　　1575<br>Address:　　255 East Temple Street<br>　　　　　　　Los Angeles, California 90012 |

1

## FEE APPLICATION COVER SHEET

| | |
|---|---|
| Applicant | DLA Piper[1] |
| Client | Jonathan D. King, solely in his capacity as the duly appointed chapter 7 trustee (the "Trustee") |
| Compensation Period | Start:    January 1, 2023<br>End:    June 30, 2023 |
| Petition Date | September 15, 2017 |
| Date Converted to Chapter 7: | December 4, 2017 |
| Date of order approving retention of DLA Piper | January 19, 2018, effective nunc pro tunc to the Conversion Date [Docket No. 567] |
| **Summary of Fees and Expenses Sought** | |
| Amount of compensation sought as actual, reasonable and necessary for the Compensation Period | $1,176,745.00 |
| Less 50% fee holdback: | $   588,375.50 |
| Amount of fees to be paid: | $   588,375.50 |
| Amount of expenses sought as actual, reasonable and necessary for the Compensation Period | $60,423.60 |
| Blended rate during the Compensation Period for all attorneys | $1,165.18 |
| Blended rate during the Compensation Period for all timekeepers | $1,054.76 |
| Compensation sought for the Compensation Period already paid under a compensation order but not yet allowed: (80%) | $0.00 |
| Expenses sought for the Compensation Period already paid under a compensation order but not yet allowed: (100%) | $0.00 |
| Number of professionals during the Compensation Period included in this application | 14 |
| Number of professionals billing fewer than 15 hours to these cases during the Compensation Period | 6 |
| Retainer Received: | $0.00 |
| Retainer remaining as of the date of this Application: | $0.00 |
| Total amount requested in all prior applications: | $28,921,071.28 |
| Total amount actually paid pursuant to prior approved applications: | $13,667,514.52 |
| Total amount currently due but unpaid pursuant to prior approved applications: | $0.00 |
| Total amount allowed but reserved pending final fee application: | $6,136,658.75 |

---

[1]    DLA Piper is comprised of DLA Piper LLP (US), DLA Piper (Canada) LLP, DLA Piper UK LLP, DLA Piper Hong Kong, DLA Piper Singapore Pte. Ltd., and DLA Piper Australia.

| Summary of Requested Fees: | See Exhibits A-1 through A-4 |
|---|---|
| Summary of Requested Expense Reimbursement: | See Exhibit C-1 through C-4 |

This is a(n):  ___  monthly   _X_  interim   ___  final application

DAVID M. RILEY (SBN 292087)
david.riley@us.dlapiper.com
DLA PIPER LLP (US)
2000 Avenue of the Stars
Suite 400 North Tower
Los Angeles, California 90067-4704
Tel:  (310) 595-3000
Fax: (310) 595-3300

JOHN K. LYONS (*Pro Hac Vice*)
john.lyons@us.dlapiper.com
JEFFREY S. TOROSIAN (*Pro Hac Vice*)
jeffrey.torosian@us.dlapiper.com
JOSEPH A. ROSELIUS
joseph.roselius@us.dlapiper.com
DLA PIPER LLP (US)
444 West Lake Street, Suite 900
Chicago, Illinois 60606-0089
Tel:  (312) 368-4000
Fax: (312) 236-7516

Attorneys for Jonathan D. King as Chapter 7 Trustee

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>ZETTA JET USA, INC., a California corporation,<br><br>             Debtor. | Lead Case No.: 2:17-bk-21386-SK<br><br>Chapter 7<br><br>Jointly Administered With:<br>Case No.: 2:17-bk-21387-SK |
| In re:<br><br>ZETTA JET PTE, LTD., a Singaporean corporation,<br><br>             Debtor. | **NINTH INTERIM APPLICATION OF DLA PIPER FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND FOR REIMBURSEMENT OF EXPENSES INCURRED AS COUNSEL TO THE CHAPTER 7 TRUSTEE FOR THE PERIOD FROM JANUARY 1, 2023 THROUGH JUNE 30, 2023** |
| ☒      Affects Both Debtors<br><br>☐      Affects Zetta Jet USA, Inc., a California corporation, only<br><br>☐      Affects Zetta Jet PTE, Ltd., a Singaporean corporation, only | Hearing:<br>Date:  October 18, 2023<br>Time:  11:00 a.m. (PDT)<br>Place:  Courtroom 1575<br>            255 East Temple Street<br>            Los Angeles, California 90012 |

1

**TO THE HONORABLE SANDRA R. KLEIN, UNITED STATES BANKRUPTCY JUDGE, THE UNITED STATES TRUSTEE, THE TWENTY LARGEST UNSECURED CREDITORS, THE AIRCRAFT FINANCING PARTIES AND ALL PARTIES WHO HAVE REQUESTED SPECIAL NOTICE:**

**IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING, SPECIFICALLY ANSWERING EACH PARAGRAPH OF THIS PLEADING.  UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT SO THAT IT IS RECEIVED NO LATER THAN OCTOBER 4, 2023.  YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

Under sections 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2016-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Central District of California (the "Local Rules"), DLA Piper LLP (US), DLA Piper (Canada) LLP, DLA Piper UK LLP, DLA Piper Hong Kong, DLA Piper Singapore Pte. Ltd., and DLA Piper Australia (collectively, "DLA Piper") hereby files this *Ninth Interim Application of DLA Piper LLP (US) for Allowance of Compensation for Services Rendered and for Reimbursement of Expenses Incurred As Counsel to the Chapter 7 Trustee for the Period from January 1, 2023 Through June 30, 2023* (the "Application").  By this Application, DLA Piper seeks interim allowance of $1,176,745.00 as compensation and reimbursement of actual and necessary expenses of $60,423.60 for the period from January 1, 2023 through June 30, 2023 (the "Ninth Interim Period").  In support of this Application, DLA Piper respectfully represents as follows:

## **PRELIMINARY STATEMENT**

1.     As set forth more fully below, through this Application, DLA Piper respectfully requests that the Court authorize the payment of the fees and reimbursement of expenses sought herein on an interim basis, subject to a 50% holdback amount of total fees sought by DLA Piper.

Any fees paid on an interim basis pursuant to this Application shall be subject to final review and approval by the Court for reasonableness and other appropriate factors at the conclusion of the cases.

2.      During the period covered by DLA's ninth interim application, DLA continued to assist the Trustee in the performance of his duties to administer the estates.  The bulk of the work performed by DLA during the Ninth Interim Period relates to general chapter 7 administrative and recovery tasks, drafting, filing, and defending the Jetcraft Settlement Motion[1] and the continued prosecution and appeals of (a) the Jetcraft Adversary Proceeding (*King v. Jetcraft Corporation, et al.*, Adv. Proc. No. 2:19-ap-01382-SK]), and (b) the CAVIC Adversary Proceeding (*King v. CAVIC Aviation Leasing (Ireland) 22 Co. Designated Activity Company*, *et al*., Adv. Proc. No. 2:19-ap-01147-SK) (collectively, the Jetcraft Adversary Proceeding, the Li Qi Adversary Proceeding, and the CAVIC Adversary Proceeding are defined as the "Adversary Proceedings").  DLA has also incurred services in connection with the enforcement of judgments obtained in the New Target Adversary Proceeding (*King v. New Target Investments, et. al.*, Adv. Proc. No. 2:18-ap-01340-SK).

3.      As more fully set forth herein and in the attached billing detail, the Trustee's global recovery efforts in 2023 required extensive assistance from DLA.  In particular, DLA's continued prosecution of the Adversary Actions throughout 2023 involved prosecution of the appeal of this Court's judgment dismissing the CAVIC Adversary Proceeding, executing and defending a settlement agreement entered into with certain of the Jetcraft defendants, prosecuting the appeal of this Court's dismissal of the Jetcraft Adversary Proceeding with respect to the Bombardier defendants, and preparing for a consolidated hearing on the three appeals of the Jetcraft Adversary Proceeding, the CAVIC Adversary Proceeding and the Li Qi Adversary Proceeding.

---

[1]      DLA Piper has opted to defer the fees totaling $276,247.00 that were incurred in the Jetcraft Settlement Motion for a subsequent fee application.

4.     Even though the Adversary Proceedings are still in the initial phase of litigation, the Trustee has successfully recovered (or has agreements to recover) over $24 million on behalf of the Debtors' estates through various settlements and other collection efforts including, notably, a large settlement with ECN Capital Corporation that also resulted in the withdrawal of over $13 million in chapter 11 administrative claims and $186 million in prepetition unsecured claims.  In addition, the Trustee settled with certain of the defendants in the Yuntian Adversary Proceeding for $4.5 million plus the withdrawal of over $214 million in unsecured claims, $14 million in administrative claims, and $8 million in secured claims.  The Trustee also reached an agreement to settle claims against certain defendants in the Jetcraft Adversary Proceeding for $9.5 million, but the Bankruptcy Court denied the Trustee's motion to approve the settlement and the Jetcraft Adversary Proceeding is now stayed pending resolution of appeal of the Bankruptcy Court's order dismissing the Bombardier defendants from that adversary proceeding.

5.     As stated below, DLA Piper's professionals, located in offices in the United States and around the globe, have devoted, and continue to devote, thousands of hours to the representation of the Trustee and his efforts to recover amounts on behalf of the creditors of the estates.  DLA Piper submits that the hours and expenses incurred for the services rendered in these chapter 7 cases were reasonable and necessary to maximize the value of their estates for the benefit of all stakeholders.

## **JURISDICTION**

6.     The Court has jurisdiction over this Application under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2).

7.     Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

8.     The statutory bases for the relief requested herein are sections 330 and 331 of the Bankruptcy Code, Bankruptcy Rule 2016 and Local Rule 2016-1.

