DAVID M. RILEY (SBN 292087)
david.riley@us.dlapiper.com
DLA PIPER LLP (US)
2000 Avenue of the Stars
Suite 400 North Tower
Los Angeles, California 90067-4704
Tel:  (310) 595-3000
Fax: (310) 595-3300]

JOHN K. LYONS (*Pro Hac Vice*)
john.lyons@us.dlapiper.com
JEFFREY S. TOROSIAN (*Pro Hac Vice*)
jeffrey.torosian@us.dlapiper.com
JOSEPH A. ROSELIUS (*Pro Hac Vice*)
joseph.roselius@us.dlapiper.com
DLA PIPER LLP (US)
444 West Lake Street, Suite 900
Chicago, Illinois 60606-0089
Tel:  (312) 368-4000
Fax: (312) 236-7516

Attorneys for Jonathan D. King as Chapter 7 Trustee

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
### LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>ZETTA JET USA, INC., a California corporation,<br><br>        Debtor. | Lead Case No.: 2:17-bk-21386-BR<br><br>Chapter 7<br><br>Jointly Administered With:<br>Case No.: 2:17-bk-21387-BR |
| In re<br><br>ZETTA JET PTE, LTD., a Singaporean corporation,<br><br>        Debtor. | **NOTICE OF MOTION AND MOTION OF THE CHAPTER 7 TRUSTEE FOR AN ORDER TO MAKE AN INTERIM DISTRIBUTION TO THE HOLDERS OF ADMINISTRATIVE, PRIORITY, AND GENERAL UNSECURED CLAIMS AND FOR RELATED RELIEF** |
| ☒    Affects Both Debtors<br><br>☐    Affects Zetta Jet USA, Inc., a California corporation, only<br><br>☐    Affects Zetta Jet PTE, Ltd., a Singaporean corporation, only | <u>Hearing Date & Time:</u><br>Date:  November 18, 2025<br>Time: 10:00 a.m. (PST)<br>Place: Courtroom 1668<br>      255 East Temple Street<br>      Los Angeles, CA 90012 |

1
2

**TO THE HONORABLE BARRY RUSSELL, UNITED STATES BANKRUPTCY JUDGE, AND ALL INTERESTED PARTIES:**

3

<u>NOTICE</u>

4
5
6
7
8
9
10

**PLEASE TAKE NOTICE** that, Jonathan D. King, solely in his capacity as the duly appointed chapter 7 trustee (the "<u>Trustee</u>") in the above-captioned, jointly administered bankruptcy cases (the "<u>Bankruptcy Cases</u>") of Zetta Jet USA, Inc. ("<u>Zetta USA</u>") and Zetta Jet PTE, Ltd. ("<u>Zetta PTE</u>" and, together with Zetta USA, the "<u>Debtors</u>"), by and through his undersigned counsel, hereby submits this motion to authorize the Trustee to make an interim distribution to holders of administrative, priority, and general unsecured claims against the Debtors that are currently allowed or become allowable (the "<u>Motion</u>").

11
12
13
14

**PLEASE TAKE FURTHER NOTICE** that a hearing on the Motion will be held before the Honorable Barry Russell in Courtroom 1668 of the Edward R. Roybal Federal Building at 255 East Temple Street, Los Angeles, California 90012 (the "<u>Court</u>"), on November 18, 2025, at 10:00 a.m. (PT), or as soon thereafter as counsel may be heard (the "<u>Hearing</u>").

15
16
17
18
19

**PLEASE TAKE FURTHER NOTICE** that responses, if any, to the Motion must (i) be in writing; (ii) state the name and address of the objecting party and nature of the claim or interest of such party; (iii) state with particularity the legal and factual bases of such objection; (iv) conform to the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rules; (v) be filed with the Bankruptcy Court, together with proof of service, and (vi) be served on the appropriate parties.

20
21
22

**PLEASE TAKE FURTHER NOTICE** that if no responses are timely filed and served with respect to the Motion, the Trustee may, on or after the response deadline, submit an order, which the Bankruptcy Court may enter with no further notice or opportunity to be heard.

23
24
25
26
27
28

Dated: October 28, 2025

   <u>/s/ John K. Lyons</u>
**DLA PIPER LLP (US)**
David M. Riley (SBN 292087)
John K. Lyons (*Pro Hac Vice*)
Jeffrey S. Torosian (*Pro Hac Vice*)
Joseph A. Roselius (*Pro Hac Vice*)

*Counsel to the Chapter 7 Trustee*

DAVID M. RILEY (SBN 292087)
David.riley@us.dlapiper.com
DLA PIPER LLP (US)
2000 Avenue of the Stars
Suite 400 North Tower
Los Angeles, California 90067-4704
Tel:  (310) 595-3000
Fax: (310) 595-3300]

