DAVID M. RILEY (SBN 292087)
david.riley@us.dlapiper.com
DLA PIPER LLP (US)
2000 Avenue of the Stars
Suite 400 North Tower
Los Angeles, California 90067-4704
Telephone:  (310) 595-3000
Facsimile:  (310) 595-3300

JOHN K. LYONS (*Pro Hac Vice*)
john.lyons@us.dlapiper.com
JEFFREY S. TOROSIAN (*Pro Hac Vice*)
jeffrey.torosian@us.dlapiper.com
JOSEPH A. ROSELIUS (*Pro Hac Vice*)
joseph.roselius@us.dlapiper.com
DLA PIPER LLP (US)
444 West Lake Street, Suite 900
Chicago, Illinois 60606-0089
Telephone:  (312) 368-4000
Facsimile: (312) 236-7516

Attorneys for Jonathan D. King as Chapter 7 Trustee

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
### LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>ZETTA JET USA, INC., a California corporation,<br><br>          Debtor. | Lead Case No.: 2:17-bk-21386-BR<br><br>Chapter 7<br><br>Jointly Administered With:<br>Case No.: 2:17-bk-21387-BR |
| In re:<br><br>ZETTA JET PTE, LTD., a Singaporean corporation,<br><br>          Debtor. | **THIRTEENTH INTERIM APPLICATION OF DLA PIPER FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND FOR REIMBURSEMENT OF EXPENSES INCURRED AS COUNSEL TO THE CHAPTER 7 TRUSTEE FOR THE PERIOD FROM OCTOBER 1, 2024 THROUGH MARCH 31, 2025** |
| ☒  Affects Both Debtors<br><br>☐  Affects Zetta Jet USA, Inc., a California corporation, only<br><br>☐  Affects Zetta Jet PTE, Ltd., a Singaporean corporation, only | Hearing Date & Time:<br>Date:   November 18, 2025<br>Time:  10:00 a.m. (PST)<br>Courtroom:   1668<br>Address:      255 East Temple Street<br>                   Los Angeles, California 90012 |

1621564503

1

## FEE APPLICATION COVER SHEET

| Applicant | DLA Piper[1] |
|---|---|
| Client | Jonathan D. King, solely in his capacity as the duly appointed chapter 7 trustee (the "Trustee") |
| Compensation Period | Start:        October 1, 2024<br>End:        March 31, 2025 |
| Petition Date | September 15, 2017 |
| Date Converted to Chapter 7: | December 4, 2017 |
| Date of order approving retention of DLA Piper | January 19, 2018, effective nunc pro tunc to the Conversion Date [Docket No. 567] |
| **Summary of Fees and Expenses Sought** | |
| Amount of compensation sought as actual, reasonable and necessary for the Compensation Period | $1,760,445.10[2] |
| Less 25% fee holdback: | $440,111.27 |
| Amount of fees to be paid: | $1,320,333.83 |
| Amount of expenses sought as actual, reasonable and necessary for the Compensation Period | $61,272.19[3] |
| Blended rate during the Compensation Period for all attorneys | $1,588.86 |
| Blended rate during the Compensation Period for all timekeepers | $1,473.01 |
| Compensation sought for the Compensation Period already paid under a compensation order but not yet allowed: (80%) | $0.00 |
| Expenses sought for the Compensation Period already paid under a compensation order but not yet allowed: (100%) | $0.00 |
| Number of professionals during the Compensation Period included in this application | 14 |
| Number of professionals billing fewer than 15 hours to these cases during the Compensation Period | 5 |
| Retainer Received: | $0.00 |
| Retainer remaining as of the date of this Application: | $0.00 |
| Total amount requested in all prior applications: | $31,944,697.44 |

---

[1]        DLA Piper comprises DLA Piper LLP (US), DLA Piper (Canada) LLP, DLA Piper UK LLP, DLA Piper Hong Kong, DLA Piper Singapore Pte. Ltd., and DLA Piper Australia.

[2]        The compensation requested is inclusive of the additional reduction of fees in the amount of $100.40 agreed upon by DLA Piper and the fee examiner.

[3]        The expense reimbursement requested is inclusive of the voluntary reduction of expenses in the amount of $1,023.19 agreed upon by DLA Piper and the fee examiner.

2

1621564503

| | |
|---|---|
| Total amount actually paid pursuant to prior approved applications: | $13,667,514.52 |
| Total amount currently due but unpaid pursuant to prior approved applications: | $0.00 |
| Total amount allowed but reserved pending final fee application: | $6,136,658.75 |
| Summary of Requested Fees: | See Exhibits A-1 through A-2 |
| Summary of Requested Expense Reimbursement: | See Exhibit C-1 through C-3 |

This is a(n): ___ monthly   _X_ interim   ___ final application

3

DAVID M. RILEY (SBN 292087)
david.riley@us.dlapiper.com
DLA PIPER LLP (US)
2000 Avenue of the Stars
Suite 400 North Tower
Los Angeles, California 90067-4704
Telephone:  (310) 595-3000
Facsimile:  (310) 595-3300

JOHN K. LYONS (*Pro Hac Vice*)
john.lyons@us.dlapiper.com
JEFFREY S. TOROSIAN (*Pro Hac Vice*)
jeffrey.torosian@us.dlapiper.com
JOSEPH A. ROSELIUS
joseph.roselius@us.dlapiper.com
DLA PIPER LLP (US)
444 West Lake Street, Suite 900
Chicago, Illinois 60606-0089
Telephone:  (312) 368-4000
Facsimile:  (312) 236-7516

Attorneys for Jonathan D. King as Chapter 7 Trustee

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>ZETTA JET USA, INC., a California corporation,<br><br>                 Debtor. | Lead Case No.: 2:17-bk-21386-BR<br><br>Chapter 7<br><br>Jointly Administered With:<br>Case No.: 2:17-bk-21387-BR |
| In re:<br><br>ZETTA JET PTE, LTD., a Singaporean corporation,<br><br>                 Debtor. | **THIRTEENTH INTERIM APPLICATION OF DLA PIPER FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND FOR REIMBURSEMENT OF EXPENSES INCURRED AS COUNSEL TO THE CHAPTER 7 TRUSTEE FOR THE PERIOD FROM OCTOBER 1, 2024 THROUGH MARCH 31, 2025** |
| ☒   Affects Both Debtors<br><br>☐   Affects Zetta Jet USA, Inc., a California corporation, only<br><br>☐   Affects Zetta Jet PTE, Ltd., a Singaporean corporation, only | Hearing Date & Time:<br>Date:   November 18, 2025<br>Time:   10:00 a.m. (PST)<br>Place:  Courtroom 1668<br>            255 East Temple Street<br>            Los Angeles, California 90012 |

1

1621564503

**TO THE HONORABLE BARRY RUSSELL, UNITED STATES BANKRUPTCY JUDGE, THE UNITED STATES TRUSTEE, THE TWENTY LARGEST UNSECURED CREDITORS, THE AIRCRAFT FINANCING PARTIES AND ALL PARTIES WHO HAVE REQUESTED SPECIAL NOTICE:**

**IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING, SPECIFICALLY ANSWERING EACH PARAGRAPH OF THIS PLEADING.  UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT SO THAT IT IS RECEIVED NO LATER THAN 12:00 P.M. (NOON) (PST) ON NOVEMBER 4, 2025.  YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

Under sections 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2016-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Central District of California (the "Local Rules"), DLA Piper LLP (US), DLA Piper (Canada) LLP, DLA Piper UK LLP, DLA Piper Hong Kong, DLA Piper Singapore Pte. Ltd., and DLA Piper Australia (collectively, "DLA Piper") hereby files this *Thirteenth Interim Application of DLA Piper LLP (US) for Allowance of Compensation for Services Rendered and for Reimbursement of Expenses Incurred As Counsel to the Chapter 7 Trustee for the Period from October 1, 2024 Through March 31, 2025* (the "Application").  By this Application, DLA Piper seeks interim allowance of $1,760,445.10 as compensation and reimbursement of actual and necessary expenses of $61,272.19 for the period from October 1, 2024 through March 31, 2025 (the "Thirteenth Interim Period").   In support of this Application, DLA Piper respectfully represents as follows:

### PRELIMINARY STATEMENT

1.      As set forth more fully below, through this Application, DLA Piper respectfully requests that the Court authorize the payment of the fees and reimbursement of expenses sought herein on an interim basis, subject to a 25% holdback amount of total fees sought.  Any fees paid on an interim basis pursuant to this Application will be subject to final review and approval by the Court for reasonableness and other appropriate factors at the conclusion of the cases.

2

2.      During the Thirteenth Interim Period, DLA Piper continued to assist the Trustee in his duties to administer the estates.  The bulk of the work that DLA Piper performed during the Thirteenth Interim Period relates to general chapter 7 administrative and recovery tasks and the continued prosecution and appeal of (a) the Jetcraft Adversary Proceeding (*King v. Jetcraft Corporation, et al.*, Adv. Proc. No. 2:19-ap-01382-BR) (since dismissed pursuant to a settlement), (b) the Universal Leader Adversary Proceeding (*King v. Yuntian 3 Leasing Company Designated Activity Company, et. al.*, Adv. Proc. 2:19-ap-01383-BR) (since settled**,** and (c) the CAVIC Adversary Proceeding (*King v. CAVIC Aviation Leasing (Ireland) 22 Co. Designated Activity Company*, *et al.*, Adv. Proc. No. 2:19-ap-01147-BR) (collectively, the Jetcraft Adversary Proceeding, the Universal Leader Adversary Proceeding, and the CAVIC Adversary Proceeding are defined as the "Adversary Proceedings").  DLA Piper also continued to provide services in connection with the enforcement of judgments obtained in the New Target Adversary Proceeding (*King v. New Target Investments, et. al.*, Adv. Proc. No. 2:18-ap-01340-BR).

3.      As more fully set forth herein and in the attached billing detail, the Trustee's global recovery efforts in the fourth quarter of 2024 and first quarter of 2025 required extensive assistance from DLA Piper.  Further, DLA Piper began analyzing potential appellate issues and strategies and engaged in mediation efforts to resolve claims asserted in the Adversary Proceedings.

4.      While Bombardier appealed the District Court's ruling on the Jetcraft Adversary Proceeding, the Trustee cross-appealed and also appealed the District Court's rulings in the CAVIC and Universal Leader Adversary Cases to the Ninth Circuit Court of Appeals.  During the Thirteenth Interim Period, the Trustee, assisted by DLA Piper, engaged in extensive negotiations with the defendants, mediated by Robert Kaiser, Ninth Circuit mediator, to resolve the Adversary Proceedings.  These efforts culminated in a $18 million settlement, plus the release of $15,345,745.69 in claims by the Jetcraft and Bombardier parties.

5.      In addition, through these efforts, the Trustee was able to reach a settlement with the remaining defendants in the Universal Leader Adversary Proceeding, allowing that proceeding to be settled.

