DAVID M. RILEY (SBN 292087)
David.riley@us.dlapiper.com
DLA PIPER LLP (US)
2000 Avenue of the Stars
Suite 400 North Tower
Los Angeles, California 90067-4704
Telephone: (310) 595-3000
Facsimile: (310) 595-3300]

JOHN K. LYONS (*Pro Hac Vice*)
john.lyons@us.dlapiper.com
JEFFREY S. TOROSIAN (*Pro Hac Vice*)
jeffrey.torosian@us.dlapiper.com
JOSEPH A. ROSELIUS (*Pro Hac Vice*)
joseph.roselius@us.dlapiper.com
DLA PIPER LLP (US)
444 West Lake Street, Suite 900
Chicago, Illinois 60606-0089
Telephone: (312) 368-4000
Facsimile: (312) 236-7516

Attorneys for Jonathan D. King as Chapter 7 Trustee

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>ZETTA JET USA, INC., a California corporation,<br><br>Debtor.<br><br>In re:<br><br>ZETTA JET PTE, LTD., a Singaporean corporation,<br><br>Debtor.<br><br>☒ Affects Both Debtors<br><br>☐ Affects Zetta Jet USA, Inc., a California corporation, only<br><br>☐ Affects Zetta Jet PTE, Ltd., a Singaporean corporation, only | Lead Case No.: 2:17-bk-21386-BR<br><br>Chapter 7<br><br>Jointly Administered With:<br>Case No.: 2:17-bk-21387-BR<br><br>**SUPPLEMENTAL APPLICATION OF THE CHAPTER 7 TRUSTEE FOR ENTRY OF AN ORDER (I) MODIFYING THE TERMS OF COMPENSATION OF DLA PIPER LLP (US) AS COUNSEL TO THE TRUSTEE TO A CONTINGENT FEE BASIS WITH RESPECT TO CERTAIN MATTERS AND (II) GRANTING RELATED RELIEF**<br><br>Hearing Date & Time:<br>Date: November 18, 2025<br>Time: 10:00 a.m. (PST)<br>Place: Courtroom 1668<br>      255 East Temple Street<br>      Los Angeles, CA 90012 |

1625274215

Jonathan D. King, solely in his capacity as the duly appointed chapter 7 trustee (the "Trustee") in the above-captioned, jointly administered bankruptcy cases of Zetta Jet USA, Inc. ("Zetta USA") and Zetta Jet PTE, Ltd. ("Zetta PTE" and together with Zetta USA, the "Debtors"), by and through his counsel, DLA Piper LLP (US) ("DLA Piper"), hereby submits this application (this "Application") for entry of an order, substantially in the form attached as **Exhibit A** (the "Proposed Order") (i) authorizing the Trustee to modify the terms of compensation of DLA Piper as counsel to the Trustee to a contingent fee basis with respect to certain matters and (ii) granting related relief. In support of this Application, the Trustee submits the Declaration of Jonathan D. King, attached as **Exhibit B**, and respectfully states as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this Application under 28 U.S.C. §§ 157 and 1334. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory bases for the relief requested herein are sections 327(a), 328(a), 329(b) and 364(c)(1)-(2) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014(a), 2016(b), and 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2014-1 of the Local Bankruptcy Rules for the U.S. Bankruptcy Court for the Central District of California.

## BACKGROUND

**A.    General Background**

2. On September 15, 2017 (the "Petition Date"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").

3. On September 29, 2017, upon the Debtors' emergency motion, the Court entered its *Order Granting Debtors' Emergency Motion to Approve Stipulation for Appointment of a Chapter 11 Trustee Pursuant to 11 U.S.C. § 1104* [Docket No. 120].

4. On October 4, 2017, the Office of the United States Trustee for the Central District of California (the "U.S. Trustee") appointed Jonathan D. King as chapter 11 trustee (the "Chapter 11 Trustee") in the Chapter 11 Cases [Docket No. 155].

