# **EXHIBIT B**

**King Declaration**

1625274215

# **DECLARATION OF JONATHAN D. KING**

I, JONATHAN D. KING, declare as follows:

1. I am over 18 years of age. I have personal knowledge of the facts set forth in this declaration (the "Declaration") and, if called as a witness, could and would testify competently with respect thereto.

2. I am the duly appointed chapter 7 trustee (the "Trustee") of Zetta Jet USA, Inc. and Zetta Jet PTE, Ltd. (together the "Debtors") in the above-captioned, jointly administered bankruptcy cases. I have personal knowledge of the facts set forth below and, if called to testify, I would and could competently testify thereto.

3. I submit this Declaration in support of the *Supplemental Application of the Chapter 7 Trustee for Entry of an Order (I) Modifying the Terms of Compensation of DLA Piper LLP (US) as Counsel to the Trustee to a Contingent Fee Basis with Respect to Certain Matters and (II) Granting Related Relief*, filed herewith.

**A.    Proposed Interim Distribution Motion**

34. Together with this Application, I filed the *Motion of the Chapter 7 Trustee for an Order to Make an Interim Distribution to the Holders of Administrative, Priority, and General Unsecured Claims and for Related Relief* (the "Interim Distribution Motion").

35. As noted in the Interim Distribution Motion, I, with my advisors, have great strides over the past year in positioning the cases for closure. This year, I have settled two of the three significant adversary proceedings – the Jetcraft Adversary Action[1] and the Universal Leader Adversary Action – pursuant to which the estates will recover $18 million and obtained the support of the largest creditor of the estates – Universal Leader – to make a substantial interim distribution to stakeholders including over $10 million to pay outstanding fees to chapter 7 professionals and my commission, $3.2 million to chapter 11 administrative claimants, $3.9 million to fund a reserve for the CAVIC Administrative Claims, $394,000 to prepetition priority claimants and $2.35 million to fund a reserve for distributions to general unsecured creditors. The Interim Distribution Plan

---

[1] Capitalized terms not defined in this Declaration section are defined as in the Motino or Interim Distribution Motion, as applicable.

1625274215

will also fund a $2.25 million fee reserve to cover professional fees and other costs through case closing.

### A.    DLA Piper Fee Reductions

36.    As noted in the Interim Distribution Motion, DLA Piper has made significant concessions to enable distributions of over $8.5 million to junior classes of claimants. First, DLA Piper has agreed to waive over $4.9 million in fees incurred in connection with the CAVIC Adversary Action and objections to CAVIC claims as part of the proposed contingent fee arrangement. Second, DLA Piper agreed to seek payment of $3.2 million in fees incurred in connection with the arrest of the Dragon Pearl solely from collections recovered through the enforcement of the New Target judgment against the New Target defendants (other than proceeds recovered from the sale of the Dragon Pearl). Third, DLA Piper has agreed to defer $7 million, or 25%, of its allowed, or sought to be allowed, chapter 7 professional fees until a final plan of distribution. Finally, DLA Piper has agreed to defer $1.2 million, or 60%, of its chapter 11 fees, until a final plan of distribution. All told, DLA Piper has either released, or deferred until a plan of liquidation, over $16.3 million in fees to enable me to make the proposed distributions to stakeholders under the Interim Distribution Plan while sharply reducing the risk of administrative insolvency.

### D.    Proposed Contingent Fee Arrangement

37.    Equally important, the willingness of DLA Piper to continue the CAVIC Adversary Action and the motions to disallow the CAVIC Proofs of Claim on a 40% contingent fee basis will significantly reduce incurrence of professional fees following the Interim Distribution through case closure.

38.    As noted in the Interim Distribution Motion, I have finished the prosecution of all of the adversary actions commenced in the bankruptcy cases, except for the CAVIC Adversary Action. Similarly, I anticipate that I will have administered and liquidated all of the proofs of claim filed in the cases except for the CAVIC Proofs of Claim by year end.

39.    Now that the cases have been substantially administered, I seek to eliminate the incurrence of additional hourly attorney's fees to prosecute the single remaining litigation in these

2

cases.

