Jeffrey N. Pomerantz (CA Bar No. 143717)
Debra I. Grassgreen (CA Bar No. 169978)
John W. Lucas (CA Bar No. 271038)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, Ca  90067
Email: jpomerantz@pszjlaw.com
        dgrassgreen@pszjlaw.com
        jlucas@pszjlaw.com

Counsel to the Former Official
Committee of the Unsecured Creditors

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## LOS ANGELES DIVISION

In re:

ZETTA JET USA, INC., a California corporation,

Debtor and Debtor-In-Possession.

In re:

ZETTA JET PTE, LTD., a Singapore corporation,

Debtor and Debtor-In-Possession

☒ Affects Both Debtors

☐ Affects ZETTA JET USA, INC., a California Corporation, only

☐ Affects ZETTA JET PTE, LTD., a Singapore Corporation, only

Case No. 2:17-bk-21386-BR

Jointly Administered with:
Case No. 2:17-bk-21387-BR

Chapter 7

**FIRST AND FINAL APPLICATION OF PACHULSKI STANG ZIEHL & JONES LLP FOR INTERIM AND FINAL ALLOWANCE AND PAYMENT OF COMPENSATION AND REIMBURSEMENT OF EXPENSES AS FORMER COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS; DECLARATION OF JOHN W. LUCAS IN SUPPORT THEREOF**

**Employment Period:**
 **October 12, 2017 – December 3, 2017**

Hearing:
Date:  August 11, 2026
Time:  10:00 a.m. (PDT
Place:  Courtroom 1668
        255 E. Temple Street
        Los Angeles, CA 90012

**TO THE HONORABLE BARRY RUSSELL, UNITED STATES BANKRUPTCY JUDGE, THE CHAPTER 7 TRUSTEE, THE DEBTORS AND THEIR COUNSEL, THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL PARTIES REQUESTING SPECIAL NOTICE:**

LA:4937-0991-2765.2 98413.003

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Pachulski Stang Ziehl & Jones LLP (the "Firm" or "PSZJ"), counsel to the former Official Committee of Unsecured Creditors (the "Committee") appointed in the above-captioned jointly administered bankruptcy cases of Zetta Jet USA, Inc. and Zetta Jet PTE, LTD. (collectively, the "Debtors") prior to the conversion of the cases from chapter 11 to chapter 7, hereby submits this *First and Final Application of Pachulski Stang Ziehl & Jones LLP for Allowance and Payment of Compensation and Reimbursement of Expenses as Former Counsel to the Official Committee of Unsecured Creditors* (the "Final Application"). This Final Application is submitted pursuant to sections 330 and 331 of the Bankruptcy Code and covers the period of October 12, 2017 through December 3, 2017 (the "Employment Period"), representing the entirety of the Firm's services rendered in these cases prior to their conversion to chapter 7. Upon conversion of the cases to chapter 7 by order entered December 4, 2017 [Dkt. No. 452], the Committee was dissolved by operation of law and the Firm's representation concluded. The Firm did not represent any party in the chapter 7 case and seeks no compensation for any services rendered after the conversion date except for the fees/expenses incurred preparing this Final Application as set forth herein. All fees and expenses sought herein were incurred exclusively during the chapter 11 phase of these proceedings, except the fees/expenses incurred preparing this Final Application.

For the Employment Period, the Firm seeks final allowance of compensation in the amount of $258,309.00 and reimbursement of expenses in the amount of $2,819.56, plus an additional $9,735.00 in fees incurred for the preparation of the Final Application, representing a total of 12.90 hours expended for preparation of the Final Application, plus estimated expenses in the amount of $110.00 for copying and mailing expenses to be incurred in connection with the Final Application, for a total award of $270,973.56 in connection with the Final Application.  The requests herein have not been the subject of any prior interim application.

Prior to filing this Final Application, the Firm submitted its invoices and other billing details for review by the Fee Examiner. After the Fee Examiner's review, she recommended a reduction of $5,446.53 in fees. The Firm agrees to this reduction and to the extent the Court approves this Final Application, the proposed order will reflect a reduction of $5,446.53 in fees.

LA:4937-0991-2765.2 98413.003

2

The Firm's attorneys and paralegals billed a total of 335.20 hours to this matter during the Employment Period, plus the hours incurred preparing this Final Application.

## I.

## APPLICATION SUMMARY

**A.**    **Summary of Employment Period (October 17, 2017- December 3, 2017):**

| | | |
|---|---|---|
| 1. | Total Fees Subject to Final Approval | $258,309.00[1] |
| 2. | Total Expenses Subject to Final Approval | $2,819.56 |
| 3. | Total Fees for Preparation of Final Application | $9,735.00 |
| 4. | Total Estimated Expenses in Connection with Final Application | $110.00 |
| 5. | **Total Request**    (TOTAL:  Lines 1-4) | $270,973.56 |
| 6. | Total Hours Billed During the Employment Period | 335.20 |
| 7. | Total Hours Billed for Preparation of Final Application | 12.90 |
| 8. | Blended Hourly Rate Including Paralegals | $770.00 |
| 9. | Blended Hourly Rate Excluding Paralegals | $831.93 |

## II.

## BRIEF NARRATIVE HISTORY

**A.**    **General Background**

On September 15, 2017, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court, Central District of California, Los Angeles Division (the "Court"), and are being jointly administered under case number 2:17-bk-21386-SK.