# BACKGROUND

## A.    Commencement of the Bankruptcy Cases

9.    On September 15, 2017 (the "Petition Date"), Zetta Jet USA, Inc. ("Zetta USA") and Zetta Jet PTE, Ltd. ("Zetta PTE", and collectively with Zetta USA, the "Debtors") each filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").

10.    On September 29, 2017, upon the Debtors' emergency motion, the Court entered its *Order Granting Debtors' Emergency Motion to Approve Stipulation for Appointment of a Chapter 11 Trustee Pursuant to 11 U.S.C. § 1104* [Docket No. 120].

11.    On October 5, 2017, the Office of the United States Trustee for the Central District of California (the "U.S. Trustee") appointed Jonathon D. King as chapter 11 trustee (the "Chapter 11 Trustee") in the Chapter 11 Cases [Docket No. 155].

12.    On October 12, 2017, the U.S. Trustee appointed the Official Committee of Unsecured Creditors (the "Committee") under section 1102(a)(1) of the Bankruptcy Code [Docket No. 198], as amended on November 20, 2017 [Zetta USA Docket No. 411; Zetta PTE Docket No. 49].

13.    On November 30, 2017 (the "Shutdown Date"), based upon a lack of funds to operate the Debtors' business, the Chapter 11 Trustee shut down operations, terminated all employees, and, on December 4, 2017 (the "Conversion Date"), the Court entered its *Order[s] on Debtors' Motion to Convert Case Under 11 U.S.C. §§ 706(a) or 1112(a)* [Zetta USA Docket No. 452; Zetta PTE Docket No. 52] (the "Chapter 7 Cases").  Upon entry of the orders converting the cases, the Committee was disbanded and ceased to exist.

14.    On December 5, 2017, the U.S. Trustee appointed Jonathan D. King as chapter 7 trustee (the "Chapter 7 Trustee") in the Chapter 7 Cases [Zetta USA Docket No. 458; Zetta PTE Docket No. 53].

**B.      Retention of DLA Piper**

15.      On December 29, 2017, the Chapter 7 Trustee filed the *Chapter 7 Trustee's Application to Employ DLA Piper as Bankruptcy Counsel Pursuant to Sections 327(a) and 330 of the Bankruptcy Code, Bankruptcy Rules 2014 and 6003, and Local Bankruptcy Rule 2014-1, Nunc Pro Tunc to December 4, 2017* [Docket No. 518] (the "DLA Retention Application").

16.      On January 19, 2018, the Court entered its Order granting the DLA Retention Application [Docket No. 567] (the "DLA Retention Order") *nunc pro tunc* to the Conversion Date.

**C.      Retention of Other Professionals**

17.      On January 4, 2018, the Chapter 7 Trustee filed the *Chapter 7 Trustee's Application to Employ Seabury Corporate Finance LLC and Seabury Securities LLC as Interim Financial Advisor Pursuant to Sections 327(a) and 328 of the Bankruptcy Code, Bankruptcy Rules 2014 and 6003, and Local Bankruptcy Rule 2014-1, Nunc Pro Tunc to December 4, 2017; Declaration of Michael B. Cox in Support Thereof* [Docket No. 531] (the "Seabury Retention Application").

18.      On January 19, 2018, the Court entered its Order granting the Seabury Retention Application [Docket No. 568] (the "Seabury Retention Order").

19.      On January 17, 2018, the Chapter 7 Trustee filed the *Chapter 7 Trustee's Application to Employ KCP Advisory Group LLC to Provide Financial Advisory and Wind Down Services, and Michael Goldman & Associates, LLC to Provide Tax Advisory Services, Pursuant to Sections 327(a) and 328 of the Bankruptcy Code, Bankruptcy Rules 2014 and 6003, and Local Bankruptcy Rule 2014-1, Nunc Pro Tunc to January 8, 2018; Declaration of Michael Goldman in Support Thereof* [Docket No. 554] (the "KCP/Goldman Retention Application").

20.      On February 6, 2018, the Court entered its Order granting the KCP/Goldman Retention Application [Docket No. 605] (the "KCP/Goldman Retention Order").

21.      On February 9, 2018, the Chapter 7 Trustee filed the *Chapter 7 Trustee's Application to Employ Oon & Bazul LLP as Special Counsel, Pursuant to Sections 327(a) and 330*

1    *of the Bankruptcy Code, Bankruptcy Rule 2014 and Local Bankruptcy Rule 2014-1, Nunc Pro*

2    *Tunc to December 6, 2017; Declaration of Tan Mei Yen in Support Thereof* [Docket No. 612] (the

3    "<u>Oon & Bazul Retention Application</u>").

4        22.    On April 6, 2018, the Court entered its Order granting the Oon & Bazul Retention

5    Application [Docket No. 661] (the "<u>Oon & Bazul Retention Order</u>").

6        23.    On February 9, 2018, the Chapter 7 Trustee filed the *Chapter 7 Trustee's*

7    *Application to Employ PricewaterhouseCoopers Advisory Services LLC to Provide Forensic*

8    *Accounting, Technology, and Advisory Services, Pursuant to Sections 327(a) and 328 of the*

9    *Bankruptcy Code, Bankruptcy Rule 2014, and Local Bankruptcy Rule 2014-1, Nunc Pro Tunc to*

10   *January 22, 2018; Declaration of Ryan Murphy in Support Thereof* [Docket No. 610] (the "<u>PwC</u>

11   <u>Retention Application</u>").

12       24.    On February 28, 2018, the Court entered its Order granting the PwC Retention

13   Application [Docket No. 632] (the "<u>PwC Retention Order</u>").

14       25.    On May 9, 2018, the Chapter 7 Trustee filed the *Notice of the Chapter 7 Trustee's*

15   *Application to Employ WongPartnership LLP as Special Counsel, Pursuant to Sections 327(a)*

16   *and 328 of the Bankruptcy Code, Bankruptcy Rule 2014, and Local Bankruptcy Rule 2014-1, Nunc*

17   *Pro Tunc to December 4, 2017* [Docket No. 733] (the "<u>WongP Retention Application</u>").

18       26.    On July 27, 2018, the Court entered its Order granting the WongP Retention

19   Application [Docket No. 797] (the "<u>WongP Retention Order</u>").

20       27.    On July 10, 2018, the Chapter 7 Trustee filed the *Application of Jonathan D. King,*

21   *Chapter 7 Trustee, to Employ Brutzkus Gubner and Acumen Recovery Services, LLC as Joint*

22   *Special Litigation Counsel Pursuant to 11 U.S.C. §§ 327(e) & 328(a); Statements of*

23   *Disinterestedness in Support Thereof* [Docket No. 776] (the "<u>Brutzkus Retention Application</u>").

24       28.    On August 8, 2018, the Court entered its Order granting the Brutzkus Retention

25   Application [Docket No. 809] (the "<u>Brutzkus Retention Order</u>").

29.     On July 17, 2019, the Chapter 7 Trustee filed the *Chapter 7 Trustee's Motion for an Order Authorizing the Chapter 7 Trustee to Retain AJCapital Advisory PTE Limited as his Local Representative and Serve as Liquidation Agent in Singapore Pursuant to Sections 327 and 328 of the Bankruptcy Code, Nunc Pro Tunc to April 8, 2019; Declaration of Luke Furler in Support Thereof; Declaration of Jonathan D. King in Support Thereof* [Docket No. 970] (the "AJCapital Retention Application")

30.     On August 9, 2019, the Court entered its Order granting the AJCapital Retention Application [Docket No. 993] (the "AJCapital Retention Order").

31.     On June 19, 2020, the Chapter 7 Trustee filed the *Chapter 7 Trustee's Application to Employ FTI Consulting, Inc. as Financial Advisor, Pursuant to Sections 327(a) and 328 of the Bankruptcy Code, Bankruptcy Rule 2014, and Local Bankruptcy Rule 2017-1, Nunc Pro Tunc to March 31, 2020* [Docket No. 1271] (the "FTI Retention Application").

32.     On September 2, 2020, the Court entered its Order granting the FTI Retention Application [Docket No. 1355] (the "FTI Retention Order").

33.     On July 8, 2020, the Court entered its *Order Appointing a Fee Examiner* [Docket No. 1285] (the "Fee Examiner Order").

34.     Pursuant to the Fee Examiner Order, Nancy B. Rapaport was the fee examiner (the "Fee Examiner") for the Chapter 7 Cases.

35.     On July 21, 2020, the Fee Examiner filed the *Application for an Order Authorizing and Approving the Employment of Bovitz & Spitzer as Counsel for Nancy B. Rapoport, Fee Examiner, Effective as of July 8, 2020* [Docket No. 1305] (the "Bovitz Retention Application").

36.     On August 12, 2020, the Court entered its Order granting the Bovitz Retention Application [Docket No. 1333] (the "Bovitz Retention Order").

37.     On June 30, 2021, the Trustee filed the *Application by Jonathan D. King Chapter 7 Trustee, for Order Approving Employment of Leech Tishman as Trustee's Special Litigation*

*Counsel effective June 16, 2021* [Docket No. 1534] (the "<u>Leech Retention Application</u>").

38.    On August 13, 2021, the Court entered its Order granting the Leech Retention Application [Docket No. 1591] (the "<u>Leech Retention Order</u>").

39.    On August 16, 2021, the Chapter 7 Trustee filed the *Chapter 7 Trustee's Application to Employ Ogier as Special Counsel, Pursuant to Sections 327(a) and 330 of the Bankruptcy Cod,* [Docket No. 1594] (the "<u>Ogier Retention Application</u>").

40.    On September 22, 2021, the Court entered its Order granting the Ogier Retention Application [Docket No. 1618] (the "<u>Ogier Retention Order</u>").