JOHN K. LYONS (*Pro Hac Vice*)
john.lyons@us.dlapiper.com
JEFFREY S. TOROSIAN (*Pro Hac Vice*)
jeffrey.torosian@us.dlapiper.com
JOSEPH A. ROSELIUS (*Pro Hac Vice*)
joseph.roselius@us.dlapiper.com
DLA PIPER LLP (US)
444 West Lake Street, Suite 900
Chicago, Illinois 60606-0089
Tel:  (312) 368-4000
Fax: (312) 236-7516

Attorneys for Jonathan D. King as Chapter 7 Trustee

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>ZETTA JET USA, INC., a California corporation,<br><br>      Debtor. | Lead Case No.: 2:17-bk-21386-BR<br><br>Chapter 7<br><br>Jointly Administered With:<br>Case No.: 2:17-bk-21387-BR |
| In re<br><br>ZETTA JET PTE, LTD., a Singaporean corporation,<br><br>      Debtor. | **NOTICE OF MOTION AND MOTION OF THE CHAPTER 7 TRUSTEE FOR AN ORDER TO MAKE AN INTERIM DISTRIBUTION TO THE HOLDERS OF ADMINISTRATIVE, PRIORITY, AND GENERAL UNSECURED CLAIMS AND FOR RELATED RELIEF** |
| ☒    Affects Both Debtors<br><br>☐    Affects Zetta Jet USA, Inc., a California corporation, only<br><br>☐    Affects Zetta Jet PTE, Ltd., a Singaporean corporation, only | <u>Hearing Date & Time:</u><br>Date:  November 18, 2025<br>Time: 10:00 a.m. (PT)<br>Place: Courtroom 1668<br>      255 East Temple Street<br>      Los Angeles, CA 90012 |

Jonathan D. King, solely in his capacity as the duly appointed chapter 7 trustee (the "Trustee") in the above-captioned, jointly administered bankruptcy cases of Zetta Jet USA, Inc. ("Zetta USA") and Zetta Jet PTE, Ltd. ("Zetta PTE" and, together with Zetta USA, "Zetta" or the "Debtors"), through his undersigned counsel, files this motion (the "Motion") for entry of an order, substantially in the form attached as **Exhibit A**, authorizing the Trustee to make a first interim distribution (the "Interim Distribution") to holders of allowed chapter 7 administrative expense claims, allowed chapter 11 administrative expense claims, allowed prepetition priority claims, and general unsecured claims (collectively, the "Holders of Allowed Claims") of the Debtors.  In support of this Motion, the Trustee submits the Declaration of Jonathan D. King (the "King Declaration"), attached as **Exhibit B**, and respectfully states as follows:

**Overview of Proposed Interim Distribution**

1.    As further set forth below, the Trustee proposes an interim distribution to Holders of Allowed Claims as follows:

| Category | Amount |
|---|---|
| Chapter 7 Administrative | $11,029,699.47 |
| Chapter 11 Administrative | $3,297,757.41 |
| CAVIC Chapter 11 Administrative | $3,991,897.48 (to be established as a reserve) |
| Pre-petition Priority | $394,204.59 |
| Pre-petition Non-Priority | $2,350,000.00 |
| **TOTAL** | **$21,063,558.95** |

2.    A chart showing the waterfall of proposed Interim Distributions as well as reserves established under such plan is attached to the King Declaration as Schedule 1.  A schedule of distributions sorted by payee and amount is attached to the King Declaration as Schedule 2.

**Jurisdiction and Venue**

3.    This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 157. The relief sought by this Motion is based upon Bankruptcy Code sections 105 and 726 and Bankruptcy Rule 3009.

//

# Background

### A.  General Background

4.      On September 15, 2017 ("Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code ("Bankruptcy Code"), commencing the Bankruptcy Cases. [Docket No. 1].

5.      On or about October 4, 2017, the Trustee was appointed the Chapter 11 Trustee. On December 4, 2017, this Court entered orders granting the Trustee's motions to convert the Debtors' Chapter 11 Cases to cases under Chapter 7 [Docket No. 452 for Zetta USA, Docket No. 52 for Zetta PTE].

6.      The Trustee brings this Motion to provide long-awaited distributions to Zetta's stakeholders.

### B.  The Trustee's Recovery Efforts to Date.

7.      Shutdown Efforts and Sale of Physical Assets.    It has been over eight years since the Debtors filed these cases in September 2017 to seek bankruptcy protection due to the damage caused by their former CEO, Geoffrey Cassidy, through his malfeasance.

8.      When the Trustee was appointed on October 4, 2017, Zetta faced liquidity challenges due to Cassidy's extensive misappropriations totaling in the tens of millions of dollars and his reckless purchases of overpriced aircraft that saddled the Debtors' estates with hundreds of millions of dollars of debt that could never be repaid.

9.      The Trustee, soon after his appointment, swiftly moved to stabilize the Debtors' business and hired top airline restructuring professionals to save the airline.  But it was too late and the damage too severe to enable Zetta to survive.  Two months after his appointment, on December 4, 2017, the cases were converted to chapter 7 at the Trustee's request.