6.      Through the Adversary Proceedings, the Trustee has successfully recovered (or has

1621564503

agreements to recover) over $42 million on behalf of the Debtors' estates through various settlements and other collection efforts including, notably, a large settlement with ECN Capital Corporation that also resulted in the withdrawal of over $13 million in chapter 11 administrative claims and $186 million in prepetition unsecured claims and a settlement with the Jetcraft and Bombardier defendants that will result in an $18 million recovery plus the release of approximately $15.4 million in claims.  In addition, the Trustee settled with certain of the defendants in the Universal Leader Adversary Proceeding for $4.5 million plus the withdrawal of over $214 million in unsecured claims, $14 million in administrative claims, and $8 million in secured claims.

7.    In connection with pursuing settlement of the Adversary Proceedings, DLA Piper also undertook efforts to liquidate and, if necessary, object to claims filed against the estates as well as develop and formulate strategies to expedite closure of the cases and make meaningful distributions to creditors through an interim distribution.  Concurrently with this motion, the Trustee has filed a motion for approval of an interim distribution.

8.    As stated below, DLA Piper's professionals, located in the United States and around the globe, have devoted, and continue to devote, thousands of hours to the representation of the Trustee and his efforts to recover amounts on behalf of the creditors of the estates.  DLA Piper submits that the hours and expenses incurred for the services rendered in these chapter 7 cases were reasonable and necessary to maximize the value of the estates for the benefit of all stakeholders.

## JURISDICTION

9.    The Court has jurisdiction over this Application under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2).

10.    Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

11.    The statutory bases for the relief requested herein are sections 330 and 331 of the Bankruptcy Code, Bankruptcy Rule 2016 and Local Rule 2016-1.

## BACKGROUND

**A.    Commencement of the Bankruptcy Cases**

12.    On September 15, 2017 (the "Petition Date"), Zetta Jet USA, Inc. ("Zetta USA")

1621564503

and Zetta Jet PTE, Ltd. ("Zetta PTE", and together with Zetta USA, the "Debtors") each filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").

13.    On September 29, 2017, upon the Debtors' emergency motion, the Court entered its *Order Granting Debtors' Emergency Motion to Approve Stipulation for Appointment of a Chapter 11 Trustee Pursuant to 11 U.S.C. § 1104* [Docket No. 120].

14.    On October 5, 2017, the Office of the United States Trustee for the Central District of California (the "U.S. Trustee") appointed Jonathan D. King as chapter 11 trustee (the "Chapter 11 Trustee") in the Chapter 11 Cases [Docket No. 155].

15.    On October 12, 2017, the U.S. Trustee appointed the Official Committee of Unsecured Creditors (the "Committee") under section 1102(a)(1) of the Bankruptcy Code [Docket No. 198], as amended on November 20, 2017 [Zetta USA Docket No. 411; Zetta PTE Docket No. 49].

16.    On November 30, 2017 (the "Shutdown Date"), based upon a lack of funds to operate the Debtors' business, the Chapter 11 Trustee shut down operations, terminated all employees, and, on December 4, 2017 (the "Conversion Date"), the Court entered its *Order[s] on Debtors' Motion to Convert Case Under 11 U.S.C. §§ 706(a) or 1112(a)* [Zetta USA Docket No. 452; Zetta PTE Docket No. 52] (the "Chapter 7 Cases").  Upon entry of the orders converting the cases, the Committee was disbanded and ceased to exist.

17.    On December 5, 2017, the U.S. Trustee appointed Jonathan D. King as chapter 7 trustee (the "Chapter 7 Trustee") in the Chapter 7 Cases [Zetta USA Docket No. 458; Zetta PTE Docket No. 53].

**B.    Retention of DLA Piper**

18.    On December 29, 2017, the Chapter 7 Trustee filed the *Chapter 7 Trustee's Application to Employ DLA Piper as Bankruptcy Counsel Pursuant to Sections 327(a) and 330 of the Bankruptcy Code, Bankruptcy Rules 2014 and 6003, and Local Bankruptcy Rule 2014-1, Nunc Pro Tunc to December 4, 2017* [Docket No. 518] (the "DLA Retention Application").

19.    On January 19, 2018, the Court entered its Order granting the DLA Retention

Application [Docket No. 567] (the "<u>DLA Retention Order</u>") *nunc pro tunc* to the Conversion Date.

**C.     Retention of Other Professionals**

20.     On January 4, 2018, the Chapter 7 Trustee filed the *Chapter 7 Trustee's Application to Employ Seabury Corporate Finance LLC and Seabury Securities LLC as Interim Financial Advisor Pursuant to Sections 327(a) and 328 of the Bankruptcy Code, Bankruptcy Rules 2014 and 6003, and Local Bankruptcy Rule 2014-1, Nunc Pro Tunc to December 4, 2017; Declaration of Michael B. Cox in Support Thereof* [Docket No. 531] (the "<u>Seabury Retention Application</u>").

21.     On January 19, 2018, the Court entered its Order granting the Seabury Retention Application [Docket No. 568].

22.     On January 17, 2018, the Chapter 7 Trustee filed the *Chapter 7 Trustee's Application to Employ KCP Advisory Group LLC to Provide Financial Advisory and Wind Down Services, and Michael Goldman & Associates, LLC to Provide Tax Advisory Services, Pursuant to Sections 327(a) and 328 of the Bankruptcy Code, Bankruptcy Rules 2014 and 6003, and Local Bankruptcy Rule 2014-1, Nunc Pro Tunc to January 8, 2018; Declaration of Michael Goldman in Support Thereof* [Docket No. 554] (the "<u>KCP/Goldman Retention Application</u>").

23.     On February 6, 2018, the Court entered its Order granting the KCP/Goldman Retention Application [Docket No. 605].

24.     On February 9, 2018, the Chapter 7 Trustee filed the *Chapter 7 Trustee's Application to Employ Oon & Bazul LLP as Special Counsel, Pursuant to Sections 327(a) and 330 of the Bankruptcy Code, Bankruptcy Rule 2014 and Local Bankruptcy Rule 2014-1, Nunc Pro Tunc to December 6, 2017; Declaration of Tan Mei Yen in Support Thereof* [Docket No. 612] (the "<u>Oon & Bazul Retention Application</u>").

25.     On April 6, 2018, the Court entered its Order granting the Oon & Bazul Retention Application [Docket No. 661].

26.     On February 9, 2018, the Chapter 7 Trustee filed the *Chapter 7 Trustee's Application to Employ PricewaterhouseCoopers Advisory Services LLC to Provide Forensic Accounting, Technology, and Advisory Services, Pursuant to Sections 327(a) and 328 of the Bankruptcy Code, Bankruptcy Rule 2014, and Local Bankruptcy Rule 2014-1, Nunc Pro Tunc to*

1621564503

*January 22, 2018; Declaration of Ryan Murphy in Support Thereof* [Docket No. 610] (the "PwC Retention Application").

27.     On February 28, 2018, the Court entered its Order granting the PwC Retention Application [Docket No. 632].

28.     On May 9, 2018, the Chapter 7 Trustee filed the *Notice of the Chapter 7 Trustee's Application to Employ WongPartnership LLP as Special Counsel, Pursuant to Sections 327(a) and 328 of the Bankruptcy Code, Bankruptcy Rule 2014, and Local Bankruptcy Rule 2014-1, Nunc Pro Tunc to December 4, 2017* [Docket No. 733] (the "WongP Retention Application").

29.     On July 27, 2018, the Court entered its Order granting the WongP Retention Application [Docket No. 797].

30.     On July 10, 2018, the Chapter 7 Trustee filed the *Application of Jonathan D. King, Chapter 7 Trustee, to Employ Brutzkus Gubner and Acumen Recovery Services, LLC as Joint Special Litigation Counsel Pursuant to 11 U.S.C. §§ 327(e) & 328(a); Statements of Disinterestedness in Support Thereof* [Docket No. 776] (the "Brutzkus Retention Application").

31.     On August 8, 2018, the Court entered its Order granting the Brutzkus Retention Application [Docket No. 809].

32.     On July 17, 2019, the Chapter 7 Trustee filed the *Chapter 7 Trustee's Motion for an Order Authorizing the Chapter 7 Trustee to Retain AJCapital Advisory PTE Limited as his Local Representative and Serve as Liquidation Agent in Singapore Pursuant to Sections 327 and 328 of the Bankruptcy Code, Nunc Pro Tunc to April 8, 2019; Declaration of Luke Furler in Support Thereof; Declaration of Jonathan D. King in Support Thereof* [Docket No. 970] (the "AJCapital Retention Application")

33.     On August 9, 2019, the Court entered its Order granting the AJCapital Retention Application [Docket No. 993].

34.     On June 19, 2020, the Chapter 7 Trustee filed the *Chapter 7 Trustee's Application to Employ FTI Consulting, Inc. as Financial Advisor, Pursuant to Sections 327(a) and 328 of the Bankruptcy Code, Bankruptcy Rule 2014, and Local Bankruptcy Rule 2017-1, Nunc Pro Tunc to March 31, 2020* [Docket No. 1271] (the "FTI Retention Application").

7

35.     On September 2, 2020, the Court entered its Order granting the FTI Retention Application [Docket No. 1355].

36.     On July 8, 2020, the Court entered its *Order Appointing a Fee Examiner* [Docket No. 1285] (the "<u>Fee Examiner Order</u>").

37.     Pursuant to the Fee Examiner Order, Nancy B. Rapaport was the appointed fee examiner (the "<u>Fee Examiner</u>") for the Chapter 7 Cases.

38.     On July 21, 2020, the Fee Examiner filed the *Application for an Order Authorizing and Approving the Employment of Bovitz & Spitzer as Counsel for Nancy B. Rapoport, Fee Examiner, Effective as of July 8, 2020* [Docket No. 1305] (the "<u>Bovitz Retention Application</u>").

39.     On August 12, 2020, the Court entered its Order granting the Bovitz Retention Application [Docket No. 1333].

40.     On June 30, 2021, the Trustee filed the *Application by Jonathan D. King Chapter 7 Trustee, for Order Approving Employment of Leech Tishman as Trustee's Special Litigation Counsel effective June 16, 2021* [Docket No. 1534] (the "<u>Leech Retention Application</u>").

41.     On August 13, 2021, the Court entered its Order granting the Leech Retention Application [Docket No. 1591].

42.     On August 16, 2021, the Chapter 7 Trustee filed the *Chapter 7 Trustee's Application to Employ Ogier as Special Counsel, Pursuant to Sections 327(a) and 330 of the Bankruptcy Cod,* [Docket No. 1594] (the "<u>Ogier Retention Application</u>").

43.     On September 22, 2021, the Court entered its Order granting the Ogier Retention Application [Docket No. 1618].

44.     On March 24, 2022, the Trustee filed the *Chapter 7 Trustee's Motion for an Order Authorizing the Chapter 7 Trustee to Retain Quantuma (Singapore) PTE Limited as His Local Representative and Serve as Liquidation Agent in Singapore Pursuant to Sections 327 and 328 of the Bankruptcy Code, Effective as of January 20, 2022* [Docket No. 1834] (the "<u>Quantuma Retention Application</u>").