5. On October 12, 2017, the U.S. Trustee appointed the Official Committee of

Unsecured Creditors (the "Committee") under section 1102(a)(1) of the Bankruptcy Code [Docket No. 198], as amended on November 20, 2017 [Zetta USA Docket No. 411; Zetta PTE Docket No. 49].

6.  On November 30, 2017 (the "Shutdown Date"), based upon a lack of funds to operate the Debtors' business, the Chapter 11 Trustee shut down operations, terminated all employees and, on December 4, 2017 (the "Conversion Date"), the Court entered its *Order[s] on Debtors' Motion to Convert Case Under 11 U.S.C. §§ 706(a) or 1112(a)* [Zetta USA Docket No. 452; Zetta PTE Docket No. 52] (the "Chapter 7 Cases"). Upon entry of the orders converting the cases, the Committee was disbanded and ceased to exist.

7.  On December 5, 2017, the U.S. Trustee appointed Jonathan D. King as chapter 7 trustee in the Chapter 7 Cases [Zetta USA Docket No. 458; Zetta PTE Docket No. 53].

**B.  Proposed Interim Distribution Motion**

8.  Together with this Application, the Trustee filed the *Motion of the Chapter 7 Trustee for an Order to Make an Interim Distribution to the Holders of Administrative, Priority, and General Unsecured Claims and for Related Relief* (the "Interim Distribution Motion").

9.  As noted in the Interim Distribution Motion, the Trustee has made great strides over the past year in positioning the cases for closure. This year, the Trustee has settled two of the three significant adversary cases – the Jetcraft Adversary Action[1] and the Universal Leader Adversary Action – pursuant to which the estates will recover $18 million and obtained the support of the largest creditor of the estates – Universal Leader – to make a substantial interim distribution to stakeholders including over $10 million to pay outstanding fees to chapter 7 professionals and the Trustee's commission, $3.2 million to chapter 11 administrative claimants, $3.9 million to fund a reserve for the CAVIC Administrative Claims, $394,000 to prepetition priority claimants and $2.35 million to fund a reserve for distributions to general unsecured creditors. The Interim Distribution Plan will also fund a $2.25 million fee reserve to cover professional fees and other costs through case closing.

//

---

[1] Capitalized terms not defined in this Background section are defined as in the Interim Distribution Motion.

1625274215

### C. DLA Piper Fee Reductions

10. As noted in the Interim Distribution Motion, DLA Piper has made significant concessions to enable the Trustee to make distributions of over $8.5 million to junior classes of claimants. First, DLA has agreed to waive over $4.9 million in fees incurred in connection with the CAVIC Adversary Action and objections to CAVIC claims as part of the proposed contingent fee arrangement proposed herein. Second, DLA Piper agreed to seek payment of $3.2 million in fees incurred in connection with the arrest of the Dragon Pearl solely from collections recovered through the enforcement of the New Target judgment against the New Target defendants (other than proceeds recovered from the sale of the Dragon Pearl). Third, DLA Piper has agreed to defer $7 million, or 25%, of its allowed, or sought to be allowed, chapter 7 professional fees until a final plan of distribution. Finally, DLA Piper has agreed to defer $1.2 million, or 60%, of its chapter 11 fees, until a final plan of distribution. All told, DLA Piper has either released, or deferred until a plan of liquidation, over $16.3 million in fees to enable the Trustee to make the proposed distributions to stakeholders under the Interim Distribution Plan while sharply reducing the risk of administrative insolvency.

### D. Proposed Contingent Fee Arrangement

11. Equally important, the willingness of DLA Piper to continue the CAVIC Adversary Action and the motions to disallow the CAVIC Proofs of Claim on a 40% contingent fee basis will significantly reduce incurrence of professional fees following the Interim Distribution through case closure.

12. As noted in the Interim Distribution Motion, the Trustee has finished the prosecution of all of the adversary actions commenced in the bankruptcy cases, except for the CAVIC Adversary Action. Similarly, the Trustee anticipates that he will have administered and liquidated all of the proofs of claim filed in the cases except for the CAVIC Proofs of Claim by year end.