40.  The CAVIC litigation will likely continue for the next two years, if not longer. Briefing has been scheduled in the Ninth Circuit appeal and will be completed in mid-March 2026. Although it is difficult to predict when the Ninth Circuit will issue a ruling, it is reasonable to assume that a ruling will be handed down sometime in late 2026 or early 2027. Following the ruling, I will assess next steps in the CAVIC Adversary Action and renew my motion to disallow the CAVIC Administrative Claims.

41.  If I prevail in the CAVIC appeal and ultimately obtain a judgment in my favor in the CAVIC Adversary Action, I could recover $30 million plus prejudgment interest from CAVIC for the benefit of the estates. Accordingly, the proposed 40% contingent fee arrangement will allow me to vigorously pursue these claims which, if successful, could result in an additional $18 to 20 million in net recoveries from the CAVIC Adversary Action alone without further incurrence of hourly legal fees. In addition, successful prosecution of the motion to disallow the CAVIC Administrative Claims on a 40% contingent fee basis could add another $2.34 million (60% of the amount reserved for CAVIC's asserted chapter 11 administrative expense claims—$3,991,897.48 (the "CAVIC Administrative Claim Reserve")) to funds available for distribution to stakeholders without further incurrence of hourly legal fees. Finally, the net recoveries achieved above will allow me to pay Singapore counsel to prosecute the Singapore unfair preference action (as described in the Interim Distribution Motion), which could bring in another $7 million to the estates, less Singapore counsel's fees.

42.  The proposed contingent fee arrangement has the support of key stakeholders of the estates including Universal Leader (the largest unsecured creditor), the other chapter 7 professionals, chapter 11 professionals, many significant chapter 11 administrative claimants, James Seagrim (the chapter 11 DIP lender), and other unsecured creditors.

### **THE CONTINGENT FEE STRUCTURE**

43.  I am seeking seeking to modify DLA Piper's engagement to include the Contingent Fee Matter on a contingent fee basis. As set forth in the Motion, DLA Piper will be entitled to a contingent fee for the legal services rendered in support of the Contingent Fee Matters in the event

of a recovery of funds for the benefit of the estates and/or a return of reserves to the Debtors' estates, whether by enforcement of judgment or settlement.

44. The contingency fee arrangement has three components covering three matters involving CAVIC or its affiliates: (a) 40% of all recoveries from the CAVIC Adversary Action (the "CAVIC Adversary Action Matter"), (b) 40% of all amounts released from the CAVIC Administrative Claim Reserve (the "CAVIC Administrative Claim Objection Matter")[2] and (c) 40% of any amounts released from the 2.35 million general unsecured claims reserve (the "GUC Reserve") that reflect a reduced distribution to CAVIC resulting from a disallowance or reduction of the CAVIC Unsecured Claims (the "CAVIC Unsecured Claim Objection Matter" and, together with the CAVIC Adversary Case Matter and the CAVIC Administrative Claim Objection Matter, the "Contingent Fee Matters").[3]

45. DLA Piper shall not be entitled to receive any other compensation for its time expended on the Contingent Fee Matters and such payment shall be deemed to satisfy any commission that I would otherwise be entitled to receive on account of such recoveries from the Contingent Fee Matters, with the net recovery of such funds to be distributed pursuant to a final distribution plan (the "Final Distribution Plan"). DLA Piper will continue to represent the estates and me on a non-contingency basis based on its hourly rates in connection with all other matters in the Bankruptcy Cases.

46. The CAVIC Adversary Action Matter: With respect to the first matter, DLA Piper will reduce its Chapter 7 administrative expense claim by the amount of $4.5 million on account of fees previously incurred by DLA Piper in matters relating to CAVIC Adversary Action and included in DLA Piper's fee applications. Further, DLA Piper will only seek payment of $3.2 million in fees incurred in connection with the arrest of the Dragon Pearl solely from collections recovered through the enforcement of the New Target judgment against the New Target defendants (other than proceeds recovered from the sale of the Dragon Pearl).

---

[2] If amounts are released to estates through an estimation order, DLA Piper agrees to return its 40% contingency fee to the estates if the estimation order is subsequently superseded by a final order of allowance to the extent of any increase in CAVIC's distribution by reason of a higher allowed amount.

[3] Costs and reasonable out of pocket expenses, including expert witness and other professional fees, are separate from the contingent fee arrangement and will be paid directly by the estates.