On October 5, 2017, the Court entered an order approving the appointment of Jonathan King as the chapter 11 Trustee of the Debtors' estates [Docket No. 159].

On October 12, 2017, the United States Trustee (the "U.S. Trustee") appointed the Committee to represent the interests of all unsecured creditors for the Debtors pursuant to section 1102 of the Bankruptcy Code.  The members appointed to the Committee were: (i) Associated Energy Group, LLC; (ii) Festin Management Corp.; and (iii) Scout Aviation II, LLC [Docket No. 199].

---

[1] The Court's approval of the Firm's fee request will be reduced by $5,446.53 per the agreement with the Fee Examiner.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

On October 28, 2017, the Committee filed an Application for an Order Authorizing and Approving the Employment of Pachulski Stang Ziehl & Jones LLP as Counsel for the Official Committee of Unsecured Creditors Effective as of October 12, 2017 [Docket No. 214] (the "Retention Application").  The Court entered an order granting the Retention Application on November 8, 2017 [Docket No. 331].

On November 20, 2017, the U.S. Trustee appointed New Target Investments Limited as a member of the Committee [Docket No. 49] (PTE Case). On November 21, 2017, Scout Aviation II, LLC was removed from the Committee [Docket No. 411].

## B.  Background of the Debtor's Business

The Debtors were a global leader in private flight operations for international business and luxury travel. The Debtors serviced routes domestically across the United States and globally to Europe, Asia, Australia, Africa, the Middle East, and North and South America, with ultra-long range intercontinental capabilities across the Pacific Rim.

The Debtors owned, leased, and/or operated a fleet of 20 aircraft, including 14 Bombardier dual-engine jet aircraft, consisting of six (6) Global 6000 jets, three (3) Global 5000 jets, three (3) Global Express jets, one (1) Global XRS jet, and one (1) Challenger 650 jet, as well as three (3) G-IV jets, one (1) G-IV-450 jet, one (1) G-V jet, and one (1) King Air turboprop.  Together, the Debtors worked as a joint enterprise in global luxury and business travel with network links in key cities across the globe, including Moscow, Los Angeles, New York City, London, Beijing, and Shanghai.

## C.  Summary of Events Throughout the Chapter 11 Cases

### 1.  The Schedules

The Debtors filed their Schedules of Assets and Liabilities and Statement of Financial Affairs (collectively, the "Schedules") on December 18, 2017.

### 2.  Chapter 11 Trustee

On September 25, 2017, the Debtors and the U.S. Trustee stipulated to the appointment of a Chapter 11 trustee.  On September 29, 2017, the Court entered an order directing the U.S. Trustee to

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

appoint a Chapter 11 trustee.  On October 5, 2017, Jonathan D. King was appointed as the Chapter 11 trustee (the "Chapter 11 Trustee").

### 3.    Conversion to Chapter 7

At a hearing held on November 28, 2017 for approval of debtor-in possession financing (the "DIP Motion"), the Court denied the DIP Motion. As a result, on November 30, 2017, the Debtors ceased operating their business.  On December 1, 2017, the Chapter 11 Trustee filed a motion to convert the cases from chapter 11 to chapter 7.  The Court entered an order converting the cases on December 4, 2017 [Docket No. 452]. Upon conversion, the Committee was effectively disbanded.

### III.

### INTRODUCTORY STATEMENT

Local Bankruptcy Rule 2016-1 (1)(a) sets forth certain requirements that a professional must satisfy in order to obtain an award for fees and costs.  Additional standards to be employed in the review of fee applications are set forth in the *United States Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330* (the "Compensation Guidelines").  Finally, cases interpreting sections 330 and 331 of the Bankruptcy Code have required that courts consider the twelve (12) factors that the Ninth Circuit Court of Appeals articulated in *Kerr v. Screen Extras Guild*, 526 F, *cert. denied*, 425 U.S. 951, 96 S.Ct. 726 (1976).  The Ninth Circuit's primary method used to determine the reasonableness of fees is to calculate the "lodestar."  *In re Charles Russell Buckridge, Jr.*, 367 B.R. 191, 201 (C.D. Cal. 2007).  The lodestar is ascertained by multiplying the number of hours reasonably expended by a reasonable hourly rate. *Law Offices of David A. Boone v. Derham-Burk (In re Eliapo),* 468 F.3d 592, 598 (9th Cir. 2006).  As set forth more fully herein, this Final Application complies with all statutory guidelines and Court-imposed requirements.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**IV.**

**<u>NARRATIVE STATEMENT OF SERVICES RENDERED AND TIME EXPENDED</u>**

A.     **<u>Services Performed and Time Expended During the Employment Period Covered by this Final Application</u>**

Pursuant to the Compensation Guidelines and LBR 2016-1, the Firm has classified all services performed for which compensation is sought for the Employment Period into one of several major categories. The Firm attempted to place the services performed in the category that best relates to the service provided. However, because certain services may relate to more than one category, services pertaining to one category may in fact be included in another category.  A description of services by category is provided below for the Employment Period.