41.    On March 24, 2022, the Trustee filed the *Chapter 7 Trustee's Motion for an Order Authorizing the Chapter 7 Trustee to Retain Quantuma (Singapore) PTE Limited as His Local Representative and Serve as Liquidation Agent in Singapore Pursuant to Sections 327 and 328 of the Bankruptcy Code, Effective as of January 20, 2022* [Docket No. 1834] (the "<u>Quantuma Retention Application</u>").

42.    On April 18, 2022, the Court entered its Order granting the Quantuma Retention Application [Docket No. 1841] (the "<u>Quantuma Retention Order</u>").

## CASE STATUS

### A.  General Case Administration

43.    The Trustee has continued to administer the cases throughout the Ninth Interim Period for which DLA provided assistance.

44.    During the Ninth Interim Period, the Trustee has also reviewed fee statements and fee interim applications filed by his professionals for the Eighth Interim Period, *i.e.,* the period covering October 1, 2022, through December 31, 2022.  The Trustee, assisted by DLA, has also met with the Fee Examiner to assist the Fee Examiner in her review of fees incurred during the Eighth Interim Period.  DLA Piper has written off a significant portion of fees incurred with respect to this work.

45.     DLA Piper's extensive cooperation and responsiveness to the Fee Examiner's concerns, and willingness to write off additional amounts identified by the Fee Examiner, resulted in a consensual reduction of DLA Piper's eighth interim fee request, and the Trustee's other professionals' eighth interim fee requests, which requests the Fee Examiner supported as reasonable interim compensation under Section 330 of the Bankruptcy Code.

46.     The Trustee also continued to work with law enforcement officials and take steps to investigate and obtain other potential recoveries of assets including obtaining proper storage facilities and determining sale procedures for the Dragon Pearl in Australia.   The Trustee's professionals also began the groundwork for a substantive consolidation motion to combine the estates of the debtors.

### i.     The Jetcraft Adversary Proceeding
(***King v. Jetcraft Corporation, et al.***, No. 2:19-ap-01382-SK)

47.     The Trustee filed a seventeen-count complaint (the "Original Jetcraft Complaint") against twelve defendants in the Jetcraft Adversary Proceeding September 13, 2019.  *See* Jetcraft Adversary Proceeding Docket. No. 1.  The complaint included common-law tort claims, equitable claims, and bankruptcy claims.  *Id.* at ¶¶ 6-7.  Its seventeen counts are for Aiding and Abetting Breach of Fiduciary Duty (Count I), Civil Conspiracy (Count II), California Business & Professions Code § 17200 (Count III), Unjust Enrichment (Count IV), Constructive Trust (Count V), Fraud (Count VI), Avoidance and Recovery of Fraudulent Transfers and Obligations under 11 U.S.C. §§ 548 and 550 (Counts VII, VIII, IX, X, and XI), Avoidance and Recovery of U.S. Preference Transfer under 111 U.S.C. §§ 547, 550 (Counts XII, XIII, XIV), Willful Violation of Automatic Stay under 11 U.S.C. § 362 (Count XV), Turnover of Property of the Estate under 11 U.S.C. § 542 (Count XVI), and Disallowance of Claims under 11 U.S.C. § 502(d) (Count XVII).

48.     On January 17, 2020, the Court approved a settlement with the ECN Defendants. Jetcraft Adversary Proceeding, Docket No. 91.  The settlement included a $15 million payment

from the ECN Defendants to the Trustee on behalf of the Debtors' estates, a release of $13 million in chapter 11 administrative claims, and a release of $185 million in prepetition unsecured claims. Jetcraft Adversary Proceeding, Docket No. 70 at ¶ 22(a). During the Second Interim Period, the settlement was consummated.

49. The defendants FK Group Ltd., FK Partners Limited, Fazal-Karim, Jetcoast 5000-5 LLC, Jetcraft Asia, Jetcraft Corporation, Jetcraft Global, Inc., Bombardier Aerospace Corporation, Bombardier, Inc., and Learjet Inc. moved to dismiss. *See* Jetcraft Adversary Proceeding, Docket Nos. 45, 46, and 76. Those motions were fully briefed. Jetcraft Adversary Proceeding, Docket Nos. 68, 69, 78, 79, 90, and 101. The Court issued its rulings on the motions to dismiss on March 20, 2020, in which it granted in part and denied in part defendants' motions to dismiss, and granting the Trustee leave to amend certain counts. Jetcraft Adversary Proceeding, Docket Nos. 107, 108, 109, 120 and 121. The Trustee's amended complaint was originally due by May 18, 2020, or 21 days after entry of a protective order setting forth a protocol for the filing of confidential information. Jetcraft Adversary Proceeding, Docket No. 125-1 at 2; Docket No. 120 at 2; Docket No. 121 at 2.

50. Negotiations over the scope of the protocol and documents covered by the protocol continued throughout 2020. The protocol for the filing of confidential information was solely for the benefit of the defendants as the Trustee had no confidentiality interest at stake. On October 16, 2020, the parties finalized a proposed protective order memorializing the protocol and, on October 19, 2020, the Court subsequently approved the stipulation protective order. Jetcraft Adversary Proceeding, Docket No. 143; Docket No. 145.

51. However, on October 22, 2020, the Court ordered the parties to mediation and further deferred the Trustee's deadline to file an amended complaint. Jetcraft Adversary Proceeding, Docket No. 149 at 1. As part of the mediation, the Trustee was required to submit a draft amended complaint to the defendants at least three weeks in advance of the date of any

mediation statement that is due, or by December 15, 2020, whichever date was earlier.  Jetcraft Adversary Proceeding, Docket No. 149 at 4.  The Trustee prepared a draft amended complaint that was timely submitted to the mediator.  The mediation was held on January 26, 2021.  On February 16, 2021, a mediator report was filed, in which the mediator informed the court that a settlement had not been reached.  Jetcraft Adversary Proceeding Docket No. 171.

52.    On December 4, 2020, the Trustee filed a Motion to Consolidate Related Adversary Cases, seeking to consolidate the Jetcraft Adversary Proceeding and the CAVIC Adversary Proceeding.  Jetcraft Adversary Proceeding Docket No. 153.  On April 4, 2021, the Court denied the Motion to Consolidate.  Jetcraft Adversary Proceeding, Docket No. 193.  Pursuant to the Court's approval of DLA Piper's second interim fee request, the Court disallowed fees incurred in connection with the Motion to Consolidate.  Accordingly, DLA Piper did not include any fees incurred in 2021 in connection with the Motion to Consolidate with its third interim fee request.

53.    On April 28, 2021, the Trustee filed a Motion for Leave to Amend the Original Jetcraft Complaint.   Jetcraft Adversary Proceeding, Docket No. 199.   Defendants Jetcraft Corporation, Jetcraft Global, Inc., Jetcoast 5000-5 LLC, Jetcraft Asia Limited, FK Group Ltd., FK Partners Limited, Jahid Fazal-Karim, Bombardier Inc., Bombardier Aerospace Corporation, and Learjet, Inc., and non-parties CAVIC Aviation Leasing (Ireland) 22 Co. and Glove Assets Investment Limited filed oppositions to the Trustee's Motion for Leave to Amend.  *See* Jetcraft Adversary Proceeding, Docket Nos. 222, 223, 224, 225, and 231.  The Motion for Leave to Amend was fully briefed.  *See* Jetcraft Adversary Proceeding, Docket Nos. 229 and 233.

54.    After extensive briefing in support of the Motion for Leave to Amend, the Court entered its memorandum decision on July 13, 2021, denying the Trustee leave to amend Counts 4, 5, 21, 22, 23, 26, 27, 28, 29, and 30, denying the Trustee leave to amend to add CAVIC and Glove Assets as defendants to Counts 14, 15, 30, 31, and 32, but otherwise granting leave to amend other changes.  Jetcraft Adversary Proceeding Docket No. 241.

55.     On July 28, 2021, the Trustee filed the first amended complaint under seal.  Jetcraft Adversary Proceeding Docket No. 264.  On September 7, 2021, the Jetcraft Adversary Proceeding defendants filed motions to dismiss the first amended complaint.  Jetcraft Adversary Proceeding Docket Nos. 281, 282, and 284.  The Trustee filed his opposition to the motions to dismiss on November 13, 2021.  Jetcraft Adversary Proceeding Docket No. 321. The Jetcraft Adversary Proceeding Defendants filed replies in support of their motions to dismiss on February 18, 2022. Jetcraft Adversary Proceeding Docket Nos. 360 and 361.  A hearing on the motions to dismiss was held on April 27, 2022.  The Court issued its rulings on the motions to dismiss on June 23, 2022, in which it granted in part and denied in part the defendants' motions to dismiss, and granting the Trustee leave to amend certain counts. Jetcraft Adversary Proceeding Docket Nos. 383, 384, and 385. On July 7, 2022, the Court ordered the parties to mediation.  Jetcraft Adversary Proceeding Docket No. 401.  The mediation took place on September 21, 2022.  The parties continued to negotiate after the mediation concluded, and ultimately, the Trustee and Defendants Jetcraft Corporation, Jetcraft Global, Inc., Jetcoast 5000-5 LLC, Orion Aircraft Holdings Ltd., Jetcraft Asia Limited, FK Group Ltd, FK Partners Limited, Jahid Fazal-Karim (collectively, the "Jetcraft Defendants") finalized the term of a settlement agreement.  A motion to approve the Jetcraft settlement agreement was filed on November 29, 2022.  Docket No. 1995 (the "Jetcraft Settlement Motion").   The Trustee's professionals fully briefed and argued the motion approving the settlement agreement, which was ultimately denied.  Docket No. 2084.  At the hearing held on March 22, 2023, the Court stayed all matters in the Jetcraft Adversary Proceeding pending resolution of the appeal of the same case.