10.      Following his appointment as chapter 7 trustee, the Trustee took steps with his advisors to responsibly shut down the airline, return aircraft to financiers and lessors, sell physical assets, and monetize other assets.  Most of this work was completed in the first year.  Through these efforts, the Trustee was able to collect $966,640.67 in proceeds (excluding litigation recoveries).

11.    <u>Seizure of the Dragon Pearl and Enforcement of New Target Judgment</u>.  One of the largest physical assets the Trustee sought to recover is a yacht called the "Dragon Pearl," which Cassidy purchased with over $3 million in misappropriated funds.  During the chapter 11 cases, on October 13, 2017, the Trustee obtained a writ of arrest from the Federal Court of Australia to seize the Dragon Pearl when it arrived at port in Queensland.  Unbeknownst to the Trustee, Cassidy had previously transferred title to the Dragon Pearl three weeks earlier to New Target Investments Limited ("<u>New Target</u>"), a holding company controlled by Kebo Wu, a Chinese businessman, to satisfy a personal guarantee.  The Federal Court later dissolved the writ based upon the failure of the Debtors' former Singapore CFO to testify in the Australian arrest proceeding.  However, before New Target could recover the yacht now titled in the name of New Target's affiliate, Linkage Access Limited ("<u>Linkage</u>"), the Australian Federal police seized the Dragon Pearl to honor a U.S. federal seizure warrant obtained by the U.S. Department of Justice.

12.    Ultimately, the Trustee obtained a $3,594,481.34 judgment against Kebo Wu, New Target and Linkage in the adversary action *King v. New Target Investments Limited*, et al., Case No. 2:18-ap-01340) (the "<u>New Target Adversary Action</u>") for violating the automatic stay, which was recognized in Australia.  The Trustee subsequently engaged in discussions with the Australian Federal Police and the U.S. Department of Justice to lift the seizure order to enable the Trustee to execute his judgment against the Dragon Pearl.  The Australian Federal Police consequently dissolved the seizure order. An enforcement officer has now taken possession of the Dragon Pearl and expects to sell the yacht before year end.  The Trustee estimates the estates could recover approximately $750,000 from this disposition.

13.    <u>Cooperation with Law Enforcement, Singapore Asset Seizures and Enforcement of Cassidy Judgment</u>.  The Trustee has also cooperated extensively with law enforcement agencies around the world, including the Federal Bureau of Investigation (the "<u>FBI</u>"), the U.S. Department of Justice, the Australian Federal Police, and the Singapore Police – Commercial Affairs Division, to track down the extent and magnitude of Cassidy's misappropriations and pursue remedies through victim's restitution statutes.  In particular, the Trustee provided information to the FBI that resulted in the issuance of a warrant to seize the Dragon Pearl and that prevented Kebo Wu

and his company, Linkage, from absconding with that yacht in violation of the automatic stay as discussed above. Further, the Trustee also cooperated with the Singapore Commercial Affairs Division, which currently holds property including SGD1,015,421.50 (which is about $785,000 in USD as of today's exchange rate) in proceeds from the sale of Cassidy's condominium in Singapore and other property that he wrongfully bought with Zetta funds.

14.    The Trustee also obtained a judgment against Cassidy in the amount of $12,748,916 in an action previously commenced by the Debtors in the United States District Court for the Central District of California. *See* Case No. 2:17-CV-06648-JAK-GJS [Docket No. 135]. The Trustee continues to explore various options to enforce the judgment to recover additional amounts for the benefit of the estates.

15.    The Trustee estimates that he will recover (from Singapore matters) on behalf of the estates least the funds obtained from the sale of Cassidy's condominium, approximately USD780,000, although the precise timing in unknown.

16.    <u>Special Counsel Preference Recoveries</u>.  Leech Tishman and lead partner Robyn Sokol, the Trustee's special counsel, commenced a number of avoidance actions to recover preferential transfers from various defendants.  The Trustee collected approximately $2.7 million through these efforts and obtained claim waivers.

17.    <u>The Main Adversary Actions</u>.  The Trustee's primary effort to obtain recoveries for stakeholders was to investigate, and ultimately pursue, claims arising from the Debtors' aircraft purchasing program fraudulently managed by Cassidy.  In connection with this investigation, the Trustee uncovered kickbacks paid by Bombardier Inc.'s exclusive representative, Jahid Fasal Karim, to Cassidy in connection with Cassidy's purchase of over $400 million in overpriced aircraft whose operation and debt service could not be sustained under Cassidy's fraudulent business plan.

18.    Following this investigation, the Trustee brought three adversary proceedings in 2019 (collectively, the "<u>Main Adversary Actions</u>") to recover transfers and collect damages resulting from the fraudulent aircraft purchasing program and avoid an unperfected security assignment: (1) the "<u>Jetcraft Adversary Action</u>" (*King v. Jetcraft Corporation* et al., Case No.