45.     On April 18, 2022, the Court entered its Order granting the Quantuma Retention Application [Docket No. 1841].

## CASE STATUS

### A. General Case Administration

46. The Trustee, with DLA Piper's assistance, continued to administer the cases throughout the Thirteenth Interim Period.

47. During the Thirteenth Interim Period, the Trustee reviewed fee statements and interim fee applications filed by his professionals for the Twelfth Interim Period, *i.e.,* the period covering April 1, 2024, through September 30, 2024. The Trustee, assisted by DLA Piper, also met with the Fee Examiner to assist the Fee Examiner in her review of fees incurred during the Twelfth Interim Period.

48. In connection with its normal billing review and after discussions with the Fee Examiner, DLA Piper has written off a significant portion of fees incurred with respect to this and other work.

49. The Trustee also continued to take steps to investigate and obtain other potential recoveries of assets.

50. DLA Piper provided further assistance to the Trustee with respect to a wide range of ongoing case administration activities, including evaluating case closure strategies, liquidation and distribution scenarios, claims reconciliation, and other potential sources of estate recovery. DLA Piper also spent significant time preparing and filing the Twelfth Interim Fee Applications for the Trustee and his professionals and addressing related fee issues and objections.

### i. The Jetcraft Adversary Proceeding
(*King v. Jetcraft Corporation, et al.*, No. 2:19-ap-01382-BR)

51. The Trustee filed a 17-count complaint (the "Original Jetcraft Complaint") against twelve defendants in the Jetcraft Adversary Proceeding on September 13, 2019. *See* Jetcraft Adversary Proceeding Docket. No. 1. The Original Jetcraft Complaint included common-law tort claims, equitable claims, and bankruptcy claims. *Id.* at ¶¶ 6-7. The 17 counts are for Aiding and Abetting Breach of Fiduciary Duty (Count I), Civil Conspiracy (Count II), California Business & Professions Code § 17200 (Count III), Unjust Enrichment (Count IV), Constructive Trust (Count V), Fraud (Count VI), Avoidance and Recovery of Fraudulent Transfers and Obligations under 11

9

U.S.C. §§ 548 and 550 (Counts VII, VIII, IX, X, and XI), Avoidance and Recovery of U.S. Preference Transfer under 111 U.S.C. §§ 547, 550 (Counts XII, XIII, XIV), Willful Violation of Automatic Stay under 11 U.S.C. § 362 (Count XV), Turnover of Property of the Estate under 11 U.S.C. § 542 (Count XVI), and Disallowance of Claims under 11 U.S.C. § 502(d) (Count XVII).

52.    On January 17, 2020, the Court approved a settlement with the ECN Defendants. Jetcraft Adversary Proceeding, Docket No. 91.  The settlement included a $15 million payment from the ECN Defendants to the Trustee on behalf of the Debtors' estates, a release of $13 million in chapter 11 administrative claims, and a release of $185 million in prepetition unsecured claims. Jetcraft Adversary Proceeding, Docket No. 70 at ¶ 22(a).  During the Second Interim Period, the settlement was consummated.

53.    The defendants FK Group Ltd., FK Partners Limited, Fazal-Karim, Jetcoast 5000-5 LLC, Jetcraft Asia, Jetcraft Corporation, Jetcraft Global, Inc., Bombardier Aerospace Corporation, Bombardier, Inc., and Learjet Inc. moved to dismiss.  *See* Jetcraft Adversary Proceeding, Docket Nos. 45, 46, and 76.  Those motions were fully briefed.  Jetcraft Adversary Proceeding, Docket Nos. 68, 69, 78, 79, 90, and 101.  The Court issued its rulings on the motions to dismiss on March 20, 2020, in which it granted in part and denied in part defendants' motions to dismiss, and granting the Trustee leave to amend certain counts. Jetcraft Adversary Proceeding, Docket Nos. 107, 108, 109, 120 and 121.  The Trustee's amended complaint was originally due by May 18, 2020, or 21 days after entry of a protective order setting forth a protocol for the filing of confidential information.  Jetcraft Adversary Proceeding, Docket No. 125-1 at 2; Docket No. 120 at 2; Docket No. 121 at 2.

54.    Negotiations over the scope of the protocol and documents covered by the protocol continued throughout 2020.  The protocol for the filing of confidential information was solely for the benefit of the defendants as the Trustee had no confidentiality interest at stake.  On October 16, 2020, the parties finalized a proposed protective order memorializing the protocol and, on October 19, 2020, the Court subsequently approved the stipulation protective order.  Jetcraft Adversary Proceeding, Docket No. 143; Docket No. 145.

55.    However, on October 22, 2020, the Court ordered the parties to mediation and

1621564503

further deferred the Trustee's deadline to file an amended complaint. Jetcraft Adversary Proceeding, Docket No. 149 at 1. As part of the mediation, the Trustee was required to submit a draft amended complaint to the defendants at least three weeks in advance of the date of any mediation statement that is due, or by December 15, 2020, whichever date was earlier. Jetcraft Adversary Proceeding, Docket No. 149 at 4. The Trustee prepared a draft amended complaint that was timely submitted to the mediator. The mediation was held on January 26, 2021. On February 16, 2021, a mediator report was filed, in which the mediator informed the court that a settlement had not been reached. Jetcraft Adversary Proceeding Docket No. 171.

56.    On December 4, 2020, the Trustee filed a Motion to Consolidate Related Adversary Cases, seeking to consolidate the Jetcraft Adversary Proceeding and the CAVIC Adversary Proceeding. Jetcraft Adversary Proceeding Docket No. 153. On April 4, 2021, the Court denied the Motion to Consolidate. Jetcraft Adversary Proceeding, Docket No. 193. Pursuant to the Court's approval of DLA Piper's second interim fee request, the Court disallowed fees incurred in connection with the Motion to Consolidate. Accordingly, DLA Piper did not include any fees incurred in 2021 in connection with the Motion to Consolidate with its third interim fee request.

57.    On April 28, 2021, the Trustee filed a Motion for Leave to Amend the Original Jetcraft Complaint. Jetcraft Adversary Proceeding, Docket No. 199. Defendants Jetcraft Corporation, Jetcraft Global, Inc., Jetcoast 5000-5 LLC, Jetcraft Asia Limited, FK Group Ltd., FK Partners Limited, Jahid Fazal-Karim, Bombardier Inc., Bombardier Aerospace Corporation, and Learjet, Inc., and non-parties CAVIC Aviation Leasing (Ireland) 22 Co. and Glove Assets filed oppositions to the Trustee's Motion for Leave to Amend. *See* Jetcraft Adversary Proceeding, Docket Nos. 222, 223, 224, 225, and 231. The Motion for Leave to Amend was fully briefed. *See* Jetcraft Adversary Proceeding, Docket Nos. 229 and 233.

58.    After extensive briefing in support of the Motion for Leave to Amend, the Court entered its memorandum decision on July 13, 2021, denying the Trustee leave to amend Counts 4, 5, 21, 22, 23, 26, 27, 28, 29, and 30, denying the Trustee leave to amend to add CAVIC and Glove Assets as defendants to Counts 14, 15, 30, 31, and 32, but otherwise granting leave to amend other changes. Jetcraft Adversary Proceeding Docket No. 241.

1621564503

59.     On July 28, 2021, the Trustee filed the first amended complaint under seal.  Jetcraft Adversary Proceeding Docket No. 264.  On September 7, 2021, the Jetcraft Adversary Proceeding defendants filed motions to dismiss the first amended complaint.  Jetcraft Adversary Proceeding Docket Nos. 281, 282, and 284.  The Trustee filed his opposition to the motions to dismiss on November 13, 2021.  Jetcraft Adversary Proceeding Docket No. 321. The Jetcraft Adversary Proceeding Defendants filed replies in support of their motions to dismiss on February 18, 2022.  Jetcraft Adversary Proceeding Docket Nos. 360 and 361.  A hearing on the motions to dismiss was held on April 27, 2022.  The Court issued its rulings on the motions to dismiss on June 23, 2022, in which it granted in part and denied in part the defendants' motions to dismiss, and granting the Trustee leave to amend certain counts.  Jetcraft Adversary Proceeding Docket Nos. 383, 384, and 385.  On July 7, 2022, the Court ordered the parties to mediation.  Jetcraft Adversary Proceeding Docket No. 401.  The mediation took place on September 21, 2022.  The parties continued to negotiate after the mediation concluded, and ultimately, the Trustee and Defendants Jetcraft Corporation, Jetcraft Global, Inc., Jetcoast 5000-5 LLC, Orion Aircraft Holdings Ltd., Jetcraft Asia Limited, FK Group Ltd, FK Partners Limited, Jahid Fazal-Karim (collectively, the "Jetcraft Defendants") finalized the term of a settlement agreement.  A motion to approve the Jetcraft settlement agreement was filed on November 29, 2022.  Docket No. 1995 (the "Jetcraft Settlement Motion").   The Trustee's professionals fully briefed and argued the motion approving the settlement agreement, which was ultimately denied.  Docket No. 2084.  At the hearing held on March 22, 2023, the Court stayed all matters in the Jetcraft Adversary Proceeding pending resolution of the appeal of the same case.

60.     On July 21, 2022, the Bombardier Defendants filed a motion for entry of final judgment, to which the Trustee objected.  Jetcraft Adversary Proceeding Docket Nos. 416, 420, and 422.  On September 7, 2022, the Court entered an order granting the Bombardier Defendants' motion for entry of final judgment.   Jetcraft Adversary Proceeding Docket Nos. 432.   On September 15, 2022, the Trustee filed a notice of appeal (the "Bombardier Appeal") of the entry of final judgment.  Jetcraft Adversary Proceeding Docket No. 438.

1621564503

61.     On February 15, 2023, the Trustee filed his initial opening brief in the Bombardier Appeal with the District Court of the Central District of California.  Case No. 22-CV-06637 (JAK), Docket No. 32.  On April 19, 2023, the Bombardier Defendants filed their brief in response to the opening brief.  *Id.*, Docket No. 69.  On May 17, 2023, the Trustee filed his reply brief in support of the initial opening brief.  *Id.*, Docket No. 71.

62.     On March 26, 2024, the District Court filed under seal its opinion regarding the Bombardier Appeal.  *Id.*, Docket No. 91.  On June 26, 2024, the Trustee filed a redacted copy of the District Court's rulings in the Adversary Proceedings in each of the appeal cases.  D.C. Case No. 2:21-cv-07572, Docket. No. 68; D.C. Case No. 2:22-cv-02004, Docket. No. 105; D.C. Case No. 2:22-cv-06637, Docket. No. 95.  The Trustee filed a copy of redacted consolidated rulings on the docket in this bankruptcy case as well. Docket No. 2407.