13. Now that the cases have been substantially administered, the Trustee desires to eliminate the incurrence of additional hourly attorney's fees to prosecute the single remaining litigation in these cases.

14. The CAVIC litigation will likely continue for the next two years, if not longer.

4

1625274215

Briefing has been scheduled in the Ninth Circuit appeal and will be completed in mid-March 2026. Although it is difficult to predict when the Ninth Circuit will issue a ruling, it is reasonable to assume that a ruling will be handed down sometime in late 2026 or early 2027. Following the ruling, the Trustee will assess next steps in the CAVIC Adversary Action and renew his motion to disallow the CAVIC Administrative Claims.

15. If the Trustee prevails in the CAVIC appeal and ultimately obtains a judgment in his favor in the CAVIC Adversary Action, the Trustee could recover $30 million plus prejudgment interest from CAVIC. Accordingly, the proposed 40% contingent fee arrangement will allow the Trustee to vigorously pursue these claims which, if he is successful, could result in an additional $18 to 20 million in net recoveries from the CAVIC Adversary Action alone to the estates without further incurrence of hourly legal fees. In addition, successful prosecution of the motion to disallow the CAVIC Administrative Claims on a 40% contingent fee basis could add another $2.34 million (60% of the amount reserved for CAVIC's asserted chapter 11 administrative expense claims—$3,991,897.48 (the "CAVIC Administrative Claim Reserve")) to funds available for distribution to stakeholders without further incurrence of hourly legal fees. Finally, the net recoveries achieved above will allow the Trustee to pay Singapore counsel to prosecute the Singapore unfair preference action (as described in the Interim Distribution Motion), which could bring in another $7 million to the estates, less Singapore counsel's fees.

16. The proposed contingent fee arrangement has the support of key stakeholders of the estates including Universal Leader (the largest unsecured creditor), the other chapter 7 professionals, chapter 11 professionals, many significant chapter 11 administrative claimants, James Seagrim (the chapter 11 DIP lender), and other unsecured creditors.

## **THE CONTINGENT FEE STRUCTURE**

17. The Trustee is seeking to modify DLA Piper's engagement to include the Contingent Fee Matter (as defined below) on a contingent fee basis. As set forth therein, DLA Piper will be entitled to a contingent fee for the legal services rendered in support of the Contingent Fee Matters in the event of a recovery of funds for the benefit of the estates and/or a return of reserves to the Debtors' estates, whether by enforcement of judgment or settlement.

18.    The contingency fee arrangement has three components covering three matters involving CAVIC or its affiliates: (a) 40% of all recoveries from the CAVIC Adversary Action (the "CAVIC Adversary Action Matter"), (b) 40% of all amounts released from the CAVIC Administrative Claim Reserve (the "CAVIC Administrative Claim Objection Matter")[2] and (c) 40% of any amounts released from the 2.35 million general unsecured claims reserve (the "GUC Reserve") that reflect a reduced distribution to CAVIC resulting from a disallowance or reduction of the CAVIC Unsecured Claims (the "CAVIC Unsecured Claim Objection Matter" and, together with the CAVIC Adversary Case Matter and the CAVIC Administrative Claim Objection Matter, the "Contingent Fee Matters").[3]

19.    DLA Piper shall not be entitled to receive any other compensation for its time expended on the Contingent Fee Matters and such payment shall be deemed to satisfy any commission that the Trustee would otherwise be entitled to receive on account of such recoveries from the Contingent Fee Matters, with the net recovery of such funds to be distributed pursuant to a final distribution plan (the "Final Distribution Plan").  DLA Piper will continue to represent the Trustee and the estates on a non-contingency basis based on its hourly rates in connection with all other matters in the Bankruptcy Cases.