4

1    47.    In addition, the Final Distribution Plan will provide that not less than 10% of the aggregate proceeds of any recovery of funds from CAVIC Adversary Action will be distributed to holders of allowed general unsecured claims.  To the extent that recoveries from the estates' 60% share of any recovery in the CAVIC Adversary Case is insufficient to fund this 10% share, DLA Piper will agree to fund the amount necessary to fully fund this share from its contingent fee.

48.    <u>The CAVIC Administrative Claim Objection Matter</u>: I filed a motion seeking to disallow the CAVIC Administrative Claims, but the Bankruptcy Court denied the motion without prejudice due to its finding that it lacked jurisdiction to decide the issues raised in the motion due to the pending appeal in the Ninth Circuit [Docket No. 2683].  Accordingly, with the CAVIC Administrative Claims unresolved, I will reserve $3,991,897.48 on account of the CAVIC Administrative Claims out of settlement proceeds (the "<u>CAVIC Administrative Claim Reserve</u>") which may be funded, in whole or in part, from the final 2026 Bombardier installment payment.  I intend to file a motion seeking to estimate the CAVIC Administrative Claims to limit the CAVIC Administrative Claim Reserve to the fair market rental value of the three planes.

49.    After the appeal is concluded, I intend to re-file my motion to disallow the CAVIC Administrative Claims in their entirety and to release the entire amount of the CAVIC Administrative Claim Reserve, less the 40% contingent fee, to the estates for distribution.

50.    <u>The CAVIC GUC Objection Matter</u>: The Interim Distribution Motion further proposes to set aside the $2.35 million GUC Reserve pending adjudication of the CAVIC Unsecured Claims asserted by certain affiliates of CAVIC.  The CAVIC Unsecured Claims are set forth below:

//
//
//
//
//
//
//

5

1625274215

| Filed Case | Filed Debtor | Claim No. | Date Filed | Filed Amount | Creditor |
|---|---|---|---|---|---|
| 17-21387 | Zetta PTE | 162 | 04/24/2018 | $1,416,591.45 | CAVIC Aviation Leasing (Ireland) Co. |
| 17-21387 | Zetta PTE | 206 | 08/08/2025 | $34,853,540.48 | ZJ6000-2 Statutory Trust |
| 17-21387 | Zetta PTE | 207 | 08/08/2025 | $26,189,077.06 | ZJ6000-1 Statutory Trust |
| 17-21387 | Zetta PTE | 208 | 08/08/2025 | $1,351,591.45 | CAVIC Aviation Leasing (Ireland) 22 Co. DAC |
| 17-21387 | Zetta PTE | 209 | 08/08/2025 | $14,033,621.40 | ZJ6000-3 Statutory Trust |
| 17-21386 | Zetta USA | 261 | 08/08/2025 | $34,853,540.48 | ZJ6000-2 Statutory Trust |
| 17-21386 | Zetta USA | 262 | 08/08/2025 | $26,189,077.06 | ZJ6000-1 Statutory Trust |
| 17-21386 | Zetta USA | 263 | 08/08/2025 | $1,351,591.45 | CAVIC Aviation Leasing (Ireland) 22 Co. DAC |
| 17-21386 | Zetta USA | 264 | 08/08/2025 | $14,033,621.40 | ZJ6000-3 Statutory Trust |

51. The total amount of general unsecured nonpriority claims asserted against the Debtors' estates is $206,785,905.35 ("GUC Consolidated Claims Pool Amount"). The CAVIC Unsecured Claims total $75,076,238.94, or 36.31% of the GUC Consolidated Claims Pool Amount. The amount distributable on account of the face amount of CAVIC Unsecured Claims from the GUC Reserve is $853,197.23 (the "CAVIC Face Amount GUC Distribution"). The difference between the CAVIC Face Amount Distribution and the amount distributed to CAVIC on accounts of its claims finally allowed by the Bankruptcy Court (the "Allowed CAVIC GUC Claim Distribution") is the "CAVIC GUC Net Distribution Reduction".

52. The 40% contingent fee for the CAVIC Unsecured Claim Objection Matter will be calculated on, and payable from, the CAVIC GUC Net Distribution Reduction.

Pursuant to 28 U.S.C. 1746, I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief.

Dated: October 28, 2025
Chicago, Illinois

*/s/ Jonathan D. King*
Jonathan D. King