1.     **General Case Strategy Meetings**

This category encompasses time spent by the Firm in general strategy meetings, conference calls, and coordination among the Firm's professionals, the Committee's financial advisors (FTI Consulting, Inc., or "<u>FTI</u>"), and the Chapter 11 Trustee's professionals and advisors, including DLA Piper LLP ("<u>DLA</u>") as Trustee's counsel and Seabury Securities LLC ("<u>Seabury</u>") as Trustee's investment banker.

During the Employment Period, the Firm, among other things: (i) attended and participated in regular work-in-progress calls with the PSZJ team and FTI regarding case status and open items; (ii) participated in calls and meetings with the Trustee's professionals at DLA and Seabury regarding fleet analysis, sale process, DIP financing, and related issues; (iii) prepared and revised work-in-progress reports summarizing pending matters and assignments; (iv) attended the October 19, 2017 meeting between the Committee and the Chapter 11 Trustee regarding case strategy and information flow; (v) participated in follow-up strategy calls with PSZJ partners regarding case developments; and (vi) coordinated with the Trustee's advisors regarding upcoming hearings, final orders for first-day motions, the business plan, and overall case strategy throughout the Employment Period.

The Firm spent **38.80** hours on matters relating to the Asset Analysis and Recovery category, accounting for **$32,791.50** of the fees incurred during the Employment Period.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

LA:4937-0991-2765.2 98413.003          6

**2.    Bombardier Matters**

This category relates to the Firm's work in connection with the pending relief from stay and contract assumption/rejection motions filed by Bombardier in the Debtors' cases.

During the Employment Period, the Firm, among other things: (i) reviewed the Bombardier stay relief motion and related documents and prepared an email to the Committee regarding same; (ii) conferred with the Chapter 11 Trustee's counsel and J. Lyons regarding Bombardier negotiations and the status of potential stipulations; (iii) prepared and revised the Committee's joinder to the Chapter 11 Trustee's objection to Bombardier's motions regarding stay relief and assumption/rejection of contracts, including coordinating filing and service of same; (iv) participated in the telephonic scheduling hearing regarding the Bombardier motion; (v) reviewed Bombardier's comments to the purchase agreement rejection stipulation and provided comments to DLA; and (vi) reviewed emails regarding the Bombardier purchase agreement stipulation and transmitted the signature page thereto.

The Firm spent **5.90 hours** on matters relating to the Bombardier Matters category, accounting for **$4,356.00** of the fees incurred during the Employment Period.

**3.    Bankruptcy Litigation**

This category includes time spent in connection with contested matters and litigation proceedings pending in the Debtors' bankruptcy cases during the chapter 11 phase.

During the Employment Period, the Firm, among other things: (i) reviewed the deadlines to file objections to first-day motions and conferred with Trustee's counsel regarding extensions of same; (ii) prepared information requests to the Trustee regarding pending contested matters; (iii) prepared extensively for and attended the October 25, 2017 omnibus hearing on a variety of contested issues, including preparing hearing binders, conferring with the Chapter 11 Trustee's professionals and co-counsel prior to the hearing, and appearing at the hearing; (iv) reviewed the motion to appoint a foreign representative and followed up with Trustee's counsel and the Committee regarding the recognition motion and related proceedings; (v) prepared for and attended the November 13, 2017 hearing on a variety of issues; (vi) participated in a telephonic hearing with the Court regarding scheduling; (vii) reviewed emails from G. Cassidy and related documents and

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

forwarded same to the Committee; (viii) reviewed the Trustee's status report; and (ix) attended the telephonic hearing regarding the DIP financing motion on November 28, 2017.

The Firm spent **25.70 hours** on matters relating to the Bankruptcy Litigation category, accounting for **$22,576.00** of the fees incurred during the Employment Period.

### 4.     Case Administration

During the Employment Period, the Firm, among other things: (i) drafted and continuously updated a critical dates memorandum to track key deadlines and court hearings throughout the chapter 11 case; (ii) reviewed and monitored the case docket and prepared summaries of significant pleadings filed in the cases for the PSZJ team and Committee members; (iii) conferred among members of the Firm regarding staffing, coverage for hearings, and division of responsibilities among PSZJ professionals; (iv) prepared consent language for pending motions regarding critical vendors and customer programs; (v) reviewed the motion to extend time for the Debtors to file schedules; (vi) reviewed and revised work-in-progress reports throughout the Employment Period; (vii) reviewed the Cassidy state court docket and related emails; (viii) attended to miscellaneous calendaring matters and coordination with the Trustee's professionals; (ix) telephonically appeared at the November 15, 2017 court hearing regarding case status; (x) attended the November 28, 2017 telephonic hearing for the DIP financing motion; and (xi) communicated with numerous creditors regarding the status of the chapter 11 case.