56.     On July 21, 2022, the Bombardier Defendants filed a motion for entry of final judgment, to which the Trustee objected.  Jetcraft Adversary Proceeding Docket Nos. 416, 420, and 422.  On September 7, 2022, the Court entered an order granting the Bombardier Defendants' motion for entry of final judgment.  Jetcraft Adversary Proceeding Docket Nos. 432.  On

September 15, 2022, the Trustee filed a notice of appeal of the entry of final judgment. Jetcraft Adversary Proceeding Docket No. 438.

57.    During the Ninth Interim Period, the Trustee and his counsel continued to work on the appeal, which led to the initial brief being filed on February 15, 2023, the Bombardier Defendants filing a response brief on April 28, 2023, and the Trustee filing a reply brief on May 17, 2023, as well as other administrative items related to prosecution of the appeal.

**ii.    The CAVIC Adversary Proceeding**
     ***(King v. CAVIC Aviation Leasing (Ireland) 22 Co. Designated Company, et al.,***
     **Case No. 19-01147-SK)**

58.    The Trustee and CAVIC Aviation Leasing (Ireland) 22 Co. Designated Activity Company ("CAVIC") both allege they assert ownership rights to a $30 million refund currently held by Bombardier under a rejected aircraft purchase agreement.

59.    On May 21, 2019, the Trustee commenced the CAVIC Adversary Proceeding seeking: (i) declaratory judgments that (A) the subject leases are disguised financings and (B) the subject aircraft purchase agreement is terminated; (ii) avoidance of an unperfected security interest; (iii) recovery of avoided transfers; (iv) turnover of estate property; (v) avoidance of preference transfers; and (vi) recovery of property of the estate. *See* CAVIC Adversary Proceeding, Docket No. 1. Given the asserted confidential nature of certain of the information alleged, the Trustee filed redacted versions of the complaint.

60.    On October 25, 2019, the parties attended Court ordered mediation, which was unsuccessfully concluded. *See* CAVIC Adversary Proceeding, Docket No. 51.

61.    On January 10, 2020, CAVIC filed its motion to dismiss the CAVIC Adversary Proceeding (the "CAVIC Motion to Dismiss"). *See* CAVIC Adversary Proceeding, Docket No. 59.

62.    On January 30, 2020, Bombardier filed its motion to dismiss the CAVIC Adversary Proceeding (the "Bombardier Motion to Dismiss"). *See* CAVIC Adversary Proceeding, Docket

No. 70.

63.     On February 14, 2020, and February 27, 2020, the Trustee filed his opposition to the CAVIC Motion to Dismiss and Bombardier Motion to Dismiss, respectively.  *See* CAVIC Adversary Proceeding, Docket Nos. 75 & 80.

64.     On February 28, 2020, and March 12, 2020, CAVIC and Bombardier, respectively, filed their replies to the Trustee's opposition.  *See* CAVIC Adversary Proceeding, Docket Nos. 82 & 96.

65.     Given Bombardier's economic disinterest in the subject refund and risk that Bombardier's financial condition imperiled the collectability of the $30 million refund in Bombardier's possession, on March 9, 2020, the Trustee filed a motion seeking to compel (the "Motion to Compel") Bombardier to turn over the refund to an account controlled by the Court, or, in the alternative, for a preliminary injunction.  *See* Docket No. 90.  Both Bombardier and CAVIC objected to the relief sought.  *See* CAVIC Adversary Proceeding Docket Nos. 105 & 107.  On April 15, 2020, the Trustee responded to the defendants' objections.  *See* CAVIC Adversary Proceeding Docket No. 117.

66.     On March 31, 2020, the Trustee filed a motion to file the complaint under seal (the "Motion to Seal") in an effort to protect the confidential information that Bombardier and CAVIC allege that the complaint contains.  *See* CAVIC Adversary Proceeding Docket No. 104.

67.     On May 12, 2020, the Court entered an order granting the Motion to Seal.  CAVIC Adversary Proceeding, Docket No. 126

68.     On May 20, 2020, the Court entered an order denying the Motion to Compel.  CAVIC Adversary Proceeding, Docket No. 131.

69.     The Court issued its ruling on the CAVIC Motion to Dismiss and the Bombardier Motion to Dismiss on October 7, 2020, in which it granted in part and denied in part defendants' motions to dismiss, and granting the Trustee leave to amend certain counts. CAVIC Adversary

1    Proceeding Docket Nos. 156, 157, 167, and 168.

2        70.    The parties were ordered to enter into a mediation.  CAVIC Adversary Proceeding

3    Docket No. 180 at 1.

4        71.    As part of the mediation, the Trustee was required to submit a draft amended

5    complaint to the defendants at least three weeks in advance of the date of any mediation statement

6    that is due, or by December 15, 2020, whichever date was earlier.  CAVIC Adversary Proceeding,

7    Docket No. 180 at 4.  The Trustee prepared a draft amended complaint that was timely submitted

8    to the mediator.  The mediation was held on January 26, 2021. On February 16, 2021, a mediator

9    report was filed, in which the mediator informed the court that a settlement had not been reached.

10   CAVIC Adversary Proceeding Docket No. 213.

11       72.    On December 4, 2020, the Trustee filed a Motion to Consolidate Related Adversary

12   Cases, seeking to consolidate the Jetcraft Adversary Proceeding and the CAVIC Adversary

13   Proceeding.  CAVIC Adversary Proceeding Docket No. 184.  The hearing date on the Motion to

14   Consolidate and status conference was held on March 31, 2021.  CAVIC Adversary Proceeding,

15   Docket No. 214. On April 4, 2021, the Court denied the Motion to Consolidate.  CAVIC Adversary

16   Proceeding, Docket No. 236.

17       73.    On April 28, 2021, the Trustee filed a Motion for Leave to Amend the CAVIC

18   Adversary Proceeding complaint.  CAVIC Adversary Proceeding, Docket No. 242.  Defendants

19   CAVIC Aviation Leasing (Ireland) 22 Co. and Bombardier Aerospace Corporation filed

20   oppositions to the Trustee's Motion for Leave to Amend.  CAVIC Adversary Proceeding, Docket

21   Nos. 264 and 265. The Motion for Leave to Amend was fully briefed.  *See* CAVIC Adversary

22   Proceeding, Docket No. 267.

23       74.    After extensive briefing in support of the Motion for Leave to Amend, the Court

24   entered its memorandum decision on July 13, 2021, denying in part and granting in part the

25   Trustee's Motion for Leave to Amend.  CAVIC Adversary Proceeding, Docket No. 275.  On July

28, 2021, the Trustee filed its first amended complaint in the CAVIC Adversary Proceeding. CAVIC Adversary Proceeding, Docket No. 300.

75.    On August 13, 2021, the Court approved the Trustee and defendant CAVIC Aviation Leasing (Ireland) 22 Co. entering into a stipulation to proceed to mediation with retired bankruptcy Judge David H. Coar serving as mediator.  CAVIC Adversary Proceeding, Docket No. 306.  The mediation took place on August 25 and 26, 2021, but the Trustee and defendant CAVIC Aviation Leasing (Ireland) 22 Co. were unable to come to terms on a settlement.

76.    On September 7 and September 8, 2021, defendant Bombardier Aerospace Corporation and defendant CAVIC Aviation Leasing (Ireland) 22 Co. Designated Activity Company respectively filed motions to dismiss the first amended complaint.  CAVIC Adversary Proceeding Docket Nos. 311 and 312. On October 13, 2021, the Trustee filed opposition briefs to the motions to dismiss.  CAVIC Adversary Proceeding Docket Nos. 334 and 336.  Both defendants field their reply briefs in support of the motions to dismiss on November 5, 2021.  CAVIC Adversary Proceeding Docket Nos. 348 and 349. On March 8, 2022, the Court entered orders granting defendants Bombardier Aerospace Corporation and CAVIC Aviation Leasing (Ireland) 22 Co. Designated Activity Company's motions to dismiss.  CAVIC Adversary Proceeding Docket Nos. 364 and 365.  On March 25, 2022, the Trustee filed his notice of appeal of the Court's decision to dismiss his claims.  CAVIC Adversary Proceeding Docket No. 382.

77.    On August 10, 2022, the Trustee's opening brief in the appeal was filed, and the appellees' opening brief was filed on October 14, 2022.  Case No. 22-02004, Docket Nos. 43 and 65.  During the Ninth Interim Period, the Trustee's counsel worked on a reply brief, which was filed on January 6, 2023.  Case No. 22-02004, Docket No. 74.

iii.    **The Li Qi Adversary Proceeding**
(***King v. Yuntian 3 Leasing Company Designated Activity Comp., et al.***, 2:19-ap-01383-SK)

78.    The Trustee filed a fifteen-count adversary complaint (the "<u>Yuntian Original</u>

Complaint") against nine defendants in the Li Qi Adversary Proceeding on September 13, 2019. Li Qi Adversary Proceeding, Docket No. 1.  That complaint describes how the founder of the Debtors, Geoff Cassidy, lined his pockets with at least $10 million from kickbacks, bribes, and embezzlement, while saddling the Debtors with almost half a billion dollars in unsustainable debt. *Id.* at ¶ 1.  As part of Cassidy's fraudulent scheme, in September 2016, Cassidy refinanced (the "Minsheng Refinancing") two Bombardier aircraft ("Plane 6" and "Plane 7") previously purchased from and/or financed by Universal Leader and Glove Assets, two entities owned and controlled by Li Qi, debtor Zetta Jet Pte.'s former director and owner and, in October 2016, financed (the "Plane 12 Financing") the purchase of another aircraft ("Plane 12") with the Minsheng Defendants and EDC.