2:19-ap-01382), (2) the "Universal Leader Adversary Action" (*King v. Yuntian 3 Leasing Company Designated Activity Company*, et al., Case No. 2:19-ap-01383), and (3) the "CAVIC Adversary Action" (*King v. CAVIC Aviation Leasing Ireland 22 Co.,* et al., Case No. 2:19-ap-01147). Each is described below:

19.    *Jetcraft Adversary Action:* Upon completion of his investigation, on September 13, 2019, the Trustee filed a 17-count complaint against 12 defendants in the Jetcraft Adversary Action. The complaint included common-law tort claims, equitable claims, and bankruptcy claims against Bombardier, Fazal Karim and his various companies including Jetcraft Corporation and ECN based upon, among other things, allegations that Cassidy received kickbacks from Fazal Karim, Bombardier's alleged exclusive sales representative, regarding the purchase of more than $400 million in overpriced aircraft from Bombardier.

20.    The Trustee immediately engaged in settlement negotiations with ECN, the financier for Jetcraft-owned aircraft. On January 17, 2020, the Court approved a settlement with ECN which included a $15 million payment, a release of $13 million in chapter 11 administrative claims, and a release of $185 million in prepetition unsecured claims.

21.    As discussed in more detail on the Trustee's 9019 motion, the Jetcraft Adversary Action was vigorously contested by the Jetcraft and Bombardier defendants over a span of five years. With the assistance of Robert Kaiser, Chief Mediator for the Ninth Circuit Court of Appeals, the parties were able to reach a settlement agreement that provides the basis for the proposed Interim Distribution to stakeholders. Under the settlement agreement, the Bombardier and Jetcraft defendants agreed to pay $18 million to the estates and waived all claims in exchange for a release of the claims asserted against them by the Trustee and dismissal of the appeal. The $18 million settlement amount is being paid in four equal installments, two of which have already been paid, the third of which will be paid before year end, and the last of which will be paid on June 30, 2026.

22.    The Bankruptcy Court entered an order approving the settlement of the Jetcraft Adversary Action on July 1, 2025 [Docket No. 2562].

23.    *Universal Leader Adversary Action*:  On September 13, 2019, the Trustee filed a

15-count adversary complaint (the "<u>Yuntian Original Complaint</u>") against the UL Parties, including Li Qi, the former director and a shareholder of Zetta, and nine defendants including his companies Universal Leader and Glove Assets, which hold over $80 million in claims against the estates.

24.    The UL Parties are the largest creditor group in the Bankruptcy Cases and have actively participated in the cases.  Two other defendants—Minsheng and Yuntian—settled in 2021 for $4.5 million and waived $14 million in administrative claims, $8 million in secured claims, and $214 million in general unsecured claims.

25.    The crux of the Universal Leader Adversary Action sought to avoid and recover fraudulent transfers and payments made to the UL Parties relating to two aircraft that the UL Parties leased and/or sold to the Debtors.

26.    The Bankruptcy Court twice dismissed complaints on extraterritoriality grounds:  (1) that transfers made through or to U.S. bank accounts were nonetheless extraterritorial because the funds originated outside the U.S., (2) that the UL Parties did not waive this defense when they filed proofs of claim with the Bankruptcy Court (thus, preventing disallowance of their claims under 502(d)), and (3) that the 548 alternative test that empowers the Trustee to avoid fraudulently incurred obligations under financing transactions were also extraterritorial since the loan repayments would likely occur outside the U.S..

27.    The Trustee appealed these rulings.  On March 26, 2024, the District Court affirmed the Bankruptcy Court's rulings.  On April 26, 2024, the Trustee appealed the District Court's ruling to the Ninth Circuit.

28.    The Trustee also filed an action in Singapore against the UL Parties seeking to avoid certain payments and asserting a breach of fiduciary duty claim against Li Qi.  That action was discontinued and withdrawn with prejudice as part of the resolution of the Universal Leader Adversary Action, as described below.

29.    On June 6, 2025, following extensive negotiations, the parties executed a settlement agreement, for which the Trustee sought approval under a 9019 motion filed on June 26, 2025 [Docket No. 2558].  Under the settlement agreement, in exchange for the Trustee's dismissal of

1    the claims and allowance of the proofs of claim, the UL Parties have withdrawn a motion for

2    attorneys' fees (which fee amount will be added to the UL Parties' unsecured claim) and Universal

3    Leader has agreed to support payment of the proposed Interim Distribution and DLA's prosecution

4    of the CAVIC appeal under a contingent fee arrangement to be approved by the Bankruptcy Court,

5    and otherwise support the Trustee's efforts to promptly close the cases.