63.     On May 3, 2024, the Ninth Circuit Court of Appeals *sua sponte* entered an order staying briefing and ordered Bombardier to either file a statement explaining why the appeal should not be dismissed for lack of jurisdiction or move for voluntary dismissal of the appeal and allowing the Trustee to respond to any such statement.  Case No. 24-2703, Docket No. 3.1. Pursuant to the order, on May 24, 2024, Bombardier filed the *Defendants-Appellants Bombardier Aerospace Corporation, Bombardier, Inc., and Learjet, Inc.'s Statement in Support of Jurisdiction*. *Id.* Docket No. 6. On June 3, 2024, the Trustee filed the *Trustee's Statement in Opposition to Appellate Jurisdiction*. *Id.* Docket No. 9. On June 14, 2024, the Ninth Circuit discharged its order to show cause and will proceed with the Appeal.  On May 8, 2024, the Trustee filed his cross-appeal.

64.     During the Thirteenth Interim Period, DLA Piper spent considerable time focusing on the Bombardier Appeal, including preparing for and attending mediation, drafting the statement opposing Ninth Circuit jurisdiction, analyzing the District Court's order affirming and remanding the Bombardier Appeal to the Bankruptcy Court, and other related strategy items.  DLA Piper devoted significant time to preparing, revising, and finalizing a comprehensive settlement agreement and related 9019 motion to resolve the Jetcraft Adversary Proceeding, including negotiations with the Jetcraft and Bombardier Defendants, coordination with the mediator, and

strategy sessions with the Trustee.  This work included preparing for and attending two full days of mediation in New York in November 2024, extensive drafting and redlining of settlement documents and dismissal stipulations, conducting sensitivity analyses on various distribution scenarios, and analyzing recent case law impacting the proposed settlement. DLA Piper also devoted substantial time to the preparation, drafting, and finalization of the motion for approval of the settlement pursuant to Bankruptcy Rule 9019, supporting declarations, and proposed orders. These efforts culminated in the transmission of the final settlement package to all parties in March 2025. The firm also monitored and responded to appellate briefing schedules in the Ninth Circuit while coordinating strategy in anticipation of court approval of the settlement

> **ii.    The CAVIC Adversary Proceeding**
> ***(King v. CAVIC Aviation Leasing (Ireland) 22 Co. Designated Company, et al.,*** **Case No. 19-01147-BR)**

65.    The Trustee and CAVIC Aviation Leasing (Ireland) 22 Co. Designated Activity Company ("CAVIC") both allege they assert ownership rights to a $30 million refund currently held by Bombardier under a rejected aircraft purchase agreement.

66.    On May 21, 2019, the Trustee commenced the CAVIC Adversary Proceeding seeking: (i) declaratory judgments that (A) the subject leases are disguised financings and (B) the subject aircraft purchase agreement is terminated; (ii) avoidance of an unperfected security interest; (iii) recovery of avoided transfers; (iv) turnover of estate property; (v) avoidance of preference transfers; and (vi) recovery of property of the estate.  *See* CAVIC Adversary Proceeding, Docket No. 1.  Given the asserted confidential nature of certain of the information alleged, the Trustee filed redacted versions of the complaint.

67.    On October 25, 2019, the parties attended Court ordered mediation, which was unsuccessfully concluded.  *See* CAVIC Adversary Proceeding, Docket No. 51.

68.    On January 10, 2020, CAVIC filed its motion to dismiss the CAVIC Adversary Proceeding (the "CAVIC Motion to Dismiss").  *See* CAVIC Adversary Proceeding, Docket No. 59.

69.    On January 30, 2020, Bombardier filed its motion to dismiss the CAVIC Adversary Proceeding (the "Bombardier Motion to Dismiss").  *See* CAVIC Adversary Proceeding, Docket

No. 70.

70.     On February 14, 2020, and February 27, 2020, the Trustee filed his opposition to the CAVIC Motion to Dismiss and Bombardier Motion to Dismiss, respectively. *See* CAVIC Adversary Proceeding, Docket Nos. 75 & 80.

71.     On February 28, 2020, and March 12, 2020, CAVIC and Bombardier, respectively, filed their replies to the Trustee's opposition. *See* CAVIC Adversary Proceeding, Docket Nos. 82 & 96.

72.     Given Bombardier's economic disinterest in the subject refund and risk that Bombardier's financial condition imperiled the collectability of the $30 million refund in Bombardier's possession, on March 9, 2020, the Trustee filed a motion seeking to compel (the "Motion to Compel") Bombardier to turn over the refund to an account controlled by the Court, or, in the alternative, for a preliminary injunction. *See* Docket No. 90. Both Bombardier and CAVIC objected to the relief sought. *See* CAVIC Adversary Proceeding Docket Nos. 105 & 107. On April 15, 2020, the Trustee responded to the defendants' objections. *See* CAVIC Adversary Proceeding Docket No. 117.

73.     On March 31, 2020, the Trustee filed a motion to file the complaint under seal (the "Motion to Seal") in an effort to protect the confidential information that Bombardier and CAVIC allege that the complaint contains. *See* CAVIC Adversary Proceeding Docket No. 104.

74.     On May 12, 2020, the Court entered an order granting the Motion to Seal. CAVIC Adversary Proceeding, Docket No. 126.

75.     On May 20, 2020, the Court entered an order denying the Motion to Compel. CAVIC Adversary Proceeding, Docket No. 131.

76.     The Court issued its ruling on the CAVIC Motion to Dismiss and the Bombardier Motion to Dismiss on October 7, 2020, in which it granted in part and denied in part defendants' motions to dismiss, and granting the Trustee leave to amend certain counts. CAVIC Adversary Proceeding Docket Nos. 156, 157, 167, and 168.

77.     The parties were ordered to enter into mediation. CAVIC Adversary Proceeding Docket No. 180 at 1.

15

78.     As part of the mediation, the Trustee was required to submit a draft amended complaint to the defendants at least three weeks in advance of the date of any mediation statement that is due, or by December 15, 2020, whichever date was earlier.  CAVIC Adversary Proceeding, Docket No. 180 at 4.  The Trustee prepared a draft amended complaint that was timely submitted to the mediator.  The mediation was held on January 26, 2021. On February 16, 2021, a mediator report was filed, in which the mediator informed the court that a settlement had not been reached.  CAVIC Adversary Proceeding Docket No. 213.

79.     On December 4, 2020, the Trustee filed a Motion to Consolidate Related Adversary Cases, seeking to consolidate the Jetcraft Adversary Proceeding and the CAVIC Adversary Proceeding.  CAVIC Adversary Proceeding Docket No. 184.  The hearing date on the Motion to Consolidate and status conference was held on March 31, 2021.  CAVIC Adversary Proceeding, Docket No. 214. On April 4, 2021, the Court denied the Motion to Consolidate.  CAVIC Adversary Proceeding, Docket No. 236.

80.     On April 28, 2021, the Trustee filed a Motion for Leave to Amend the CAVIC Adversary Proceeding complaint.  CAVIC Adversary Proceeding, Docket No. 242.  Defendants CAVIC Aviation Leasing (Ireland) 22 Co. and Bombardier Aerospace Corporation filed oppositions to the Trustee's Motion for Leave to Amend.  CAVIC Adversary Proceeding, Docket Nos. 264 and 265. The Motion for Leave to Amend was fully briefed.  *See* CAVIC Adversary Proceeding, Docket No. 267.

81.     After extensive briefing in support of the Motion for Leave to Amend, the Court entered its memorandum decision on July 13, 2021, denying in part and granting in part the Trustee's Motion for Leave to Amend.  CAVIC Adversary Proceeding, Docket No. 275.  On July 28, 2021, the Trustee filed its first amended complaint in the CAVIC Adversary Proceeding. CAVIC Adversary Proceeding, Docket No. 300.

82.     On August 13, 2021, the Court approved the Trustee and defendant CAVIC Aviation Leasing (Ireland) 22 Co. entering into a stipulation to proceed to mediation with retired bankruptcy Judge David H. Coar serving as mediator.  CAVIC Adversary Proceeding, Docket No. 306.  The mediation took place on August 25 and 26, 2021, but the Trustee and defendant CAVIC

1    Aviation Leasing (Ireland) 22 Co. were unable to come to terms on a settlement.

2           83.    On September 7 and September 8, 2021, defendant Bombardier Aerospace

3    Corporation and defendant CAVIC Aviation Leasing (Ireland) 22 Co. Designated Activity

4    Company respectively filed motions to dismiss the first amended complaint.  CAVIC Adversary

5    Proceeding Docket Nos. 311 and 312. On October 13, 2021, the Trustee filed opposition briefs to

6    the motions to dismiss.  CAVIC Adversary Proceeding Docket Nos. 334 and 336.  Both defendants

7    field their reply briefs in support of the motions to dismiss on November 5, 2021.  CAVIC

8    Adversary Proceeding Docket Nos. 348 and 349. On March 8, 2022, the Court entered orders (the

9    "CAVIC Dismissal Orders") granting defendants Bombardier Aerospace Corporation and CAVIC

10   Aviation Leasing (Ireland) 22 Co. Designated Activity Company's motions to dismiss.  CAVIC

11   Adversary Proceeding Docket Nos. 364 and 365.  On March 25, 2022, the Trustee filed his notice

12   of appeal (the "CAVIC Appeal") of the Court's decision to dismiss his claims.  CAVIC Adversary

13   Proceeding Docket No. 382.

14          84.    On August 10, 2022, the Trustee's opening brief in the appeal was filed, and the

15   appellees' opening brief was filed on October 14, 2022.  Case No. 22-02004, Docket Nos. 43 and

16   65.  The Trustee's reply brief was filed on January 6, 2023.  *Id.*, Docket No. 74.  On March 26,

17   2024, the District Court filed under seal its opinion regarding the CAVIC Appeal.  *Id.*, Docket No.

18   91.  On June 26, 2024, the Trustee filed a redacted copy of the District Court's rulings in the

19   Adversary Proceedings in each of the appeal cases.  D.C. Case No. 2:21-cv-07572, Docket. No.

20   68; D.C. Case No. 2:22-cv-02004, Docket. No. 105; D.C. Case No. 2:22-cv-06637, Docket. No.

21   95.  The Trustee filed a copy of redacted consolidated rulings on the docket in this bankruptcy case

22   as well. Docket No. 2407.

23          85.    Similar to the Bombardier Appeal, during the Thirteenth Interim Period, DLA Piper

24   spent considerable time regarding the CAVIC Appeal, including ongoing participating in

25   mediation that began in August 2024.  DLA Piper continued to devote significant time to the

26   CAVIC Appeal, including reviewing recent Ninth Circuit and district court case law, analyzing

27   underlying opinions and potential appellate arguments, preparing and revising draft briefs, and

28   coordinating internally regarding scheduling.  The firm also reviewed and updated briefing

1621564503

schedules and mediator orders, developed claim charts and fee analyses, and strategized around the preparation of a revised appellate brief.  DLA Piper has continued to monitor developments.  The Ninth Circuit has recently set a schedule that will complete briefing by the first quarter of 2026.