20.    The CAVIC Adversary Action Matter: With respect to the first matter, DLA Piper will reduce its Chapter 7 administrative expense claim by the amount of $4.5 million on account of fees previously incurred by DLA Piper in matters relating to CAVIC Adversary Action and included in DLA Piper's fee applications. Further, DLA will only seek payment of $3.2 million in fees incurred in connection with the arrest of the Dragon Pearl solely from collections recovered through the enforcement of the New Target judgment against the New Target defendants (other than proceeds recovered from the sale of the Dragon Pearl).

21.    In addition, the Final Distribution Plan will provide that not less than 10% of the aggregate proceeds of any recovery of funds from CAVIC Adversary Case will be distributed to

---

[2] If amounts are released to estates through an estimation order, DLA Piper agrees to return its 40% contingency fee to the estates if the estimation order is subsequently superseded by a final order of allowance to the extent of any increase in CAVIC's distribution by reason of a higher allowed amount

[3] Costs and reasonable out of pocket expenses, including expert witness and other professional fees, are separate from the contingent fee arrangement and will be paid directly by the estates.

6

1625274215

holders of allowed general unsecured claims.  To the extent that recoveries from the estates' 60% share of any recovery in the CAVIC Adversary Case is insufficient to fund this 10% share, DLA Piper will agree to fund the amount necessary to fully fund this share from its contingent fee.

22. <u>The CAVIC Administrative Claim Objection Matter</u>:  The Trustee filed a motion seeking to disallow the CAVIC Administrative Claims, but the Bankruptcy Court denied the motion without prejudice due to its finding that it lacked jurisdiction to decide the issues raised in the motion due to the pending appeal in the Ninth Circuit [Docket No. 2683].  Accordingly, with the CAVIC Administrative Claims unresolved, the Trustee will reserve $3,991,897.48 on account of the CAVIC Administrative Claims out of settlement proceeds (the "<u>CAVIC Administrative Claim Reserve</u>") which may be funded, in whole or in part, from the final 2026 Bombardier installment payment.  The Trustee intends to file a motion seeking to estimate the CAVIC Administrative Claims to limit the CAVIC Administrative Claim Reserve to the fair market rental value of the three planes.[4]

23. After the appeal is concluded, the Trustee intends to re-file his motion to disallow the CAVIC Administrative Claims in their entirety and to release the entire amount of the CAVIC Administrative Claim Reserve, less the 40% contingent fee, to the estates for distribution.

24. <u>The CAVIC GUC Objection Matter</u>: The Interim Distribution Motion further proposes to set aside the $2.35 million GUC Reserve pending adjudication of the CAVIC Unsecured Claims asserted by certain affiliates of CAVIC.  The CAVIC Unsecured Claims are set forth below:

| Filed Case | Filed Debtor | Claim No. | Date Filed | Filed Amount | Creditor |
|---|---|---|---|---|---|
| 17-21387 | Zetta PTE | 162 | 04/24/2018 | $1,416,591.45 | CAVIC Aviation Leasing (Ireland) Co. |
| 17-21387 | Zetta PTE | 206 | 08/08/2025 | $34,853,540.48 | ZJ6000-2 Statutory Trust |
| 17-21387 | Zetta PTE | 207 | 08/08/2025 | $26,189,077.06 | ZJ6000-1 Statutory Trust |
| 17-21387 | Zetta PTE | 208 | 08/08/2025 | $1,351,591.45 | CAVIC Aviation Leasing (Ireland) 22 Co. DAC |

---

[4] As CAVIC noted in its opposition to the *Motion of Chapter 7 Trustee to Disallow Proof of Claim Nos. 117, 118, and 119 Against Zetta Jet PTE, Ltd. and Proof of Claim Nos. 129, 130, and 131 Against Zetta Jet USA, Inc* [Docket No. 2665], although there is a presumption that the rate set forth in the lease constitutes the measure of an administrative claim, this presumption may be rebutted by establishing a lower fair and reasonable value of the lease because an administrative priority claim for unpaid rent "cannot exceed the fair and reasonable value of the lease upon the open market." *Id*. (*quoting In re Dant & Russell, Inc*., 853 F.2d 700, 707 (9th Cir. 1988)).