The Firm spent **26.00 hours** on matters relating to the Case Administration category, accounting for **$15,239.50** of the fees incurred during the Employment Period.

### 5.     PSZJ Compensation

During the Employment Period, the Firm billed time to this category in connection with its own compensation and fee procedures in the chapter 11 case.

Among other things, the Firm: (i) reviewed and responded to the interim fee application procedures motion filed in the cases; (ii) reviewed and finalized the Firm's billing statement through November 13, 2017 and circulated same to the client; (iii) prepared a summary of the interim fee procedures motion for the PSZJ team; (iv) reviewed the Knudsen order and related compensation

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

procedures applicable to these cases; and (v) addressed issues regarding monthly fee statements and the applicable procedures for submitting same.

The Firm spent **2.70 hours** on matters relating to the PSZJ Compensation category, accounting for **$1,965.00** of the fees incurred during the Employment Period.

### 6. Fleet Issues

This category relates to work pertaining to the Debtors' aircraft fleet, including matters arising under Section 1110 of the Bankruptcy Code governing aircraft equipment and related lease obligations.

The Debtors operated a large fleet of private jet aircraft, and the disposition of those fleet assets and related lease obligations was a critical and complex issue during the chapter 11 phase of these proceedings. During the Employment Period, the Firm, among other things: (i) reviewed the Section 1110 procedures motion and discussed same with J. Pomerantz; (ii) reviewed the Zetta Jet fleet plan overview in detail; (iii) prepared for and participated in calls with the Chapter 11 Trustee's advisors regarding fleet issues and related strategy; (iv) reviewed and revised the proposed Section 1110 procedures order; (v) reviewed the Rainbow Aviation Ltd. 1110(b) agreement and prepared a summary for the Committee seeking Committee input; (vi) prepared a comprehensive tracking chart for all 1110 Agreements; (vii) reviewed 1110(b) stipulations regarding aircraft ownership structure; (viii) researched and transmitted aircraft lease rejection procedures to Trustee's counsel; (ix) reviewed the Bombardier stipulation and prepared a Committee summary; (x) reviewed the 1110 procedures order regarding the Trustee's obligation to notify and consult with the Committee prior to entering into any new 1110(b) agreement; (xi) reviewed the objection of Ample United to the Trustee's motion to reject certain aircraft leases and prepared a summary for the PSZJ team; and (xii) monitored the ARINC Direct objection to the lease rejection motion.

The Firm spent **18.60 hours** on matters relating to the Fleet Issues category, accounting for **$14,454.50** of the fees incurred during the Employment Period.

### 7. Financing/Cash Collateral/Cash Management

This was the second-largest category of work during the Employment Period, reflecting the significant efforts by the Firm in connection with the Debtors' efforts to obtain post-petition DIP

financing during the chapter 11 case. The Committee played an active and important role in evaluating, negotiating, objecting to, and ultimately resolving issues with the proposed DIP financing.

During the Employment Period, the Firm, among other things: (i) reviewed the insurance premium financing motion and prepared a summary email to the Committee; (ii) reviewed and analyzed DIP financing proposals and potential plan sponsors; (iii) participated in numerous calls with J. Lyons, the Chapter 11 Trustee's counsel (R. Itkin), and other advisors regarding financing options, DIP budget, and related issues; (iv) reviewed 13-week cash flows and the Scout DIP term sheet and provided comments to FTI; (v) drafted a detailed memorandum to the Committee summarizing the proposed DIP Term Sheet and its key terms; (vi) reviewed and commented on multiple versions of the DIP Term Sheet and proposed DIP order; (vii) drafted and revised the Committee's opposition to the DIP financing motion, including reviewing objections filed by the Li entities, the U.S. Trustee, ARINC Direct, and Yuntian entities, and conducting legal research in support of the Committee's position; (viii) coordinated filing and service of the Committee's DIP objection; (ix) prepared the Committee's blackline to the proposed DIP term sheet and interim DIP order for filing with the Court; (x) prepared for and attended the November 27-28, 2017 financing hearings; (xi) revised the interim DIP order through numerous iterations and circulated redlines to DLA and the DIP lender; (xii) conferred with S. Brown, D. Coulson, and other parties regarding DIP resolution issues and the terms of the settled interim DIP order; and (xiii) reviewed the Trustee's mark-up of the DIP order and prepared summaries for hearing preparation.