79.    In the Yuntian Original Complaint, the Trustee sought to avoid actual and constructively fraudulent transfers from the Debtors to the defendants.  *Id.* at ¶ 6.  The Yuntian Original Complaint alleged fifteen counts: Avoidance and Recovery of Fraudulent Transfers under 11 U.S.C. §§ 548 and 550 (Counts I, II, and VI), Avoidance and Recovery of Preference Transfers under 11 U.S.C. §§ 547 and 550 (Counts III, IV, V, VIII, IX, X, and XII), Turnover of Property of the Bankruptcy Estate under 11 U.S.C. § 542 (Counts VII and XI), Recharacterization of the Third Investment as Equity Interest under 11 U.S.C. § 105(a) (Count XIII), Violation of the Automatic Stay under 11 U.S.C. § 362 (Count XIV), and Disallowance of Claims under 11 U.S.C. § 502(d) (Count XV).

80.    The Trustee was able to serve every defendant except for Minsheng Financial Leasing Co., Ltd., and Li Qi in 2019.  Li QI Adversary Proceeding, Docket No. 65-1 at 2-3.  The Trustee moved for alternative service on the unserved defendants.  *Id.*  On June 3, 2020, the Court granted the alternative service motion.  Li Qi Adversary Proceeding, Docket No. 139.

81.    All of the defendants, except for Minsheng Financial Leasing Co., Ltd. and Li Qi, filed motions to dismiss.  Li Qi Adversary Proceeding, Docket Nos. 32, 44, 45, and 88.  The

1    motions to dismiss were fully briefed.  Li Qi Adversary Proceeding, Docket Nos. 55, 61, 64, and

2    130.  The Court issued its rulings on the motions to dismiss on July 29, 2020, in which it granted

3    in part and denied in part defendants' motions to dismiss, and granted the Trustee leave to amend

4    certain counts.  Li Qi Adversary Proceeding, Docket Nos. 173-175.

5        82.    The parties were ordered to enter into a mediation.  Li Qi Adversary Proceeding

6    Docket No. 215 at 1.

7        83.    As part of the mediation, the Trustee was required to submit a draft amended

8    complaint to the defendants at least three weeks in advance of the mediation Li Qi Adversary

9    Proceeding, Docket No 215 at 4.  The Trustee prepared a draft amended complaint that was timely

10   submitted to the mediator.  The Trustee filed an amended complaint within forty days after the

11   filing of a report by the Mediator stating that the mediation has concluded without all issues being

12   resolved.  Li Qi Adversary Proceeding, Docket No 215 at 5.  The mediation was held on January

13   26, 2021. On February 16, 2021, a mediator report was filed, in which the mediator informed the

14   court that a settlement had not been reached.  Li Qi Adversary Proceeding Docket No. 222.

15       84.    On March 29, 2021, the Trustee filed an amended complaint.  Li QI Adversary

16   Proceeding Docket No. 232.

17       85.    Notwithstanding the formal conclusion of mediation in mid-February, the Trustee

18   and Yuntian 3 Leasing Company Designated Activity Company f/k/a Yuntian 3 Leasing Company

19   Limited ("Yuntian 3"), Yuntian 4 Leasing Company Designated Activity Company f/k/a Yuntian

20   4 Leasing Company Limited ("Yuntian 4"), Minsheng Financial Leasing Co., Ltd. ("Minsheng

21   Financial"), Minsheng Business Aviation Limited ("Minsheng Business" and together with

22   Minsheng Financial, "Minsheng"), and Export Development Canada ("EDC" and together with

23   Minsheng, Yuntian 3, and Yuntian 4, the "Settling Defendants") continued to explore settlement

24   discussions mediated by Kevin Gross.  In mid-March 2021, the Settling Defendants were able to

25   reach a settlement in principle.

86.     On May 11, 2021, the Trustee file a motion to approve a settlement agreement memorializing the key terms reached by the parties.  Under the settlement agreement, Minsheng, Yuntian 3, and Yuntian 4 agreed to pay $4.5 million to the estates and withdraw proofs of claim totaling over $214 million in unsecured claims, $14 million in administrative claims and $8 million in secured claims against the estates in exchange for dismissal of the Yuntian Adversary Proceeding against the Settling Defendants.  The parties also mutually released each other from claims in addition to other undertakings.  Main Case Docket No. 1469. The Court approved the settlement on June 8, 2021.  Main Case Docket No. 1511.

87.     On May 10, 2021, defendants Universal Leader Investment Limited, Glove Assets Investment Limited, Truly Great Global Limited, and Li Qi filed motions to dismiss the amended complaint. Li Qi Adversary Proceeding Docket Nos. 238 and 239.  The motions to dismiss were fully briefed. *See* Li Qi Adversary Proceeding Docket Nos. 257, 259, 281, and 305.

88.     After extensive briefing on the motions to dismiss, the Court entered its memorandum decision on August 17, 2021, dismissing the Li Qi Adversary Proceeding against defendants Universal Leader Investment Limited, Glove Assets Investment Limited, Truly Great Global Limited, and Li Qi without leave to amend.  Li QI Adversary Proceeding Docket No. 314.

89.     On August 31, 2021, the Trustee filed its notice of appeal, appealing the Court's final judgment dismissing the Li Qi Adversary Proceeding against defendants Universal Leader Investment Limited, Glove Assets Investment Limited, Truly Great Global Limited, and Li Qi.  Li Qi Adversary Proceeding Docket No. 328.

90.     On September 3, 2021, defendants Universal Leader Investment Limited, Glove Assets Investment Limited, and Truly Great Global Limited filed a motion for payment of attorneys' fees.  Li Qi Adversary Proceeding Docket No. 334.  The Trustee filed its objection to the motion for attorneys' fees on October 13, 2021.  Li Qi Adversary Proceeding Docket No. 352. Defendants Universal Leader Investment Limited, Glove Assets Investment Limited, and Truly

Great Global Limited filed a reply brief in support of their motion on October 27, 2021. Li Qi Proceeding Docket No. 354. A hearing on the motion for payment of attorneys' fees was continued pending resolution of the appeal.

91.     On December 30, 2021, the Trustee filed his opening brief in the appeal of the dismissal order, followed by the appellees' opening brief on March 28, 2022, and the Trustee's reply brief on April 13, 2022. Case No. 21-cv-07572, Docket Nos. 30, 43, and 44. Although briefing has been completed, no hearing has been held on the appeal and the case awaits a decision from the District Court.

92.     On May 5, 2022, defendants Universal Leader Investment Limited and Glove Assets Investment Limited filed a motion to enjoin the Trustee from asserting avoidance actions in Singapore. Li Qi Adversary Proceeding Docket No. 360. The Trustee filed his objection to the motion on May 18, 2022. Li Qi Adversary Proceeding Docket No. 363. Defendants Universal Leader Investment Limited and Glove Assets Investment Limited filed a reply brief in support of the motion on May 25, 2022. Adversary Proceeding Docket No. 371. The Court entered the injunction on August 22, 2022. Adversary Proceeding Docket No. 386. The Trustee filed a notice of appeal from the injunction and election to the district court on September 1, 2022. Adversary Proceeding Docket No. 395. The parties have agreed to stay the appeal of the injunction pending resolution of the appeal of the dismissal order.

iv.     **The New Target Adversary Proceeding**
        (*King v. New Target Investments Limited, et al.*, **Case No. 18-01340-SK**)

93.     On October 29, 2018, the Trustee commenced the New Target Adversary Proceeding by filing a complaint (the "Complaint") against defendants New Target Investments Limited ("New Target"), Kebo Wu, Du Yan, Guoyue (Grace) Huang, Fok Kin Kanning, Linkage Access Limited ("Linkage"), Misaki Go, and John Doe Corporation. *See* New Target Adversary Proceeding, Docket No. 1. The Trustee commenced the New Target Adversary Proceeding to

recover from the defendants the value of the Dragon Pearl, a 70-foot luxury yacht wrongfully purchased by Geoffrey Owen Cassidy, the Debtors' former managing director, with misappropriated Debtor funds in the amount of AUD $4,492,034.82 (US $3,172,565.18 as of the commencement of the New Target Adversary Proceeding) and enforce the automatic stay to recover attorneys' fees and other costs incurred by reason of the defendants' stay violations.

94.    After New Target and Linkage failed to answer or otherwise respond to the Complaint, the Clerk entered default against each of those defendants.  New Target Adversary Proceeding, Docket Nos. 18 and 19.  New Target and Linkage then moved to set aside the defaults entered against them, and the Court granted the relief following briefing by the parties.  New Target Adversary Proceeding, Docket Nos. 46 and 47.

95.    On September 13, 2019, the Trustee filed the amended complaint (the "Amended Complaint") against New Target, Linkage, Kebu Wu, and Dragon Pearl Limited.  Like the Complaint, the Amended Complaint seeks recovery of the value of the Dragon Pearl from the defendants. *See* New Target Adversary Proceeding, Docket No. 60.

96.    Each of the defendants has failed to answer or otherwise respond to the Amended Complaint.  The Trustee obtained entry of default against New Target, Linkage, and Dragon Pearl Limited.  New Target Adversary Proceeding, Docket Nos. 88, 89, 103.

97.    On March 5, 2020, the Trustee, after multiple good faith attempts to serve defendant Kebu Wu, moved for alternative service under Rule 4(f)(3) of the Federal Rules of Civil Procedure.  New Target Adversary Proceeding, Docket No. 106 (the "Alternative Service Motion").  The deadline for interested parties to respond to the Alternative Service Motion was April 1, 2020, and no responses were filed or received.  On April 17, 2020, the Trustee filed a certificate of no objection with respect to the Alternative Service Motion.  New Target Adversary Proceeding, Docket No. 119.