6          30.    In particular, the UL Parties agreed to support the contours of the proposed Interim

7    Distribution which include, among other things, that not more than 60% of estate funds will be

8    used to pay Chapter 7 administrative expenses, including allowed professional fees (until fully

9    paid), and that the Trustee will use the balance of estate funds, less a wind down reserve, to make

10   interim distributions to holders of chapter 11 administrative expenses, allowed priority claims and

11   general unsecured claims, and such claims will be paid substantially contemporaneously with or

12   prior to any payments of chapter 7 administrative expenses.  In addition, the settlement agreement

13   requires that not less than $8.5 million shall be available for final distribution to holders of allowed

14   chapter 11 administrative expenses, allowed priority claims, and allowed general unsecured

15   claims, of which not less than $2.35 million shall be available to holders of allowed general

16   unsecured claims.  As noted below, the proposed Interim Distribution meets or exceeds these

17   requirements.[1]

18         31.    The Bankruptcy Court entered an order approving the 9019 motion on August 7,

19   2025 [Docket No. 2630].

20         32.    *The CAVIC Adversary Action*: On May 21, 2019, the Trustee sued CAVIC to avoid

21   an unperfected security assignment of an aircraft purchase agreement and recover a $30 million

22   refund that Bombardier owed to the Debtors under that purchase agreement.

23         33.    The Trustee also sought recharacterization of financing transactions for three other

24

25   _____

[1] The original interim distribution framework negotiated by the Trustee and Universal Leader contemplated that DLA
26   would receive a distribution to pay fees and expenses equal to 80% of allowed fees.  After the Bankruptcy Court denied
     the Trustee's motion to disallow CAVIC's administrative claim without prejudice, DLA reduced its percentage
27   distribution to 75% of its allowed fees to provide adequate funding for the CAVIC administrative claim reserve.  The
     Trustee and CAVIC are engaged in settlement discussions to resolve their disputes regarding the appropriate amount
     of CAVIC's administrative and prepetition claims.  In the event the parties agree to allowed claims that are less than
28   the current reserve amount, DLA reserves the right to seek an 80% percentage distribution in the Interim Distribution
     Plan.

aircraft that were tied into the Trustee's lawsuit against Bombardier.

34.    The CAVIC Adversary Action does not involve, much less depend upon, complex fraud allegations that were raised in the Jetcraft Adversary Action, but rather the contractual interpretation of whether an assignment of rights that Zetta provided to procure a $30 million loan from CAVIC to fund a deposit paid to Bombardier to manufacture an airplane constituted an unperfected security assignment, subject to avoidance, as opposed to an absolute assignment or true sale.

35.    The Bankruptcy Court ruled against the Trustee and dismissed the Trustee's original complaint on October 7, 2020, and an amended complaint on March 8, 2022.  On March 28, 2022, the Trustee appealed to the district court.  On March 29, 2024, the district court affirmed the Bankruptcy Court's ruling.

36.    On April 26, 2024, the Trustee appealed the District Court's ruling to the Ninth Circuit.  The appeal was administratively closed pending approval of the Bombardier settlement, but has been reopened and the Trustee's opening brief is due October 31, 2025. The answering brief is due January 30, 2026, and the Trustee's optional reply is due March 11, 2026.

37.    The Trustee also filed an action in Singapore to avoid and recover over $7 million in unfair preference payments from CAVIC under Singapore law.  That action has been stayed pending resolution of the CAVIC Adversary Action.

38.    The CAVIC Adversary Action and the Singapore CAVIC lawsuit are the sole remaining proceedings filed by the Trustee to recover funds for the benefit of the estates.

**C. Claims Administration**

39.    Over the past two years, the Trustee has worked diligently to resolve or otherwise liquidate claims filed against the estates.  Over 450 claims totaling over $750 million in prepetition claims and over $47 million in administrative claims were originally filed in the Bankruptcy Cases. The Trustee has now fully administered all of the claims, except the CAVIC Proofs of Claim (defined below) and the Au Card claim to which he has sought disallowance [*see* Docket No. 2706], leaving approximately $19 million in unpaid chapter 7 professional fees, $2 million in chapter 11 administrative trade claims, $660,000 in priority claims, and $197 million in

nonpriority unsecured claims.  There are also $4.4 million in estimated chapter 11 professional claims and $770,000 in chapter 11 trustee fees that are subject to further Bankruptcy Court approval.

40.    *CAVIC Claims:*  CAVIC has asserted over $3.9 million in administrative priority claims (the "CAVIC Administrative Claims") and over $70 million in general unsecured claims against the estates (the "CAVIC Unsecured Claims"), as set forth below (collectively, the "CAVIC Proofs of Claim"):

a.    Administrative Expense Claims

| Filed Case | Filed Debtor | Claim No. | Date Filed | Filed Amount | Creditor |
|---|---|---|---|---|---|
| 17-21387 | Zetta PTE | 117 | April 16, 2018 | $1,348,078.12 | ZJ6000-3 Statutory Trust |
| 17-21387 | Zetta PTE | 118 | April 16, 2018 | $1,331,964.16 | ZJ6000-2 Statutory Trust |
| 17-21387 | Zetta PTE | 119 | April 16, 2018 | $1,311,855.20 | ZJ6000-1 Statutory Trust |
| 17-21386 | Zetta USA | 129 | April 16, 2018 | $1,311,855.20 | ZJ6000-1 Statutory Trust |
| 17-21386 | Zetta USA | 130 | April 16, 2018 | $1,348,078.12 | ZJ6000-3 Statutory Trust |
| 17-21386 | Zetta USA | 131 | April 16, 2018 | $1,331,964.16 | ZJ6000-2 Statutory Trust |