      **iii.**     **The Universal Leader Adversary Proceeding**
                  (***King v. Yuntian 3 Leasing Company Designated Activity Comp., et al.***, **2:19-ap-01383-BR**)

86.     The Trustee filed a 15-count adversary complaint (the "<u>Universal Leader Original Complaint</u>") against nine defendants in the Universal Leader Adversary Proceeding on September 13, 2019.  Universal Leader Adversary Proceeding, Docket No. 1.  That complaint describes how the Debtors' founder, Geoffrey Cassidy, lined his pockets with at least $10 million from kickbacks, bribes, and embezzlement, while saddling the Debtors with almost half a billion dollars in unsustainable debt.  *Id.* at ¶ 1.  As part of Cassidy's fraudulent scheme, in September 2016, Cassidy refinanced (the "<u>Minsheng Refinancing</u>") two Bombardier aircraft ("<u>Plane 6</u>" and "<u>Plane 7</u>") previously purchased from and/or financed by Universal Leader and Glove Assets, two entities owned and controlled by Li Qi, debtor Zetta Jet Pte.'s former director and owner and, in October 2016, financed (the "<u>Plane 12 Financing</u>") the purchase of another aircraft ("<u>Plane 12</u>") with the Minsheng Defendants and EDC.

87.     In the Universal Leader Original Complaint, the Trustee sought to avoid actual and constructively fraudulent transfers from the Debtors to the defendants.  *Id.* at ¶ 6.  The Universal Leader Original Complaint alleged fifteen counts: Avoidance and Recovery of Fraudulent Transfers under 11 U.S.C. §§ 548 and 550 (Counts I, II, and VI), Avoidance and Recovery of Preference Transfers under 11 U.S.C. §§ 547 and 550 (Counts III, IV, V, VIII, IX, X, and XII), Turnover of Property of the Bankruptcy Estate under 11 U.S.C. § 542 (Counts VII and XI), Recharacterization of the Third Investment as Equity Interest under 11 U.S.C. § 105(a) (Count XIII), Violation of the Automatic Stay under 11 U.S.C. § 362 (Count XIV), and Disallowance of Claims under 11 U.S.C. § 502(d) (Count XV).

88.     The Trustee was able to serve every defendant except for Minsheng Financial Leasing Co., Ltd., and Li Qi in 2019.  Universal Leader Adversary Proceeding, Docket No. 65-1

at 2-3.  The Trustee moved for alternative service on the unserved defendants.  *Id.*  On June 3, 2020, the Court granted the alternative service motion.  Universal Leader Adversary Proceeding, Docket No. 139.

89.    All of the defendants, except for Minsheng Financial Leasing Co., Ltd. and Li Qi, filed motions to dismiss.  Universal Leader Adversary Proceeding, Docket Nos. 32, 44, 45, and 88.  The motions to dismiss were fully briefed.  Universal Leader Adversary Proceeding, Docket Nos. 55, 61, 64, and 130.  The Court issued its rulings on the motions to dismiss on July 29, 2020, in which it granted in part and denied in part defendants' motions to dismiss, and granted the Trustee leave to amend certain counts.  Universal Leader Adversary Proceeding, Docket Nos. 173-175.

90.    The parties were ordered to mediate.  Universal Leader Adversary Proceeding Docket No. 215 at 1.  As part of the mediation, the Trustee was required to submit a draft amended complaint to the defendants at least three weeks in advance of the mediation. Universal Leader Adversary Proceeding, Docket No. 215 at 4.  The Trustee prepared a draft amended complaint that was timely submitted to the mediator.  The Trustee filed an amended complaint within forty days after the filing of a report by the Mediator stating that the mediation has concluded without all issues being resolved.  Universal Leader Adversary Proceeding, Docket No 215 at 5.  The mediation was held on January 26, 2021. On February 16, 2021, a mediator report was filed, in which the mediator informed the court that a settlement had not been reached.  Universal Leader Adversary Proceeding Docket No. 222.

91.    On March 29, 2021, the Trustee filed an amended complaint.  Universal Leader Adversary Proceeding Docket No. 232.

92.    Notwithstanding the formal conclusion of mediation in mid-February, the Trustee and Yuntian 3 Leasing Company Designated Activity Company f/k/a Yuntian 3 Leasing Company Limited ("Yuntian 3"), Yuntian 4 Leasing Company Designated Activity Company f/k/a Yuntian 4 Leasing Company Limited ("Yuntian 4"), Minsheng Financial Leasing Co., Ltd. ("Minsheng Financial"), Minsheng Business Aviation Limited ("Minsheng Business" and together with Minsheng Financial, "Minsheng"), and Export Development Canada ("EDC" and together with

1  Minsheng, Yuntian 3, and Yuntian 4, the "Settling Defendants") continued to explore settlement

2  discussions mediated by Kevin Gross.  In mid-March 2021, the Settling Defendants were able to

3  reach a settlement in principle.

4        93.    On May 11, 2021, the Trustee filed a motion to approve a settlement agreement

5  memorializing the key terms reached by the parties.  Under the settlement agreement, Minsheng,

6  Yuntian 3, and Yuntian 4 agreed to pay $4.5 million to the estates and withdraw proofs of claim

7  totaling over $214 million in unsecured claims, $14 million in administrative claims and $8 million

8  in secured claims against the estates in exchange for dismissal of the Universal Leader Adversary

9  Proceeding against the Settling Defendants.  The parties also mutually released each other from

10  claims in addition to other undertakings.  Main Case Docket No. 1469. The Court approved the

11  settlement on June 8, 2021.  Main Case Docket No. 1511.

12        94.    On May 10, 2021, defendants Universal Leader Investment Limited, Glove Assets,

13  Truly Great Global Limited, and Li Qi filed motions to dismiss the amended complaint.  Universal

14  Leader Adversary Proceeding Docket Nos. 238 and 239.  The motions to dismiss were fully

15  briefed.  *See* Universal Leader Adversary Proceeding Docket Nos. 257, 259, 281, and 305.

16        95.    After extensive briefing on the motions to dismiss, the Court entered its

17  memorandum decision on August 17, 2021, dismissing the Universal Leader Adversary

18  Proceeding against defendants Universal Leader Investment Limited, Glove Assets, Truly Great

19  Global Limited, and Li Qi without leave to amend.  Universal Leader Adversary Proceeding

20  Docket No. 314.

21        96.    On August 31, 2021, the Trustee filed its notice of appeal, appealing the Court's

22  final judgment dismissing the Universal Leader Adversary Proceeding against defendants

23  Universal Leader Investment Limited, Glove Assets, Truly Great Global Limited, and Li Qi.

24  Universal Leader Adversary Proceeding Docket No. 328.

25        97.    On September 3, 2021, defendants Universal Leader Investment Limited, Glove

26  Assets, and Truly Great Global Limited filed a motion for payment of attorneys' fees.  Universal

27  Leader Adversary Proceeding Docket No. 334.  The Trustee filed its objection to the motion for

28  attorneys' fees on October 13, 2021.  Universal Leader Adversary Proceeding Docket No. 352.

1621564503

Defendants Universal Leader Investment Limited, Glove Assets, and Truly Great Global Limited filed a reply brief in support of their motion on October 27, 2021. Universal Leader Proceeding Docket No. 354. A hearing on the motion for payment of attorneys' fees was continued pending resolution of the appeal.

98. On December 30, 2021, the Trustee filed his opening brief in the appeal (the "Universal Leader Appeal") of the dismissal order, followed by the appellees' opening brief on March 28, 2022, and the Trustee's reply brief on April 13, 2022. Case No. 21-cv-07572, Docket Nos. 30, 43, and 44. On March 26, 2024, the District Court filed under seal its opinion regarding the Universal Leader Appeal. *Id.*, Docket No. 54. On June 26, 2024, the Trustee filed a redacted copy of the District Court's rulings in the Adversary Proceedings in each of the appeal cases. D.C. Case No. 2:21-cv-07572, Docket. No. 68; D.C. Case No. 2:22-cv-02004, Docket. No. 105; D.C. Case No. 2:22-cv-06637, Docket. No. 95. The Trustee filed a copy of redacted consolidated rulings on the docket in this bankruptcy case as well. Docket No. 2407.

99. On May 5, 2022, defendants Universal Leader Investment Limited and Glove Assets filed a motion to enjoin the Trustee from asserting avoidance actions in Singapore. Universal Leader Adversary Proceeding Docket No. 360. The Trustee filed his objection to the motion on May 18, 2022. Universal Leader Adversary Proceeding Docket No. 363. Defendants Universal Leader Investment Limited and Glove Assets filed a reply brief in support of the motion on May 25, 2022. Adversary Proceeding Docket No. 371. The Court entered the injunction on August 22, 2022. Adversary Proceeding Docket No. 386. The Trustee filed a notice of appeal from the injunction and election to the district court on September 1, 2022. Adversary Proceeding Docket No. 395. The parties have agreed to stay the appeal of the injunction pending resolution of the appeal of the dismissal order. On March 26, 2024, the District Court filed under seal its opinion regarding the Universal Leader Appeal.

100. Similar to the Bombardier Appeal and the CAVIC Appeal, during the Thirteenth Interim Period, DLA Piper spent considerable time analyzing the District Court's opinion regarding the Universal Leader Appeal, preparing for and attending mediation, and ultimately beginning work on drafting opening appellate briefs before the Ninth Circuit Court of Appeals.

1621564503

101.    During the Thirteenth Interim Period, DLA Piper continued its extensive work in connection with the Universal Leader Appeal, including analyzing Ninth Circuit briefing schedules, reviewing and revising the mediator's orders, and actively engaging in ongoing settlement negotiations.  The team, under the supervision of senior partners John Lyons and Jeffrey Torosian, reviewed updated scheduling orders, coordinated strategy calls, and drafted and revised settlement materials.  Work also included assessment of law of the case issues, claim liquidation, and distribution metrics.  DLA also maintained consistent communication with the Trustee and opposing counsel concerning case management, appeal deadlines, and the status of settlement discussions.

### iv.    The New Target Adversary Proceeding
### (*King v. New Target Investments Limited, et al.*, Case No. 18-01340-SK)

102.    On October 29, 2018, the Trustee commenced the New Target Adversary Proceeding by filing a complaint (the "Complaint") against defendants New Target Investments Limited ("New Target"), Kebo Wu, Du Yan, Guoyue (Grace) Huang, Fok Kin Kanning, Linkage Access Limited ("Linkage"), Misaki Go, and John Doe Corporation.  *See* New Target Adversary Proceeding, Docket No. 1.  The Trustee commenced the New Target Adversary Proceeding to recover from the defendants the value of the Dragon Pearl, a 70-foot luxury yacht wrongfully purchased by Cassidy, the Debtors' former managing director, with misappropriated Debtor funds in the amount of AUD $4,492,034.82 (US $3,172,565.18 as of the commencement of the New Target Adversary Proceeding) and enforce the automatic stay to recover attorneys' fees and other costs incurred by reason of the defendants' stay violations.

103.    After New Target and Linkage failed to answer or otherwise respond to the Complaint, the Clerk entered default against each of those defendants.  New Target Adversary Proceeding, Docket Nos. 18 and 19.  New Target and Linkage then moved to set aside the defaults entered against them, and the Court granted the relief following briefing by the parties.  New Target Adversary Proceeding, Docket Nos. 46 and 47.