| Filed Case | Filed Debtor | Claim No. | Date Filed | Filed Amount | Creditor |
|---|---|---|---|---|---|
| 17-21387 | Zetta PTE | 209 | 08/08/2025 | $14,033,621.40 | ZJ6000-3 Statutory Trust |
| 17-21386 | Zetta USA | 261 | 08/08/2025 | $34,853,540.48 | ZJ6000-2 Statutory Trust |
| 17-21386 | Zetta USA | 262 | 08/08/2025 | $26,189,077.06 | ZJ6000-1 Statutory Trust |
| 17-21386 | Zetta USA | 263 | 08/08/2025 | $1,351,591.45 | CAVIC Aviation Leasing (Ireland) 22 Co. DAC |
| 17-21386 | Zetta USA | 264 | 08/08/2025 | $14,033,621.40 | ZJ6000-3 Statutory Trust |

25. The total amount of general unsecured nonpriority claims asserted against the Debtors' estates is $206,785,905.35 ("GUC Consolidated Claims Pool Amount"). The CAVIC Unsecured Claims total $75,076,238.94, or 36.31% of the GUC Consolidated Claims Pool Amount. The amount distributable on account of the face amount of CAVIC Unsecured Claims from the GUC Reserve is $853,197.23 (the "CAVIC Face Amount GUC Distribution"). The difference between the CAVIC Face Amount Distribution and the amount distributed to CAVIC on account of its claims finally allowed by the Bankruptcy Court (the "Allowed CAVIC GUC Claim Distribution") is the "CAVIC GUC Net Distribution Reduction".

26. The 40% contingent fee for the CAVIC Unsecured Claim Objection Matter will be calculated on, and payable from, the CAVIC GUC Net Distribution Reduction.

## **RETENTION OF DLA PIPER**

27. On December 29, 2017, the Trustee filed the *Chapter 7 Trustee's Application to Employ DLA Piper as Bankruptcy Counsel Pursuant to Sections 327(a) and 330 of the Bankruptcy Code, Bankruptcy Rules 2014 and 6003, and Local Bankruptcy Rule 2014-1, Nunc Pro Tunc to December 4, 2017* [Docket No. 518].

28. On January 19, 2018, the Court entered an order granting the Initial Application [Docket No. 567] *nunc pro tunc* to the Conversion Date.

## **SERVICES TO BE PROVIDED**

29. The Trustee anticipates that DLA Piper will continue to render legal services to the Trustee in connection with the Contingent Fee Matters as more fully set forth herein.

## **RELIEF REQUESTED**

30. By this Application, the Trustee seeks the entry of an order, substantially in the form of the Proposed Order, authorizing the Trustee to modify the compensation of DLA Piper in these

8

chapter 7 cases to permit DLA Piper to act as counsel to the Trustee in the Contingent Fee Matters and to be entitled to compensation on a contingent fee basis for such matter as described in this Application.

## BASIS FOR RELIEF

31.     The Trustee seeks approval of the modified compensation terms of DLA Piper pursuant to sections 327(a) and 328(a) of the Bankruptcy Code.

32.     Section 328(a) of the Bankruptcy Code provides that the trustee, "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a).

33.     Accordingly, section 328 of the Bankruptcy Code permits the compensation of professionals on a contingent fee basis and the Trustee seeks approval of the proposed compensation terms set forth in this Application with respect to the Contingent Fee Matters.

**WHEREFORE**, the Trustee respectfully requests that the Court enter an order, substantially in the form of the Proposed Order attached as **Exhibit A**, granting the relief requested in this Application, and granting such other and further relief as the Court may deem just and proper.

Dated  October 28, 2025
Chicago, Illinois                              **DLA PIPER**

 */s/ John K. Lyons*
David M. Riley (SBN 292087)
John K. Lyons (*Pro Hac Vice*)
Jeffrey S. Torosian (*Pro Hac Vice*)
Joseph A. Roselius (*Pro Hac Vice*)

9

1625274215