The Firm spent **57.80 hours** on matters relating to the Financing/Cash Collateral/Cash Management category, accounting for **$45,738.00** of the fees incurred during the Employment Period.

### 8.    General Creditors' Committee

This was the largest single category of work during the Employment Period, reflecting the Firm's central role in organizing, advising, and supporting the Official Committee of Unsecured Creditors throughout the chapter 11 phase of these cases.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

During the Employment Period, the Firm, among other things: (i) attended the initial organizational meeting of the Committee and meetings with Committee members regarding case status, background, and strategy; (ii) prepared the Committee's bylaws and coordinated revisions thereto, including modifications to address the role of the Chapter 11 Trustee; (iii) prepared and filed the Committee's motion for approval of a confidential information sharing protocol, including drafting the motion and an accompanying application to shorten time for hearing; (iv) coordinated the selection of a financial advisor for the Committee, including reviewing pitches from multiple candidates, preparing fee comparison summaries, and participating in financial advisor selection calls; (v) prepared and distributed regular summaries of pleadings filed in the cases to keep Committee members informed of developments; (vi) maintained and updated the Committee's critical dates memorandum; (vii) organized and participated in regular Committee calls regarding case developments, including DIP financing, fleet matters, professional retention issues, and related matters; (viii) coordinated with Committee members regarding case developments and Committee positions; (ix) addressed the reconstitution of the Committee following the November 21, 2017 amended notice of appointment [Dkt. No. 411], reflecting a change in Committee membership; (x) prepared and circulated emails and correspondence to the Committee regarding DIP term sheets, pending motions, and hearing outcomes; and (xi) organized pre-Committee call meetings with PSZJ professionals and FTI in advance of each Committee call.

The Firm spent **75.10 hours** on matters relating to the General Creditors' Committee category, accounting for **$57,151.00** of the fees incurred during the Employment Period.

### 9.    Meetings of and Communications with Creditors

This category includes time spent in connection with the Section 341(a) meeting of creditors in the chapter 11 cases. During the Employment Period, the Firm, among other things: (i) prepared for the 341(a) meeting of creditors, including reviewing relevant files and coordinating with the Chapter 11 Trustee's counsel; (ii) attended the 341(a) meeting of creditors; (iii) drafted follow-up notes from the 341(a) meeting; and (iv) responded to correspondence from the Trustee's counsel regarding 341(a) meeting matters.

LA:4937-0991-2765.2 98413.003                            11

The Firm spent **2.20 hours** on matters relating to the Meetings of and Communications with Creditors category, accounting for **$1,662.50** of the fees incurred during the Employment Period.

### 10.    Operations

This category relates to the Firm's work in connection with the Debtors' ongoing business operations during the chapter 11 case.

During the Employment Period, the Firm, among other things: (i) reviewed case filings regarding background operational matters and conferred with J. Lucas and D. Guess regarding an issues list related to same; (ii) conferred with D. Minnick regarding the Debtors' operational status and general case background and issues; (iii) reviewed and analyzed the critical vendor motion and the customer programs motion and prepared the Committee's reservation of rights regarding same; (iv) reviewed the GlobalAero Insurance motion regarding a proposed $500,000 payment and prepared a Committee email regarding same, as well as a joinder to the GlobalAero motion; (v) reviewed and revised proposed final orders for premium financing, customer programs, critical vendors, and Section 1110 procedures to ensure adequate Committee protections; (vi) reviewed the Debtors' draft business plan and participated in a business plan conference call with the Debtors' management and professionals, including pre-call preparation with FTI; (vii) addressed issues regarding insider compensation notices; (viii) reviewed the stipulation regarding the Debtors' monthly operating report deadlines and prepared a summary for the Committee; (ix) followed up with M. Lubic regarding compliance with the block hour customer program protocol; and (x) conferred with R. Itkin and C. Cheek regarding accounting reconciliation and related legal issues.

The Firm spent **16.40 hours** on matters relating to the Operations category, accounting for **$13,413.00** of the fees incurred during the Employment Period.

### 11.    Relief from Stay

Time spent during the Employment Period in this category was minimal and related to monitoring relief from stay motions filed by Argus Bahamas and Argus Marine Ventures during the chapter 11 case. The Firm reviewed the relevant pleadings filed on the docket and prepared summaries for the PSZJ team, and monitored the continued hearing on the Argus Marine motion for relief from stay.

LA:4937-0991-2765.2 98413.003                    12

The Firm spent **0.80 hours** on matters relating to the Relief from Stay category, accounting for **$322.50** of the fees incurred during the Employment Period.

### 12. PSZJ Retention

This category includes time spent in connection with the preparation and filing of the Firm's application to be employed as counsel to the Official Committee of Unsecured Creditors in the chapter 11 cases.