98.    On June 3, 2020, the Court entered an order granting the Alternative Service

Motion.  New Target Adversary Proceeding, Docket No. 125.

99.     After Kebu Wu failed to answer or otherwise respond the Amended Complaint, on August 17, 2020, the Clerk entered default against Kebu Wu.  New Target Adversary Proceeding, Docket No. 142.

100.     On February 11, 2021, the Trustee filed a motion for default judgment against defendants New Target, Linkage, Kebu Wu, and Dragon Pearl Limited.  New Target Adversary Proceeding, Docket No. 161.

101.     On August 12, 2021, the Court entered an order entering final judgment against the defendants New Target, Linkage, Kebu Wu, and Dragon Pearl Limited, as well as declaring the Dragon Pearl Limited the alter ego of Zetta PTE, and holding that the Dragon Pearl Limited's assets, including the Dragon Pearl, are "property of the estate" of debtor Zetta PTE.  New Target Adversary Proceeding Docket No. 209.

102.     On April 28, 2021, the Trustee filed a motion to substantively consolidate the estate of Zetta PTE with Dragon Pearl Limited and an amended motion to default judgment against the New Target defendants.  The Court entered an order granting the motion to substantively consolidate the estates of Zetta PTE with the estate of Dragon Pearl Limited on July 7, 2021.  Main Case Docket No. 1553.

103.     On September 30, 2021, the Court entered an order closing the New Target Adversary Case due to the final judgment being entered.  New Target Adversary Proceeding Docket No. 219.

## COMPENSATION FOR SERVICES RENDERED

104.     All services for which compensation is requested by DLA Piper were performed for or on behalf of the Chapter 7 Trustee.  In representing the Trustee, DLA Piper assembled a team of attorneys with global expertise to efficiently and safely wind down the estates, liquidate assets, minimize administrative obligations, seek global recognition in other countries, investigate

1   the prepetition affairs of the Debtors to determine whether viable causes of action existed against

2   third parties and, upon identification of viable claims, prosecuted adversary actions and other

3   actions to assert such claims and seek the recovery of amounts and assets for the benefit of the

4   estates.

5       105.    Throughout the Ninth Interim Period, the Trustee was represented by a core team

6   comprised of John K. Lyons, Jeff Torosian, Joseph Roselius, Devin Carpenter, Greg Juell, Noah

7   Schottenstein, Jacob Clubb and Ana O'Hara Cordes.  John K. Lyons, a senior bankruptcy partner,

8   is responsible for the overall engagement while Jeff Torosian, a senior litigation partner, and

9   Joseph Roselius, a junior litigation partner, are primarily responsible for leading the prosecution

10  of the Adversary Cases and other litigation related matters.  Devin Carpenter is the primary

11  litigation associate working on the Adversary Cases, and Jacob Clubb and Ana O'Hara Cordes are

12  the primary investigations associate working on the engagement.  Greg Juell, an associate, and

13  Noah Schottenstein, a senior attorney, are the primary bankruptcy attorneys working on the

14  engagement during the Ninth Interim Period.

15      106.    The core team actively participated in the global representation of the Trustee in all

16  facets of these cases.  By assembling a core team, DLA Piper provided timely advice to the Trustee,

17  reduced unnecessary duplication of effort, and developed strategies with the benefit of a

18  comprehensive understanding of factual and legal issues faced by the Trustee.  The core team has

19  dedicated a substantial amount of their time to this representation to the exclusion of other potential

20  clients and, in doing so, has developed deep expertise in these matters.

21      107.    As further detailed below, the core team coordinated with other attorneys of DLA

22  Piper to provide general and specialized global expertise to assist the Trustee in performing his

23  duties on behalf of the estates.

24      108.    During the periods covered by this Application, DLA Piper has received no

25  additional payment and no promises for payment from any source for services rendered or to be

24

rendered in any capacity whatsoever in connection with the matters covered by this Application. There is no agreement or understanding between DLA Piper and any other person, other than the partners of DLA Piper and its affiliates entities, for the sharing of compensation to be received for services rendered in these chapter 7 cases.

109.    DLA Piper has made a number of fee reductions prior to filing this Application including eliminating certain fees incurred by timekeepers that could be viewed as duplicative or otherwise inefficient.

110.    DLA Piper has addressed a number of issues raised by the Fee Examiner which has resulted in a further reduction of $85,000.00 in fees incurred during the Ninth Interim Period.

111.    DLA Piper submits that the fee reductions are significant and results in a meaningful reduction in chapter 7 professional fees that will enhance the ability of the Trustee to ultimately make distributions to creditors of the estates.

112.    The Trustee estimates that funds remaining after the interim payment of fees to chapter 7 professionals, with additional funds to be provided by litigation funders (which will be subject to Bankruptcy Court approval), will be adequate to fund the continued prosecution of litigation against third parties, the success of which distributions to creditors depends.

## NO DISTRIBUTION TO CREDITORS AT THIS TIME

113.    As of the filing of this Application, the total funds held by the Trustee total $4,165,452.73.  The total estimated fees of chapter 7 professionals incurred to date along with the chapter 11 administrative claims exceeds the total funds currently held by the Trustee.   In particular, total outstanding holdbacks under the first, second, third, fourth, fifth, sixth, seventh and eighth interim fee approval orders, the amounts sought to be paid to DLA Piper under its fourth, fifth, sixth, seventh and eighth interim fee application, which have not been approved, and the amounts sought to be paid under the ninth interim fee requests total approximately $17 million. There are approximately $11.2 million in remaining Chapter 11 administrative claims (excluding

duplicate claims) which are still subject to claims adjustment and liquidation, including $3.7 million in retained Chapter 11 professional fees.  In addition, 62 claimants, primarily former employees and independent contractors, filed unliquidated claims.  The Trustee, through special counsel Leech Tishman Fuscaldo & Lampl, Inc., has begun the claims reconciliation and objection process.  Accordingly, the Trustee is taking to steps to prepare the cases for closure pending resolution of the Jetcraft Adversary Proceeding, the CAVIC Adversary Proceeding and the Li Qi Adversary Proceeding and related litigation in Singapore and Australia.  Once these adversary and related foreign proceedings have been resolved, the Trustee will be in a position to close the cases nd, if  a successful resolution is obtained, will be in a position to make distributions to creditors at that time.

114.    As stated in his declaration, the Trustee firmly believes that his claims being prosecuted in the current adversary proceedings are meritorious and, when liquidated, will provide significant recoveries to creditors, after payment of professional fees and chapter 11 administrative expenses.

**FEE STATEMENT AND SUMMARY**[2]

115.    The fee statements for DLA Piper for the Ninth Interim Period arranged in chronological order are attached hereto as **Exhibit D-1** through **Exhibit D-3** (the "Fee Statements").  These Fee Statements contains daily time logs describing the time spent by each attorney and paraprofessional for the Ninth Interim Period.  The hourly rates set forth in the Fee Statement are those customarily charged by DLA Piper for similar legal services.  DLA Piper's fees for services rendered by lawyers, paralegals and other professionals are customary and usual in the legal community in which DLA Piper practices.  Summaries of the attorneys and paraprofessionals, their position, courts of admission and year of admittance, starting year with

---

[2]    The Fee Statements are exclusive of the $85,000.00 reduction agreed upon by DLA Piper and the fee examiner.

DLA Piper, hourly rate, total hours spent, and fees incurred during the Ninth Interim Period is attached hereto as **Exhibit A-1** through **Exhibit A-3**.

116.     To the best of DLA Piper's knowledge, this Statement complies with sections 330 and 331 of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and Rule 2016-1 of the Local Rules.

### ACTUAL AND NECESSARY EXPENSES

117.     DLA Piper seeks allowance and payment for the sum of $60,423.60 for reimbursement of actual and necessary expenses for the Ninth Interim Period.  The Fee Statements include detail of actual and necessary expenses and daily logs of expenses incurred by DLA Piper during the Ninth Interim Period.  In its billing discretion, DLA Piper reduced certain expenses in order to ensure that all expenses fall within a reasonable range.  A summary of expenses incurred by DLA Piper during the Ninth Interim Period is attached hereto as **Exhibits C-1** through **C-3**.

118.     DLA Piper requests the Court approve for payment all expenses incurred and submitted in the fourth ($78,846.07), fifth ($95,019.68), sixth ($27,967.45), seventh ($27,341.26), eighth ($12,739.05) and ninth ($60,423.60) interim fee applications, for a total payment of $302,337.11.  These expenses represent disbursements made by DLA Piper to third parties for work and/or services provided to the Trustee for the benefit of the bankruptcy estates, some of which are covered by the various budget orders entered by the Court.  None of these expenses reflect reimbursements for payments made to DLA Piper for services provided by its attorneys or paraprofessionals.

### SUMMARY OF SERVICES RENDERED

119.     DLA Piper, by and through the below-named persons, has provided a broad range of services to the Chapter 7 Trustee in connection with these Chapter 7 Cases during the Ninth Interim Period.  In rendering such services, DLA Piper worked with other estate professionals and all parties in interest to administer these cases as efficiently and effectively as possible.

120.    The services rendered by DLA Piper during the Ninth Interim Period were necessary to address a multitude of issues both unique to the Debtors' cases and typical of large corporate debtors in similar cases of this magnitude and complexity.

121.    DLA Piper details the services provided in the Summary of Services by Project section below.

122.    The partners, of counsel, associates, and attorneys of DLA Piper who rendered professional services in these cases during the Ninth Interim Period are: John K. Lyons (Partner), Jeffrey S. Torosian (Partner), Joseph A. Roselius (Partner), Natalie Caton (Partner), Nathan Bush (Partner), Gregory M. Juell (Associate), Devin J. Carpenter (Associate), Robert Moskalewicz (Associate), Jacob Riley Clubb, Ana O'Hara Condes (Associate), Noah Mariano Schottenstein (Senior Attorney), and Aimee Griffin (Solicitor).