b.    General Unsecured Claims

| Filed Case | Filed Debtor | Claim No. | Date Filed | Filed Amount | Creditor |
|---|---|---|---|---|---|
| 17-21387 | Zetta PTE | 162 | 04/24/2018 | $1,416,591.45 | CAVIC Aviation Leasing (Ireland) Co. |
| 17-21387 | Zetta PTE | 206 | 08/08/2025 | $34,853,540.48 | ZJ6000-2 Statutory Trust |
| 17-21387 | Zetta PTE | 207 | 08/08/2025 | $26,189,077.06 | ZJ6000-1 Statutory Trust |
| 17-21387 | Zetta PTE | 208 | 08/08/2025 | $1,351,591.45 | CAVIC Aviation Leasing (Ireland) 22 Co. DAC |
| 17-21387 | Zetta PTE | 209 | 08/08/2025 | $14,033,621.40 | ZJ6000-3 Statutory Trust |
| 17-21386 | Zetta USA | 261 | 08/08/2025 | $34,853,540.48 | ZJ6000-2 Statutory Trust |
| 17-21386 | Zetta USA | 262 | 08/08/2025 | $26,189,077.06 | ZJ6000-1 Statutory Trust |
| 17-21386 | Zetta USA | 263 | 08/08/2025 | $1,351,591.45 | CAVIC Aviation Leasing (Ireland) 22 Co. DAC |
| 17-21386 | Zetta USA | 264 | 08/08/2025 | $14,033,621.40 | ZJ6000-3 Statutory Trust |

41.    The Trustee disputes the validity of all of the CAVIC Proofs of Claim and has sought, or intends to seek, disallowance, but will fully reserve for these claims under the proposed Interim Distribution until such claims are fully adjudicated.

42.    The Trustee filed a motion seeking to disallow the CAVIC Administrative Claims, but the Bankruptcy Court denied the motion without prejudice due to its finding that it lacked jurisdiction to decide the issues raised in the motion due to the pending appeal in the Ninth Circuit

[Docket No. 2683]. Accordingly, with the CAVIC Administrative Claims unresolved, the Trustee will reserve $3,991,897.48 on account of the CAVIC Administrative Claims out of settlement proceeds and reserve the full amount of the $2.35 million distribution to unsecured creditors until the CAVIC Unsecured Claims are liquidated. Additionally, the Trustee intends to file a motion seeking to estimate the CAVIC Administrative Claims to limit the reserve amount to the fair market rental value of the three planes.[2]

43.     Thus, the only claims that have not been fully administered are the CAVIC Proofs of Claim, which could take years to fully adjudicate, and the Au Card claim which should be adjudicated before year end.

**The Proposed CAVIC Contingency Fee Arrangement**

44.     In order to significantly limit the further incurrence of professional fees, sharply reduce the risk of administrative solvency of the estates, and facilitate the proposed Interim Distribution, DLA Piper has agreed to prosecute the CAVIC Adversary Action on a 40% contingent fee basis and, as part of the arrangement, waive approximately $4.5 million in fees already incurred in connection with the CAVIC Adversary Action and look solely to recoveries from enforcement of the New Target judgement (other than proceeds from the Dragon Pearl sale which will be available for distribution to stakeholders under the waterfall) for payment of approximately $3.2 million in fees that have been deferred with respect to the recovery efforts with respect to the Dragon Pearl. The Trustee contemporaneously has filed an application to supplement DLA Piper's engagement to approve the proposed contingency fee arrangement.

45.     The Trustee, DLA Piper, and Universal Leader/Glove Assets (the Debtors' largest creditor) have negotiated the contours of a proposed contingency fee arrangement to prosecute the CAVIC Adversary Action to conclusion.

- Under the proposed arrangement, DLA Piper will waive its fees and expenses

---

[2] As CAVIC noted in its opposition to the *Motion of Chapter 7 Trustee to Disallow Proof of Claim Nos. 117, 118, and 119 Against Zetta Jet PTE, Ltd. and Proof of Claim Nos. 129, 130, and 131 Against Zetta Jet USA, Inc* [Docket No. 2665], although there is a presumption that the rate set forth in the lease constitutes the measure of an administrative claim, this presumption may be rebutted by establishing a lower fair and reasonable value of the lease because an administrative priority claim for unpaid rent "cannot exceed the fair and reasonable value of the lease upon the open market." *Id.* (*quoting In re Dant & Russell, Inc.*, 853 F.2d 700, 707 (9th Cir. 1988)).

incurred in the CAVIC Adversary Action (approximately $3,500,000), including a $914,000 credit against any interim distribution to be paid to DLA Piper on account of its chapter 7 fees paid in connection with the CAVIC Adversary Action.