104.    On September 13, 2019, the Trustee filed the amended complaint (the "Amended Complaint") against New Target, Linkage, Kebu Wu, and Dragon Pearl Limited, the entity that

owned the Dragon Pearl.  Like the Complaint, the Amended Complaint sought recovery of the value of the Dragon Pearl from the defendants.  *See* New Target Adversary Proceeding, Docket No. 60.  Each defendant failed to answer or otherwise respond to the Amended Complaint.  The Trustee obtained entry of default against New Target, Linkage, and Dragon Pearl Limited.  New Target Adversary Proceeding, Docket Nos. 88, 89, 103.

105.    On March 5, 2020, the Trustee, after multiple good faith attempts to serve defendant Kebo Wu, moved for alternative service under Rule 4(f)(3) of the Federal Rules of Civil Procedure.  New Target Adversary Proceeding, Docket No. 106 (the "Alternative Service Motion").  The deadline for interested parties to respond to the Alternative Service Motion was April 1, 2020, and no responses were filed or received.  On April 17, 2020, the Trustee filed a certificate of no objection with respect to the Alternative Service Motion.  New Target Adversary Proceeding, Docket No. 119.  On June 3, 2020, the Court entered an order granting the Alternative Service Motion.  New Target Adversary Proceeding, Docket No. 125.

106.    After Kebo Wu, a businessman who controlled New Target, failed to answer or otherwise respond the Amended Complaint, on August 17, 2020, the Clerk entered default against him.  New Target Adversary Proceeding, Docket No. 142.

107.    On February 11, 2021, the Trustee filed a motion for default judgment against defendants New Target, Linkage, Kebo Wu, and Dragon Pearl Limited.  New Target Adversary Proceeding, Docket No. 161.

108.    On August 12, 2021, the Court entered an order entering final judgment against the defendants New Target, Linkage, Kebo Wu, and Dragon Pearl Limited, and declaring the Dragon Pearl Limited the alter ego of Zetta PTE, and holding that Dragon Pearl Limited's assets, including the Dragon Pearl, are "property of the estate" of debtor Zetta PTE.  New Target Adversary Proceeding Docket No. 209.

109.    On April 28, 2021, the Trustee filed a motion to substantively consolidate the estate of Zetta PTE with Dragon Pearl Limited and an amended motion for default judgment against the New Target defendants.  The Court entered an order granting the motion to substantively consolidate the estates of Zetta PTE with the estate of Dragon Pearl Limited on July 7, 2021.  Main

1    Case Docket No. 1553.

2    110.    On September 30, 2021, the Court entered an order closing the New Target
3    Adversary Case due to the final judgment being entered (the "US Final Judgment").  New Target
4    Adversary Proceeding Docket No. 219.

5    111.    On December 15, 2021, the Trustee moved against Linkage in the Supreme Court
6    of Victoria at Melbourne, seeking recognition and enforcement of the US Final Judgment.  The
7    Trustee sought an order that Linkage pay the judgment debt of USD 4,839,043.26.

8    112.    On March 31, 2022, the Supreme Court of Victoria at Melbourne entered an
9    enforcement order against Linkage for the amount of the judgment debt.  The AUD equivalent of
10   the judgment debt is AUD 6,592,271.92 using the Reserve Bank of Australia exchange rate on
11   August 12, 2021, of 0.73439 US dollars per Australian Dollar.  The judgment of the Supreme
12   Court of Victoria was registered in the Supreme Court of Queensland on April 29, 2022.

13   113.    During the Thirteenth Interim Period, DLA Piper assisted the Trustee with
14   preparing and filing the *Chapter 7 Trustee's Motion for an Order Approving Entry into Sale*
15   *Proceeds Deed under Section 363 of the Bankruptcy Code* [Main Case Docket No. 2319] seeking
16   entry of a sale order authorizing the sale of the Dragon Pearl to Maritimo Offshore Pty Ltd., which
17   sought to bring substantial value to the Debtors' estates—approximately AUD $1,650,000 less
18   transactional costs.  On May 15, 2024, the Court denied the motion. [Main Case Docket No. 2368].

19   114.    During the Thirteenth Interim Period, DLA Piper also spent substantial time
20   assisting the Trustee with his enforcement and recovery efforts following entry of the U.S. and
21   Australian judgments.  These efforts included preparing and finalizing a motion and accompanying
22   declarations to expend funds in connection with a sale of the Dragon Pearl and coordinating with
23   counsel in Australia and the British Virgin Islands regarding enforcement strategies.  DLA Piper
24   attorneys also engaged in extensive analysis of international recovery avenues, prepared for and
25   filed court documents related to the Dragon Pearl disposition, and advised the Trustee on next
26   steps for recovering on the outstanding judgments.

27                    **COMPENSATION FOR SERVICES RENDERED**

28   115.    All services for which DLA Piper requests compensation were performed for, or

on behalf of, the Chapter 7 Trustee.  In representing the Trustee, DLA Piper assembled a team of attorneys with global expertise to efficiently and safely wind down the estates, liquidate assets, minimize administrative obligations, seek global recognition in other countries, investigate the prepetition affairs of the Debtors to determine causes of action and, upon identification of viable claims, prosecute adversary proceedings and other actions to recover assets for the benefit of the estates.

116.    Throughout the Thirteenth Interim Period, the Trustee was represented by a core team comprised of John K. Lyons, Jeffrey S. Torosian, Joseph A. Roselius, Gregory M. Juell, Devin J. Carpenter and Desiree Moshayedi.  John K. Lyons, a senior bankruptcy partner, is responsible for the overall engagement while Jeffrey S. Torosian, a senior litigation partner, and Joseph A. Roselius, a junior litigation partner, are primarily responsible for leading the prosecution of the Adversary Cases and other litigation-related matters.  Gregory M. Juell and Desiree Moshayedi, associates, are the primary bankruptcy attorneys and Devin J. Carpenter, associate, is the primary litigation attorney working on the engagement during the Thirteenth Interim Period. Natalie Caton, partner, and Aimee Griffin and Rory Campbell, solicitors, are the primary attorneys working on the judgment enforcement and asset recovery matters in Australia.

117.    The core team actively participated in the global representation of the Trustee in all facets of these cases.  By assembling a core team, DLA Piper provided timely advice to the Trustee, eliminated unnecessary duplication of effort, and developed strategies with the benefit of a comprehensive understanding of factual and legal issues faced by the Trustee.  The core team has dedicated substantial time to this representation to the exclusion of other potential clients and, in doing so, has developed deep expertise in these matters.

118.    As further detailed below, the core team coordinated with other attorneys of DLA Piper to provide general and specialized global expertise to assist the Trustee in performing his duties on behalf of the estates.

119.    During Thirteenth Interim Period, DLA Piper received no additional payment and no promises for payment from any source for services rendered or to be rendered in any capacity whatsoever in connection with the matters covered by this Application.  There is no agreement or

understanding between DLA Piper and any other person, other than the partners of DLA Piper and its affiliates entities, for the sharing of compensation to be received for services rendered in these chapter 7 cases.

120.    DLA Piper made numerous fee reductions prior to filing this Application including eliminating certain fees incurred by timekeepers that could be viewed as duplicative or otherwise inefficient.

121.    DLA Piper has addressed several issues raised by the Fee Examiner, which has resulted in a further reduction of $100.40 in fees incurred during the Thirteenth Interim Period.

122.    DLA Piper submits that the fee reductions are significant and result in a meaningful reduction in chapter 7 professional fees that will enhance the Trustee's ability to ultimately make distributions to creditors of the estates.

123.    The Trustee estimates that funds remaining after the interim payment of fees to chapter 7 professionals will be adequate to fund an interim distribution, for which the Trustee intends to file a motion seeking approval in the near term, as well as the continued prosecution of the remaining litigation.

## CLAIMS AND PROPOSED INTERIM DISTRIBUTION

124.    As of the filing of this Application, the funds held by the Trustee total $12,546,992.22.  The total estimated fees of chapter 7 professionals incurred to date along with the chapter 11 administrative claims exceeds the total funds currently held by the Trustee.  In particular, total outstanding holdbacks under the first, second, third, fourth, fifth, sixth, seventh, eighth, ninth, tenth, eleventh and twelfth interim fee approval orders, the amounts sought to be paid to DLA Piper under its fourth, fifth, sixth, seventh, eighth, ninth, tenth, eleventh and twelfth interim fee applications, which have not been approved, and the amounts sought to be paid under the thirteenth interim fee requests total approximately $22 million**.**

125.    There are approximately $11.2 million in remaining Chapter 11 administrative claims (excluding duplicate claims), which are still subject to significant downward claims adjustment and liquidation, including nearly $4 million in administrative claims filed by CAVIC and its statutory trusts to which the Trustee has filed a motion to disallow, which the Court denied

1    without prejudice based on a finding that it lacked jurisdiction pending the Ninth Circuit appeal.

2    The estimate also includes $4.6 million in Chapter 11 professional fees.  The Trustee, through

3    special counsel Leech Tishman, is handling a significant portion of the claims reconciliation and

4    objection process.  Accordingly, the Trustee is taking to steps to prepare the cases for closure

5    pending resolution of the CAVIC Adversary Proceeding and litigation in Singapore and Australia.

6    Once these adversary and related foreign proceedings have been resolved, the Trustee hopes to be

7    in a position to promptly close the cases and, if a successful resolution is obtained, will be in a

8    position to make a meaningful distribution to stakeholders at that time (in addition to an interim

9    distribution).

10        126.    As stated in his declaration, the Trustee believes he will ultimately prevail in the

11   CAVIC Adversary Proceeding and the related foreign proceedings and funds recovered by the

12   estates will be sufficient to fund a meaningful distribution to other stakeholders after resolving

13   Chapter 7 administrative expenses.

14                      **FEE STATEMENT AND SUMMARY**[1]

15        127.    The fee statements for DLA Piper for the Thirteenth Interim Period arranged in

16   chronological order are attached hereto as **Exhibit D-1** through **Exhibit D-3** (the "Fee

17   Statements").  These Fee Statements contain daily time logs describing the time spent by each

18   attorney and paraprofessional during the Thirteenth Interim Period.  The hourly rates set forth in

19   the Fee Statement are those customarily charged by DLA Piper for similar legal services.  DLA

20   Piper's fees for services rendered by lawyers, paralegals and other professionals are customary

21   and usual in the legal community in which DLA Piper practices.  Summaries including the

22   attorneys and paraprofessionals, their positions, courts of admission and year of bar admittance,

23   starting year with DLA Piper, hourly rate, total hours spent, and fees incurred during the Thirteenth

24   Interim Period are attached hereto as **Exhibit A-1** through **Exhibit A-2**.

25        128.    To the best of DLA Piper's knowledge, these Fee Statements comply with sections

26   330 and 331 of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and Rule 2016-

27

28
---
[1]       The Fee Statements are exclusive of the $100.40 in additional fee reductions and $1,023.19 in expense
reimbursement reductions agreed upon by DLA Piper and the fee examiner.

1621564503

1 of the Local Rules.