During the Employment Period, the Firm, among other things: (i) prepared the PSZJ employment application, supporting declaration, and proposed order; (ii) conducted a conflicts check and coordinated with appropriate Firm personnel to complete same; (iii) revised the employment application per comments from J. Pomerantz and J. Lucas; (iv) prepared the notice of filing of the PSZJ retention application and coordinated filing and service; (v) prepared a supplemental declaration in support of the PSZJ application; (vi) prepared the declaration of non-opposition to the PSZJ employment application; and (vii) reviewed and revised the proposed order regarding PSZJ retention.

The Firm spent **6.90 hours** on matters relating to the PSZJ Retention category, accounting for **$3,512.50** of the fees incurred during the Employment Period.

### 13. Other Professional Retention

This was one of the more significant categories during the Employment Period, reflecting the Firm's substantial efforts in the selection and retention of a financial advisor for the Committee, as well as the Committee's active opposition to the proposed retention of the Chapter 11 Trustee's investment banker, Seabury, on the terms originally proposed.

During the Employment Period, the Firm, among other things: (i) coordinated the Committee's selection of a financial advisor, including participating in pitch presentations from multiple candidates (including DSI and Imperial Capital) and preparing fee comparison summaries; (ii) negotiated the terms of FTI Consulting's engagement as financial advisor to the Committee and prepared FTI's retention application, including revisions to scope of work and hourly rates; (iii) reviewed and analyzed the Seabury amended employment application and proposed compensation structure, including the proposed success fee; (iv) communicated and negotiated with T. McGrath

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

and Seabury regarding the Committee's objections to the proposed compensation terms; (v) prepared and filed the Committee's objection to the Seabury employment application, including researching applicable case law regarding the propriety of the proposed success fee; (vi) reviewed the Trustee's applications to retain other professionals, including DLA Piper and Omni, and provided comments to the PSZJ team; (vii) reviewed updated fee proposals from Seabury and communicated the Committee's positions thereon; and (viii) addressed issues regarding the ordinary course professionals motion and the Omni retention application.

The Firm spent **34.00 hours** on matters relating to the Other Professional Retention category, accounting for **$29,181.00** of the fees incurred during the Employment Period.

**14.    Travel**

This category includes non-working travel time for the Firm's professionals, billed at fifty percent (50%) of the applicable standard hourly rate.

During the Employment Period, travel time was incurred in connection with the following matters: (i) travel to October 19, 2017 meeting between the Committee and the Chapter 11 Trustee; (ii) and (iii) travel to the 341(a) meeting of creditors. All travel time has been billed at fifty percent of the applicable professional's standard hourly rate.

The Firm spent **13.80 hours** on matters relating to the Travel category, accounting for **$6,490.00** of the fees incurred during the Employment Period.

**15.    Tony Robbins**

This category relates to the Firm's work in connection with disputed claims and a relief from stay proceeding involving Tony Robbins Productions, Inc. ("Robbins") during the chapter 11 case. The Debtors had provided private jet charter services to Robbins, and disputes arose regarding the reconciliation of amounts owed and related aircraft agreement termination issues.

During the Employment Period, the Firm, among other things: (i) reviewed Robbins' relief from stay motion and related documents, including the proposed stipulation for escrow of funds and rejection and termination of aircraft agreements, and prepared a response thereto on behalf of the Committee; (ii) reviewed and commented on the proposed Robbins stipulation and conferred with R. Itkin and Robbins's counsel regarding same; (iii) attended a conference call with counsel for Robbins

and the Chapter 11 Trustee's counsel regarding the terms of the stipulation; (iv) participated in the October 31, 2017 meeting with R. Itkin, T. McGrath, and Robbins' representatives regarding the settlement of claims; (v) reviewed and responded to emails regarding Robbins' dead leg charges and accounting issues; and (vi) continued to monitor and address outstanding Robbins claim reconciliation matters, including communications with R. Itkin and J. Torrey, through the conclusion of the Employment Period.

The Firm spent **10.50 hours** on matters relating to the Tony Robbins category, accounting for **$9,456.00** of the fees incurred during the Employment Period.

### 16.    Final Fee Application

This category relates to the time the Firm spent preparing, filing and serving this Final Application. The Firm spent **12.90 hours** on matters relating to the Final Fee Application category, accounting for **$9,735.00** of the fees and **$110.00** in estimated expenses in connection with preparing the Final Application.

**B.    Detailed Listing of all Time Spent by the Professional on the Matters for Which Compensation is Sought [LBR 2016-1(a)(1)(E), (G) and (I)]**

**Exhibit "A"** contains a summary, by category, of the Firm's services and expenses in these cases that were incurred during the Employment Period.  Such summary includes the time spent, rate and billing attributable to each person who performed compensable services for the Chapter 7 Trustee.  **Exhibit "C"** contains the Firm's detailed time records during the Employment Period, as well as a summary, by category, of the Firm's services and expenses in these cases that were incurred during the Employment Period. **Exhibit "D"** contains the Firm's detailed time records of the Firm's services incurred preparing this Final Application.