123.    The paraprofessional of DLA Piper who provided services to these attorneys in these cases during the Ninth Interim Period is: William L. Countryman, Jr. (Paralegal / Case Manager).

## SUMMARY OF SERVICES BY PROJECT

124.    DLA Piper has summarized the key matters in the Trustee's representation as follows: (A) General Chapter 7 Matters, (B) Jetcraft Adversary Proceeding, (C) CAVIC Adversary Proceeding, (D) Yuntian Adversary Proceeding, (E) New Target Adversary Proceeding/Australia, (F) Investigation, and (G) Singapore. Within each of the matters, the Trustee has assigned task codes consistent with the Guidelines established by the Office of the United States Trustee. These matter summaries and task code descriptions are general descriptions with a more detailed identification of the actual services provided in the Ninth Interim Period set forth in the Fee Statement. The attorneys and paraprofessionals who rendered services relating to each category in the Ninth Interim Period are identified, along with the number of hours for each individual and the total compensation sought for each category in the Fee Statement. Although every effort has

been made to properly and consistently categorize the actual services provided into the appropriate category, certain tasks could properly be categorized into two or more task codes.  A summary of the hours spent and fees incurred by DLA Piper during the Ninth Interim Period broken down by categories is attached hereto as **Exhibit B.**

125.    The key matters, task codes and the portion of the aggregate amount attributable to international offices[3] are summarized below:[4]

126.    **General Chapter 7 Matter:** [$146,303.00].  During the Ninth Interim Period, DLA Piper, as counsel to the Trustee, has undertaken a variety of general chapter 7 tasks that were essential to enable the Trustee to exercise of his duties to administer the cases.

127.    General case administration tasks including filing case status reports, filing pleadings and notices, service of pleadings, preparation and filing of budgets and approval requests, reports with the Office of the United States Trustee, communications with creditors, communications and meetings with other constituents including the Department of Justice and other governmental authorities, litigation funding efforts, and document retrieval are included within this matter.

128.    As part of his duties, the Trustee has continued to work with governmental authorities across the globe in connection with their efforts to cooperate in investigations and recover assets for the estates.  So far, governmental authorities have seized the Dragon Pearl (Australia Federal Police executing a US federal warrant) and just under $1 million proceeds from the sale of Cassidy's Ardmore apartment (Singapore Police, Civil Affairs Division).  The Trustee has notified the governmental authorities that he intends to participate in victim's restitution programs on behalf of the estates once proceeds are available for distribution to victims of

---

[3]    DLA Piper's international offices did not assign the standardized task codes to their billed services.  However, their services are included in the appropriate subcategories below.

[4]    The amounts in the subcategories below are exclusive of the $85,000.00 reduction agreed upon by DLA Piper and the fee examiner.

Cassidy's misdeeds.

129.    The General Chapter 7 matter also includes time spent working on other litigation, claims administration, and asset recovery efforts other than the prosecution of the Adversary Cases.  Throughout the Ninth Interim Period, DLA Piper has worked on a variety of tasks, including drafting budget requests, preparing status reports on the various adversary proceedings, working on collection efforts and enforcement of judgments against entities in Singapore, and work on a substantive consolidation motion.

130.    Finally, DLA Piper spent a significant amount of time during the Ninth Interim Period preparing fee applications filed for itself and several of the Trustee's other professionals for fees incurred from October 1, 2022, through December 31, 2022, totaling over $1.1 million. Given the magnitude of the fee request and time period covered, this required a significant amount of time to prepare fee applications for the Court's and creditors' review (and the advance review of the Fee Examiner (which resulted in additional concessions)).

131.    **Jetcraft Adversary Proceeding:** [$946,975.50].  As outlined above and as the Court is aware, the Jetcraft Adversary involves highly complex fraud, avoidance claims, and other claims prosecuted by the Trustee against Bombardier, Inc. Bombardier Aerospace, Inc. and Jahid Fazal-Karim and a number of his affiliates including Jetcraft Corporation and related defendants. Given the hundreds of millions of dollars taken from the estates, at the expense of creditors, by Cassidy, Bombardier and Fazal-Karim and his companies through Cassidy's fraudulent and coordinated aircraft purchasing scheme, it is the Trustee's view that the Jetcraft Adversary action is the estates' single most valuable asset has already resulted in a settlement payment of $15 million by the ECN Defendants along with a release of over $13 million in chapter 11 administrative claims and $185 million in unsecured claims against the estates.  The claims against the remaining defendants total well in excess of $300 million and, if meritorious could result in a significant, if not a full payout, to creditors of the estates.  Accordingly, the Trustee's professionals, including

DLA Piper, have devoted a significant amount of effort in prosecuting the Jetcraft Adversary Proceeding during the Ninth Interim Period.

132.    During the Ninth Interim Period, the focus of the prosecution of the Jetcraft Adversary Proceeding was drafting a reply brief defending and attending a hearing on the Jetcraft Settlement Motion, and continued prosecution of the appeal with respect to the Bombardier Defendants which included completing briefing in the appeal.  All fees related to the Jetcraft Settlement Motion, however, are being deferred to a later fee application of DLA Piper.

133.    Jeffery Torosian, Joseph Roselius and Devin Carpenter have spearheaded the prosecution of the Jetcraft Adversary Proceeding.  John Lyons has taken the lead on bankruptcy related claims with assistance from Greg Juell and Noah Schottenstein.  Other timekeepers have assisted the core group under their guidance and direction.

134.    **Yuntian Adversary Proceeding:** [$7,570.00].  As stated above, DLA Piper has assisted the Trustee in prosecuting the Yuntian Adversary Proceeding that seeks the avoidance and recovery of over $120 million in transfers made to the defendants arising under sections 547 and 548 of the Bankruptcy Code, enforcement of the automatic stay against Li Qi and other relief.  Like the Jetcraft Adversary Proceeding, the Yuntian Adversary Proceeding involves avoidance claims arising under both the actual intent to defraud and constructive fraud prongs of Section 548 of the Bankruptcy Code, preference claims arising under Section 547 of the Bankruptcy Code, and other claims.

135.    The focus of the prosecution of the Yuntian Adversary Proceeding during the Ninth Interim period was preparation for the appeal hearing on the dismissal order.

136.    John Lyons was the restructuring partner responsible for the Yuntian Adversary Proceeding with assistance from bankruptcy associate Greg Juell and aviation specialist Lucien White.  Jeffrey Torosian, Joseph Roselius and Devin Carpenter led the litigation coordination and assistance.

137.   **CAVIC Litigation:** [$126,377.50].   On September 13, 2019, the Trustee commenced the CAVIC Adversary Proceeding to recover a $30 million refund in possession of Bombardier and other transfers in excess of $4 million made to CAVIC within the 90-day period prior to the Petition Date and that the Trustee believes are subject to avoidance.   During the Ninth Interim Period, DLA Piper represented the Trustee in connection with the continued prosecution of the CAVIC Adversary Proceeding.

138.   The bulk of time in the CAVIC Adversary Proceeding during the Ninth Interim Period was spent analyzing and researching issues and finalizing the reply brief in the appeal with the District Court of the Central District of California, as well as beginning preparation for the appeal hearing.

139.   To ensure close coordination of these efforts, development of optimal strategies, and efficiency of legal services, John Lyons, a senior bankruptcy partner, and Jeff Torosian, a senior litigation partner, had overall supervision of the CAVIC Adversary Proceeding, coordinated and reviewed all research projects conducted by the core team of associates (Devin Carpenter, Noah Schottenstein, and Greg Juell) to avoid duplication of effort and reviewed and revised all work product and pleadings.   Lyons and Torosian generally split matters between each other with Lyons taking the lead on bankruptcy issues (security assignment, PDP/544 issues, recharacterization) and Torosian on general litigation issues (choice of law, confidentiality, litigation pleadings).   Joseph Roselius, a junior partner and also a member of the core team and the lead partner on the Jetcraft Adversary Proceeding, also worked closely with the team of lawyers working on CAVIC Adversary Proceeding matters to insure consistency of pleadings and development of case strategies.

140.   **Singapore:** [$11,761.00].   On March 4, 2019, the Singapore Recognition Court issued a judgment in *Re Zetta Jet Pte Ltd and others (Asia Aviation Holdings Pte Ltd, intervener)* [2019] SGHC 53, and granted the Recognition Order.   The Singapore Recognition Court held that

the center of main interests of both Debtors was the United States, that the Chapter 7 Cases should be recognized as "foreign main" proceedings in Singapore, and that the Trustee should be recognized as the Debtors' "foreign representative" in Singapore.

141.    The Recognition Order significantly advances the Trustee's ability to administer the estates and maximize value for stakeholders.   By the Recognition Order, the Trustee is authorized to, among other things, examine witnesses and take evidence concerning the Debtors' property and to bring avoidance actions under Singaporean law.   Further, the Recognition Order confers the Trustee with the powers available to a liquidator under Singapore insolvency law and allows him to administer the Debtors' insolvency recognition in Singapore.

142.    DLA Piper provided assistance to the Trustee in coordinating with the Trustee's Singapore counsel Oon and Bazul and exercising his duties under Singapore law including preserving and reviewing the Debtors' records, conducting additional investigatory services and discovery efforts, meeting with law enforcement, asset recovery efforts, and exploring potential actions available under Singapore law.  Notably, DLA Piper closely coordinated with the Trustee's Singapore professionals in connection with the development of recovery strategies against third parties and preparation of materials regarding such strategies.