- DLA Piper will be entitled to a contingent fee of 40% of all recoveries made in the CAVIC Adversary Action.

- DLA Piper will guarantee that general unsecured creditors will receive a minimum distribution of 10% of total CAVIC recoveries with any shortfall to be taken from DLA Piper's contingent fee.

46.    Consistent with discussions with Universal Leader and other stakeholders, the Trustee also proposes to retain DLA Piper to prosecute the claim objection and estimation proceedings against CAVIC on a contingency fee basis and be paid 40% of any amount of the reserve released to the estates for distribution to stakeholders. As part of this arrangement, DLA Piper will waive $450,000 in fees already incurred in connection with the Trustee's objections and motion to estimate CAVIC Proofs of Claim.

47.    The proposed arrangement will eliminate the further incurrence of attorney's fees once the claims liquidation process is completed and will be subject to Bankruptcy Court approval upon notice and a hearing.

**Proposed Interim Distribution**

48.    As shown in Schedule 1 to the King Declaration, the Trustee proposes to distribute $23,310,572.39 in funds to pay stakeholders in accordance with the Bankruptcy Code. The Trustee formulated the proposed Interim Distribution framework in consultation with his advisors as well as key stakeholders of the estates including professionals, administrative creditors, and Universal Leader, the Debtors' largest general unsecured creditor.

49.    The proposed Interim Distribution Plan will pay over $11 million in fees to chapter 7 professionals, $3.7 million to chapter 11 administrative claimants and priority claimants, fund a $3.9 million reserve with respect to CAVIC's disputed administrative claim, and $2.35 million to general unsecured creditors.

50.    Of the $11 million to be paid to chapter 7 professionals, DLA Piper has agreed to

hold $600,000 of its interim distribution as a contingency reserve to address any shortfall in recoveries with respect to the Dragon Pearl and Singapore funds seized by the Singapore police. The reserve will be released to DLA Piper upon receipt, and to the extent, of proceeds received from these assets and reduction of the CAVIC Administrative Claims Reserve.

51.    The proposed Interim Distribution is made possible by, among other things, several key and significant concessions by stakeholders including: (1) DLA Piper's release of $4.9 million in CAVIC fees (upon approval of the CAVIC contingent fee arrangement) and limitation of another $3.2 million in fees to collections obtained through the enforcement of the New Target judgment (other than Dragon Pearl proceeds), (2) DLA Piper's additional deferral of $7 million, or 25% of allowed and estimated, chapter 7 professional fees in other matters, (3) the Trustee's deferral of 15% of his chapter 7 commission, (4) other chapter 7 professionals' deferral of $600,000, or 15%, of allowed and estimated fees, (5) the deferral of $3 million, or 60%, of estimated fees, claims and commissions of chapter 11 professionals, James Seagrim (the DIP Lender), and the Trustee, and (6) the deferral of $1 million, or 50%, of certain significant chapter 11 and priority claimants.

52.    As noted above, the Trustee believes that all of the chapter 7 and chapter 11 claimants, other than possibly CAVIC, have agreed, or will not object to, the proposed Interim Distribution Plan and, indeed, have made significant concessions to fund a meaningful, albeit modest, distribution to nonpriority unsecured creditors.  In addition, the largest unsecured creditor, Universal Leader, supports the Interim Distribution Plan.

53.    The goal of the Trustee is to ensure the administrative solvency of the estates, provide a timely and meaningful interim distribution to creditors prior to resolution of the CAVIC litigation (which, if not settled, could take years), significantly reduce the further incurrence of professional fees that will be necessary to prosecute the remaining claims against CAVIC, and otherwise take steps to efficiently and expeditiously close the cases once the CAVIC litigation is concluded.

### **Relief Requested**

54.    By this motion, the Trustee requests that, pursuant to 11 U.S.C. §§ 105 and 726 and

1  Bankruptcy Rule 3009, the Court authorize the Trustee to make an Interim Distribution in the total

2  amount of $23,310,572.39, as set forth in the schedules to the King Declaration.

3      55.    The Trustee further seeks to reserve $3,991,897.48 in respect of CAVIC Proofs of

4  Claim to the extent and as such claims are set forth in Schedule 1, which lists such claims and their

5  respective amounts out of settlement proceeds to be paid by Jetcraft Corporation and Bombardier

6  (including the last settlement payment to be made in June 2026) under the settlement agreement

7  with the Trustee [Docket No. 2521-1].

8      56.    In addition, the Trustee seeks to reserve $2.25 million for chapter 7 expenses

9  incurred through September 30, 2025 (if approved by the Bankruptcy Court by year end) and for

10  fees and expenses through the closing of the Chapter 7 cases.[3]  Any unused funds in the reserve

11  accounts will be released to the Debtors' estates.