## ACTUAL AND NECESSARY EXPENSES

129.    DLA Piper seeks allowance and payment of the sum of $61,272.19 for reimbursement of actual and necessary expenses for the Thirteenth Interim Period.  The Fee Statements include detail of actual and necessary expenses and daily logs of expenses incurred by DLA Piper during the Thirteenth Interim Period.  In its billing discretion, DLA Piper reduced certain expenses in order to ensure that all expenses fall within a reasonable range.  A summary of expenses incurred by DLA Piper during the Thirteenth Interim Period is attached hereto as **Exhibits C-1** through **C-3**.

130.    DLA Piper requests the Court approve for payment all expenses incurred and submitted in the fourth ($78,846.07), fifth ($95,019.68), sixth ($27,967.45), seventh ($27,341.26), eighth ($12,739.05), ninth ($60,423.60), tenth ($45,168.31), eleventh ($43,792.53), twelfth ($53,746.47) and thirteenth ($61,272.19) interim fee applications, for a total payment of $506,316.61.  These expenses represent disbursements made by DLA Piper to third parties for work and/or services provided to the Trustee for the benefit of the bankruptcy estates, some of which are covered by the various budget orders entered by the Court.  None of these expenses reflect reimbursements for payments made to DLA Piper for services provided by its attorneys or paraprofessionals.

## SUMMARY OF SERVICES RENDERED

131.    DLA Piper, by and through the below-named persons, has provided a broad range of services to the Chapter 7 Trustee in connection with these Chapter 7 Cases during the Thirteenth Interim Period.  In rendering such services, DLA Piper worked with other estate professionals and all parties in interest to administer these cases as efficiently and effectively as possible.

132.    The services rendered by DLA Piper during the Thirteenth Interim Period were necessary to address a multitude of issues both unique to the Debtors' cases and typical of large corporate debtors in similar cases of this magnitude and complexity.

133.    DLA Piper details the services provided in the Summary of Services by Project section below.

134.    The partners, of counsel, associates, and solicitors of DLA Piper who rendered professional services in these cases during the Thirteenth Interim Period are: John K. Lyons (Partner), Jeffrey S. Torosian (Partner), Joseph A. Roselius (Partner), Natalie Caton (Partner), Gregory M. Juell (Associate), Devin J. Carpenter (Associate), Robert Moskalewicz (Associate), Desiree Moshayedi (Associate), Aimee Griffin (Solicitor), and Rory Campbell (Solicitor).

135.    The paraprofessional of DLA Piper who provided services to these attorneys in these cases during the Thirteenth Interim Period is: William L. Countryman, Jr. (Paralegal / Case Manager).

## SUMMARY OF SERVICES BY PROJECT

136.    DLA Piper has summarized the key matters in the Trustee's representation as follows: (A) General Chapter 7 Matters, (B) Jetcraft Adversary Proceeding, (C) CAVIC Adversary Proceeding, (D) Universal Leader Adversary Proceeding, (E) New Target Adversary Proceeding/Australia, (F) Investigation, and (G) Singapore.  Within each of the matters, the Trustee has assigned task codes consistent with the Guidelines established by the Office of the United States Trustee.  These matter summaries and task code descriptions are general descriptions with a more detailed identification of the actual services provided in the Thirteenth Interim Period set forth in the Fee Statement.  The attorneys and paraprofessionals who rendered services relating to each category in the Thirteenth Interim Period are identified, along with the number of hours for each individual and the total compensation sought for each category in the Fee Statement. Although every effort has been made to properly and consistently categorize the actual services provided into the appropriate category, certain tasks could properly be categorized into two or more task codes.  A summary of the hours spent and fees incurred by DLA Piper during the Thirteenth Interim Period broken down by categories is attached hereto as **Exhibit B.**

//

//

//

//

//

137.    The key matters, task codes and the portion of the aggregate amount attributable to international offices[2] are summarized below:[3]

138.    **General Chapter 7 Matter:** [$829,925.00].  During the Thirteenth Interim Period, DLA Piper, as counsel to the Trustee, undertook a variety of general chapter 7 tasks that were essential to enable the Trustee to exercise his duties to administer the cases.

139.    This matter includes general case administration tasks such as filing case status reports, filing pleadings and notices, service of pleadings, preparation and filing of budgets and approval requests, reports with the Office of the United States Trustee, communications with creditors, communications and meetings with other constituents including the Department of Justice and other governmental authorities, litigation funding efforts, and document retrieval.

140.    As part of his duties, the Trustee has continued to work with governmental authorities across the globe in connection with their efforts to cooperate in investigations and recover assets for the estates.  So far, governmental authorities seized the Dragon Pearl (Australia Federal Police executing a US federal warrant), which preserved this asset to enable the Trustee to execute the *Default Judgment Against New Target Investments Limited, Linkage Access Limited, Dragon Pearl Limited, and Kebo Wu* [Adv. Case No. 2:18-ap-01340-SK; Docket No. 209]. Coordination with governmental authorities also enabled the Truste to recover just under $1 million in proceeds from the sale of Cassidy's Ardmore apartment (Singapore Police, Civil Affairs Division).  The Trustee notified the governmental authorities that he intends to participate in victim's restitution programs on behalf of the estates once proceeds are available for distribution to victims of Cassidy's misdeeds.

141.    The General Chapter 7 matter also includes time spent working on other litigation, claims administration, and asset recovery efforts other than the prosecution of the Adversary Cases.  Throughout the Thirteenth Interim Period, DLA Piper worked on a variety of tasks, including drafting budget requests, preparing status reports on the various adversary proceedings

---

[2]    DLA Piper's international offices did not assign the standardized task codes to their billed services.  However, their services are included in the appropriate subcategories below.

[3]    The amounts in the subcategories below are exclusive of the $100.40 additional reduction agreed upon by DLA Piper and the fee examiner.

and the administration of the chapter 7 cases, working on collection efforts and enforcement of judgments against entities in Singapore, and analysis of the claims register for potential omnibus claims objections and ultimate liquidation.

142.    In addition, DLA Piper provided continued assistance with respect to general case management and administration efforts, including extensive work on claims reconciliation, liquidation strategies, and ongoing enforcement of judgments.  During the Thirteenth Interim Period, DLA Piper also worked with the Trustee to review judge reassignments and develop strategies for final case resolution.  DLA Piper incurred $1,760,445.10 in fees and $61,272.19 in expenses during this period, the majority of which related to claims administration and objections, case administration, and the preparation of fee applications for the Trustee and other professionals. This work was essential to supporting the Trustee's ongoing efforts to administer the estates and prepare for the eventual closing of the cases.

143.    Finally, DLA Piper spent significant time during the Thirteenth Interim Period preparing fee applications filed for itself and several of the Trustee's other professionals for over $1,500,000 in fees and expenses incurred from April 1, 2024 through September 31, 2024.  Given the magnitude of the combined fee requests and time period covered, this required a significant amount of time to prepare fee applications for the Court's and creditors' review (and the advance review of the Fee Examiner (which resulted in additional concessions).

144.    **Jetcraft Adversary Proceeding:** [$577,158.00].  As outlined above, the Jetcraft Adversary involved highly complex fraud, avoidance claims, and other claims prosecuted by the Trustee against Bombardier, Inc. Bombardier Aerospace, Inc. and Jahid Fazal-Karim and a number of his affiliates including Jetcraft Corporation and related defendants.  Given the hundreds of millions of dollars taken from the estates, at the expense of creditors, by Cassidy, Bombardier and Fazal-Karim and his companies through Cassidy's fraudulent and coordinated aircraft purchasing scheme, the Trustee's viewed the Jetcraft Adversary Proceeding as the estates' most valuable asset. It resulted in a settlement payment of $15 million by the ECN Defendants along with a release of over $13 million in chapter 11 administrative claims and $185 million in unsecured claims against the estates.  In addition, the settlement agreement entered into with the Jetcraft defendants provides

31

for an $18 million payment to the estates and with withdrawal of more than $15 million in proofs of claim for the benefit of parties in interest.  Accordingly, the Trustee's professionals, including DLA Piper, devoted significant time and effort in prosecuting the Jetcraft Adversary Proceeding during the Thirteenth Interim Period.

145.    During the Thirteenth Interim Period, the focus of the prosecution of the Jetcraft Adversary Proceeding was on the Bombardier Appeal, including drafting a statement in response to the Ninth Circuit's order questioning its jurisdiction to hear the issue appealed by Bombardier, as well as preparing for and attending mediation.  In addition, DLA Piper engaged in extensive drafting and negotiation of a comprehensive settlement agreement with the Jetcraft and Bombardier Defendants as noted above, including multiple rounds of revisions to the settlement agreement and dismissal stipulations, the development and analysis of distribution scenarios, and preparation of a detailed motion for approval of the settlement under Bankruptcy Rule 9019 and supporting documents.  The team participated in a two-day mediation in New York in November 2024 and continued to work closely with the mediator, Trustee, and opposing counsel through March 2025 to finalize the settlement documentation and prepare for court approval.  These efforts represented the most significant development in the Jetcraft Adversary Proceeding during this period and were essential to advancing toward resolution of the estates' largest pending litigation asset.

146.    Jeffery Torosian, Joseph Roselius and Devin Carpenter spearheaded the prosecution of the Jetcraft Adversary Proceeding.  John Lyons has took the lead on settlement efforts and bankruptcy related claims with assistance from Greg Juell.  Other timekeepers assisted the core group under their guidance and direction.

147.    **Universal Leader Adversary Proceeding:** [$42,708.00].  As stated above, DLA Piper assisted the Trustee in prosecuting the Universal Leader Adversary Proceeding that sought the avoidance and recovery under Section 548 of the Bankruptcy Code of over $70 million in transfers made to the defendants, enforcement of the automatic stay against Universal Leader, and other relief.  Like the Jetcraft Adversary Proceeding, the Universal Leader Adversary Proceeding involves avoidance claims arising under both the actual intent to defraud and constructive fraud

32

1  prongs of Section 548 of the Bankruptcy Code, preference claims arising under Section 547 of the

2  Bankruptcy Code, and other claims.

3      148.    During the Thirteenth Interim Period, the focus of the prosecution of the Universal

4  Adversary Proceeding was on the Universal Leader Appeal, including preparation for and

5  attending mediation and drafting an opening brief, including extensive research to update case law

6  on the issues presented in the appeal.  DLA Piper also reviewed multiple amended briefing and

7  mediation orders, evaluated settlement proposals, and engaged in regular strategy calls with the

8  Trustee and co-counsel.  The team analyzed claim liquidation issues, the law of the case, and the

9  effect of settlement releases on remaining claims.  Work also included review and coordination

10  regarding the Ninth Circuit's revised appeal briefing schedule.  Ultimately, the Trustee's and DLA

11  Piper's efforts were successful, and culminated in a settlement agreement under Rule 9019 that

12  provides for, among other things, that the settling parties will support the Trustee's proposed

13  interim distribution plan, the Trustee's proposed contingency fee arrangement for DLA Piper with

14  respect to the CAVIC Adversary Proceeding, and mutual releases by the Trustee and settling

15  defendants, among other things.