**C.    List of Expenses by Category [LBR 2016-1(a)(1)(F)]**

The Firm advanced costs in the amount of $2,819.56 during the Employment Period.  The costs incurred during the Employment Period are summarized in **Exhibit "A"** attached hereto, which provides a monthly breakdown that complies with the Compensation Guidelines.  During the Employment Period, the Firm charged $.20 per page for photocopying, $.10 per page for scanning

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

documents, and $1.00 per page for incoming and outgoing faxes. The Firm has also charged for usual expenses, such as online research and special messenger services, including Federal Express.

**D. Hourly Rates [LBR-1(a)(1)(G)]**

The hourly rates of all professionals and paraprofessionals rendering services in these cases during the Employment Period are set forth on **Exhibit "A"** attached hereto.

**E. Description of Professional Education and Experience [LBR 2016-1(a)(1)(H)]**

**Exhibit "B"** includes a description of the professional education and biographies of the professionals employed by the Firm who rendered the majority of the services in these cases during the Employment Period.

**F. Client's Declaration (LBR 2016-1(a)(1)(J))**

The Firm was not able to obtain a client declaration, pursuant to LBR 2016-1(a)(1)(J), in support of the Final Application because the chapter 11 cases were converted to chapter 7 cases over eight and one-half years ago at which time the Committee was disbanded. The Firm does not have any contact with the former Committee members. However, the Firm did submit the underlying fee/expense information to the Fee Examiner who supports approval of the Final Application subject to the $5,446.53 reduction in fee that the Firm agrees to. In this context, the Firm submits that a client declaration should not be necessary.

**G. Applicant's Review of the Requirements of LBR 2016-1 [LBR 2016-1(a)(1)(K)]**

The attached declaration of John W. Lucas includes a statement that he has reviewed the requirements of LBR 2016-1 and that the Final Application complies with such rule.

**H. No Fee Sharing**

The Firm has no understanding, agreement, or arrangement of any kind to divide with or pay to anyone any of the fees to be awarded in these cases, except to the extent they are shared among members of the Firm.

**I. Notice of Application and Hearing (LBR 2016-1(c)(4)(C)**

Notice of final applications has been given by the Chapter 7 Trustee and upon the other parties in interest that the Chapter 7 Trustee served.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# V.

## THE FEES AND EXPENSES REQUESTED SHOULD

## BE AWARDED BASED UPON APPLICABLE LAW

### A.    Factors in Evaluating Requests for Compensation

Pursuant to section 330 of the Bankruptcy Code, the Court may award to a professional person reasonable compensation for actual, necessary services rendered, and reimbursement for actual, necessary expenses incurred. As set forth above, all fees for which the Firm requests compensation and all costs for which the Firm requests reimbursement were incurred prior to the conversion of these cases to chapter 7 and relate exclusively to actual and necessary services rendered and costs incurred on behalf of the Official Committee of Unsecured Creditors during the chapter 11 phase of these proceedings.

During the Employment Period, 335.20 hours were recorded by members of the Firm. The Firm's blended hourly rate for the Employment Period, including paraprofessionals, is $770.00. Moreover, time and labor devoted is only one of many pertinent factors in determining an award of fees and costs. Based on the skills brought to bear in these cases by the Firm and the results obtained, and in light of the accepted lodestar approach, the Firm submits that the compensation requested herein is reasonable and appropriate.

### B.    The Lodestar Award Should be Calculated by Multiplying a Reasonable Hourly Rate by the Hours Expended

The United States Supreme Court has approved application of the lodestar approach in determining a reasonable attorney's fee. The lodestar approach is as follows:

> The initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate . . . . Adjustments to that fee then may be made as necessary in the particular case.

*Blum vs. Stenson*, 465 U.S. 886, 888 (1984). In *Hensley v. Eckerhart,* 461 U.S. 424 (1983, the Supreme Court explained that while ad hoc factors from older tests might be considered in setting fees[2], the

---

[2] The ad hoc factors, now largely subsumed by the lodestar approach, are set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). The original twelve Johnson/Kerr factors are: (1) time and labor required; (2) novelty and difficulty of the questions involved; (3) skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances involved; (8) amount involved and

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

lodestar amount subsumed many of those factors. *Hensley v. Eckerhart*, 461 U.S.424, 434, n.9 (1983)). In 1986, the Supreme Court expressly held that factors relevant to determining fees should be applied using the lodestar approach, and expressly rejected reliance on the ad hoc application of the factors in older tests, stating that "the lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee . . ." *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 563-66 (1986); see also *Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989) ("we have said repeatedly that the initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate") (citations and quotations omitted).