143.    During the Ninth Interim Period, DLA Piper has assisted the Trustee and coordinated with DLA Singapore and Oon and Bazul regarding judgments entered against Cassidy and enforcement issues regarding New Target.

144.    John Lyons coordinated these efforts with Nate Bush providing assistance in Singapore working closely with Oon and Bazul and Quantuma.

145.    **DLA Australia:** [$7,792.00].  As stated above, DLA Piper has assisted the Trustee to undertake significant efforts in Australia in seeking millions of dollars for the estates in connection with the recovery of the Dragon Pearl, a luxury yacht that Cassidy obtained with misappropriated funds.

146.    The core team worked closely with DLA Piper's offices in Australia in its work related to the seizure of the Dragon Pearl, as well as enforcement in Australia of the default judgments obtained against the defendants in the New Target Adversary Proceeding, and on-going valuation process of the Dragon Pearl.  The DLA Australia team was led by Natalie Caton.

147.    **Consolidated Appeals Hearing:**[5]  As the Trustee has appealed the Court's various orders related to the Jetcraft, CAVIC, and Li Qi Adversary Proceedings, the District Court of the Central District of California ordered that all three appeals be consolidated into a single hearing.  Preparing for three appeals to be heard at once is a significant task, and has been one of the main focuses of the Trustee and his counsel, DLA Piper.  The core team has been lead by Jeff Torsian and John Lyons in identifying tasks to undertake in preparation for the hearing, with the assistance of Devin Carpenter and Noah Schottenstein.

## DLA PIPER'S REQUESTED COMPENSATION AND REIMBURSEMENT OF EXPENSES SHOULD BE ALLOWED

148.    Section 330 of the Bankruptcy Code governs compensation of professionals in a bankruptcy case and provides that, when determining the amount of reasonable compensation to award to a professional, the Court should consider the nature, extent, and value of the services to the bankrupt estate and all other relevant factors, including the following:

(a)    the time spent on such services;

(b)    the rates charged for such services;

(c)    whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(d)    whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

---

[5]    The amount of fees spent on the consolidated appeal hearing is included in the individual matters above.

(e)     with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(f)     whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

149.    In determining the reasonableness of a professional's requested fee award, courts in the Ninth Circuit and in other districts consider the following twelve factors articulated in *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717 (5th Cir. 1974) (collectively, the "Johnson Factors"):

(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.*; s*ee also, In re Harris-Nutall*, 572 B.R. 184, 197 (Bankr. N.D. Tex. 2017).

150.    DLA Piper respectfully submits that the services rendered and expenses incurred during the Ninth Interim Period for which DLA Piper seeks compensation and reimbursement are reasonable based on the standard set forth in section 330 of the Bankruptcy Code and the Johnson Factors.

(a)     <u>Time and labor required</u>:  DLA Piper expended 1,170.50 hours of professional time on behalf of the Chapter 7 Trustee during the Ninth Interim Period.  DLA Piper's complete time records during the Ninth Interim Period arranged in chronological order and by activity code category are attached hereto as **<u>Exhibits D-1 through D-3</u>**.  The Fee Statements' narrative descriptions evidence the time and labor employed in representing the Chapter 7 Trustee.

(b)     <u>Novelty and difficulty of questions and matters resolved</u>:  The Chapter 7 Cases and the legal issues presented therein required a high level of professional skill and expertise from professionals within DLA Piper's global bankruptcy, white collar/investigatory, aircraft finance, litigation and other practice groups.  DLA Piper's global breadth of services and expertise was particularly suited to assist the Trustee in performing his duties in the context of the Debtors' former private luxury aircraft charter business and multimillion dollar fraudulent aircraft purchasing scheme involving complex multijurisdictional financing structures perpetrated by

35

Cassidy and other third parties.

(c)    <u>The reputation and skill of the attorneys providing the services</u>:  As noted above, DLA Piper has drawn upon the skill of some of its most experienced attorneys in rendering its services to the Chapter 7 Trustee during the Seventh Interim Period.

(d)    <u>Preclusion of other employment</u>:  Despite DLA Piper's size, these Chapter 7 Cases required considerable time commitments from several DLA Piper attorneys and paraprofessionals, and during the course of these chapter 7 cases, DLA Piper's representation of the Chapter 7 Trustee precluded employment by other clients.

(e)    <u>Fees charged and fees awarded in similar cases</u>:  The fees sought by DLA Piper in this Application are commensurate with fees awarded to DLA Piper in other cases and the fees charged by comparable law firms.

(f)    <u>Time limitations</u>:  These chapter 7 cases required DLA Piper to perform an extensive variety of services and to address a range of issues on behalf of the Chapter 7 Trustee, often under significant time constraints.  The presence of DLA Piper's global network of attorneys greatly assisted the Trustee in taking timely action to secure records and assets without costly delay.

(g)    <u>Whether the fee is fixed or contingent</u>:  All fees sought by professionals under sections 330 and 331 of the Bankruptcy Code are contingent prior to approval by the Court.

(h)    <u>The "undesirability" of the case</u>:  Representation of the Chapter 7 Trustee in these chapter 7 cases was not undesirable.  However, DLA Piper undertook, and continues to undertake, a significant risk of nonpayment of fees due to the uncertainty of collection of assets and viability of claims against third parties.  As of the date of conversion, the estates had minimal funds in their bank accounts.  Due to the nature of the Debtors' business and Section 1110 of the Bankruptcy Code that allowed aircraft financiers and lessors to immediately repossess aircraft, there were relatively insignificant "hard" assets that the Trustee could sell to fund an investigation.  Accordingly, DLA Piper took on significant credit risk if the investigation revealed that the estates' claims lacked merit.

(i)    <u>The Chapter 7 Trustee's and DLA Piper's professional relationship</u>:  The Chapter 7 Trustee is a partner of DLA Piper.

(j)    <u>Awards in Similar Cases</u>: As set forth above, the Court has the ability and power to award fees and costs to DLA Piper.  Bankruptcy courts around the country have awarded similar fees for the same time and quality of work performed.

151.    Further, DLA Piper has assigned the work performed in these chapter 7 cases to attorneys having the experience and specialization to perform the services required efficiently and properly.  The partners, counsel, and associates providing the services for which compensation is

sought under this Application specialize in the fields of insolvency, aircraft finance, white collar/investigations, and litigation in offices located around the globe where the Debtors formerly conducted business.  Moreover, DLA Piper, as a general practice, seeks to use the services of paraprofessionals and legal assistants supervised by attorneys whenever appropriate in order to limit costs and more efficiently utilize the services of attorneys.  DLA Piper has followed this practice with respect to the services rendered to the Chapter 7 Trustee wherever possible.

152.    Finally, in rendering services to and on behalf of the Chapter 7 Trustee, DLA Piper has taken every care to provide the legal services as efficiently as possible and to avoid duplication of services.  In this regard, as much as possible, day-to-day legal work, including, but not limited to, drafting of pleadings, memoranda, stipulations, agreements and correspondence has been performed by junior to mid-level associates.

153.    With respect to the DLA Piper's requested expenses reimbursement, section 330(a)(1)(B) of the Bankruptcy Code provides for reimbursement to approved professionals for all "actual, necessary expenses."  11 U.S.C. § 330(a)(1)(B).  DLA Piper submits that the expenses incurred in these chapter 7 cases were all necessary in the rendition of services for the Chapter 7 Trustee.

## FEE EXAMINER. ADDITIONAL FEE ACCOMMODATIONS, COST BENEFIT ANALYSIS, AND BUDGET PROTOCOL

154.    DLA Piper and the other Chapter 7 professionals have provided invoices and time detail to the Fee Examiner in advance of filing the Ninth Interim Requests, have respond to her requests for supplemental information, and successfully addressed issues she has raised culminating in a further fee reduction of $85,000.00.

155.    Finally, certain time entries contained in DLA Piper's billing detail have been redacted to protect against divulging confidential litigation or asset recovery strategies and/or waiving attorney work product/attorney-client or similar privileges under applicable

law.  However, the complete unredacted entries have been shared with the Fee Examiner and the

Office of the United States Trustee and will be available upon request for in camera review by the

Court.

## **CERTIFICATION**

156.    Attached hereto as **Exhibit E** is a declaration and certification by the Trustee

indicating the Trustee has reviewed this Application and has no objection to it.

157.    Furthermore, DLA Piper certifies that the LEDES files provided to the Fee

Examiner reflect the time entries supporting the interim fees and costs requested to be paid

hereunder.

## **NOTICE**

158.    DLA Piper will serve this Application in accordance with the Bankruptcy Rules

and the Local Rules.  Any objections to this Application must be in writing, comply with the

Bankruptcy Rules and the Local Rules, and be served upon DLA Piper so as to be received no later

than **October 4, 2023, at 12:00 p.m. (noon) (PDT).**

**WHEREFORE**, DLA Piper respectfully requests that the Court enter an order authorizing

(i) for the period from January 1, 2023 through June 30, 2023, interim allowance to DLA Piper

with respect to $1,176,745.00 as compensation and reimbursement of actual and necessary

expenses of $60,423.60; (ii) payment to DLA Piper of fifty percent (50%) of the allowed

compensation ($588,372.50) and one hundred percent (100%) of the allowed expenses

($60,423.60) for a total of $648,796.10; and (iii) grant such other and further relief to DLA Piper

as is just and appropriate under the circumstances.

//

//

//

//

Dated: September 12, 2023
Chicago, Illinois

**DLA PIPER LLP (US)**

 _/s/  John K. Lyons_

David M. Riley (SBN 292087)
John K. Lyons (*Pro Hac Vice*)
Joseph S. Torosian (*Pro Hac Vice*)
Joseph A. Roselius (*Pro Hac Vice*)

*Counsel to the Chapter 7 Trustee*