12                        **Basis for Relief**

13      57.    The Court is authorized to approve any interim distribution that benefits the estate

14  using its authority pursuant to 11 U.S.C. § 105(a).  *In re GPLA, Inc.*, No. 2:16-BK-13416-RK,

15  2016 WL 4440376, at *1 (Bankr. C.D. Cal. Aug. 22, 2016) (it is within the Bankruptcy Court's

16  discretion to authorize interim distributions in a Chapter 7 case after notice and a hearing and based

17  upon the particular facts of the case), *see e.g. In re Bird*, 565 B.R. 382 (Bankr. S.D. Tex. 2017),

18  *In re Energy Co-op, Inc.*, 173 B.R. 363, 372 (N.D. Ill. 1994) (allowing an interim distribution

19  when the trustee proved that it was in the best interests of the estate); *see also* 3 March, Ahart and

20  Shapiro, California Practice Guide: Bankruptcy, ¶¶ 17:1760 and 17:1761 at 17-228 (2015)

21  (distributions to creditors in a Chapter 7 bankruptcy case generally coincide with filing of the

22  trustee's final account, but the court has power to authorize interim distributions upon assurance

23  of sufficient remaining funds to pay all administrative expense claims).

24      58.    Further, Bankruptcy Rule 3009 provides that "[i]n a chapter 7 case, dividends to

25  creditors shall be paid as promptly as practicable." Bankr. Rule 3009. As set forth in the Advisory

26  Committee Notes to Rule 3009:

27

28  [3] These reserve amounts are not intended as a cap on fees and expenses.  The Trustee will seek approval of fees and expenses in his fee applications.

> This rule governs distributions to creditors having priority as well as to general unsecured creditors. Notwithstanding the detailed statutory provisions regulating the declaration of dividends, a necessarily wide discretion over this matter has been recognized to reside in the court…although the rule leaves to the discretion of the court the amount and times of dividend payments it recognizes the creditors' rights to as prompt payment as practicable.

Advisory Committee Notes, Bank. R. 3009.

59.    This Court has authority to establish reserves for unresolved claims in connection with an interim distribution pursuant to sections 502(a), 502(c), and 726 of the Bankruptcy Code and Bankruptcy Rule 3009 in conjunction with section 105(a) of the Bankruptcy Code. Under Bankruptcy Code section 105(a), bankruptcy courts have broad equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a).

60.    By this Motion, the Trustee seeks to make an Interim Distribution to the Holders of Allowed Claims as set forth above. The Trustee has conducted an analysis of the financial condition of the Debtors' estates and, based on that analysis, determined that an interim distribution to the Holders of Allowed Claims is appropriate under the circumstances.

61.    It has been over eight years since these cases have been commenced. The Trustee has administered virtually all of the claims and made significant recoveries after years of hard-fought litigation. Approval of the proposed Interim Distribution will finally provide some relief to the hundreds of creditors that have waited for payment for over eight years.

62.    The only remaining litigation involves the appeal of the CAVIC Adversary Action and adjudication of the CAVIC Proofs of Claim which could take another two to three years to adjudicate.  To avoid any prejudice to CAVIC, the Trustee has agreed to fully reserve for the CAVIC Proofs of Claim until the Court is able to estimate or adjudicate the claims which may be funded in whole or in part with the final 2026 installment of the Bombardier settlement proceeds.

63.    The proposed Interim Distribution enjoys the support of all of the chapter 7 professionals, all of the chapter 11 professionals, several of the largest chapter 11 claimants, and general unsecured creditors including the largest general unsecured creditor, the Universal Leader claimants.

64.    The proposed Interim Distribution will also sharply reduce, if not eliminate, the risk of administrative insolvency.  The Trustee obtained several significant releases of claims and deferrals from the chapter 7 professionals, chapter 11 professionals and chapter 11 claimants in exchange for making prompt payment of fees and claims under the proposed Interim Distributions. Further, going forward, the incurrence of additional professional fees will be sharply reduced as the Trustee's primary counsel, DLA Piper, has agreed to prosecute the CAVIC litigation on a contingency fee basis.

65.    If the Trustee prevails in his litigation against CAVIC, which would result in significant additional recoveries, deferred administrative claims will likely be repaid in full and general unsecured creditors will receive very meaningful additional recoveries.

66.    Based on the foregoing, the Trustee submits that the relief requested herein is necessary and appropriate, is in the best interests of the Debtors' estates and their creditors, and should be granted.

WHEREFORE, the Trustee requests that the Court grant the relief requested herein and such other and further relief as the Court deems just and proper.

Dated: October 28, 2025

*/s/ John K. Lyons*

**DLA PIPER LLP (US)**
David M. Riley (SBN 292087)
John K. Lyons (*Pro Hac Vice*)
Jeffrey S. Torosian (*Pro Hac Vice*)
Joseph Roselius (*Pro Hac Vice*)

*Counsel to the Chapter 7 Trustee*