16      149.    John Lyons was the restructuring partner responsible for the Universal Leader

17  Adversary Proceeding with assistance from bankruptcy associate Greg Juell and aviation specialist

18  Lucien White.    Jeffrey Torosian, Joseph Roselius and Devin Carpenter led the litigation

19  coordination and assistance.

20      150.    **CAVIC Litigation:**  [$39,074.50].    On September 13, 2019, the Trustee

21  commenced the CAVIC Adversary Proceeding to recover, among other items, a $30 million

22  refund..  During the Thirteenth Interim Period, DLA Piper represented the Trustee in connection

23  with the continued prosecution of the CAVIC Adversary Proceeding.

24      151.    During the Thirteenth Interim Period, the focus of the prosecution of the CAVIC

25  Adversary Proceeding was on the CAVIC Appeal, including preparation for and attending

26  mediation and drafting an opening brief, including extensive research to update case law on the

27  issues presented in the appeal.  DLA Piper attorneys continued working extensively on the CAVIC

28  Appeal, including revising the draft appellate brief, analyzing updated Ninth Circuit rulings

33

relevant to fraudulent transfers and security assignments, and coordinating around the impact of the mediation on the briefing schedule. The team also reviewed multiple amended briefing and mediation orders, updated internal calendars, and developed an updated appellate strategy. John Lyons reviewed underlying opinions and appellate briefs, and led efforts to formulate a revised appellate approach.

152.    To ensure close coordination of these efforts, development of optimal strategies, and efficiency of legal services, John Lyons, a senior bankruptcy partner, and Jeff Torosian, a senior litigation partner, had overall supervision of the CAVIC Adversary Proceeding, coordinated and reviewed all research projects conducted by the core team of associates (Devin Carpenter and Greg Juell) to avoid duplication of effort and reviewed and revised all work product and pleadings. Lyons and Torosian generally split matters between each other with Lyons taking the lead on bankruptcy issues (security assignment, fraudulent transfer issues, recharacterization) and Torosian on general litigation issues (choice of law, confidentiality, litigation pleadings). Joseph Roselius, a junior partner and also a member of the core team and the lead partner on the Jetcraft Adversary Proceeding, also worked closely with the team of lawyers working on CAVIC Adversary Proceeding matters to insure consistency of pleadings and development of case strategies.

153.    **DLA Australia:** [$271,680.00].  As stated above, DLA Piper has assisted the Trustee to undertake significant efforts in Australia in seeking a recovery for the estates in connection with the recovery of the Dragon Pearl, a luxury yacht that Cassidy obtained with misappropriated funds.

154.    The core team worked closely with DLA Piper's offices in Australia in its work related to the seizure of the Dragon Pearl, as well as enforcement in Australia of the default judgments obtained against the defendants in the New Target Adversary Proceeding. The DLA Australia team was led by Natalie Caton.

### DLA PIPER'S REQUESTED COMPENSATION AND REIMBURSEMENT OF EXPENSES SHOULD BE ALLOWED

155.    Section 330 of the Bankruptcy Code governs compensation of professionals in a

1621564503

bankruptcy case and provides that, when determining the amount of reasonable compensation to award to a professional, the Court should consider the nature, extent, and value of the services to the bankrupt estate and all other relevant factors, including the following:

    (a)    the time spent on such services;

    (b)    the rates charged for such services;

    (c)    whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

    (d)    whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

    (e)    with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

    (f)    whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

156.    In determining the reasonableness of a professional's requested fee award, courts in the Ninth Circuit and in other districts consider the following twelve factors articulated in *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717 (5th Cir. 1974) (collectively, the "Johnson Factors"):

(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.*; *see also, In re Harris-Nutall*, 572 B.R. 184, 197 (Bankr. N.D. Tex. 2017).

157.    DLA Piper respectfully submits that the services rendered and expenses incurred during the Thirteenth Interim Period for which DLA Piper seeks compensation and reimbursement are reasonable based on the standard set forth in section 330 of the Bankruptcy Code and the

Johnson Factors.

(a)    <u>Time and labor required</u>: DLA Piper expended 1,195.20 hours of professional time on behalf of the Chapter 7 Trustee during the Thirteenth Interim Period.  DLA Piper's complete time records during the Thirteenth Interim Period arranged in chronological order and by activity code category are attached hereto as **<u>Exhibits D-1 through D-3</u>**.  The Fee Statements' narrative descriptions evidence the time and labor employed in representing the Chapter 7 Trustee.

(b)    <u>Novelty and difficulty of questions and matters resolved</u>:  The Chapter 7 Cases and the legal issues presented therein required a high level of professional skill and expertise from professionals within DLA Piper's global bankruptcy, white collar/investigatory, aircraft finance, litigation and other practice groups.  DLA Piper's global breadth of services and expertise was particularly suited to assist the Trustee in performing his duties in the context of the Debtors' former private luxury aircraft charter business and multimillion dollar fraudulent aircraft purchasing scheme involving complex multijurisdictional financing structures perpetrated by Cassidy and other third parties.

(c)    <u>The reputation and skill of the attorneys providing the services</u>:  As noted above, DLA Piper has drawn upon the skill of some of its most experienced attorneys in rendering its services to the Chapter 7 Trustee during the Thirteenth Interim Period.

(d)    <u>Preclusion of other employment</u>:  Despite DLA Piper's size, these Chapter 7 Cases required considerable time commitments from several DLA Piper attorneys and paraprofessionals, and during the course of these chapter 7 cases, DLA Piper's representation of the Chapter 7 Trustee precluded employment by other clients.

(e)    <u>Fees charged and fees awarded in similar cases</u>:  The fees sought by DLA Piper in this Application are commensurate with fees awarded to DLA Piper in other cases and the fees charged by comparable law firms.

(f)    <u>Time limitations</u>:  These chapter 7 cases required DLA Piper to perform an extensive variety of services and to address a range of issues on behalf of the Chapter 7 Trustee, often under significant time constraints.  The presence of DLA Piper's global network of attorneys greatly assisted the Trustee in taking timely action to secure records and assets without costly delay.

(g)    <u>Whether the fee is fixed or contingent</u>:  All fees sought by professionals under sections 330 and 331 of the Bankruptcy Code are contingent prior to approval by the Court.

(h)    <u>The "undesirability" of the case</u>:  Representation of the Chapter 7 Trustee in these chapter 7 cases was not undesirable.  However, DLA Piper undertook, and continues to undertake, a significant risk of nonpayment of fees due to the uncertainty of collection of assets and viability of claims against third parties.  As of the date of conversion, the estates had minimal funds in their bank accounts.  Due to the nature of the Debtors' business and Section 1110 of the Bankruptcy Code that allowed aircraft financiers and lessors to immediately repossess aircraft,

36

there were relatively insignificant "hard" assets that the Trustee could sell to fund an investigation.  Accordingly, DLA Piper took on significant credit risk if the investigation revealed that the estates' claims lacked merit.

(i)    The Chapter 7 Trustee's and DLA Piper's professional relationship:  The Chapter 7 Trustee is a partner of DLA Piper.

(j)    Awards in Similar Cases: As set forth above, the Court has the ability and power to award fees and costs to DLA Piper.  Bankruptcy courts around the country have awarded similar fees for the same time and quality of work performed.

158.    Further, DLA Piper has assigned the work performed in these chapter 7 cases to attorneys having the experience and specialization to perform the services required efficiently and properly.  The partners, counsel, and associates providing the services for which compensation is sought under this Application specialize in the fields of insolvency, aircraft finance, white collar/investigations, and litigation in offices located around the globe where the Debtors formerly conducted business.  Moreover, DLA Piper, as a general practice, seeks to use the services of paraprofessionals and legal assistants supervised by attorneys whenever appropriate in order to limit costs and more efficiently utilize the services of attorneys.  DLA Piper has followed this practice with respect to the services rendered to the Chapter 7 Trustee wherever possible.

159.    Finally, in rendering services to and on behalf of the Chapter 7 Trustee, DLA Piper has taken every care to provide the legal services as efficiently as possible and to avoid duplication of services.  In this regard, as much as possible, day-to-day legal work, including, but not limited to, drafting of pleadings, memoranda, stipulations, agreements and correspondence has been performed by junior to mid-level associates.

160.    With respect to the DLA Piper's requested expenses reimbursement, section 330(a)(1)(B) of the Bankruptcy Code provides for reimbursement to approved professionals for all "actual, necessary expenses." 11 U.S.C. § 330(a)(1)(B).  DLA Piper submits that the expenses incurred in these chapter 7 cases were all necessary in the rendition of services for the Chapter 7 Trustee.

## FEE EXAMINER, ADDITIONAL FEE ACCOMMODATIONS, COST BENEFIT ANALYSIS, AND BUDGET PROTOCOL

161.    DLA Piper and the other Chapter 7 professionals have provided invoices and time

detail to the Fee Examiner in advance of filing the Thirteenth Interim Requests, have responded to her requests for supplemental information, and successfully addressed issues she has raised culminating in a further fee reduction of $100.40 and expense reimbursement reduction of $1,023.19.

162.    Finally, certain time entries contained in DLA Piper's billing detail have been redacted to protect against divulging confidential litigation or asset recovery strategies and/or waiving attorney work product/attorney-client or similar privileges under applicable law.  However, the complete unredacted entries have been shared with the Fee Examiner and the Office of the United States Trustee and will be available upon request for in camera review by the Court.

## **CERTIFICATION**

163.    Attached hereto as **Exhibit E** is a declaration and certification by the Trustee indicating that he has reviewed this Application and has no objection to it.

164.    Furthermore, DLA Piper certifies that the LEDES files provided to the Fee Examiner reflect the time entries supporting the interim fees and costs requested to be paid hereunder.

## **NOTICE**

165.    DLA Piper will serve this Application in accordance with the Bankruptcy Rules and the Local Rules.  Any objections to this Application must be in writing, comply with the Bankruptcy Rules and the Local Rules, and be served upon DLA Piper so as to be received no later than **November 4, 2025 at 12:00 (noon) (PST).**

**WHEREFORE**, DLA Piper respectfully requests that the Court enter an order authorizing (i) for the period from October 1, 2024 through March 31, 2025, interim allowance to DLA Piper of $1,760,445.10 as compensation and reimbursement of actual and necessary expenses of $61,272.19; (ii) payment to DLA Piper of seventy-five percent (75%) of the allowed compensation ($1,320,333.83) and one hundred percent (100%) of the allowed expenses ($61,272.19) for a total of $1,381,606.02; and (iii) grant such other and further relief to DLA Piper as is just and appropriate under the circumstances.

38

Dated: October 28, 2025          **DLA PIPER LLP (US)**
          Chicago, Illinois

            /s/  *John K. Lyons*                      

          David M. Riley (SBN 292087)
          John K. Lyons (*Pro Hac Vice*)
          Joseph S. Torosian (*Pro Hac Vice*)
          Joseph A. Roselius (*Pro Hac Vice*)

          *Counsel to the Chapter 7 Trustee*

1621564503