Although the lodestar approach provides the fundamental framework for determining fee awards under the Bankruptcy Code, some of the ad hoc factors remain relevant for determining the appropriate hourly rate to use under the lodestar approach. *In re Charles Russel Buckridge, Jr.*, 367 B.R. 191, 201 (C.D. Cal. 2007 ("a court is permitted to adjust the lodestar up or down using a 'multiplier' based on the criteria listed in § 330 and its consideration of the Kerr factors not subsumed within the initial calculations of the lodestar"); *Dang v. Cross*, 422 F.3d 800, 812 (9th Cir. 2005 (court may "adjust the lodestar amount after considering other factors that bear on the reasonableness of the fee"); *Unsecured Creditors' Comm. v. Puget Sound Plywood, Inc.*, 924 F.2d 955, 960 (9th Cir. 1991 (starting with the lodestar approach is not mandatory in all cases, particularly given the uniqueness of bankruptcy proceedings).

Attached hereto as **Exhibit "C"** is a copy of the Firm's time reports and records kept in the regular course of business reflecting the services rendered and the expenses incurred by the Firm during the Employment Period. The Firm's time reports are organized on a daily basis. The Firm is sensitive to issues of "lumping," and separate time entries are set forth in the time reports unless time was spent in one continuous time frame on a variety of matters. The Firm's charges for its professional services are based upon the time, nature, extent and value of such services and the cost

results obtained; (9) experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) nature and length of the professional relationship with client; and (12) awards in similar cases.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

of comparable services in the Southern California region, other than in a case under the Bankruptcy Code.

## VI.

## **CONCLUSION**

This is the Firm's first and final request for compensation and reimbursement of expenses for services performed in connection with its retention as former counsel to the Official Committee of Unsecured Creditors during the chapter 11 phase of these cases. All fees and expenses sought herein were incurred prior to the December 4, 2017 conversion of these cases to chapter 7, upon which the Committee was dissolved and the Firm's representation concluded. The Firm believes that the services rendered for which compensation is sought in this Final Application were beneficial to the creditors and the estates during the chapter 11 phase, that the costs incurred have been necessary and proper, and that the sums requested for the services rendered and the costs incurred are fair and reasonable.

WHEREFORE, Pachulski Stang Ziehl & Jones LLP respectfully requests that this Court: (1) allow on a final basis, total fees in the amount of $258,309.00 and reimbursement of costs in the amount of $2,819.56 for the period October 12, 2017 through and including December 3, 2017, plus an additional plus an additional $9,735.00 in fees incurred for the preparation of the Final Application, plus estimated expenses in the amount of $110.00 for copying and mailing expenses to be incurred in connection with the Final Application, for a total award of $270,973.56 in connection with the Final Application; (2) authorize and order payment to the Firm of the allowed amounts from the estate; and (3) grant such other and further relief as is appropriate in the circumstances of these cases.

Dated:  July 21, 2026

PACHULSKI STANG ZIEHL & JONES LLP

By: */s/ John W. Lucas*
       John W. Lucas

Counsel to the Former Official Committee
of Unsecured Creditors

LA:4937-0991-2765.2 98413.003

19

**DECLARATION OF JOHN W. LUCAS**

I, John W. Lucas, declare as follows:

1.      I am an attorney at law duly authorized to practice in the State of California and before this Court. I am a partner of the law firm of Pachulski Stang Ziehl & Jones LLP, counsel to the former Official Committee of Unsecured Creditors appointed in the chapter 11 phase of the above-captioned cases.

2.      I have personal knowledge of the facts set forth in the foregoing Final Application and, if called upon as a witness, I could and would competently testify as to all of the matters stated therein.

3.      I have personally reviewed the information contained in the Final Application, and believe its contents to be true and correct to the best of my knowledge, information and belief.

4.      The Firm is not charging the Committee for outgoing faxes. The Firm's photocopying machines automatically record the number of copies made when the person doing the copying enters the client's account number into a device attached to the photocopier. The Firm summarizes each client's photocopying charges on a daily basis. Whenever feasible, the Firm sends large copying projects to an outside copy service that charges a reduced rate for photocopying.

5.      Regarding providers of on-line legal research (e.g., LEXIS and WESTLAW), the Firm charges the standard usage rates these providers charge for computerized legal research. Any volume discount received by the Firm is passed on to the client.

6.      The Firm does not charge for local or long distance calls placed by attorneys from their offices. The Firm only bills its clients for the actual costs charged the Firm by teleconferencing services in the event that a multiple party teleconference is initiated through the Firm.

7.      The Firm believes the foregoing rates are the market rates that the majority of law firms charge clients for such services and are in accordance with ABA guidelines regarding billing for disbursements and other charges.

8.      I have personally reviewed the bills in this matter, and the bills represent true and correct charges to the best of my knowledge, information and belief.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

LA:4937-0991-2765.2 98413.003

20

9.      **Local Bankruptcy Rule 2016-1(a)(1)(K) Compliance.** I have reviewed Local Bankruptcy Rule 2016-1 and the Application complies with Local Bankruptcy Rule 2016-1.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed this 21st day of July, 2026, at San Francisco, California.

/s/ John W. Lucas
John W. Lucas